IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*,<br><br>  Plaintiffs<br><br>  v.<br><br>ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States.<br><br>  Defendant. | Civil Action No.<br>98-CV-5591 |

**DEFENDANT'S MOTION TO AMEND CASE MANAGEMENT ORDER**

Pursuant to Local Rule 7.1, Defendant, the Attorney General of the United States, by and through his undersigned attorneys, moves to amend the Case Management Order (Pretrial Order No. 14). For the good cause set forth in the attached memorandum, Defendant respectfully requests that this Court amend the Case Management Order to provide, *inter alia*: (i) that the discovery cut-off date for factual discovery shall be March 15, 2006; (ii) that the parties will exchange principal expert reports by April 1, 2006; (iii) that the discovery cut-off date for expert discovery shall be August 1, 2006; and (iv) that trial shall commence on November 15, 2006.

A Proposed Order is attached.

Dated: October 3, 2005

                                        Respectfully Submitted,

                                        PATRICK L. MEEHAN
                                        United States Attorney

                                        RICHARD BERNSTEIN
                                        Assistant U.S. Attorney

                                        THEODORE C. HIRT
                                        Assistant Branch Director

                                        <u>KYS5044</u>
                                        KAREN STEWART
                                        RAPHAEL O. GOMEZ
                                        Senior Trial Counsels
                                        JAMES D. TODD, JR.
                                        JOEL McELVAIN
                                        TAMARA ULRICH
                                        Trial Attorneys
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Ave. N.W
                                        Washington, D.C. 20001
                                        Tel: (202) 514-2849

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*,<br><br>　　　　Plaintiffs<br><br>　v.<br><br>ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States.<br><br>　　　　Defendant. | Civil Action No.<br>98-CV-5591 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO AMEND THE CASE MANAGEMENT ORDER**

**PRELIMINARY STATEMENT**

For good cause shown herein, Defendant, the Attorney General of the United States, moves to amend the Case Management Order (Pretrial Order No. 14), in order to extend the schedule for completion of the specified pretrial activities and the trial in this action. The Defendant has been diligently preparing his defense of the constitutionality of the Child Online Protection Act (COPA). However, since the Case Management Order was entered, Defendant has encountered several obstacles in its pursuit of third-party and party fact discovery; because that discovery is needed for the preparation of Defendant's experts' principal reports, these obstacles will hinder Defendant's ability to exchange those reports by the current deadline of December 15, 2005. Moreover, Defendant will require more time to respond to the discovery requests that Plaintiffs have served on Defendant than was contemplated under the Case Management Order's December 15, 2005 discovery cut-off date for party discovery. Further, in

light of the number of issues to be resolved and the number of experts each side appears to be calling at trial, Defendant now anticipates that it will need more time to prepare and exchange expert rebuttal reports and for expert depositions.  Finally, because the Supreme Court affirmed the preliminary injunction entered against Defendant pending a trial on the merits, no prejudice to plaintiffs results from amending the Case Management Order.

Accordingly, Defendant respectfully requests that this Court amend the Case Management Order to provide, *inter alia*:  (i) that the discovery cut-off date for factual discovery shall be March 15, 2006; (ii) that the parties will exchange principal expert reports by April 1, 2006; (iii) that the discovery cut-off date for expert discovery shall be August 1, 2006; and (iv) that trial shall commence on November 15, 2006.

## BACKGROUND

### A. The Current Case Management Order

On April 20, 2005, this Court entered Pretrial Order No. 14 establishing the Case Management Order for this case.  The dates set forth in that Order were based upon consideration of dates submitted by the parties' March 21, 2005 joint proposed case management order.  That Pretrial Order set the date, *inter alia*:  (i) both for the parties to exchange principal expert reports and for party discovery cut-off at December 15, 2005; (ii) for expert discovery cut-off at March 15, 2006; and (iii) for trial to commence on June 12, 2006.  At the time the parties submitted their joint proposed order, Defendant was still in the process of identifying and retaining expert witnesses and of  identifying the third party discovery and party discovery to be sought in this case.

> **B.     Defendant Has Been Diligently Pursuing the Discovery Necessary to Defend the Constitutional Challenge to COPA**

As discussed in its September 27, 2005 letter, submitted to the Court pursuant to Pretrial Order No. 18, Defendant has worked hard: to identify appropriate third parties with information potentially useful to the defense of COPA; to fashion and serve narrowly tailored document requests on them; and to implement a plan for securing compliance with its subpoenas that minimizes the potential for protracted litigation.  *See* Letter to the Honorable Lowell A. Reed, Jr., from Def. (Sept. 27, 2005) [attached as Exhibit A for the Court's convenience].  To date, Defendant has served 32 subpoenas to companies that, through a variety of methods, offer Internet content filtering (ICF) products for use by residential customers.  Defendant has also served several subpoenas on companies that provide Internet search engines in order to obtain statistically representative samples both of Web-based content on the Internet, as reflected in these search engines, and of queries entered on these search engines over a specified period of time.[1]

Defendant reached out to each third party after service of the subpoenas to explain the nature of the underlying information sought by the document requests, to explain the protections offered by the protective order, and to work out a mutually agreeable production schedule for each third party, often on a rolling basis.  As a result of these cooperative efforts, Defendant has received substantial compliance with its subpoenas by a  majority of the companies served.

---

[1] In an effort to limit the potential for motions practice with third parties, Defendant worked closely with Plaintiffs' counsel over the course of several weeks to develop a comprehensive protective order to limit and to protect the use of confidential business information obtain from third parties to be introduced or relied upon at trial.

Similarly, with respect to the parties to this action, Defendant developed and served carefully targeted discovery to Plaintiffs in order to obtain their websites, to learn what material posted on those websites causes Plaintiffs' alleged fear of prosecution under COPA, to learn about Plaintiffs' use of credit cards in order to obtain access to the material on their websites, and to learn other information relevant to Plaintiffs' as applied challenges.  A copy of the discovery served by Defendant on Plaintiffs is attached to Defendant's September 30, 2005 letter to the Honorable Lowell A. Reed, Jr, which was submitted pursuant to Pretrial Order No. 19.  Defendant sought Plaintiffs' websites through discovery only after exhausting every commercially available or other reasonably effective means of obtaining Plaintiffs' websites.  Defendant has been negotiating with Plaintiffs' counsel in a continued effort to clarify any ambiguities and to resolve any disputes about the relevance and scope of the information sought.

### C. Despite Defendant's Diligent Efforts, He Has Encountered A Number of Unanticipated Obstacles to Meeting the December 15, 2005 Deadline Both for Exchange of Principal Expert Reports and for Completion of Discovery

Although Defendant has been assiduously proceeding with the factual development of his case, he has nevertheless encountered a number of unforeseen developments that have slowed Defendant's progress and have made the December 15, 2005 deadlines for submission of expert reports and for completion of discovery infeasible.  As discussed below, the difficulties experienced by Defendant are with respect to:  (i) third party discovery; (ii) the discovery he has propounded to Plaintiffs; and (iii) his response to the discovery propounded to Defendant.

### 1.     **Third Party Discovery**

Although Defendant has been working cooperatively with third parties to obtain responsive documents and information, and has been continuing to work with the third parties on a cooperative basis to obtain additional documents and information, the process of obtaining and reviewing the information from third parties needed for Defendant's experts' principal reports has taken substantially more time than was originally expected.

First, although Defendant has enjoyed substantial compliance by all but a handful of the third parties in obtaining more than 20,000 pages of responsive documents and information, as well as computer files, many companies have shown a need for substantial additional time to comply with requests for production of documents. Most companies that asked for additional time made compelling cases that obtaining responsive information, especially information from the years 1997 through 2003, would take substantially more time than the thirty days provided for in Rule 45 of the Federal Rules.[2] However, all companies requesting more time indicated that they would fully respond to the subpoenas within four to six additional weeks. In light of the time it takes to file a motion to compel and obtain an order compelling production in the federal district courts, Defendant determined that continuing to pursue production on a cooperative basis with the third parties was a much more efficient use of Defendant's resources than was motions practice.

---

[2] Indeed, some companies, such as Microsoft, did not themselves anticipate the number of components they would need to search and the volume of responsive documents they would have. Thus, although Microsoft initially indicated that it would commence a rolling production in August and complete production by mid-September, the company has, to date, only just provided responsive documents and information numbering well-over 3,200 pages. More documents and information are expected.

Second, due to the high volume of responsive information that the third parties have produced and are continuing to produce, the review of the information by Defendant's experts is proving to be unusually time consuming.  As Defendant's experts have identified third party responses that are incomplete, Defendant has re-contacted the third parties to obtain additional documents and information.  It is not yet known whether Defendant will receive the follow-up information through voluntary cooperation by the companies or whether it will be necessary to file motions to compel.  In any event, Defendant's experts will need substantial time to review the follow-up documents and information when it is received.  Moreover, as discovery has proceeded, Defendant has learned of additional entities with potentially relevant information.[3]  In that regard, Defendant has recently served additional subpoenas with return dates that have not yet expired.  Thus, Defendant will need additional time to receive and analyze these responses and to conduct appropriate follow-up with these recently-served entities.[4]

Third, the requests to the search engine companies for the production of computer data in order to obtain a statistically accurate sample of Web-based content on the Internet has posed a unique challenge for both Defendant and the companies served.  Defendant initially contacted two large search engine companies informally in an attempt to explore whether and how data might be obtained from the companies that would meet Defendant's needs.  When those

---

[3]  For example, some of the third parties' responses have identified other companies as the source or supplier of the ICF products offered.

[4]  Defendant has also experienced a delay in production from three large entities which requested that, in order to ensure that they would not be providing confidential business information to competitors, requested disclosure of the identities of experts before they would produce documents and information containing confidential business information.  This issue was not resolved–and thus Defendant did not receive begin receiving these documents–until mid-September.

discussions did not prove fruitful, Defendant decided to serve subpoenas on four search engine companies for the production of computer files containing millions of data points. Defendant has had to work on a close basis with the search engine companies to clarify the technical issues relating to the production request, as well as to clarify means by which Defendant will accept compliance with the subpoena that would minimize any potential burden to the third parties. Two large search engine companies have provided partial responses, and Defendant has continued to negotiate with those companies for an adequate response to the remainder of the subpoena. Defendant expects to soon receive a full response from a third search engine company. Defendant is in continuing negotiations with the outstanding search engine company to agree upon the method and time of their compliance with the requests. Even after receipt of these search engine companies' computer files, Defendant's experts will need substantial time to review and analyze this data as part of the preparation of their principal expert reports.

**2.     Discovery Propounded on Defendant**

Defendant did not anticipate how overbroad, unduly burdensome, and largely irrelevant to this litigation Plaintiffs' document requests and interrogatories, served only recently,[5] would be.

---

[5] Although Defendant has served all correspondence and information obtained from third parties electronically or by FedEx, Plaintiffs' document requests ans interrogatories, dated August 26, 2005, were propouned on Defendant by First Class Mail. Defendant did not receive Plaintiffs' discovery requests until September 7, 2005. Despite this late receipt, Defendant has been working diligently to identify the documents and information sought and to identify the Departmental components likely to have responsive information. However, because the scope of Plaintiffs' discovery is so extensive, Defendant requested a two-week extension of time so that he would actually have thirty days to respond to Plaintiffs' discovery requests. Despite the fact that Plaintiffs received Defendant's discovery requests electronically on August 26, 2005, Plaintiffs agreed to Defendant's request only in return for their own, two-week extension.

Responding to this discovery in its current form will require Defendant to contact numerous litigating and non-litigating Departmental components and will be extremely time-consuming.[6]

Defendant has engaged in discussions with Plaintiffs in an effort to clarify the purpose of the requests and to determine if Plaintiffs can agree to any significant narrowing of the scope of documents or information. Although those discussions are ongoing, the parties have thus far been unable to reach an agreement that would significantly reduce Defendant's burden of production or the substantial time it will take to comply with the requests. In addition, the parties have made no progress in limiting Plaintiffs' discovery to what Defendant considers to be relevant information. Defendant continues to gather information necessary to respond to Plaintiffs' discovery and to determine if it will be possible to resolve outstanding disputes without litigation.

### 3. Discovery Propounded on Plaintiffs

Although Defendant has not received Plaintiffs' formal response to the discovery Defendant served on them in late August, discussions with Plaintiffs have indicated, at least at this point in time, that they will not be complying with Defendant's request for each Plaintiff's website, and based on the nature of those discussions, Defendant is not optimistic about obtaining adequate responses to its discovery requests absent motions practice. Creating a copy of each Plaintiff's website in order to preserve the electronic evidence at issue in this case has proven to be a challenge. As this Court is aware, well before Defendant served discovery

---

[6] Even then, the majority of documents and information responsive to Plaintiffs' discovery requests are unlikely to be relevant to the issues in this litigation and are likely to be protected by one or more privileges and/or the work product doctrine due to the types of documents and information requests and the nature and responsibilities of the Departmental components that have responsive documents and information.

requests on Plaintiffs for each Plaintiff's website, Defendant devoted substantial time to testing various commercially-available and shareware products that were marketed as effective in downloading complete copies of any website. However, despite repeated attempts, Defendant has been able to obtain a complete copy of a small fration of the Plaintiffs' websites. In follow-up discussions with download product makers, both Defendant and his experts have confirmed that these products cannot reliably be used to download complete copies of any website unless all its webpages have been constructed using only html technology. Thus, Defendant served Plaintiff with a discovery request only after exhausting all other reasonable means for obtaining each Plaintiff's website, and even then only asked each Plaintiff to provide their most recent backup copy and to identify any software needed to operate that backup.

Although Defendant has been able to narrow, in part, Defendant's discovery requests after discussions with Plaintiffs, Defendant, as noted above, still anticipates that filing motions to compel may be necessary in order to obtain adequate responses to Defendant's discovery requests.

**ARGUMENT**

I.  **IN LIGHT OF UNANTICIPATED DELAYS, THIS COURT SHOULD AMEND THE CASE MANAGEMENT ORDER TO GIVE THE PARTIES ADDITIONAL TIME TO COMPLETE PARTY DISCOVERY AND EXPERT DISCOVERY**

In the interest of justice, this Court should amend its Case Management Order to give Defendant sufficient time to assemble the critical evidence in support of COPA's constitutionality.

First, the Federal Rules provide that a pretrial Scheduling Order may be modified "upon a showing of good cause and by leave of the District Judge . . . ." Fed. R. Civ. P. 16(b); *see also*

*Eastern Minerals & Chem. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (requiring good cause to be shown). "A finding of good cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." *Rent-A-Center v. Mamaronek Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (citations omitted); *see also* Fed. R. Civ. P. 16 advisory committee's note ("[T]he court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension."). For the reasons set forth herein, Defendant's request to amend the Case Management Order easily meets this standard. Although Defendant has been diligently prosecuting his case, a substantial extension of the schedule is nevertheless needed as a result of subsequent developments. *Cf. Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1209, 1213 (3d Cir. 1984) (district court abused its discretion in refusing to extend discovery cut-off when there was no evidence that movant had not been diligent and trial was not imminent).

Second, both because Defendant bears the burden of showing that COPA is the least restrictive alternative for accomplishing Congress's compelling interest in protecting children, and because "the Judiciary must proceed with caution and . . . with care before invalidating [COPA]," *Ashcroft v. ACLU,* 124 S. Ct. 2783, 2788 (2004) (citation omitted) (ellipsis in original), it is in the interest of justice that Defendant has sufficient time to complete the factual development necessary to meet his burden.

Finally, because the Supreme Court affirmed the preliminary injunction entered against Defendant pending a trial on the merits, there could be no prejudice to Plaintiffs caused by amending the case management order. *See Macklin v. City of New Orleans*, 293 F.3d 237, 240

(5th Cir. 2002) (district court's extension of deadlines for government, on grounds that city was unable to meet deadlines because of unanticipated circumstances, was not abuse of discretion and did not cause any prejudice to plaintiff).

> **A.  Defendant Anticipates That a Ninety-Day Extension to Complete Discovery, a Two-Week Extension to Prepare and Exchange Expert Rebuttal Reports, and a Four-Week Extension to Prepare for, Take, and Defend Expert Depositions Will be Necessary**
>
> **1.  Extension to Complete Discovery**

In order to give Defendant's experts sufficient time to prepare and exchange their principal expert reports, Defendant anticipates that a ninety-day extension of time to the December 15, 2005 date set forth in the Case Management Order is warranted. Although this extension is significant, Defendant believes that such a request is reasonable and necessary in light of the obstacles to obtaining adequate documents and information both from third parties and from Plaintiffs identified above.

First, in light of the volume of documents and information that Defendant has received and is continuing to receive from third parties, and the time required to review this information thus far, Defendant anticipates that Defendant's experts will need at least forty-five days to complete their initial review of the documents received to date in order to determine what remaining follow-up is appropriate. Similarly, Defendant anticipates that it will take at least thirty days to contact third parties about the remaining follow-up and to obtain those documents and information.

Second, after obtaining adequate responses from the third parties, Defendant anticipates that Defendant's experts will need sufficient time to review the documents and information so

that Defendant may serve subpoenas for deposition testimony on a number of the third parties. Defendant anticipates that it will need at least forty-five days to prepare for and take those third party depositions.

Third, in light of anticipated motions practice and time allowed to comply with any orders, Defendant anticipates that it will take at least forty-five days to obtain adequate responses to the document requests and interrogatories served on Plaintiffs.  Defendant anticipates that Defendant's experts will then need at least twenty days to review that information in order to suggest appropriate follow-up.  Defendant will then need approximately forty-five days to prepare for and take deposition testimony of those Plaintiffs who will be testifying at trial.

Fourth, only after Defendant has received adequate responses from both the third parties and the Plaintiffs can Defendant's experts perform the complex testing and analyses on which they will base their principal expert reports.  Defendant anticipates that Defendant's experts will need at least forty-five days to perform these test and analyses, and then an additional fifteen days to draft and finalize their principal reports.

Finally, although Defendant has endeavored to search appropriate components and plans to produce non-privileged documents as appropriate, in light of the type of information sought by Plaintiffs, the number of components to be searched, the volume of information to be processed, as well as the anticipated motions practice and time allowed to comply with any orders, Defendant believes that complying with Plaintiffs' discovery requests will take at least three months more than the December 15, 2005 deadline contemplated by the initial Case Management Order.

Accordingly, Defendant believes that a ninety-day extension of the date for the cut-off of party discovery and for experts to exchange their principal reports is warranted.

**B.    Extension to Prepare and Exchange Expert Rebuttal Reports and to Prepare For, Take and Defend Expert Depositions**

In light of the number of issues to be resolved at trial in this case, Defendant anticipates that a two-week extension to prepare and exchange expert rebuttal reports and a four-week extension to prepare for, take, and defend all expert depositions is appropriate. Defendant has retained a larger number of experts than originally anticipated and believes that Plaintiff has likely retained a large number of experts as well.

First, both Defendant and Defendant's experts will need substantial time to review and respond to opinions offered in Plaintiffs' expert reports. Defendant has also decided that there is a higher-than-originally-anticipated likelihood that it will need to retain new experts solely for the purpose of preparing and submitting expert rebuttal reports. Accordingly, Defendant believes that a two-week extension to the six weeks initially set out for the exchange of expert rebuttal reports will be necessary for Defendant to prepare its defense.

Second, in light of the higher-than-anticipated number of testifying experts, Defendant also believes that a four-week extension of time to prepare for, take, and defend all expert depositions is also warranted. Defendant anticipates that there may be up to twelve expert depositions. Accordingly, amending the Case Management Order to allow the parties a total of ten weeks to prepare for and take expert depositions is appropriate.

## CONCLUSION

For the reasons set forth herein, this Court should grant Defendant's Motion to Amend the Case Management Order.

Dated:  October 3, 2005

                                              Respectfully Submitted,

                                              PATRICK L. MEEHAN
                                              United States Attorney

                                              RICHARD BERNSTEIN
                                              Assistant U.S. Attorney

                                              THEODORE C. HIRT
                                              Assistant Branch Director

                                              <u>KYS5044</u>
                                              KAREN STEWART
                                              RAPHAEL O. GOMEZ
                                              Senior Trial Counsels
                                              JAMES D. TODD, JR.
                                              JOEL McELVAIN
                                              TAMARA ULRICH
                                              Trial Attorneys
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              20 Massachusetts Ave. N.W
                                              Washington, D.C. 20001
                                              Tel: (202) 514-2849

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2005, a copy of Defendants' Motion to Amend Case Management Order was filed electronically via the Court's ECF system, through which a notice of the filing will be sent to:

Ann Elizabeth Beeson
Christopher A. Hansen
Benjamin E. Wizner
Aden Fine
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004

Stefan Presser
ACLU of Pennsylvania
7803 St. Martins Lane
Philadelphia, PA 19118

Jonathan H. Feinberg
Kairys, Rudovsky, Epstein & Messing, LLP
924 Cherry Street, Suite 500
Philadelphia, PA 19107

David L. Sobel
Electronic Privacy Information Center
1718 Connecticut Ave., NW, Suite 200
Washington, DC 20009

Christopher R. Harris
Andrew Purdy
Jereon Vankwawegen
Latham & Watkins
885 Third Avenue, Suite 1000
New York, NY 10022

Attorneys for Plaintiffs

/s/ Karen Stewart
KAREN STEWART