IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*,  Plaintiffs.  v.  ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States.  Defendant. | Civil Action No. 98-CV-5591 |

## DEFENDANT'S MOTION TO COMPEL

Pursuant to Local Rule 7.1 and Fed. R. Civ. P. 37(a)(2)(A), defendant, by his attorneys, the United States Department of Justice, moves to compel responses to his first Request for Production of Documents and first set of Interrogatories which were propounded on plaintiffs on August 28, 2005.

As set forth in the attached memorandum, because defendant's discovery requests are reasonable and seek relevant information, and because the parties have been unable to resolve this dispute informally, this Court should compel plaintiffs to provide responsive documents and information within thirty days of deciding this matter.

### Rule 37(a)(2)(A) Certification

The undersigned hereby certifies that they have in good faith conferred by telephone and by exchange of correspondence with plaintiffs in an effort to secure disclosure without court action.

A proposed order is attached.

Dated: November 22, 2005

PETER D. KEISLER
Assistant Attorney General

PATRICK L. MEEHAN
United States Attorney

RICHARD BERNSTEIN
Assistant U.S. Attorney

THEODORE C. HIRT
Assistant Branch Director

/s/ KAREN STEWART
_____
KAREN STEWART
RAPHAEL O. GOMEZ
Senior Trial Counsels
JAMES D. TODD, JR.
JOEL McELVAIN
TAMARA ULRICH
ERIC J. BEANE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. N.W
Washington, D.C. 20001
Tel: (202) 514-2849

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, <br><br>       Plaintiffs. <br><br> v. <br><br> ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States. <br><br>       Defendant. | Civil Action No. <br> 98-CV-5591 |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO COMPEL**

**INTRODUCTION AND BACKGROUND**

Pursuant to Local Rule 7.1 and Fed. R. Civ. P. 37(a)(2)(A), defendant, by his attorneys, the United States Department of Justice, moves to compel responses to his first Request for Production of Documents and first set of Interrogatories which were propounded on plaintiffs on August 28, 2005.

Plaintiffs, a group of individuals who and entities that operate websites containing or selling such things as news and opinion, advice, art, science and/or literature challenge the Child Online Protection Act (COPA), 47 U.S.C. §§ 231 *et seq.*, both on its face and as applied to the material on their websites. Plaintiffs' Amended Complaint makes numerous allegations about the Internet in general, the COPA's requirements and affirmative defenses, and about their fear of prosecution. In order to test the relevant assertions made by plaintiffs in their Amended Complaint and in order to create a complete record for trial and for appeal, defendant's discovery requests simply seek to

obtain a permanent, navigable copy of each plaintiff's website on a given date, to discover the material about which plaintiffs fear prosecution, and to obtain the factual support for the allegations contained in plaintiffs' Amended Complaint.  *See* Def.'s First Set of Requests for Prod. of Docs. ("Def.'s Doc. Request") [Attached as Ex. 1 and incorporated into this memorandum by reference]; Def's First Set of Interrogatorries ("Def.'s Interrogs.") [Attached as Ex. 2 and incorporated into this memorandum by reference].

Despite repeated efforts to work with plaintiffs to obtain copies of their websites, plaintiffs have not provided documents and information responsive to defendant's discovery requests.  *See* Pls.' Resp. & Obj'ns to Def.'s First Set of Doc. Requests ("Pls.' Doc. Resp.") [Attached as Ex. 3 and incorporated into this memorandum by reference]; *see, e.g.*, Pl. Dan Savage's Resp. & Obj'ns to Def.'s First Set of Interrogs. ("Savage's Interrog. Resp.") [Attached as Ex. 4 and incorporated into this memorandum by reference], at 5; Pl. Philadelphia Gay News's Interog. Resp. ("Philadelphia Gay News's Interog. Resp.") [Attached as Ex. 5 and incorporated into this memorandum by reference].[1]  In fact, seven of the seventeen plaintiffs in this lawsuit provided no documents whatsoever in response to defendant's document requests.[2]  Because

---

[1] The remainder of plaintiffs' response to defendant's interrogatories are attached as Exs. 6-20 and are incorporated into this memorandum by reference.

[2] The following plaintiffs provided no documents in response to defendant's document requests:
- Patricia Nell Warren d/b/a wildcatint'l.com
- Androgyny Books, Inc. d/b/a A Different Light Bookstores
- Heather Corrine Rearick
- Electronic Frontier Foundation (EFF), or the two companies on whose behalf they are suing:  (i) Open Enterprises d/b/a GoodVibes.com), (ii) Bill Boushka d/b/a High Productivity Publishing
- EPIC

2

defendant's discovery is reasonable and relevant, this Court should either compel plaintiffs to provide their websites and responsive documents and information or should strike both their "as applied" challenge to COPA and all claims which they refuse to substantiate.

## ARGUMENT

### I.     MOTION TO COMPEL STANDARD

"It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." *Marroquin-Manriquez v. INS*, 699 F.2d 129, 134 (3d Cir. 1983). The Federal Rules permit a party to seek discovery of "any matter, not privileged, which is relevant to the claim or defense of any party . . ." Fed. R. Civ. P. 26(b)(1). "The information sought need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Rule 37 "authorizes a party who has received evasive or incomplete answers to discovery authorized by . . . Rule 26(a) to bring a motion to compel disclosure of the materials sought." *Northern v. City of Phila.*, No. 98-6517, 2000 U.S. Dist. LEXIS 4278, at *3 (E.D. Pa. Apr. 4, 2000). Once a party opposes a discovery request, the party seeking the discovery must demonstrate the relevancy of the information. *Id.* at *5. "When this showing of relevancy is made, the burden then shifts back to the party opposing discovery to show why the discovery should not be permitted." *Id.* Further,

---

- Nerve.com
- Planetout, Inc. d/b/a/ planetout.com and gay.com
- Dan Savage

In addition, Addazi, Inc. d/b/a Condomania provided two pages of documents. Further, neither Planetout, Inc. nor Open Enterprises nor Bill Boushka provided responses to defendant's first set of interrogatories.

3

"[i]t is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999).

## II. PLAINTIFFS HAVE REFUSED TO PROVIDE COPIES OF THEIR WEBSITES AND HAVE REFUSED TO IDENTIFY MATERIALS ABOUT WHICH PLAINTIFFS FEAR PROSECUTION (Document Request Nos. 1, 13-16, 20-21 and Interrogatory Nos. 4, 13-16)

Ignoring well-settled principles of discovery, plaintiffs have thus far evaded almost all of defendant's discovery requests concerning both their standing to maintain this action and their as applied and facial challenges. Despite having put their websites at issue in their Amended Complaint, plaintiffs have uniformly refused to provide navigable copies of their websites, and even though they have repeatedly suggested in conversations with defendant's counsel that they would provide copies of many of the plaintiffs' websites. *See, e.g.,* Ltr. fr. Raphael Gomez to Aden Fine (Nov. 3, 2005) [Attached at Ex. 21] (requesting that plaintiffs follow-through on their offer to provide copies of some websites); Ltr. fr. Christopher Harris to Raphael Gomez (Nov. 17, 2005) ("Harris Ltr.") [Attached as Ex. 22] at 1-3 (denying that they had ever offered to provide copies of some of their websites).[3] Similarly, plaintiffs have refused to identify or provide copies of the material about which they claim to fear prosecution. *See* Pls.' Doc. Resp. at 5; *see, e.g.*, Savage's Interrog. Resp. at 5; Philadelphia Gay News's Interrog. Resp. at 5.

---

[3] Indeed, as part of its efforts to obtain complete copies of plaintiffs' websites, defendant provided plaintiffs with copies of downloads from seven of the plaintiffs' websites obtained by two commercially available download programs on August 10, 2005, explained the limitations of the download software, and asked plaintiffs to provide the portions of those websites which defendant was unable to download. *See* Ltr. fr. Tamara Ulrich to Aden Fine (Aug. 10, 2005) [Attached as Ex. 23]. Plaintiffs never responded to this letter.

4

### A.     Only Plaintiffs Can Provide Navigable Copies of Their Websites

Plaintiffs claim that they do not have an obligation to provide navigable copies of their websites because they are publicly available and because they are not relevant. Neither claim has merit.

### 1.     Plaintiffs Websites Are Not Publicly Available

Plaintiffs' websites are not publicly available in that no one but plaintiffs can make a permanent navigable copy of each plaintiff's website(s). *See generally* Declaration of Paul Mewett in Support of Def.'s Mot. to Compel ("Mewett Decl.") [Attached as Ex. 24]. First, available software can make a complete copy of websites that contain static HTML content. *See id.* ¶ 3. Because, at most, two or three of plaintiffs' websites (published by Wildcat International, the Philadelphia Gay News, and City Lights Bookstore), appear to contain only static HTLM content, the remaining twenty-two plaintiff websites cannot be copied and thus cannot be considered publicly available. *See id.* ¶ 5.[4] These twenty-two plaintiff websites use dynamically generated content or contain hidden links. *See id.* ¶ 5. The content of HTML that is dynamically generated by programs using databases, script, or code requires use of the program that generates them and the inputs used by that program. *See id.* ¶ 4.

In short, no known publicly available software can thus download these websites. *See id.* ¶ 5.[5] By contrast, because plaintiffs have access to their websites that the public

---

[4] Even these websites may contain hidden links, and thus may not be complete. *See id.* ¶ 5.

[5] Here, ten of the twenty-five plaintiff websites used some techniques that obfuscated the links that connect a website, and sixteen used content that appeared to be from one or more databases. *See id.* ¶ 5. Nevertheless, defendant tried six different download programs, including one recommended by plaintiffs, to attempt to download complete copies of these websites. None worked. *See id.* ¶¶ 2, 5.

does not, they can make permanent, navigable copies of their websites, even if they do not have (or have access to) backup copies already in existence.  *See id.* ¶ 7.

Plaintiffs claim, however, that they do not have, nor have an obligation to create, backup copies.  *See* Harris Ltr. at 2.  However, it is highly unlikely that none of the plaintiffs have access to backup copies of their websites.  *See* Mewett Decl. ¶ 7.  Although some plaintiffs may not have recent or up-to-date copies of their entire websites, it is highly likely that their websites are located on commercial web-hosting services, and highly unlikely that any professional web-hosting companies would not have backups of their client's websites and data.  *See id.*  Moreover, contrary to plaintiffs' assertions, making a copy of a website does not require creation of a document, *see id.* ¶ 8, and is thus not beyond the scope of a document request.  Rather, making a backup copy is functionally no different than photocopying an existing paper document.  *See id.*  Thus, plaintiffs have an obligation under the Federal Rules to provide navigable copies of their websites.

Contrary to plaintiffs' assertions, *see* Harris Ltr. at 2, it will not be difficult, much less impracticable, for defendant to operate navigable copies of plaintiffs' websites once received.  Contrary to plaintiffs' assertions about the need for over one-hundred separate servers, of the 25 plaintiff websites examined, there are only about eight separate server *programs* operating plaintiffs' websites.  *See* Mewett Decl. ¶ 9.  Again contrary to plaintiffs' assertions, it should be possible to run all server programs and all 25 plaintiff websites on a single server.  *See id.*  Indeed, unless all plaintiffs have dedicated hosting services, their websites are already co-located with many other websites.  *See id.*  In short, plaintiffs can easily provide navigable copies of their websites.

6

### B.     Plaintiffs' Websites and the Material on Those Sites About Which They Fear Prosecution Are Relevant

Plaintiffs claim that navigable copies of their websites are not relevant to this litigation. *See* Harris Ltr. at 2-3. Because there is no other way to introduce complete copies of plaintiffs' websites into evidence, plaintiffs essentially claim that the websites themselves are not relevant. Similarly, plaintiffs claim that they need not identify the material in their websites about which they fear prosecution, because such documents are in the public domain. *See* Pl.'s Doc. Resp. at 10; *see also, e.g.,* Savage's Interrog. Resp. at 10; Philadelphia Gay News's Interrog. Resp. at 10. Plaintiffs are incorrect on both counts.

Both plaintiffs' websites and the material on those websites about which plaintiffs fear prosecution are relevant because defendant has a right to test the evidence plaintiffs will use at trial to meet their burdens to establish their standing and to show the statute's overbreadth. Throughout this litigation, plaintiffs carry the burden of "showing that [they are] properly in court," *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936), "and if the opposing party or the court challenges plaintiff[s'] standing, plaintiff[s] must support their allegations 'by competent proof.'" *Id.* (quotation omitted).[6]

---

[6] The Supreme Court summarized the burden on the plaintiff of establishing standing at the various stages of a case:
> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. . . . And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted); *see also, e.g., Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 (1979) ("It remains

7

This burden remains unchanged regardless of whether plaintiffs bring an applied or a facial challenge. *See Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 791 (8th Cir. 2004). Thus, to maintain standing at trial, plaintiffs cannot simply allege that they put sexual content on their websites, nor can they simply refer generally to their entire websites.

COPA applies only to a person who, "as a regular course of such person's trade or business, with the objective of earning a profit," 47 U.S.C. § 231(e)(2)(B), and "with knowledge of the character of the material," § 231(a)(1), communicates material that depicts certain specified sexual acts and that "is designed to appeal to, or is designed to pander to, the prurient interest." § 231(e)(6)(A). At trial, plaintiffs must establish first, that the sexual content on their websites would be subject to the statute's regulation, and then, that they face a credible threat of prosecution. Accordingly, defendant has a right to seek material in discovery that underlies plaintiffs' allegations in the Amended Complaint that they fear that the statute may apply to them and that they face a credible threat of prosecution.[7] Answering that this material is in the public domain is entirely irrelevant to the present dispute.[8]

---

open to petitioners, of course, to contest these facts [concerning standing] at trial."). Thus, even if plaintiffs successfully established standing to pursue their motion for preliminary injunctions, this has no bearing on whether they can establish standing at trial.

[7] In this regard, plaintiffs' complaint about defendant's definition and use of the term "representative sample" is without merit. A representative sample is a commonly used method to obtain an accurate slice of a larger group of materials. *Compare* Def. Doc. Request, at 5-6 (defining a representative sample as "a sample of ten to fifty webpages that has approximately the same distribution of characteristics (*i.e.*, degree of explicitness of sexual content) as the population or universe from which it was drawn and has been selected in a manner which permits projection of results from the sample to the population or universe from which it was drawn") *with, e.g., Litton Indus., Inc. v. F.T.C.*, 676 F.2d 364, 372 (9th Cir. 1982) (holding that FTC's definition of a representative sample as "'a sample that has been selected in a manner which permits projection of

8

Similarly, even if plaintiffs demonstrate that they have standing, on the merits, plaintiffs "bear[] the burden of demonstrating, 'from the text of [the law] *and from actual fact*,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)) (emphasis added). For that reason, this Court has expressly found that "it is never possible to consider a facial challenge in a vacuum, without reference to what has actually transpired in a given case." *Hinton v. Devine*, 633 F. Supp. 1023, 1027 n.5 (E.D. Pa. 1986)). Accordingly, defendant has a right to seek plaintiffs' identification of material about which they face prosecution as part of its right to test any evidence that plaintiffs intend to introduce to substantiate their overbreadth claims.[9]

---

results from the sample to the universe from which it is drawn,' . . . gives Litton a relatively clear idea of what is required," and thus will be enforced). Thus, in light of the issues in COPA concerning the depictions and descriptions of sexual activity to which it may apply, defendant's request—that the sample contain the same distribution of characteristics of the degree of sexual explicitness as the material of each plaintiff's website—is self-explanatory, and documents and information responsive to the requests and interrogatories using this term should be compelled.

[8] To be sure, several plaintiffs have provided between two and ten specific or general examples of material on webpages about which they fear prosecution. *See*, *e.g.,* Savage Interrog. Resp. at 11 (two specific examples); Philadelphia Gay News's Interrog. Resp. at 10-11 (three generalized examples). However, some of these examples are identical to ones offered in plaintiffs' Amended Complaint. *See* Amd. Compl. at 53-54 (Savage); *id.* at 46 (Philadelphia Gay News). In any event, they are clearly incomplete responses to defendant's document requests and interrogatories.

[9] Indeed, the Supreme Court has noted plaintiffs' lack of evidence on this point to date. *See Ashcroft v. ACLU*, 535 U.S. 564, 584 (2002) (noting that plaintiffs "fail to point out even a single exhibit in the record as to which coverage under COPA would depend upon which community in the country evaluated the material.") (plurality); *id.* at 585 n.16 (noting that the only objective evidence cited in the dissenting opinion for the proposition that COPA "will restrict a substantial amount of protected speech that would not be considered harmful to minors in many communities" are various anecdotes compiled in an *amici* brief); *id.* at 586 (O'Connor, J., concurring) (noting plaintiffs' "failure to provide examples of materials that lack literary, artistic, political, and scientific value for minors, which would nonetheless result in variation among communities judging the other elements of the test."). Indeed, because "[t]he Judiciary must proceed with caution

9

In addition, COPA's harmful-to-minors prohibition requires that the material be evaluated "as a whole."[10] Plaintiffs' views nothwithstanding, defendant maintains that this prohibition requires evaluation of the material on a particular webpage in the context of other material and/or other webpages on the website. Accordingly, defendant has a right to seek each plaintiff's entire website in order to provide a specific context and evidentiary basis upon which to evaluate whether and the extent to which any of the plaintiffs are subject to COPA in the first instance and, if so, how COPA's affirmative defenses might be employed so as to preclude liability.

### III. PLAINTIFFS CANNOT REFUSE TO PROVIDE DOCUMENTS AND INFORMATION ON THE GROUNDS THAT DEFENDANT'S DISCOVERY REQUESTS ARE PREMATURE (Document Request Nos. 2-15, 20, 21, 48 and Interrogatory Nos. 1-2, 13)

Plaintiffs have uniformly refused to provide documents and information that support the allegations in their complaint, including those that concern their standing to maintain this action, and have uniformly refused to identify both the witnesses they intend to call and the evidence they intend to rely on, by uniformly claiming that defendant's requests are "premature." *See* Pls.' Doc. Resp. at 5-10; *see also, e.g.,* Savage's Interrog. Resp. at 5, 10. Plaintiffs have made numerous allegations on pages 21 through 24 of their Amended Complaint regarding how people use the internet, the use of credit cards, the foreign origins of pornography, lesser restrictive alternatives, and the

---

and identify overbreadth with care," *id.* at 592 (Kennedy, J., concurring, joined by Souter, and Ginsberg, JJ.), defendants have a right to take discovery to test any evidence plaintiffs may introduce to support their claim of overbreadth.

[10] *Cf. Ginzburg v. United States*, 383 U.S. 463, 465-67, 475 (1966) (holding that, in determining whether a given publication was obscene, a court should consider as relevant evidence not only the material itself but also evidence showing the circumstances of its production, sale, and advertising, and concluding "this analysis simply elaborates the test by which the obscenity *vel non* of the material must be judged.").

like.  Absent a waiver of each of these allegations, defendant seeks all documents in each plaintiff's possession that is used or will be used to substantiate these claims, as well as identification of all documents plaintiffs intend to introduce and all witnesses plaintiffs intend to introduce at trial.  Plaintiffs have provided no valid reason for their failure to provide these documents and this information.

Apart from the particular claims which plaintiffs plan to substantiate solely with expert testimony (although, if there are such claims, plaintiffs have not identified them), plaintiffs simply cannot withhold responsive documents and information on the ground that defendant's request for them are "premature."  Defendant needs to obtain all this information during discovery.  Plaintiffs simply cannot claim that these requests are premature because discovery has not yet concluded because defendant needs sufficient time to review this information and then to conduct further discovery, such as requests for admissions and depositions, if necessary (again, apart from the particular claims that plaintiffs plan to substantiate solely with expert testimony).  Indeed, the Federal Rules make clear that plaintiffs cannot simply refuse to disclose documents and information in their possession during discovery and then later rely on them during trial.  *See* Fed. R. Civ. P. 37(c)(1); *Coles v. Perry*, 217 F.R.D. 1, 5 (D.D.C. 2003) (invoking the automatic sanction required by Fed. R. Civ. P. 37(c)(1) of excluding the evidence not disclosed during the discovery period).

**IV.    PLAINTIFFS HAVE REFUSED TO PROVIDE SUFFICIENT FINANCIAL INFORMATION, CUSTOMER INFORMATION, AND CREDIT CARD USAGE (Document Request Nos. 26-37 And Interrogatory Nos. 3, 5, 7-8)**

Defendant's document requests Nos. 26 through 35 seek information about each plaintiff's financial status, use of credit cards, and information-gathering about their

website visitors. With respect to Request Nos. 26-30, plaintiffs have stated that they are no longer claiming that it will be "prohibitively expensive" for individual plaintiffs to redesign their websites in order to comply with COPA. *See* Pl.'s Doc. Resp. at 22. However, before waiving these requests, plaintiffs need to agree upon a stipulation broad enough to prevent them from challenging any aspect of COPA's compliance costs, except those imposed by a potential "heckler's veto."[11] With respect to document request Nos. 31-37, and Interrogatory Nos. 2, 5, 7-8, defendant still seeks answers to these requests from all plaintiffs in order to gather appropriate information about each plaintiff's use of credit cards and personal information.

## V.  INSTITUTIONAL PLAINTIFFS ACLU, AFBE, EFF AND EPIC MUST RESPOND TO DEFENDANT'S DISCOVERY REQUESTS

Even though they have brought claims on behalf of certain specified members, and even though they operate websites that take credit card payments, institutional plaintiffs such as the ACLU, AFFBE, EFF, and EPIC, and their named members, including Patricia Nell Warren, Open Enterprises d/b/a Goodvibes.com, and Bill Boushka d/b/a High Productivity Publishing have largely evaded providing documents and information responsive to certain of defendant's discovery requests. *See* Pls.' Doc. Resp. at 11-14; Nov. 21 Harris Ltr. at 3. Both because the institutional plaintiffs have advanced claims on behalf of their members and because their own use of credit cards is relevant to allegations plaintiffs have made in their Amended Complaint, defendant can reasonably seek documents from the institutional plaintiffs responsive to Document Request Nos.

---

[11] To date, plaintiffs have only proposed stipulating that it will not be "prohibitively expensive for individual plaintiffs to redesign their websites in order to comply with COPA." Ltr. fr. Chris Harris to Karen Stewart (Nov. 21, 2005) (Nov. 21 Harris Ltr.") [Attached as Ex. 25], at 3. Accordingly, the parties have not yet reached agreement on the stipulation.

12

31-37 and Interrogatory Nos. 2, 5, 7-8, and should be ordered to do so by this Court. Similarly, defendant can seek information from all named members on whose behalf the institutional plaintiffs have brought this action. This Court should order these named members of the institutional plaintiffs to provide complete responses to defendant's discovery requests.

## CONCLUSION

For the foregoing reasons, this Court should grant defendant's motion to compel, and order plaintiffs to provide all responsive documents and information within thirty days of deciding this matter.

Dated:  November 22, 2005

                    PETER D. KEISLER
                    Assistant Attorney General

                    PATRICK L. MEEHAN
                    United States Attorney

                    RICHARD BERNSTEIN
                    Assistant U.S. Attorney

                    THEODORE C. HIRT
                    Assistant Branch Director

                    /s/ Karen Stewart
                    _____
                    KAREN STEWART
                    RAPHAEL O. GOMEZ
                    Senior Trial Counsels
                    JAMES D. TODD, JR.
                    JOEL McELVAIN
                    TAMARA ULRICH
                    ERIC J. BEANE
                    Trial Attorneys
                    United States Department of Justice
                    Civil Division, Federal Programs Branch
                    20 Massachusetts Ave. N.W
                    Washington, D.C. 20001
                    Tel: (202) 514-2849

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2005, a copy of the defendant's Motion to Compel was filed electronically via the Court's ECF system, through which a notice of the filing will be sent to:

Ann Elizabeth Beeson
Christopher A. Hansen
Benjamin E. Wizner
Aden Fine
Catherine Crump
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004

Stefan Presser
ACLU of Pennsylvania
7803 St. Martins Lane
Philadelphia, PA 19118

Jonathan H. Feinberg
Kairys, Rudovsky, Epstein & Messing, LLP
924 Cherry Street, Suite 500
Philadelphia, PA 19107

David L. Sobel
Electronic Privacy Information Center
1718 Connecticut Ave., NW, Suite 200
Washington, DC 20009

Christopher R. Harris
Andrew Purdy
Jereon Vankwawegen
Latham & Watkins
885 Third Avenue, Suite 1000
New York, NY 10022

Attorneys for Plaintiffs

                                                /s/ Karen Stewart
                                            _____
                                            KAREN STEWART

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., <br><br> Plaintiffs. <br><br> v. <br><br> ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States. <br><br> Defendant. | Civil Action No. 98-CV-5591 |

## **ORDER**

**AND NOW,** this ____ day of _____, 2005, upon consideration of Defendant's Motion to Compel, it is hereby **ORDERED** that:

Defendant's Motion to Compel is **GRANTED**; and it is hereby further **ORDERED** that:

Within thirty days of the date of this Order, each plaintiff will provide all non-privileged documents responsive to defendant's Request for Production of Documents, in the manner requested by defendant, including complete, permanent, navigable copies of each plaintiffs' website(s), and will provide all non-privileged information to responsive to defendant's first set of Interrogatories.

_____
**LOWELL A. REED, JR., S.J.**

15