IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) ) ) | |
| Plaintiffs. | ) ) | |
| v. | ) ) | Civil Action No. 98-CV-5591 |
| ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States. | ) ) ) ) ) | |
| Defendant. | ) ) | |

**<u>DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant, by his attorneys, the United States Department of Justice, hereby requests that Plaintiffs identify and produce the documents requested below in accordance with the Definitions and Instructions, within thirty days after service, as prescribed by the Federal Rules of Civil Procedure, at the office of Defendant's attorney, Karen Stewart, Senior Trial Counsel, United States Department of Justice, 20 Massachusetts Avenue, N.W., Room 7200, Washington, D.C. 20001.

INSTRUCTIONS

1. You are required to respond to these requests for production of documents in writing after making relevant inquiries of all individuals who may have the knowledge required, to respond fully to each request for production of documents. You must divulge or produce all information that is in your possession, custody or control or that is in the possession, custody or control of your attorneys, investigators, agents, employees, boards,

supervisors, overseers, consultants, contractors, or other representatives of yourself or your attorneys from December 1, 1997 to the present.

2. If you are unable to respond to any part of the following requests for production in full, please respond to the extent possible and specify your reasons for not responding completely. If you lack information necessary to respond fully to any request for production, please describe the specific efforts made by you or by anyone on your behalf to ascertain the information and state as definitively as possible when you anticipate obtaining the information sought and supplementing your response. If any requested document cannot be produced in full, produce it to the extent possible, specifying your reasons for your inability to produce the remainder and stating whatever information, knowledge, or belief you have concerning the unproduced portion.

3. In the event that any document or webpage called for by these requests for production is withheld on the basis of any claim of privilege or any other objection, please identify the document by providing the following information: (1) name, position and title of the author; (2) name, position and title of the addressee; (3) date, subject matter, and number of pages, attachments or appendices; (4) all persons to whom distributed, shown or explained; (5) present custodian; and (6) the nature of the privilege or objection asserted.

4. In the event that any document called for by these requests for production is withheld on the basis of disclosure of any trade secret or other confidential research, development, or commercial information, please identify the document by providing the following information: (1) name, position and title of the author; (2) name, position and title of the addressee; (3) date, subject matter, and number of pages, attachments or appendices; (4) all persons to whom distributed, shown or explained; (5) present custodian; and

(6) the nature of the trade secret or other confidential research, development, or commercial information.

5. When and if any request for production of documents contains separately numbered or lettered paragraphs, each separately numbered or lettered paragraph should be treated separately and a separate response furnished.

6. Please organize and label the documents and/or webpages to correspond with the categories of these requests.

7. Where a request for production calls for production of a website plaintiff's entire website, you are requested to provide the entire content of the website as of the date of your response to these requests in an usable electronic format (such as your most-recent backup copy) stored on a permanent or semi-permanent media such as a CD, DVD, or other, agreed-upon storage medium, in such a format so as to allow navigation through your entire website, including, where possible, third party content on your webpages such as advertising and as operable links to third party webpages or websites. In addition, please specify the minimum hardware and software requirements and necessary instructions to operate your website.

8. Where a request for production calls for production of a particular webpage or webpages of a website plaintiff, you are requested (i) to provide that webpage or those webpages on the website as of the date of your response to these requests in an electronic format (i.e., by providing a screen shot, such as that captured by the "Print Screen" key) stored on a permanent or semi-permanent media such as a CD, DVD, or other agreed-upon storage medium, and (ii) to provide the URL address of that webpage or those webpages in order

    to allow determination of where the webpage or webpages are located in that plaintiff's website.

9. These requests for production of documents are continuing in nature and require prompt supplementary responses if you obtain additional or different information after serving the responses required herein.

## DEFINITIONS

For the purposes of these Requests for Production of Documents, the following definitions apply:

A. "ACLU member" means each member of the American Civil Liberties Union (ACLU) that the ACLU has brought suit on behalf of in <u>ACLU, et al. v. Gonzales</u>, No. 98-5591 (E.D. Pa.).

B. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

C. "Communication" or "correspondence" means any meeting, conversation (however conducted), discussion, message, or other occurrence whereby thoughts, opinions, data or other information are transmitted between or among persons.

D. "Document" means the original and any non-identical copy (whether different from the original because of notes made thereon or attached to such copy, or otherwise) of any writing, drawing, graph, chart, paper, photograph, film, video recording, audio recording, or other data compilation or communication of any sort from which information can be obtained, however produced, reproduced, or maintained (and in whatever medium, including, but not limited to, in electronic form).

E.  "ICF product" means a technological product, download, service, or solution (whether software, hardware, or other medium) that is utilized to block the availability of content on the Internet, and that has been marketed, sold, or distributed between January 1, 1997 and the present.

F.  "Identify," when used with respect to persons, means to state, to the extent known, the person's full name, present or last known address, business and home telephone number, and present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

G.  "Identify," when used with respect to documents, means to state, to the extent known, (a) the nature of the document (i.e, letter, photograph, memorandum, etc.); (b) its date; (c) its author(s); (d) the title or position of its author(s); (e) its recipient(s); (f) the title and position of its recipient(s); (g) its number of pages; and (h) its subject matter.

H.  "Indicating" means describing, constituting, containing, evidencing, indicating, providing, or reflecting.

I.  "Parties" means the parties to the litigation ACLU, et al. v. Gonzales, No. 98-5591 (E.D. Pa.).

J.  "Person" means any natural person, or any business, legal or governmental association, organization, or entity.

K.  "Representative Sample" means a sample of ten to fifty webpages that has approximately the same distribution of characteristics (i.e., degree of explicitness of sexual content) as the population or universe from which it was drawn and has been selected in a manner

        which permits projection of results from the sample to the population or universe from which it was drawn.

L.    "Studies" mean internal company analyses, memoranda, papers, presentations, reports, studies, or surveys, commissioned third party analyses, memoranda, papers, presentations, reports, studies, or surveys, or generally available third party analyses, memoranda, papers, presentations, reports, studies, or surveys in your possession or control, or the most final draft of any of the above where no final version exists as of the date of your response to these requests.

M.    "Website plaintiff" means each named plaintiff that operates a website, including the ACLU.

N.    "You" and "your" refers to each plaintiff.

O.    The singular of any word includes the plural and vice versa.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### Request No. 1.

Each website plaintiff's entire website.

### Request No. 2.

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 9 in the section titled "Impact of COPA" on page 21 of the Amended Complaint that "[b]ecause the vast majority of content on the Web is available for free, most Web users will not provide credit cards or adult access codes to obtain access to Web content."

### Request No. 3.

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 9 in the section titled "Impact of COPA" on page 21 of the Amended Complaint that "[r]equiring

users to provide a credit card or adult access code before they can browse a Web page to determine what it offers will deter most users from ever accessing those pages."

**Request No. 4.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 10 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[w]eb users are even less likely to provide a credit card or adult access code in order to gain access to sensitive, personal, controversial or stigmatized content on the Web."

**Request No. 5.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 14 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[m]any web content providers would not set up credit card or adult access code systems because they know that few if any of their users would use them."

**Request No. 6.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 15 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "Web content providers depend on attracting a high level of traffic to their sites to attract and retain advertisers and investors."

**Request No. 7.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 16 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[m]ost web content providers want to reach the widest possible audience for their speech, and do not want to require adults to provide credit cards or adult access codes before accessing their speech."

**Request No. 8.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 17 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[m]any content providers could not afford the substantial start-up and per-transaction costs associated with setting up and maintaining credit card and adult access code systems."

**Request No. 9.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 18 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[f]inancial institutions will not verify credit cards in the absence of a financial transaction."

**Request No. 10.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 20 in the section titled "Impact of COPA" on page 23 of the Amended Complaint that "[i]mplementing COPA's credit card or adult access codes defenses would fundamentally alter the nature of communications on the Web, which is characterized by spontaneous, instantaneous, seamless and unrestricted access to information."

**Request No. 11.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 21 in the section titled "The Ineffectiveness of COPA and the Effectiveness of Alternative Means" on page 23 of the Amended Complaint that "[a] significant portion of the content provided on the Web, including sexually explicit material, originates abroad."

**Request No. 12.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 22 in the section titled "The Ineffectiveness of COPA and the Effectiveness of Alternative

Means" on page 23 of the Amended Complaint that "there are many alternative means that are more effective at assisting parents in limiting a minor's access to certain material if desired."

**Request No. 13.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[p]laintiffs fear prosecution under COPA for communicating, sending, displaying, or distributing material that might be deemed 'harmful to minors' by some community in the United States."

**Request No. 14.**

For each website plaintiff, each webpage on your website which you assert as the basis for the allegations of Paragraph 2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[p]laintiffs fear prosecution under COPA for communicating, sending, displaying, or distributing material that might be deemed 'harmful to minors' by some community in the United States."

**Request No. 15.**

For each website plaintiff, a representative sample of webpages on your website which contains material about which you fear prosecution under COPA, as referenced in Paragraph 2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[P]laintiffs fear prosecution under COPA for communicating, sending, displaying, or distributing material that might be deemed 'harmful to minors' by some community in the United States."

**Request No. 16.**

All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph

2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[p]laintiffs and/or their members all provide for free on the Web 'for commercial purposes' material that they believe to be valuable for adults, but that they fear could be construed as 'harmful to minor' in some communities."

**Request No. 17.**

For each website plaintiff, a representative sample of webpages which you believe contains material that has serious literary, artistic, political, scientific and/or social value for adults.

**Request No. 18.**

For each website plaintiff, a representative sample of webpages which you believe contains material that has serious literary, artistic, political, scientific and/or social value for children under 17.

**Request No. 19.**

For each website plaintiff, a representative sample of webpages which you believe contains material to which children under 17 should not be exposed.

**Request No. 20.**

For each website plaintiff, all webpages containing material which you assert as the basis for the allegations of Paragraph 5 in the section titled "The Impact of COPA on Plaintiffs" on page 25 of the Amended Complaint that "[p]laintiffs also fear liability for material created by others that is available on their Websites and Web-based online discussion groups and chat rooms."

**Request No. 21.**

For each website plaintiff, the documents sufficient to show both all complaints you received about the sexual content of "material created by others that is available on their Websites and Web-based online discussion groups and chat rooms" as alleged at paragraph 5 of the section

titled "The Impact of COPA on Plaintiffs" on page 25 of the Amended Complaint, and the particular webpages containing the material to which each complaint was referring.

**Request No. 22.**

For each website plaintiff, the documents sufficient to show all complaints you received about the sexual content on your website, and the particular webpages containing the material to which each complaint was referring.

**Request No. 23.**

For each website plaintiff, the documents sufficient to show all federal, state, or local threats of prosecution concerning the sexual content on your website and the particular webpages containing the material upon which those threats of prosecution were directed.

**Request No. 24.**

For each website plaintiff, the documents sufficient to show all federal, state, or local investigations concerning the sexual content on your website and the particular webpages containing the material upon which those investigations were focused.

**Request No. 25.**

For each website plaintiff, the documents sufficient to show all federal, state, or local legal actions filed against you concerning the sexual content on your website and the particular webpages containing the material upon which each legal action was based.

**Request No. 26.**

For each website plaintiff, the documents sufficient to show your financial accounting and federal tax returns, including annual budgets and monthly financial statements.

**Request No. 27.**

For each website plaintiff, the documents sufficient to show all costs of setting up or establishing your website, including contracts and/or agreements with third parties.

**Request No. 28.**

For each website plaintiff, the documents sufficient to show all annual costs of administering, operating, and maintaining your website, including contracts and/or agreements with third parties.

**Request No. 29.**

For each website plaintiff, the documents sufficient to show all costs of any redesign of your website, including contracts and/or agreements with third parties.

**Request No. 30.**

For each website plaintiff, the documents sufficient to show the annual revenue generated by your website.

**Request No. 31.**

For each website plaintiff, the documents sufficient to show your annual credit card revenue, including credit card revenue from your website.

**Request No. 32.**

For each website plaintiff, the documents sufficient to show your credit card agreements with issuing banks.

**Request No. 33.**

For each website plaintiff, the documents sufficient to show your contracts and/or agreements with third parties to facilitate credit card transactions on your website.

**Request No. 34.**

For each website plaintiff, the documents sufficient to show the statistics on charge backs to issuing banks of credit cards by cardholder reason, including, but not limited to, unauthorized use by a minor.

**Request No. 35.**

For each website plaintiff, the documents sufficient to show the annual number visitors to your website, including, separately, the number or proportion of visitors that have provided a credit card number.

**Request No. 36.**

For each website plaintiff, the documents (including studies) sufficient to show how your website visitors use your website.

**Request No. 37.**

For each website plaintiff, all studies indicating feasibility of costs of compliance with the requirements of the Child Online Protection Act, including installation and/or administration of a webpage containing credit card number or Adult Identification barrier.

**Request No. 38.**

All studies indicating the number or proportion of residential users that use, respectively, broadband and/or dial-up connections to access the Internet.

**Request No. 39.**

All studies indicating residential uses of ICF products, including studies that provide separate information for broadband and/or dial-up users.

**Request No. 40.**

All studies indicating the number or proportion of residential users that have installed ICF products on more than one computer.

**Request No. 41.**

All studies indicating the number and other demographic characteristics of households with Internet access and with one or more children.

**Request No. 42.**

All studies indicating projected demand for ICF products, and/or consumer attitudes towards adult content on the internet as it relates to children.

**Request No. 43.**

All studies indicating consumer satisfaction or dissatisfaction with ICF products.

**Request No. 44.**

All studies indicating the percent of time that households with ICF products employ the products.

**Request No. 45.**

All studies indicating the effectiveness of ICF products in general and at various setting levels, including but not limited to discussions of under blocking and over blocking.

**Request No. 46.**

All studies indicating the number of Websites with pornographic content available on the World Wide Web, the proportion of such Websites in comparison to the number of all Websites on the World Wide Web, and/or the proportion of Websites with pornographic content produced or created in the United States in comparison to such Websites produced or created elsewhere.

**Request No. 47.**

All documents relied upon or referred to in answering Defendant's First Set of Interrogatories to Plaintiffs in this case.

**Request No. 48.**

All documents plaintiffs expect to introduce as evidence in this litigation.

**Request No. 49.**

All documents obtained by third party subpoenas.

Dated:  August 26, 2005

        PATRICK L. MEEHAN
        United States Attorney

        RICHARD BERNSTEIN
        Assistant U.S. Attorney

        THEODORE C. HIRT
        Assistant Branch Director

        /s/ Raphael O. Gomez
        KAREN STEWART
        RAPHAEL O. GOMEZ
        Senior Trial Counsels
        JAMES D. TODD, JR.
        JOEL McELVAIN
        TAMARA ULRICH
        Trial Attorney
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave. N.W
        Washington, D.C. 20001
        Tel: (202) 514-1318