# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: (212) 906-1200  Fax: (212) 751-4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Boston | New York |
| Brussels | Northern Virginia |
| Chicago | Orange County |
| Frankfurt | Paris |
| Hamburg | San Diego |
| Hong Kong | San Francisco |
| London | Shanghai |
| Los Angeles | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| New Jersey | Washington, D.C. |

November 21, 2005

**BY ELECTRONIC MAIL**

Karen Stewart
Senior Trial Counsel
U.S. Department of Justice, Federal Programs Branch
P.O. Box 883
Washington D.C. 20044

Re:  *ACLU, et al, v. Attorney General Alberto R. Gonzalez*
     Docket # 02:98-CV-05591-LR

Dear Ms. Stewart:

I am writing in response to your letter dated November 17, 2005 regarding your request for a meet and confer to discuss Plaintiffs' responses to your discovery requests.

## Harmful to Minors Material on Each Plaintiff's Website
## (Document Request Nos. 1, 13-16 and Interrogatory Nos. 4 & 13-16)

You stated in your letter that you seek "both the particular material about which each plaintiff fears prosecution and a permanent copy of each plaintiff's website in its entirety as it exists on the date of your response."

With respect to the first part, Plaintiffs' responses to Interrogatory 13 of Defendants' First Set of Interrogatories identify content for which they fear prosecution.[1] For example, Plaintiff

---

[1] As per our tentative agreement, non-website Plaintiffs (the ACLU, American Booksellers, EPIC and EFF) did not respond to these Requests and Interrogatories. In your letter dated November 8, 2005 to Christopher Hansen, you wrote: "To the extent that the organizational plaintiffs will stipulate that they will not be contending that they are subject to prosecution under COPA, defendant would be willing to agree that the organizational plaintiffs need not answer requests for production numbers 1, 13-25 and Interrogatories 1-2, 9, 13-16 on behalf of themselves. However, the foregoing discovery requests would still need to be answered by the organizational plaintiffs for any of their members identified in the amended complaint or who will be testifying in this action." With the understanding that this agreement eliminates the organizational Plaintiffs' need to respond to Requests 1, 13-17, 20-35, 37 and Interrogatories 3-9, 13-16, Plaintiffs are willing to stipulate that organizational Plaintiffs (as distinguished from website Plaintiffs and from members of the organizational Plaintiffs) do not

Powell's Books identified generally the nature of material on its website for which it fears prosecution and listed a sample of eight web pages for which it fears prosecution. Similarly, Plaintiff Urban Dictionary generally described the kinds of content on its website for which it fears prosecution and listed a sample of ten web pages for which it fears prosecution. Plaintiffs did not print the identified web pages because they are in the public domain and thus accessible by Defendant.

With respect to the second part, your explanation of why you need documents reflecting the website "as a whole," we directly addressed your concerns in our letter of November 17, 2005 to Raphael Gomez. I have attached that letter hereto for your convenience. Your statement that "each plaintiff can easily provide defendant both with the most recent backup copy of their website and can easily identify the necessary hardware and software requirements to operate that copy" is far from accurate. As explained in our letter, aside from our legal objections, there are significant practical obstacles to producing backup copies of Plaintiffs' websites in navigable form. Overcoming these obstacles would impose an unreasonable burden on many Plaintiffs. We have never indicated that we would provide "most, if not all, permanent copies of each website," as asserted in your letter. In fact, we have consistently expressed our inability to provide backup copies of all the websites and repeatedly questioned the relevance of the Request even for those Plaintiffs who do have backups.

### Other Allegations in Plaintiffs' Amended Complaint (Document Requests 2-12)

Despite our various objections to Requests 2-12, Plaintiffs agreed to produce all non-privileged documents in their possession responsive to these Requests. Plaintiffs produced numerous documents in response to Requests 8, 10 and 12.[2] Plaintiffs did not produce documents in response to the other Requests because, after conducting a reasonable search, they did not locate any such documents. Plaintiffs intend to produce additional documents as may be discovered during the course of Plaintiffs' continuing investigation or during the course of discovery.[3] Plaintiffs do not waive these allegations and fully intend to prove them at trial.

### Financial Information, Customer Information, and Credit Card Usage
### (Document Request Nos. 26-37 and Interrogatory Nos. 3, 5, 7-8)

Your letter states that you would like Plaintiffs' stipulation regarding compliance costs to prevent Plaintiffs from "challenging any aspect of COPA's compliance costs, except those imposed by a potential 'heckler's veto.'" Plaintiffs already have stipulated that they no longer

---

fear prosecution under COPA for content on their websites, subject to Plaintiffs' claim that COPA is vague.

[2] As a courtesy to Defendant, by letter dated November 8, 2005, Plaintiffs provided Defendant with a chart identifying the requests to which documents produced by Plaintiffs are responsive.

[3] Plaintiffs reserved the right to supplement their document production in General Objection 15 to Defendant's First Set of Requests for Production of Documents and General Objection 14 to Defendant's First Set of Interrogatories.

claim that it will be prohibitively expensive for individual plaintiffs to redesign their web site in order to comply with COPA. Documents sought by Requests 26-30 are therefore neither relevant to claims or defenses of any party in this action, nor reasonably calculated to the discovery of admissible evidence.

Plaintiffs continue to contend, however, that compliance with COPA's affirmative defenses will impose a financial burden on online providers of content that is potentially harmful to minors. There is no reason to believe that complying with COPA would be more expensive for Plaintiffs than for any other content providers. The presence of a financial burden can be demonstrated without requiring Plaintiffs to disclose sensitive financial information.

Your letter takes issue with our responses to Requests 31-37 and Interrogatory numbers 3, 5, and 7-8. Subject to our tentative agreement that non-website Plaintiffs are not required to produce documents in response to these Requests, and subject to our various objections, Plaintiffs agreed to produce all non-privileged documents in their possession responsive to Requests 31-35 and Request 37. Plaintiffs produced numerous documents in response to Requests 31, 33 and 34. Plaintiffs did not produce documents in response to the other Requests because, after conducting a reasonable search, they did not locate any such documents. Plaintiffs intend to produce additional documents as may be discovered during the course of Plaintiffs' continuing investigation or during the course of discovery.

Plaintiffs objected to Request 36 (seeking documents sufficient to show how website visitors "use" Plaintiffs' websites) because we do not understand what documents Defendant is seeking with this Request. As indicated in our responses and objections, we welcome an explanation from Defendant of what kinds of documents he is seeking. With respect to Interrogatory numbers 3, 5, 7, and 8, all website Plaintiffs except for Planet Out responded to these Interrogatories. The non-website Plaintiffs did not respond to these Interrogatories pursuant to our tentative agreement that they are not required to do so.[4]

### Studies in Each Plaintiff's Possession (Document Request Nos. 38-49)

Subject to our various objections, Plaintiffs agreed to produce all non-privileged documents in their possession responsive to Requests 38-47 and Request 49. Plaintiffs have produced documents in response to Requests 46 and 49. Plaintiffs did not produce documents in response to the other Requests because, after conducting a reasonable search, they did not locate

---

[4] In this heading of your letter, you identify Interrogatory numbers 3, 5, 7-8, but in the corresponding paragraph, you identify Interrogatory numbers 2, 5, 7-8. Based on the content of the paragraphs, we suspect you listed Interrogatory 2 inadvertently. Interrogatory number 2 seeks Plaintiffs' identification of "all documents, including web pages, you intend to introduce as evidence in this litigation." Assuming that you intended to take issue with our response to this Interrogatory, Plaintiffs objected that this Interrogatory is premature. Plaintiffs' intentions regarding possible evidence to be introduced at trial are preliminary and thus are not a proper subject matter for an Interrogatory at this stage.

LATHAM&WATKINS<sup>LLP</sup>

any such documents. Plaintiffs intend to produce additional documents as may be discovered during the course of Plaintiffs' continuing investigation or during the course of discovery.

With respect to Request 48, seeking "[a]ll documents plaintiffs expect to introduce as evidence in this litigation," Plaintiffs objected that this Request is premature. Plaintiffs' expectations regarding possible evidence to be introduced at trial are preliminary and thus are not a proper subject matter for a document request at this stage.

Please feel free to contact me at (212) 906-1880 if you would like to discuss these matters.

Sincerely,

*Christopher Harris/jw*

Christopher R. Harris

Attachment

cc: All counsel (by electronic mail)

Christopher R. Harris
Direct Dial: (212) 906-1880

# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: (212) 906-1200  Fax: (212) 751-4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Boston | New York |
| Brussels | Northern Virginia |
| Chicago | Orange County |
| Frankfurt | Paris |
| Hamburg | San Diego |
| Hong Kong | San Francisco |
| London | Shanghai |
| Los Angeles | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| New Jersey | Washington, D.C. |

November 17, 2005

**VIA FEDERAL EXPRESS & ELECTRONIC MAIL**

Raphael O. Gomez, Esq.
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. Suite 6144
Washington, D.C. 20530

Re:   *ACLU, et al, v. Attorney General Alberto R. Gonzales*,
      Docket # 02:98-CV-05591-LR

Dear Mr. Gomez:

  This is in response to your letter of November 3, addressed to Aden Fine. As you know, the first Request of Defendant's First Set of Requests for the Production of Documents asks Plaintiffs to produce "each website plaintiff's entire website." The instructions accompanying this Request require each Plaintiff to provide a copy of its entire website "in such a format so as to allow navigation through your entire website." We have since discussed with you the technical difficulties inherent in responding to this Request. In none of those conversations did we indicate that we would "provide backup copies of certain of the plaintiffs' websites," as you asserted in your November 3rd letter. In fact, we expressed our inability to provide backup copies of all the websites and repeatedly questioned the relevance of the Request even for those Plaintiffs who do have backups.

  Requiring Plaintiffs to create materials to be produced in response to a document request is beyond the scope of permissible discovery. Thus, Plaintiffs are not obligated to create any materials that did not already exist as of the date of Defendant's First Set of Requests for the Production of Documents, August 26, 2005. Several of the Plaintiffs do not make full backup copies of their websites in the ordinary course of business, or only backup certain portions of their websites. To the best of our understanding, none of the Plaintiffs possesses a backup copy of its website that will easily "allow navigation" as per Defendant's Request. To the extent that an individual Plaintiff does not keep a backup copy of its website that conforms with Request Number 1, it is under no obligation to create, and will not create, a new backup for the purposes of this litigation.

  In addition, Plaintiffs are not required to respond to Requests for which the requested documents are equally accessible to Defendant because they are available in the public domain. Plaintiffs' websites are, with minor exceptions, equally accessible to Defendant and to the public at large. Where an individual Plaintiff's website contains a password-protected section, as is the case for Plaintiffs Salon, Heather Corinne Rearick, and Nerve, Plaintiffs have indicated a

Raphael Gomez, Esq.
November 17, 2005
Page 2

**LATHAM&WATKINS**LLP

willingness to provide Defendant with a username and password to allow Defendant to access those non-public areas.

Even assuming that some form of website backup existed as of the date of Plaintiffs' response and the information sought was not in the public domain on that date, as we have explained to you, there are significant obstacles to producing backup copies of Plaintiffs' websites in navigable form. Overcoming these obstacles would impose an unreasonable burden on many Plaintiffs because it would require, among other things, the retention of consultants and the purchase of software. For example, at least one Plaintiff, Heather Corinne Rearick, only possesses backup copies of some of the static content on her websites. Plaintiffs Dan Savage and Sexual Health Network do not possess any backup copies of their websites. Several Plaintiffs, such as Condomania, Powell's and Free Speech Media, only archive the databases and/or templates underlying their websites. The backup copy of ACLU member Lawrence Ferlinghetti's website contains content not available on the website.

For the Plaintiffs that do have a navigable backup of their websites, you will not be able to view the backups unless you are using the same kind of server the Plaintiff used when creating the backup. We understand that over 100 kinds of servers exist. For example, A Different Light Bookstores runs its website on a ColdFusion server. The backup copy of its website is only viewable on a computer running a ColdFusion server.

We have previously discussed with you computer programs designed to copy and later make accessible portions of websites, including the computer program Onfolio. You discussed the technical shortcomings of this computer program and its competitors in your November 3rd letter. We understand the limitations of Onfolio and its competitors. We understand that Onfolio and similar computer programs were not designed to capture the entirety of websites as large and complex as many of the Plaintiffs' websites. In particular, this kind of computer software does not consistently capture dynamic content, JavaScript and embedded PHP. We suggested this kind of software merely as a courtesy with the hope that you would find it adequate.

While you have been adamant about your need for these navigable backups, you have not disclosed why you need them. We do not understand your insistence on this particular format, the purpose underlying this Request, or the implicit assumption that Plaintiffs can easily respond to this Request. For Plaintiffs who do not possess a navigable backup copy of their website, the difficulties faced by Plaintiffs and Defendant in providing a navigable version of the website are substantially the same. Plaintiffs can use software such as Onfolio, as can Defendant. Plaintiffs can print screen shots of every page on their websites, as can Defendant. Plaintiffs can hire an outside expert to address the request, as can Defendant.

Defendant apparently believes that Plaintiffs' response to this Request will contain information that Defendant is otherwise unable to obtain. We have been unable to discern from the Request itself or from our conversations with you the nature or relevance of this additional information. For example, if Defendant seeks copies of individual Plaintiff websites to establish the authenticity of exhibits at trial, we anticipate that we would be able to stipulate to their authenticity. If Defendant seeks the backups to support an argument based on the "as a whole"

LATHAM&WATKINS LLP

language in COPA, then much of the material you seek beyond that which is publicly available is irrelevant. In addition, because the websites change very frequently, a complete navigable copy of a website on October 28, 2005 at 9:00 AM does nothing but establish the "whole" of the website as of that time and not as of any other time.

Because we cannot discern the scope of or reason for Defendant's Request, we are unable to propose a practicable alternative that might satisfy Defendant's concerns. To the extent Defendant is able to explain why this information is in fact relevant to this case, Plaintiffs remain open to alternate solutions.

We hope the foregoing information is helpful and will launch productive conversations on this topic.

Best regards,

*Christopher Harris /gw*

Christopher R. Harris
of LATHAM & WATKINS LLP