IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION**, *et al.*, | ) ) ) |
| **Plaintiffs**, | ) ) |
| v. | ) ) ) |
| **ALBERTO R. GONZALES**, in his official capacity as Attorney General of the United States, | ) ) ) ) |
| **Defendant.** | ) ) |

Civil Action No. 98-CV-5591

### DEFENDANT'S MEMORANDUM IN SUPPORT
### OF HIS MOTION FOR A PROTECTIVE ORDER

Plaintiffs served expansive discovery requests on Defendant in this case, which go well beyond the discovery allowed by the Federal Rules of Civil Procedure. Pursuant to Federal Rule of Civil Procedure 26(c), Defendant seeks protection from certain of Plaintiffs' discovery requests that are improper because they do not seek factual information but, rather, seek purely legal information, or are so vague and overbroad so as not to be susceptible to a reasonable search, or are otherwise improper. As to these requests, Defendant seeks an order providing that the discovery not be had or an order limiting any required response to that which is reasonably calculated to lead to admissible evidence.

Because determining the proper scope of discovery is critical to deciding what information is responsive to a request and where such responsive information is reasonably likely to be located, and while Defendant will, of course, respond to Plaintiff's motion to compel discovery in a timely manner, Defendant requests that Plaintiff's motion to compel be stayed

until the Court determines the proper scope of discovery.[1]

## FACTUAL BACKGROUND

Pursuant to the Case Management Order, on August 28, 2005, Plaintiffs propounded Requests for Production of Documents and Interrogatories upon Defendant, attached hereto as Exhibits 1 ("Request to Produce" or "RTP") and 2 ("Interrogatories").  Defendant filed timely objections and responses to Plaintiffs' discovery, attached hereto as Exhibits 3 and 4, and has submitted over 2,900 pages of documents in response to Plaintiffs' document requests to date.

Prior to responding to Plaintiffs' discovery, the parties had several conference calls during which Defendant attempted to clarify and narrow the scope of Plaintiffs' requests generally, to ensure that he would be searching for only pertinent and relevant information in response to the requests.  *See e.g.*, Letter from Aden Fine to Karen Stewart, dated Oct. 20, 2005 (Exhibit 5); Letter from Karen Stewart to Christopher A. Hansen, dated Nov. 8, 2005 (Exhibit 6).  These discussions were not productive and, indeed, only a limited number of Plaintiffs' discovery requests have been resolved to date.[2]  After reviewing Defendant's discovery responses, Plaintiff sought to meet and confer regarding Defendant's responses to twelve of its document requests (A, B, I, J, K, L, M, N, P, Z, EE, and GG) and six of Defendant's responses to its interrogatories (G, H, I, O, P, and Q).  *See* Letter from Christopher A. Hansen to Karen

---

[1] Once the Court determines the proper scope of discovery through resolution of Defendant's Motion for a Protective Order, Defendant will need time to complete a search for any responsive documents.

[2] While the parties have reached agreements resolving Plaintiffs' requests for production of documents A, B, N, Z and EE, Plaintiffs have reserved their right to seek additional information on RTP B.  Accordingly, the resolution of Request B may be only temporary.

Stewart, dated Nov. 4, 2005 (Exhibit 7).[3]  After conferring with Plaintiff several times with respect to Plaintiffs' document requests, *see, e.g., id.,* Letter from Karen Stewart to Christopher Hansen, dated Nov. 15, 2005 (attached as Exhibit 9); and Letter from Christopher Hansen to Karen Stewart, dated Nov. 20, 2005 (attached as Exhibit 10), the parties have been unable to resolve certain disputes.  Defendant, therefore, currently seeks a Protective Order from the Court with respect to seven document requests and two interrogatories.

Defendant seeks a protective order from responding to the following requests to produce and interrogatories:

| | |
|---|---|
| RTP J. | All documents regarding the extraterritorial application or potential extraterritorial application of internet gaming statutes and regulations. |
| RTP K. | All documents regarding the extraterritorial or potential extraterritorial application of anti-spam statutes or regulations. |
| RTP L. | All documents regarding the extraterritorial or potential extraterritorial application of internet obscenity statutes or regulations. |
| RTP M. | All documents regarding the extraterritorial or potential extraterritorial application of COPA. |
| RTP GG. | All documents concerning any of the plaintiffs in this action. |
| INT. P. | Identify any speech on the Internet that is "harmful to minors" under the |

---

[3] In addition, Plaintiffs generally raised the issue of the absence of a privilege log.  *See* Exhibit 5 at p. 1.  However, Defendant responded by informing Plaintiffs of his position that a privilege log is not required at this stage because he has raised objections, in addition to privilege, that provide an independent basis for refusing to respond to Plaintiffs' requests.  *See* Letter from Karen Stewart to Christopher R. Harris, dated Nov. 7, 2005, p.2 (attached as Exhibit 8).  Plaintiffs have indicated that the issue of a privilege log remains in dispute only for those requests as to which our objections are predominantly based on privilege.  *See* Letter from Christopher Hansen to Karen Stewart, dated Nov. 20, 2005 at p.3 (attached as Exhibit 10).  However, there are no such requests.  Accordingly, Defendant's motion for protective order addresses only those  requests as to which Plaintiffs have specifically disputed Defendant's responses and upon which Plaintiffs have sought to meet and confer.

        definition in COPA but not obscene.

INT. Q.      State whether any speech on the Plaintiffs' web sites is "harmful to minors" under the definition in COPA and identify any such speech.

Requests J-M seek purely legal information that is not within the scope of permissible discovery under Rule 26(a). Request GG does not relate to any of the allegations of the complaint, seeking irrelevant information in an overly broad and unduly burdensome manner. Interrogatories P and Q improperly seek an advisory opinion of the Department of Justice, goes far beyond the contours of the complaint, and are premature contention interrogatories. Accordingly, Defendant seeks an order providing that he need not respond to these requests or interrogatories.

In addition, Defendant seeks a Protective Order to limit the scope of the following Requests to Produce:

RTP I.      All documents concerning communications within the Department of Justice or communications between you and any other United States governmental body or any international organization, law enforcement agency, coalition or foreign government regarding materials that are harmful or potentially harmful to minors but not obscene.

RTP P.      All documents concerning material determined by the Department of Justice to be harmful to minors but not obscene including, without limitation, all documents reflecting the content of such material and all documents concerning the rationale for that conclusion.

Requests I and P are overly broad and seek information, in part, that is not within the scope of permissible discovery under Rule 26(a). Accordingly, Defendant seeks an order adopting Defendant's proposed narrowing construction of these requests, thereby limiting their scope to information that is relevant or likely to lead to admissible information.

4

**ARGUMENT**

Discovery requests must be "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).  In order to be relevant, the discovery sought must be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*  "A court, upon a showing of good cause, can grant a motion for a protective order to protect parties and witnesses during the discovery process." *Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 127 (E.D. Pa. 1994).  A court may order that "certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters" in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c), (c)(4).

**I.     DEFENDANT NEED NOT RESPOND TO PLAINTIFFS' DOCUMENT REQUESTS J-M BECAUSE SUCH REQUESTS IMPROPERLY SEEK PURELY LEGAL INFORMATION**

Rules 26 and 34 of the Federal Rules of Civil Procedure do not authorize the discovery that Plaintiffs seek to obtain in Document Requests J, K, L, and M.  These discovery requests are designed to elicit documents that address whether various federal statutes governing the internet have extraterritorial application.  These are purely legal issues.  The responsive documents Plaintiffs' seek would offer only the views of Department attorney's on these statutory construction issues and would not aid the Court in its own ultimate legal determination regarding COPA.  These document requests are not "reasonably calculated to lead to the discovery of admissible evidence," and a protective order should be entered providing Defendant relief from these document requests.  Fed. R. Civ. P. 26(b)-(c); *see Raso* 154 F.R.D. at 127 ("A court, upon a showing of good cause, can grant a motion for a protective order to protect parties and witnesses during the discovery process.").

The discovery rules are designed to provide access to facts and evidence, but not legal research. *See Xaphes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 102 F.R.D. 545, 552 (D. Me. 1984) ("It is hornbook principle that the Federal Rules of Civil Procedure governing discovery are broadly construed and intended to contemplate discovery not only of *facts* that would be admissible at trial but also discovery of *facts* which, while perhaps themselves inadmissible, will 'be the source of other information that would be admissible at trial.'") (internal citation omitted) (emphasis added). Requests for legal research regarding construction of statutes squarely falls outside the permissible scope of discovery:

> Industry has not cited any case where a court has compelled a party to turn over *legal* research resources to its opponent. Here, industry is not asking for 'facts,' but rather its counsel is asking for 'law' through 'access to COALEX.' The legislative history of [the Surface Mining Control and Reclamation Act], consisting of public documents, is clearly relevant to the issue before the Court, but it is 'law' not 'evidence.' The Federal Rules are designed to provide parties access to the latter but not the former.

*Ind. Coal Council v. Hodel*, 118 F.R.D. 264, 267 (D.D.C. 1988) (emphasis in original) (citing *Xaphes*, 102 F.R.D. at 552). A request for documents concerning the extraterritorial reach of various statutes governing the internet is not designed to gather relevant *facts*. Whether COPA has or does not have extraterritorial reach is a matter of law to be determined based on the language of the statute and, if ambiguous, the legislative history or other aids to statutory construction. Defendant will be bound by any final decision by the Court on the extraterritorial reach of COPA, regardless of documents contained within the Department of Justice on that subject. Plaintiffs have not explained how any of these requests would have any bearing on the ultimate legal issues of extraterritoriality. Therefore, the United States has good cause to seek a protective order.

The Federal Rules of Civil Procedure and case law clearly delineate allowable fact discovery from improper inquiries into matters of law.[4] The Federal Rules make clear that "interrogatories may not extend to issues of 'pure law,' *i.e.*, legal issues unrelated to the facts of the case." Fed. R. Civ. P. 33 advisory committee's note (1970). *See United States v. Md. & Va. Milk Producers Ass'n*, 22 F.R.D. 300, 301 (D.D.C. 1958) ("[I]t is not appropriate to resort to interrogatories in order to ascertain contentions of the opposing party in respect to matters of law. That is not the function of discovery.") (internal citation omitted); *Pittsburgh Hotels Ass'n v. Urban Redevelopment Auth. of Pittsburgh*, 29 F.R.D. 512, 513 (W.D. Pa. 1962) (holding that "a request for admissions may not be applied to a controverted legal issue lying at the heart of the case" and concluding that Defendants need not answer requests "involv[ing] legal issues and interpretation of statutes" and "call[ing] for opinions, conclusions and speculation about the future.").

Even if Plaintiffs could delve into these legal topics, Plaintiff's Document Requests J, K, and L are improper for two other reasons. First, they do not describe "with reasonable particularity" the laws for which Plaintiffs seek documents, as required by Rule 34. Instead, they ask about internet gaming, spam, or internet obscenity "statutes or regulations" without citation to *any* specific statutes or regulations of a federal, state, or local, nature. Second, regardless of which particular statutes or regulations Plaintiffs seek information, they are clearly about laws completely distinct from COPA. Whether statutes or regulations concerning internet gaming,

---

[4]The difference in method of discovery does not offer a principled ground for making a distinction, because Rule 26(b) defines the scope of discovery for *all* discovery devices. A party cannot utilize one discovery method (a request for documents) to find answers to questions that would not be appropriate through interrogatories or requests for admission.

spam, or internet obscenity are construed to have extraterritorial application has no bearing on the resolution of the issues before this Court.  Because these requests do not seek information relevant to any claim or likely to lead to the discovery of admissible evidence, it is well outside the bounds of proper discovery under Rule 26.

The Court should intervene to ensure that this case can move forward expeditiously by limiting document requests to those that are reasonably calculated to lead to the discovery of admissible evidence.  Defendant has good cause for a protective order, and the Court should grant this motion to prevent production of documents responsive to the Requests for Production lettered J, K, L, and M.

## II.     THE COURT SHOULD ISSUE AN ORDER LIMITING PLAINTIFFS' DISCOVERY REQUESTS

### A.     The Court Should Adopt Defendant's Interpretation of Requests I and P, Which Would Permit an Intelligible Response to These Requests

#### 1.     Request to Produce I

Defendant is also entitled to a protective order that would prevent Plaintiffs from demanding an unreasonably expansive production in response to Document Request I.  That request asks Defendant to produce "[a]ll documents concerning communications within the Department of Justice or communications between you and any other United States governmental body or any international organization, law enforcement agency, coalition or foreign government regarding materials that are harmful or potentially harmful to minors but not obscene."  As written, that request is far too vague to permit an intelligible response from Defendant; Plaintiffs' document requests do not contain any definition of materials that are "harmful to minors" or "potentially harmful to minors."  Without such a definition, those phrases

8

could refer to any variety of materials. Defendant thus would be entitled not to respond to this document request at all. *See* Fed. R. Civ. P. 34(b) (document requests must set forth items sought "with reasonable particularity"); *Cont. Access Control Sys. v. Racal-Vikonics, Inc.*, 101 F.R.D. 418, 419 (E.D. Pa. 1983) (court may decline to require party to respond to overly vague discovery requests).

Notwithstanding this objection, in the interest of advancing discovery in this action, Defendant is willing to provide a curative definition for the phrase "harmful to minors" that would permit it to provide an intelligible response to this request. That phrase should be read to refer to materials that have been the subject of a prosecution under one of the two federal statutes that uses that phrase and that provides a precise definition of that phrase, COPA or the Truth in Domain Name Statute ("TDNS"). *See* 47 U.S.C. § 231(e)(6); 18 U.S.C. § 2252B(d). Only a definition of the phrase that is anchored to one of these statutory definitions provides sufficient content to the phrase to allow for a meaningful search.[5]

This curative definition also reasonably limits Defendant's required response only to those materials that Defendant has determined to be "harmful to minors" under the statutory definition of COPA or the TDNS – that is, material that Defendant has determined warrants the pursuit of a prosecution under one of those two statutes. Defendant, after all, only makes a formal determination that certain materials meet the definition of "harmful to minors" material under either statute in the context of determining whether to pursue a criminal action under those

---

[5] In contrast, the phrase "potentially harmful to minors" is not used in any statute and thus is uncurably vague. Defendant is entitled not to engage in guesswork as to what factors Plaintiffs meant to refer to in their evaluation of whether material is "potentially" harmful to minors, and thus Defendant should not be required to respond in any way to a request for documents relating to purportedly "potentially harmful to minors" material.

statutes. Defendant would not have had the occasion to make such determinations in any other context. An interpretation of Document Request I that limits Defendant's search to those materials that it has already determined to be "harmful to minors" is not only reasonable, but necessary. Any contrary interpretation would require Defendant to seek out an undefined, and potentially limitless, set of other materials to make new determinations as to whether those materials would warrant criminal prosecution under COPA or the TDNS; such a contrary interpretation, certainly, would be both unduly burdensome to Defendant and unreasonable in its scope. Defendant is thus entitled to reasonably construe Request for Production I to ask for a search for communications relating to materials it has determined to meet the definition of the phrase "harmful to minors" under COPA or the TDNS, and thus to warrant prosecution under one of those statutes.

### 2. Request to Produce P

Defendant is also entitled to a protective order that would prevent Plaintiffs from demanding an unreasonable search in response to their Document Request P. That request asks Defendant to produce "[a]ll documents concerning material determined by the Department of Justice to be harmful to minors but not obscene including, without limitation, all documents reflecting the content of such material and all documents concerning the rationale for that conclusion." As discussed above, the phrase "harmful to minors," absent any statutory mooring, could be subject to a variety of interpretations, and, because Plaintiffs have not attempted to define the phrase in their document requests, Defendant would be entitled to decline to respond to this request for this reason alone. Nonetheless, as with Request I, Defendant is willing to provide a curative definition by applying the precise definitions for the phrase found in COPA or

in the TDNS. Similarly, this request by necessity is limited to material determined by Defendant to warrant prosecution under one of those two statutes, as it is only in that context that Defendant would have had the occasion to make the determination that particular materials are "harmful to minors" under one of those statutes.

Thus, Defendant is willing to search for prosecutions that have been initiated under one of those statutes, and to identify those prosecutions. That identification – and the publicly-available documents from any such prosecutions – will fully provide Plaintiffs with the information sought in this request.[6] In conjunction with Document Request I, under which Defendant will produce to Plaintiffs non-privileged communications regarding any such prosecutions, plaintiff will receive as full a response to its requests concerning COPA or TDNS prosecutions as it could reasonably demand. Defendant thus is entitled to conduct its search subject to its reasonable interpretation of Request P.

## III. BECAUSE INTERROGATORIES P AND Q IMPROPERLY SEEK AN ADVISORY OPINION AND ARE OTHERWISE OBJECTIONABLE, DEFENDANT NEED NOT RESPOND TO THESE INTERROGATORIES

In addition, Defendant is entitled to a protective order that would permit him not to respond to Plaintiffs' Interrogatories P and Q. Those requests ask Defendant to "[i]dentify any speech on the Internet that is 'harmful to minors' under the definition in COPA but not obscene," and to "[s]tate whether any speech on the Plaintiffs' web sites is 'harmful to minors' under the

---

[6] The parties separately have agreed not to require each other to produce publicly-available materials. To the extent that Plaintiffs would seek to require Defendant to produce non-publicly-available materials in response to Request P, the request by definition would seek privileged materials relating to any such prosecutions, such as attorney-client material, attorney work product, and materials protected under Federal Rule of Criminal Procedure 6(e). Plaintiffs should not be permitted to define their document request in such a manner that by its very definition would seek only privileged materials.

11

definition in COPA and [to] identify any such speech." These requests suffer from similar defects as do Document Requests I and P above. Plaintiffs seek to short-circuit the method by which Defendant makes his determination as to whether certain conduct does or does not meet the statutory definition of a federal crime – namely, the initiation of a criminal prosecution through the filing of an information, or of an indictment issued by a grand jury. Plaintiffs' attempt to seek an advisory opinion through civil discovery, and thus to circumvent the only procedures by which Defendant could make a determination to which it could be bound as to whether certain conduct meets the definition of a certain federal criminal statute, should be rejected.

Moreover, these interrogatories improperly seek to shift plaintiffs' burden to establish their standing to pursue this action. It is the plaintiffs, and not the defendant, who bear the burden at each stage of this litigation, including trial, to prove that they have standing to challenge the constitutionality of COPA. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). It is thus incumbent on the plaintiffs, first, to cooperate with defendants in producing copies of their websites to defendant and in establishing those copies as the versions that will serve as the basis for trial in this action, and, second, to identify from within that universe of materials what alleged speech forms the basis of their fear of prosecution. Plaintiffs may not use the device of these interrogatories to shift that obligation to the defendant. *See Transmatic Inc. v. Gulton Indus.*, 818 F. Supp. 1052, 1058 (E.D. Mich. 1993) (interrogatories may not be used as device to shift burden of proof), *rev'd in part on other grounds*, 53 F.3d 1270 (Fed. Cir. 1995).

Plaintiffs' interrogatories suffer from further defects. Even if Interrogatory Q does not improperly seek an advisory opinion as to the initiation of a criminal prosecution, it nonetheless

would be premature.  Defendant cannot be required to state its contention as to Plaintiffs' claims at this stage of the litigation, absent a demonstration of good cause by the Plaintiffs.  Plaintiffs have offered no reason why such a response from the Defendant would be needed now, and thus their request should be rejected.  *See Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992).  Moreover, Defendant could not possibly be expected to answer this interrogatory, given the fact that, as discussed in Defendant's Motion to Compel, Plaintiffs have steadfastly refused to cooperate with Defendant in stipulating to the versions of their websites that will be the subject of trial in this action.

Interrogatory P is even further afield than is Interrogatory Q because it seeks information not as to the Plaintiffs, but as to any speech on the internet that, Defendant would contend, would violate COPA.  That request goes far beyond the contours of the complaint, and thus should be rejected.  *See Hicks v. Arthur*, 159 F.R.D. 468, 470 (E.D. Pa. 1995).  Plainly, Defendant cannot be required to bind itself to state at this time, and in the absence of the initiation of criminal proceedings, the total universe of conduct that is subject to COPA.  Plaintiffs' Interrogatories P and Q are unreasonable on their face, and Defendant should not be compelled to respond to them.

### IV.  DEFENDANT NEED NOT RESPOND TO PLAINTIFF'S REQUEST GG, WHICH IS NOT TIED TO ANY ALLEGATIONS OF THE COMPLAINT

Rule 26(b)(1) allows discovery "which is relevant to the subject matter involved in the pending action."  By definition, then, discovery "should be tailored to the issues involved in the particular case."  *Robbins v. Camden City Bd. of Ed.*, 105 F.R.D. 49, 55 (D.N.J. 1985); *see also Barnes Found. v. Township of Lower Merion*, No. Civ. A. 96-372, 1997 WL 256043 at * 4 (E.D. Pa. May 9, 1997) (requests must be "reasonably limited in scope in accordance with Federal

Rule of Civil Procedure 26(b)(1) and tied to the allegations of plaintiff's Complaint"). To the extent that discovery exceeds the scope of the allegations in the Complaint, the discovery sought addresses irrelevant matters and a litigant need not respond to them. *See Robbins*, 105 F.R.D. at 59 (finding that defendant need not respond to discovery that was not tied to allegations in Complaint).

      Plaintiff's Request GG is not tied to any allegations of the Complaint. As written, Request GG requires Defendant to produce, "[a]ll documents concerning any of the Plaintiffs in this action," that were "created, dated sent or received on or after June 12, 1996." Pl.'s RTP at 7, 14. Plaintiffs define "concerning" as relating to, referring to, describing, evidencing or constituting, further broadening the scope of the request. *Id.* at 2. There is nothing in this request that ties the requested documents to any of the allegations in the Complaint; Plaintiff does not limit the request to involve subject matter related to COPA, nor does Plaintiff limit the temporal scope of the request to be in line with the passage of COPA. Instead, this Request requires Defendant to search every office within the Department of Justice, including every United States Attorney's Office and every field office of the Federal Bureau of Investigation, to ascertain whether there is a document that mentions any one of the Plaintiffs in this action and their various websites, regardless of the subject matter of such a document. This request seeks documents wholly unrelated to this lawsuit, such as a print-out of any article from Salon.com, every document that mentions ACLU or EPIC from any of the cases those entities have brought against the Department since June 1996, or any number of documents from sections of the Department that have nothing to do with the implementation of COPA or prosecutions under COPA or obscenity laws. In addition, the request necessitates an overly broad search within the

Department, and it would be unduly burdensome to search each and every office within the Department for *any* document that mentions *any* Plaintiff in *any* capacity. Clearly, "all" documents concerning the Plaintiffs are not relevant to this lawsuit, and requiring Defendant to undertake such a burdensome search to discover documents unrelated to the lawsuit is unwarranted. *See Robbins,* 49 F.R.D. at 60 (concluding that a request for all documents that refer or relate to the plaintiff was too broad and ambiguous to meet the "reasonable particularity" standard of Rule 34); *Hicks,* 159 F.R.D. at 470 (finding that defendant need not respond to interrogatories that asked for information beyond the scope of the allegations of the complaint because plaintiff had not demonstrated the relevance of such requested information).

Defendant has been unable to negotiate a narrowing construction of Request GG with Plaintiffs in any meaningful way. Plaintiff has offered to limit Request GG to any document concerning the content of Plaintiffs' websites.[7] *See* Ex. 5. Such a limitation, however, is illusory. Under this construction of Request GG, Defendants would necessarily need to engage in the same type of search of every office in the Department of Justice as it would for Plaintiffs' request as written, but Defendant would be requesting each office to search for documents about Plaintiffs' websites, rather than Plaintiffs themselves. Any document about the websites would be arguably discoverable, regardless of whether they were in any way related to COPA or the allegations in this lawsuit. Plaintiffs' proposal, therefore, does not resolve the problem of the overly broad and unduly burdensome nature of the Request GG.

---

[7] In addition, Plaintiffs were willing to limit GG to omit the institutional Plaintiffs, such as ACLU, EPIC, EFF and the American Bookseller's Association, but only on the condition that those entities would not have to respond to any document requests propounded by Defendant. As explained more fully in Defendant's Motion to Compel, such an agreement is unacceptable to Defendant, as Defendant has legitimate discovery requests for those institutional Plaintiffs.

Because Plaintiffs seek every document related in any way to any of the Plaintiffs in this action, Request GG far exceeds the scope of relevant discovery, and places an undue burden upon Defendant to search for documents that will not lead to the discovery of admissible evidence. Therefore, Defendant should not be forced to undertake a burdensome search unless and until Plaintiffs narrow Request GG to comport with the allegations contained in the Amended Complaint to seek relevant information.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that its motion for a Protective Order be granted.

Dated: November 22, 2005	Respectfully submitted,

    PETER D. KEISLER
    Assistant Attorney General

    PATRICK L. MEEHAN
    United States Attorney

    RICHARD BERNSTEIN
    Assistant U.S. Attorney

    THEODORE C. HIRT
    Assistant Branch Director
    United States Department of Justice

        /s/
    KAREN STEWART
    RAPHAEL O. GOMEZ
    Senior Trial Counsels
    TAMARA ULRICH
    Trial Attorney
    United States Department of Justice
    Civil Division, Federal Programs Branch
    20 Massachusetts Ave., N.W.
    P.O. Box 883
    Washington, D.C.  20044

(202) 305-1432
Tamara.Ulrich@usdoj.gov

*Attorneys for Defendant*