UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN CIVIL LIBERTIES UNION, et al.

                                        Plaintiffs,

   v.

ALBERTO R. GONZALES, in his official capacity as
ATTORNEY GENERAL OF THE UNITED STATES

                                        Defendant.

Civil Action No. 98-CV-5591

**PLAINTIFF AMERICAN CIVIL LIBERTIES UNION'S REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO ALBERTO R. GONZALES, IN HIS CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES**

**PLEASE TAKE NOTICE** that the undersigned, Latham & Watkins, of counsel to the Plaintiff American Civil Liberties Union Foundation, in accordance with *Fed. R. Civ. P.* 34 hereby requests and demands that Alberto R. Gonzales, in his capacity as Attorney General of the United States, produce within 30 days of the date of service the documents requested herein. Responses should be sent to the offices of Latham and Watkins, LLP, of counsel to Plaintiff American Civil Liberties Union Foundation ("ACLU"), addressed as follows:

> Latham & Watkins, LLP
> 885 Third Avenue
> New York, NY 10022

## DEFINITIONS

As used herein:

A.    "Child Online Protection Act" or "COPA" means 47 U.S.C. §231.

B.    "Children's Internet Protection Act" or "CIPA" means 47 U.S.C. §254(h).

C.    "Misleading Domain Name Statute" means 18 U.S.C. §2252B.

D.  Any term in the singular shall be deemed to include the plural where appropriate and vice versa.

E.  All terms including "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to include in the response any document that might be deemed non-responsive by any other construction.

F.  "Concerning" means relating to, referring to, describing, evidencing or constituting.

G.  "Person" means an individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

H.  "You," "your," "Department of Justice", "DOJ", and "Alberto R. Gonzales" mean Alberto R. Gonzales in his official capacity as Attorney General of the United States, the United States Department of Justice, its agents, employees and all persons acting on its behalf, including each respective United States Attorney's office.

I.  "United States" or "U.S." means the government of the United States, its agents, officers and employees.

J.  "Local" in reference to government means any governmental entity beneath the State level including, without limitation:  counties, municipalities, cities, town, townships, villages, local public authorities, school districts, special districts, intra-State districts, councils of government (whether or not incorporated as a nonprofit corporation under State law), or any other regional or interstate government entity.

K.  "Communication" means any written or verbal communication or other statement from one person to another including, without limitation, any letter, electronic mail, facsimile, interview, conference, meeting or telephone conversation.

L.   "Computer files" means information stored in, or accessible through, computer or other information retrieval systems.  This includes documents that exist in machine-readable form including, without limitation:  documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage.

M.   "Document" means all communications, computer files and written, recorded and graphic materials of every kind including, without limitation:  electronic mail messages; electronic correspondence; drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed on computer systems; copies of documents that are not identical duplicates or the originals; and copies of documents the originals of which are not in your possession, custody or control.

N.   "Internet" means the combination of computer facilities and electromagnetic transmission media, and related equipment and software, comprising the interconnected worldwide network of computer networks that employ the Transmission Control Protocol/Internet Protocol or any successor protocol to transmit information.

O.   "Internet Service Provider" or "ISP" means a person, corporation or entity that provides access to the Internet.

P.   "Web site" means a set of interconnected Web pages which are prepared and maintained as a collection of information on the Internet.

Q.   "Web page" means a document with text, images or other content that is available on the Internet.

3

R.   "Internet Corporation for Assigned Names and Numbers" or "ICANN" means the non-profit organization managing and assigning Internet Domain Names.

S.   "Internet Domain Name" or "Domain Name" means a person's unique name on the Internet consisting of a chosen name before the dot and a "Top Level Domain" or "TLD" after the dot.  For example, in the Domain Name "usdoj.gov", "usdoj" is the chosen name and "gov" is the Top Level Domain.

T.   "Global Top Level Domain," "Generic Top Level Domain" or "gTLD" mean Top Level Domain names that ICANN has assigned for particular classes of persons.  For example, ".gov" is limited to use by the U.S. government.  Other examples are ".com", ".net" and ".org."

U.   "Country Code Top Level Domain" or "ccTLD" mean Top Level Domain names that ICANN has assigned to countries and their dependencies, such as ".us" for the United States and ".ca" for Canada.

V.   "Age Verification Service" or "AVS" means any technological product, download, software, hardware, service in any medium that is used to verify the age of any person attempting to access content on the Internet including, without limitation:  the use of a credit card, debit account, adult access code, or adult personal identification number.

W.   "ICF Product" means a technological filtering product, download, service, whether software, hardware or other medium that is used to filter, restrict, or limit access to content on the Internet, that is either installed on the computer or network of the end-user or computers or networks of an ISP, that has been marketed, sold, or distributed between June 12, 1996 and the present.

## **INSTRUCTIONS**

A.  In producing documents and things, you are requested to furnish all documents or things in your actual or constructive possession, custody, and/or control including, without limitation, documents which may be in the physical possession of another person or entity such as your advisors, attorneys, investigators, employees, agents, associates, affiliates, and/or representatives.

B.  Documents which have been previously produced by any party or any amici in this case or in *Multnomah County v. United States* and *American Libraries Ass'n et al v. United States* (both involving the constitutional challenge to CIPA) should be identified, but need not be produced again.

C.  In producing documents, you are requested to produce the original of each document requested, together with all non-identical copies and drafts of that document.  (A non-identical copy is a document which was initially identical in all respects to another document, but which now is no longer identical by reason of any notation or other modification of any kind whatsoever including, without limitation, the generality of the foregoing, notes or modifications on the backs of pages or in the margin thereof, and/or on any copies thereof.)

D.  It is requested that all documents be produced in the form in which  they are found in their normal filing place, and that the file folders or other bindings in which such documents are found be produced with the documents.  If for any reason the container cannot be produced, please produce copies of all labels or other identifying markings.

E.  Electronic documents and computer files are to be submitted in the form in which they are stored.  Documents may be produced electronically in:  a common page-based format

5

providing images combined with or linked to searchable text files, with the files provided on an external network appliance or CD-ROM providing the files in a searchable local database format.

F.     Documents attached to each other should not be separated.

G.     It is requested that you refrain from damaging or destroying all requested documents and to otherwise preserve all requested documents.

H.     If any requested document cannot be produced in full, please produce it to the extent possible, indicating what portion or portions are being withheld and the reason it is being withheld.

I.     If a document otherwise responsive to this request was, but no longer is, in your actual or constructive possession, custody or control, please state whether the document (a) is lost or destroyed; (b) has been transferred to another person or entity either voluntarily or involuntarily; (c) has been otherwise disposed of; and, in each instance, (d) explain the circumstance surrounding the disposition, including the date or approximate date of the disposition.

J.     If you object to the production of any document requested, please state the reasons for your objection.  If objection is made with respect to a part of an item or category, please specify the part to which you object.

K.     If you withhold any documents on the basis of a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support thereof, in the form of a log that includes each document's authors, addressees, and date, a description of each document, and all recipients of the original and any copies.  Indicate the number and type of attachments, if any, to each document withheld.  For each author, addressee, and

recipient, state the person's full name, title and employer or firm (if not the DOJ) and denote all attorneys with an asterisk.  The description of the subject matter shall describe the nature of each document in a manner that, though not revealing information itself privileged, provides sufficiently detailed information to assess the applicability of the privilege claimed.  Submit all non-privileged portions of any responsive document (including non-privileged or redactable attachments) for which a claim of privilege is asserted (except where the only non-privileged information has already been produced in response to this instruction), noting where redactions have been made in the document.

L.  Each request set forth below should be construed independently, and not in reference to any other request for purposes of limitation.

M.  Unless otherwise stated, this document request calls for the production of documents created, dated, sent or received on or after June 12, 1996.

N.  These requests shall be deemed continuing so as to require further supplementation in the event that the you or any attorney, agent or representative working on your behalf obtains or discovers additional information or documents between the time of the initial response and the time of trial.

## REQUESTS FOR DOCUMENTS

A.  All documents concerning the constitutionality of COPA.

B.  All documents concerning the interpretation or enforcement of state, Local and federal obscenity laws including, without limitation, documents concerning:

    1)  content determined to be obscene under such laws;

    2)  documents initiating prosecution under such laws;

    3)  the results of such prosecutions; and

7

      4)   content reviewed for possible prosecution, but which did not result in prosecution.

C.    Documents sufficient to identify the resources expended by you or the United States over the last ten years on obscenity prosecutions including, without limitation, money appropriated and spent, hours worked, and number of government employees involved, by year.

D.    All documents concerning procedures, guidelines or policies governing the initiation of an obscenity prosecution by a United States Attorney.

E.    All documents concerning the interpretation or enforcement of state, Local, or federal laws proscribing or regulating the production, distribution, or possession of material considered harmful or potentially harmful to minors but not obscene including, without limitation, documents concerning:

      1)  content determined to be harmful to minors under such laws;

      2)  documents initiating prosecution under such laws;

      3)  documents detailing the results of such prosecutions; and

      4)  content reviewed for possible prosecution, but which did not result in prosecution.

F.    Documents sufficient to identify the resources expended by you or the United States over the last ten years on prosecutions under laws proscribing or regulating the production, distribution, or possession of material considered harmful or potentially harmful to minors but not obscene including, without limitation, money appropriated and spent, hours worked, and number of government employees involved, by year.

G.    All documents concerning procedures, guidelines or policies governing the initiation of a prosecution under laws proscribing or regulating the production, distribution, or

possession of material considered harmful or potentially harmful to minors but not obscene by a United States Attorney.

H.    All documents concerning the criteria or standards used to identify material considered harmful or potentially harmful to minors but not obscene under state, Local and federal law.

I.    All documents concerning communications within the Department of Justice or communications between you and any other United States governmental body or any international organization, law enforcement agency, coalition or foreign government regarding materials that are harmful or potentially harmful to minors but not obscene.

J.    All documents regarding the extraterritorial or potential extraterritorial application of internet gaming statutes or regulations.

K.    All documents regarding the extraterritorial or potential extraterritorial application of anti-spam statutes or regulations.

L.    All documents regarding the extraterritorial or potential extraterritorial application of internet obscenity statutes or regulations.

M.    All documents concerning the extraterritorial or potential extraterritorial application of COPA.

N.    All documents concerning material posted to or placed on the Internet by a person outside the United States that is harmful or potentially harmful to minors but not obscene including, without limitation, documents concerning the rationale for concluding such material or content is harmful or potentially harmful to minors but not obscene.

O.    All documents concerning material posted to or placed on the Internet by a computer or server outside of the United States that is harmful or potentially harmful to minors but not

obscene including, without limitation, documents concerning the rationale for concluding such material or content is harmful or potentially harmful to minors but not obscene.

P.     All documents concerning material determined by the Department of Justice to be harmful to minors but not obscene including, without limitation, all documents reflecting the content of such material and all documents concerning the rationale for that conclusion.

Q.     All documents concerning community standards or criteria regarding what is harmful to minors including, without limitation, geographic variations in community standards or what is harmful or potentially harmful to minors but not obscene.

R.     All documents concerning the possible effects of COPA including, without limitation, documents concerning:

     1)   the quantity and nature of material on the Internet that is obscene;

     2)   the quantity and nature of material on the Internet that is harmful or potentially harmful to minors but not obscene; and

     3)   the quantity and nature of material on the Internet that is not harmful to minors.

S.     All documents received by the United States urging the government to take action by prosecuting or otherwise pressuring the removal of speech on the Internet deemed by the writer/sender to be unsuitable for minors as well as all documents concerning subsequent government action including, without limitation, prosecutions, communications and internal memoranda.

T.     All documents concerning the interpretation, implementation and enforcement of the Misleading Domain Name Statute including, without limitation:

1)  All documents concerning past and pending criminal, civil or administrative proceedings;

2)  All communications regarding the enforcement of the Misleading Domain Name Statute with any other United States governmental body, such as the U.S. Postal Service, the Federal Communications Commission, and the Federal Trade Commission;  and

3)  All documents concerning the role of ICANN and the National Center for Missing & Exploited Children in enforcing the Misleading Domain Name Statute.

U.    All documents concerning the technological methods by which Web sites block access by using an AVS product including, without limitation, all documents concerning any limitations on the location within a Web site that an age verification screen can be established.

V.    Documents sufficient to identify all AVS products known to the Department of Justice.

W.    All documents concerning the use of AVS products by minors, including but not limited to documents concerning the use of online payment methods (such as debit and credit cards) by minors and documents concerning the use by minors of adult access codes or personal identification numbers that were provided by AVS providers.

X.    All documents concerning the length of time that adult access codes and personal identification codes remain valid and operational.

Y.    All documents concerning protection of the confidentiality of identifying information supplied by persons using AVS products.

Z.    All documents concerning the willingness of financial institutions (including, without limitation, debit and credit card issuers, card associations such as Visa and Mastercard,

and intermediary information processors) to verify information in the absence of a financial transaction.

AA.   All documents concerning the number of Web sites that use any type of AVS product, including, without limitation:

1)   all documents that classify such Web sites by content or any other method;

2)   all documents concerning the number and frequency of visitors who access content placed behind AVS products and the number and frequency of visitors to such Web sites who only access content placed in front of AVS products;

3)   all documents concerning consumer demand, or interest in purchasing an AVS product or subscribing to AVS services.

BB.   All documents concerning the effectiveness, ineffectiveness, safety, security, and other strengths or weaknesses of particular AVS products or AVS products in general.

CC.   All documents identifying methods of communication over the Internet other than Web sites including, without limitation, chat, bulletin boards, audio, video and blogs, and the means by which AVS products can or cannot be used to restrict access to content harmful to minors available on these forms of communications.

DD.   All documents concerning ICF Products including, without limitation, documents concerning:

1)   the effectiveness of ICF Products in restricting access to material considered harmful or potentially harmful to minors;

2)   analyses of or comparisons between individual ICF Products and services;

12

3) analyses of or comparisons between ICF products that are installed on the computer or network of a person accessing the Internet and ICF products that are installed on the computer or network of an ISP;

4) analyses of or comparisons between ICF Products and AVS products; and

5) the effectiveness of ICF Products when combined with other means of restricting access to material harmful or potentially harmful to minors including, without limitation, gTLDs, ccTLDs and parental control.

EE. All documents concerning the use of ICF Products on computers at the Department of Justice and other U.S. governmental bodies and agencies including, without limitation:

1) any and all memoranda or notices that were prepared as part of the decision to install ICF products, including those advocating use of filters as well as those opposing such use or expressing intermediate views;

2) names and versions of the ICF product chosen;

3) all documents explaining the rationale for selecting the chosen ICF product;

4) all documents explaining the settings and blocking criteria in use with the chosen ICF products; and

5) all documents from employees asserting that the chosen ICF product has been ineffective in blocking access to material considered to be inappropriate.

FF. All documents concerning Global Top Level Domains and Country Code Top Level Domains, including, without limitation, documents concerning:

1) the effectiveness of a gTLD or a ccTLD with materials not considered harmful or potentially harmful to minors (such as ".kids" or ".us.kids") in restricting access to materials considered harmful or potentially harmful to minors;

2) the determination of which materials are appropriate to be made available on a gTLD or a ccTLD with materials not considered harmful or potentially harmful to minors;

3) communications with or about ICANN concerning assignment of a gTLD or a ccTLD with materials not considered harmful or potentially harmful to minors;

4) communications with or about ICANN concerning policies for determining which materials are appropriate to be made available on a gTLD or a ccTLD or concerning enforcement of those policies;

5) the effectiveness of a gTLD with materials considered harmful or potentially harmful to minors (such as ".xxx") in restricting access to materials considered harmful or potentially harmful to minors;

6) the determination of which materials are appropriate to be made available on a gTLD or a ccTLD with materials considered harmful or potentially harmful to minors;

7) communications with or about ICANN concerning assignment of a gTLD or a ccTLD with materials considered harmful or potentially harmful to minors;

8) communications with or about ICANN concerning policies for determining which materials are appropriate to be made available on a gTLD or a ccTLD with materials considered harmful or potentially harmful to minors and enforcement of those policies;

9) communications with or about the International Foundation For Online Responsibility.

GG. All documents concerning any of the plaintiffs in this action.

Dated: New York, New York
      August 26, 2005

LATHAM & WATKINS LLP


By_____
    Christopher R. Harris


885 Third Avenue
Suite 1000
New York, New York  10022
Tel.: (212) 906-1200
Fax: (212) 751-4864

*Of Counsel to Plaintiff American Civil
Liberties Union Foundation*


To:  Karen Stewart, Esq
     U.S. Department of Justice
     Civil Division (Federal Programs Branch)
     20 Massachusetts Ave, N.W.
     Suite 7200
     Washington, DC 20530