IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States, <br><br> Defendant. | Civil Action No. <br> 98-CV-5591 |

MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO COMPEL

INTRODUCTION AND BACKGROUND

Pursuant to Rule 7.1 of the Rules of Civil Procedure of the U.S. District Court for the Eastern District of Pennsylvania, Plaintiffs hereby oppose the motion to compel filed by the Defendant on November 22, 2005. Defendant seeks to compel responses to his first Request for Production of Documents and first set of Interrogatories served on Plaintiffs on August 29, 2005. Defendant inaccurately claims that his discovery requests "simply seek to obtain a permanent, navigable copy of each plaintiff's website on a given date, to discover the material about which plaintiffs fear prosecution, and to obtain the factual support for the allegations contained in plaintiffs' Amended Complaint." See Memorandum in Support of Defendant's Motion to Compel ("Motion to Compel") at 2 [Attached as Exhibit ("Ex.") 2 and incorporated into this memorandum by reference].

First, the Court should deny Defendant's motion to compel production of "permanent, navigable cop[ies]" of Plaintiffs' websites because (1) a navigable CD or hard drive containing a permanent replica of the publicly-available images on Plaintiffs' websites at some prior date is

not relevant, (2) Defendant already either has access to Plaintiffs' entire websites or, for those Plaintiffs for which certain portions of websites are password-protected, Defendant would have access to Plaintiffs' entire websites if he had accepted Plaintiffs' repeated offers to provide such passwords, (3) Plaintiffs do not possess "permanent, navigable" versions of their websites and Plaintiffs are not required to create new documents in response to a request to produce, and (4) requiring Plaintiffs to create a "permanent, navigable" version of their websites would be unduly burdensome.[1]

Second, each Plaintiff with a website at issue except PlanetOut has responded to Defendant's requests for information about their fear of prosecution by generally describing the content for which they fear prosecution under COPA and by identifying examples of the web pages for which they fear prosecution.

Finally, Defendant repeatedly mischaracterizes Plaintiffs' positions on document requests, wrongly implying or stating that Plaintiffs have refused to provide documents responsive to numerous requests. In fact, despite their objections, Plaintiffs agreed to produce any non-privileged documents in their possession responsive to the bulk of Defendant's document requests. Plaintiffs have also informed Defendant that they will supplement their document production and interrogatory responses if additional documents or information are discovered during the course of this litigation. This is particularly important for Defendant's numerous contention interrogatories and contention interrogatories disguised as document

---

[1] Defendant asserts in his Motion to Compel that Plaintiffs have "repeatedly suggested in conversations with defendant's counsel that they would provide copies of many of the plaintiffs' websites." (Motion to Compel at 4). To the contrary, Plaintiffs have repeatedly informed Defendant of the technical difficulties inherent in creating "permanent, navigable cop[ies]" of Plaintiffs' websites and that Plaintiffs do not understand the relevance of Defendant's request for such materials. See Ltr. fr. Christopher Harris to Karen Stewart dated November 21, 2005 [attached as Ex. 3]; Ltr. fr. Christopher Harris to Raphael Gomez dated November 17, 2005 [attached as Ex. 4].

requests, for which Plaintiffs anticipate providing supplemental responses as the litigation develops.

In addition, it is worth noting that Defendant's efforts to negotiate his differences with Plaintiffs concerning Plaintiffs' responses have been inadequate. Defendant has ignored several proposals or questions from Plaintiffs and otherwise shown an interest only in developing a documentary record upon which to file this motion. For example, where an individual Plaintiff's website contains a password-protected section, as is the case for Plaintiffs Salon, Heather Corinne Rearick, and Nerve, Plaintiffs have repeatedly offered to provide Defendant with a password to allow Defendant to access otherwise inaccessible portions of Plaintiffs' websites. See Ltr. fr. Christopher Harris to Raphael Gomez dated November 17, 2005 [Attached as Ex. 4 and incorporated into this memorandum by reference]. Defendant has never responded.

Likewise, Defendant never responded to two letters sent on November 17th and 21st, 2005, respectively, regarding the scope of Plaintiffs' responses. In the letter dated November 21, 2005, Plaintiffs offered a stipulation regarding the scope of Plaintiffs' obligation to provide documents for the four Plaintiffs whose websites are not at issue in this case (the ACLU, American Booksellers, EPIC and EFF) (the "Institutional Plaintiffs").[2] See Ltr. fr. Christopher Harris to Karen Stewart dated November 21, 2005 [Attached as Ex. 3 and incorporated into this memorandum by reference]. That proposed stipulation followed a very similar earlier proposal made by Plaintiffs. See Ltr. fr. Aden Fine to Karen Stewart dated October 20, 2005 [Attached as Ex. 5 and incorporated into this memorandum by reference]. Defendant has not responded to this proposed stipulation and does not mention it in his Motion to Compel.

---

[2] None of the individual members of the Institutional Plaintiffs are themselves Plaintiffs. These individuals are ACLU members Lawrence Ferlinghetti and Patricia Nell Warren, and EFF members Open Enterprises and Bill Boushka.

3

## ARGUMENT

### I. DEFENDANT IS ALREADY ABLE TO INSPECT AND COPY ALL WEB PAGES DESIGNATED IN HIS REQUESTS; PLAINTIFFS ARE NOT OBLIGATED TO CREATE NAVIGABLE VERSIONS OF THEIR WEBSITES

#### A. Because Defendant Already Has Access to Plaintiffs' Entire Websites, Navigable Versions of Plaintiffs' Websites Are Irrelevant

Defendant argues that the Court should grant his Motion to Compel because the content of Plaintiffs' websites is relevant. However, Defendant fails to account for the fact that Defendant already has access to each Plaintiff's entire website, or would have such access if Defendant accepted Plaintiffs' offer of the passwords necessary to gain such access. In view of the fact that Defendant already has access to each Plaintiff's entire website, and can copy, save and print any pages Defendant believes are relevant, additional navigable versions of the websites are not relevant.

Under COPA, Plaintiffs' websites are only relevant to the extent they are accessible to the public, either with or without a password. The extent of Defendant's access to Plaintiffs' websites is identical to the extent of the public's access to the websites. Plaintiffs have repeatedly offered to provide Defendant with passwords to allow Defendant access to otherwise inaccessible portions of Plaintiffs' websites. See Ltr. fr. Christopher Harris to Raphael Gomez dated November 17, 2005 [Attached as Ex. 4]. Defendant has never responded to these offers and does not mention them or the passwords in his Motion to Compel.

Thus the question is not whether Plaintiffs' websites are relevant in the abstract because Plaintiffs readily concede that they are. Instead the question is whether "permanent, navigable" electronic versions of Plaintiffs' websites as they existed on some prior date are relevant where

4

Defendant already has or could have access to Plaintiffs' entire websites.[3] Defendant's Motion to Compel never explains why having "permanent, navigable" electronic versions of Plaintiffs' websites is relevant in these circumstances. Instead Defendant discusses the relevance standard generally and COPA's "as a whole" standard without reference to the fact that Defendant already has or could have access to Plaintiffs' websites including those websites "as a whole."[4] (Motion to Compel at 7-8, 10).

### B. Even If Navigable Copies of Plaintiffs' Websites Were Relevant, Plaintiffs Do Not Have And Are Not Obligated to Create Such Navigable Copies of Their Websites for Defendant

Even if static, navigable versions of Plaintiffs' websites as they existed at some point in time in the past were relevant, Defendant's request should be denied because Plaintiffs do not have permanent, navigable copies and Plaintiffs would not be obligated to create such materials. First, requiring Plaintiffs to create materials to be produced in response to a document request is beyond the scope of permissible discovery. See Alexander v. FBI, 194 F.R.D. 305, 310 (D.D.C. 2000) ("A party is not required 'to prepare, or cause to be prepared,' new documents solely for

---

[3] Defendant's statement that "[b]ecause there is no other way to introduce complete copies of plaintiffs websites into evidence, plaintiffs essentially claim that the websites themselves are not relevant" completely misstates Plaintiffs' position. (Motion to Compel at 7).

[4] Defendant asserts in his Memorandum in Support of His Motion for a Protective Order ("Motion for Protective Order") that "Plaintiffs have steadfastly refused to cooperate with Defendant in stipulating to the versions of their websites that will be the subject of trial in this action." See Motion for Protective Order at 13 [Attached as Ex. 6 and incorporated into this memorandum by reference]. Defendant's statement reflects a basic misunderstanding of the nature of dynamic websites, the content of which changes every day. There is not a single static version of a website that will be the subject of the trial, nor can there be. The version of Plaintiffs' website that existed at some past date five or seven or nine months before the trial is no more relevant than the version of Plaintiffs' website that will exist after the trial. Plaintiffs have explained this timing issue to Defendant and asked Defendant to explain his argument. See Ltr. fr. Christopher Harris to Raphael Gomez dated November 17, 2005 [attached as Ex. 4]. Defendant has never provided any explanation.

their production."); see also Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co., 576 F. Supp. 511, 513 (W.D. Pa. 1983) ("Rule 34 cannot be used to require the adverse party to prepare, or cause to be prepared, a writing to be produced for inspection . . . .") (internal citation omitted)). This rule applies equally to documents which are electronic in nature. See Paramount Pictures Corp. v. Replay TV, 2002 WL 32151632, at *2 (C.D. Cal. May 30, 2002) (vacating Order compelling creation of new documents with electronic information solely for purposes of their production). Indeed, Defendant himself has objected to Plaintiffs' interrogatories O, P and Q as overly broad, unduly burdensome and, in the case of interrogatory O, "improper," because they seek "to require Defendant to perform independent research" and because they seek "information that is equally available to both parties." See Defendant's Objections and Responses to Plaintiffs' Initial Interrogatories at 10, 11 [Attached as Ex. 7 and incorporated into this memorandum by reference].

None of the Plaintiffs possess a backup version of their websites that will easily "allow navigation" as per Defendant's request. To the extent that an individual Plaintiff does not have a "permanent, navigable" version of its website, it is under no obligation to create a new backup for purposes of this litigation.

Second, even if Defendant is correct that he is only asking for a "copy" of Plaintiffs' websites, Plaintiffs would still not be required to make the "copy" themselves. (Motion to Compel at 6). Under Federal Rule of Civil Procedure 34, Plaintiffs are only required to "permit the party making the request . . . to inspect and copy" any designated materials, in this case Plaintiffs' websites. Fed. R. Civ. P. 34(a) (emphasis added); cf. Fed R. Civ. P. 33(d) (providing that a party upon whom an interrogatory is served is not required to create a data compilation if the underlying materials are made available to the requesting party). Defendant already has (or

could have) access to Plaintiffs' entire websites. Defendant is able with little effort to print out a copy or save to disk any pages on any of the Plaintiffs' websites. See Declaration of J. Christopher Racich ¶ 16 ("Racich Decl.") [Attached as Ex. 8 and incorporated into this memorandum by reference]. Neither Defendant nor his declarant deny this. Plaintiffs have expressed in writing their willingness to stipulate that any such materials are authentic reproductions of the particular pages of Plaintiffs' websites in question. See Ltr. fr. Christopher Harris to Karen Stewart dated November 17, 2005 [Attached as Ex. 4]. Defendant has not responded to that proposal. Thus, to the extent creating a navigable version of their websites constitutes making "a copy" of it, Plaintiffs have fulfilled their obligations under the Federal Rules of Civil Procedure because Defendant already has access to Plaintiffs' entire websites.

Third, Plaintiffs should not be required to produce "permanent, navigable" versions of their websites because it would be extremely burdensome to do so. Again, the entire content of Plaintiffs' websites is publicly available (or in some instances is available with a password which has been offered to Defendant). When it is burdensome to a producing party to gather materials within the public domain, the court has discretion to limit the scope of the discovery requests. See In re Sunrise Secs. Litig., 130 F.R.D. 560, 588 (E.D. Pa. 1989); see also Fed R. Civ. P. 26(b)(2)(iii) (authorizing court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefits, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"); Jones v. Goord, 2002 WL 1007614, at *10 (S.D.N.Y. May 16, 2002) (denying motion to compel production of electronic information where considerable time, effort and expense would be necessary to reduce the information to useable form while the parties seeking production had not provided a meaningful

account of what exactly they planned to do with the data); Matthew Bender, Moore's Federal Practice - Civil § 34.12 (2005) (citing the Court's authority to "limit the extent of discovery if 'the discovery sought . . . is obtainable from some other source that is more convenient, less burdensome, or less expensive.'").

Because most of Plaintiffs' websites are complex and dynamic, there are significant obstacles to producing backup copies of Plaintiffs' websites in navigable form. See generally Racich Decl. [Attached as Ex. 8]. Overcoming these obstacles would impose an unreasonable burden on many Plaintiffs because it would require, among other things, the retention of consultants and the purchase of new software. See id. ¶¶ 10, 12, 14, 15. Plaintiffs have attached a chart hereto as Exhibit 1 which summarizes the severe burdens facing each Plaintiff in creating a navigable version of their respective websites. [Incorporated into this memorandum by reference]. To the extent the Court determines that Plaintiffs need to create navigable versions of their websites, Plaintiffs request that the Court order Defendant to reimburse Plaintiffs for the costs of creating those backups that do not presently exist.

Defendant's only response is that it is difficult for him to create a navigable copy of a website. Indeed it is. But it is difficult for Plaintiffs too. Plaintiffs are under no obligation to create new materials for Defendant, just as they would be under no obligation to reorganize, scan, and create online searchable versions of paper documents just because Defendant would prefer documents in that format, and it is difficult for Defendant to do the work himself. That, in essence, is what Defendant would like Plaintiffs to do. Plaintiffs are under no obligation to do so.

### C. The "Backup" Materials That Some Plaintiffs Have Are Not What Defendant Is Seeking, Nor Are They Relevant

Despite Defendant's hope to the contrary, the limited backup materials that some Plaintiffs possess are not responsive to Defendant's requests, much less relevant. The "backup" materials that some Plaintiffs maintain do not in any way constitute the "permanent, navigable" version of Plaintiffs' websites that Defendant is seeking. None of the "backup" materials allow "navigation through [their] entire website[s]." See Defendant's First Set of Requests for Production of Documents, Instruction 7, at 3 [Attached as Ex. 9 and incorporated into this memorandum by reference]. First, for many Plaintiffs, the backups exclude certain materials that are on their websites. For example, these materials may not encompass web content posted by third parties. Second, the materials may include information (including reader e-mails, comments by website administrators on potential future content, and advertiser information) that has never appeared on the website. Even assuming that Defendant was able to decipher web content through these materials, the content would not reflect Plaintiffs' websites "as a whole" at a particular point in time.[5]

In addition, the "backups" contain materials that are irrelevant to Defendant and this litigation. The "backup" materials reflect the technical, unseen organization of a portion of Plaintiffs' electronic infrastructure. In addition, as discussed above, the "backup" materials may contain content and information that has never appeared on the website and never will. In sum, whatever content may be deciphered through the "backup" materials is not relevant to Defendant's analysis of Plaintiffs' websites "as a whole." Although Plaintiffs have asked Defendant to explain how any non-publicly viewable aspects of the websites are relevant (see Ltr. fr. Christopher Harris to Raphael Gomez dated November 17, 2005 [Attached as Ex. 4]),

---

[5] Moreover, these backups generally are not "navigable" as Defendant requests.

9

Defendant has never responded. Because the only relevant material is the publicly accessible content on Plaintiffs' websites, Defendant already has (or could have) access to all web content relevant to this case.

## II. PLAINTIFFS HAVE IDENTIFIED A SAMPLE OF THEIR WEB CONTENT FOR WHICH THEY FEAR PROSECUTION

Defendant's Motion to Compel asserts that Plaintiffs refuse to "identify the material in their websites about which they fear prosecution, because such documents are in the public domain." (Motion to Compel at 7). Defendant's assertion wrongly suggests that Plaintiffs have not identified website material for which they fear prosecution under COPA. To the contrary, in response to Interrogatory 13, each Plaintiff with a website at issue except PlanetOut identified generally the content for which they fear prosecution under COPA and provided examples of specific web pages for which they fear prosecution. For example, Plaintiff Powell's Books identified generally the nature of material on its website for which it fears prosecution and listed a sample of eight web pages for which it fears prosecution.[6] See Powell's Books Responses and Objections to Defendant's First Set of Interrogatories at 10, 11 [Attached as Ex. 10 and

---

[6] Defendant argues that Plaintiffs' objection to the term "representative sample" lacks merit. Defendant's Motion to Compel at 8 n.7 (citing Litton Indus., Inc. v. FTC, 676 F.2d 364 (9th Cir. 1982)). In Litton, the Federal Trade Commission had ordered Litton, a microwave oven manufacturer who advertised that he was recommended by 76% of "independent microwave oven service technicians," to stop making this claim because the 76% figure was based on a survey only of those agents authorized to work for Litton. 676 F.2d at 367. The Ninth Circuit upheld the FTC order, which prohibited the microwave oven manufacturer from advertising the results of a survey unless the respondents were "'a census or a representative sample of the population referred to'" and the sample one which "'has been selected in a manner which permits projection of results from the sample to the universe from which it is drawn.'" Id. at 372. Defendant's reliance on Litton is misplaced because Litton was about a statistical claim a party had made, so of course it was reasonable to ask that party to provide a "representative sample" to test that claim. Nothing in that case suggests that lay parties should somehow undertake to determine what a statistically representative sample would be. Indeed, a central claim of Plaintiffs is that potential liability under COPA is so vague as to render it unconstitutional.

incorporated into this memorandum by reference]. Similarly, Plaintiff Urban Dictionary generally described the kinds of content on its website for which it fears prosecution and listed a sample of ten web pages for which it fears prosecution. See Aaron Peckham d/b/a Urban Dictionary.com's Responses and Objections to Defendant's First Set of Interrogatories at 10, 11 [Attached as Ex. 11 and incorporated into this memorandum by reference]. Plaintiffs will continue to supplement their responses to this Interrogatory as this litigation proceeds.[7]

### III. DEFENDANT MISLEADINGLY SUGGESTS THAT PLAINTIFFS REFUSED TO RESPOND TO NUMEROUS DISCOVERY REQUESTS DUE TO A LACK OF MATURITY

Defendant inaccurately claims that Plaintiffs have "uniformly refused to provide documents and information" in response to document requests 2-15, 20, 21, 48 and Interrogatories 1-2, 13. (Motion to Compel at 10). In fact, Plaintiffs have agreed to produce all non-privileged documents in their possession that are responsive to document requests 2 through 12, even though these requests are simply disguised contention interrogatories in the form of document requests. See Plaintiffs' Responses and Objections to Defendant Alberto Gonzales's First Set of Requests for Production of Documents at 6-10 [Attached as Ex. 12 and incorporated into this memorandum by reference]. In fact, Plaintiffs produced numerous documents in response to requests 8, 10 and 12. Plaintiffs did not produce documents in response to the other requests because, after conducting a reasonable search, they did not locate any such documents. Plaintiffs have not withheld documents responsive to these requests. Plaintiffs intend to produce additional documents discovered during the course of Plaintiffs' continuing investigation or during the course of discovery.

---

[7] Plaintiffs did not print the identified web pages because, as discussed above, Defendant already has access to each Plaintiff's entire website, including the particular webpages identified.

11

With respect to the interrogatories and document requests seeking information about the websites for which Plaintiffs fear prosecution, Plaintiffs provided an appropriately detailed and meaningful response. As discussed above, in response to Interrogatory 13, each Plaintiff with a website at issue except PlanetOut identified generally the content for which they fear prosecution under COPA and provided examples of specific web pages for which they fear prosecution. In response to document requests 13-15 and 20, Plaintiffs did not produce print-outs of the pages identified because Defendant already has access to each Plaintiff's entire website, including the particular web pages identified. In addition, in response to document request 21, all Plaintiffs with a website at issue except PlanetOut have agreed to produce all non-privileged documents.

The only document requests or interrogatories which Plaintiffs refused to respond to due to a lack of maturity are document request 48 and interrogatories 1 and 2. These discovery requests seek the identification of all witnesses and documents Plaintiffs expect to rely upon at trial. Plaintiffs objected to these requests and did not respond to them because their expectations regarding possible evidence to be introduced at trial are preliminary and thus not a proper subject matter for discovery at this stage. Indeed, Defendant objected to Plaintiffs' interrogatory regarding identification of expert witnesses on similar grounds. See Defendant's Objections and Responses to Plaintiffs' Initial Interrogatories at 3 [Attached as Ex. 7]. Plaintiffs do not yet know what documents or witnesses they intend to rely upon at trial and thus should not be required to respond to these discovery requests now.

## IV. PLAINTIFFS PROVIDED ALL RELEVANT AND AVAILABLE FINANCIAL INFORMATION

Defendant takes issue with Plaintiffs' responses to document requests 26-37 and interrogatories 3, 5, 7-8, arguing that Plaintiffs need to agree upon a stipulation broad enough to prevent Plaintiffs from "challenging any aspect of COPA's compliance costs, except those

12

imposed by a potential 'heckler's veto.'" (Motion to Compel at 12). With respect to document requests 26-30, Plaintiffs already have stipulated that they no longer claim that it will be prohibitively expensive for individual Plaintiffs to redesign their website to comply with COPA. For this reason, these requests are no longer relevant.

Plaintiffs continue to contend that compliance with COPA's affirmative defenses will impose a financial burden on online providers of content that is potentially harmful to minors. For example, as discussed at the preliminary injunction hearing, credit card companies will not verify credit cards for free. This Court has already recognized that such a financial burden, regardless of the exact amount, constitutes an impressible burden on Plaintiffs' First Amendment rights. See Court Mem. at 40-42 (Feb. 1, 1999) [Attached as Ex. 13 and incorporated into this memorandum by reference]. Because complying with COPA would not be more expensive for Plaintiffs than for other content providers, the presence of a financial burden can be demonstrated without requiring Plaintiffs to disclose sensitive financial information. The relevant inquiry is not whether some of the Plaintiffs can pay these costs without going bankrupt, but rather that the defenses impose costs on all such web speakers simply because they are speaking. Thus, the documents sought by requests 26-30 are neither relevant to the claims or defenses of any party, nor reasonably calculated to the discovery of admissible evidence.

Defendant's objections to Plaintiffs' responses to document requests 31-37 and Interrogatory numbers 3, 5, and 7-8 also lack merit. Subject to the tentative agreement that Plaintiffs whose websites are not at issue were not required to produce documents, Plaintiffs agreed to produce all non-privileged documents in their possession responsive to requests 31-35 and request 37. Plaintiffs produced numerous documents in response to requests 31, 33 and 34. Plaintiffs did not produce documents in response to the other requests because, after conducting

13

a reasonable search, they did not locate any such documents. Plaintiffs intend to produce additional documents as may be discovered during the course of Plaintiffs' continuing investigation or during the course of discovery. Plaintiffs objected to request 36 (seeking documents sufficient to show how website visitors "use" Plaintiffs' websites) because they do not understand what documents Defendant is seeking with this request. Plaintiffs have repeatedly invited Defendant to explain what kinds of documents he is seeking, but Defendant has never responded.

With respect to Interrogatory numbers 3, 5, 7, and 8, each Plaintiff with a website at issue except for PlanetOut has responded to these Interrogatories. The Institutional Website Plaintiffs did not respond to these Interrogatories pursuant to Plaintiffs' tentative agreement with Defendant that they are not required to do so.

### V. BECAUSE INSTITUTIONAL PLAINTIFFS' WEBSITES ARE NOT RELEVANT, THE PARTIES AGREED THAT THEY WOULD NOT PROVIDE INFORMATION REGARDING THEIR WEBSITES

Defendant wrongly asserts that the Institutional Plaintiffs have "largely evaded providing documents and information responsive to certain of defendant's discovery requests." (Motion to Compel at 12). In fact, Plaintiffs and Defendant reached a tentative agreement before responding to each other's discovery requests that the Institutional Plaintiffs did not need to respond to requests seeking information to the extent they concerned the content of their websites. By letter dated November 8, 2005, Defendant offered to finalize the tentative agreement provided Plaintiffs stipulated that the Institutional Plaintiffs "will not be contending that they are subject to prosecution under COPA." See Ltr. fr. Karen Stewart to Christopher Hansen dated November 8, 2005 [Attached as Ex. 14 and incorporated into this memorandum by reference]. Subsequently, by letter dated November 21, 2005, Plaintiffs counter-proposed a very similar stipulation: that the Institutional Plaintiffs "do not fear prosecution under COPA for content on their websites,"

14

subject to their claim that COPA is vague. See Ltr. fr. Christopher Harris to Karen Stewart dated November 21, 2005 [Attached as Ex. 3].[8] Defendant has not responded to this offer and does not mention it in his Motion to Compel.

In any event, the Institutional Plaintiffs' websites are not relevant because the Institutional Plaintiffs do not fear prosecution under COPA for the content of their websites. Thus, any discovery requests concerning the content of the websites, their websites' operation, their policies or practices regarding credit cards, or anything else regarding their websites is irrelevant to this case.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Compel be denied.

---

[8] Plaintiffs wrote in the November 21, 2005 letter as follows: "With the understanding that this agreement eliminates the organizational Plaintiffs' need to respond to Requests 1, 13-17, 20-35, 37 and Interrogatories 3-9, 13-16, Plaintiffs are willing to stipulate that organizational Plaintiffs (as distinguished from website Plaintiffs and from members of the organizational Plaintiffs) do not fear prosecution under COPA for content on their websites, subject to Plaintiffs' claim that COPA is vague." See Ltr. fr. Christopher Harris to Karen Stewart dated November 21, 2005 [attached as Exhibit 3].

Dated: December 1, 2005

                      Respectfully submitted,

                      /s/ Christopher R. Harris
                      Christopher R. Harris
                      Andrew M. Purdy
                      Jeroen van Kwawegen
                      Latham & Watkins
                      885 Third Avenue, Suite 1000
                      New York, NY 10022
                      (212) 906-1200

                      Of Counsel to American Civil Liberties Union Foundation
                      on behalf of Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2005, a copy of the Plaintiffs' Memorandum in Opposition to Motion to Compel was filed electronically via the Court's ECF system, through which a notice of the filing will be sent to:

Karen Stewart
Senior Trial Counsel
Federal Programs Branch
Civil Division
U.S. Department of Justice
20 Massachusetts Ave., N.W., Room 7200
Washington, DC  20001

Raphael Gomez, Esq.
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
200 Massachusetts Ave., N.W., Room 7200
Washington, DC  20530

Attorneys for Defendant

Christopher Harris
CHRISTOPHER HARRIS
