**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  98-5591 |
| | : | |
| ALBERTO R. GONZALES in his official capacity | : | |
| as Attorney General of the United States | : | |

## ORDER

   **AND NOW,** this 22th day of December, 2005, upon consideration of the motion

of defendant to compel (Doc. No. 223) and the response thereto (Doc. No. 231), the court makes

the following findings and conclusions:

   1.  The plaintiffs in this action, including the four institutional plaintiffs, the

American Civil Liberties Union ("ACLU"), the American Booksellers Foundation for Free

Expression ("ABFFE"), the Electronic Frontier Foundation ("EFF"), and the Electronic Privacy

Information Center ("EPIC"), and thirteen individual, non-institutional plaintiffs, brought this

action challenging the constitutionality of the Child Online Protection Act, 47 U.S.C. § 231

("COPA").  On February 2, 1999, I granted a preliminary injunction against the enforcement of

COPA.  (Doc. No. 121).  Eventually, the preliminary injunction was affirmed by the Supreme

Court on June 29, 2004, and remanded to me for a trial on the merits.  Ashcroft v. ACLU, 542

U.S. 656 (2004).  For a more detailed description of the history and background of this case, see

the Supreme Court's opinion at 542 U.S. 656.  The parties are now in the midst of discovery and

certain disagreements have arisen.  As a result, on November 22, 2005, defendant filed a motion

to compel plaintiffs to produce various documents and to respond to certain interrogatories (Doc.

No. 223).

2.      The filing of this motion violated Pretrial Order 15 (Doc. No. 186) as defendant did not alleged that the more informal discovery dispute resolution measures outlined therein would significantly impair his fundamental rights or that manifest injustice or deprivation of due process would occur from such procedures.  In the future, the parties shall adhere to Pretrial Order 15;

3.      Contrary to Local Rule of Civil Procedure 26.1(b), in his motion, the defendant failed to set forth the relevant quotations of the document requests and interrogatories but instead provided only general and conclusory arguments regarding why he believed he was entitled to the requested material.  Nonetheless, I have attempted to sift though the exhibits provided by the parties in order to determine whether the defendant has met his burden of establishing that any of the requested information is relevant and otherwise discoverable, and if it is, whether plaintiffs have provided adequate reasoning for why the discovery should not be permitted.  Northern v. City of Philadelphia, No. 98-6517, 2000 WL 355526, at *2 (E.D. Pa. April 04, 2000);

4.      The heading for the motion's first argument section states that: "PLAINTIFFS HAVE REFUSED TO PROVIDE COPIES OF THEIR WEBSITES AND HAVE REFUSED TO IDENTIFY MATERIALS ABOUT WHICH PLAINTIFFS FEAR PROSECUTION (Document Request Nos. 1, 13-16, 20-21 and Interrogatory Nos. 4, 13-16)." Specifically, the defendant seeks to compel plaintiffs to produce navigable copies[1] of plaintiffs'

---

[1] By navigable copies, I understand defendant to mean copies of every web page from the plaintiffs' websites exactly as they appear on the internet and in which every hyperlink on each copied page properly links to the corresponding copied page in the same manner as the original pages would link together on the internet, thus, making the desired website copies electronically navigable to the same extent as they would be on the internet.

2

websites and to identify materials about which the plaintiffs fear prosecution.  The individual document requests and interrogatories are not quoted or specifically mentioned again in the argument section.  The text of the relevant discovery requests are as follows:

       A.      Request No. 1:  Each website plaintiff's entire website;

       B.      Request No. 13:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[p]laintiffs fear prosecution under COPA for communicating, sending, displaying, or distributing material that might be deemed 'harmful to minors' by some community in the United States";

       C.      Request No. 14:  For each website plaintiff, each webpage on your website which you assert as the basis for the allegations of Paragraph 2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[p]laintiffs fear prosecution under COPA for communicating, sending, displaying, or distributing material that might be deemed 'harmful to minors' by some community in the United States";

       D.      Request No. 15:  For each website plaintiff, a representative sample of webpages on your website which contains material about which you fear prosecution under COPA, as referenced in Paragraph 2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[P]laintiffs fear prosecution under COPA for communicating, sending, displaying, or distributing material that might be deemed 'harmful to minors' by some community in the United States";

       E.      Request No. 16:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 2 in the section titled "The Impact of COPA on

Plaintiffs" on page 24 of the Amended Complaint that "[p]laintiffs and/or their members all provide for free on the Web 'for commercial purposes' material that they believe to be valuable for adults, but that they fear could be construed as 'harmful to minor' in some communities";

      F.    Request No. 20:  For each website plaintiff, all webpages containing material which you assert as the basis for the allegations of Paragraph 5 in the section titled "The Impact of COPA on Plaintiffs" on page 25 of the Amended Complaint that "[p]laintiffs also fear liability for material created by others that is available on their Websites and Web-based online discussion groups and chat rooms";

      G.    Request No. 21:  For each website plaintiff, the documents sufficient to show both all complaints you received about the sexual content of "material created by others that is available on their Websites and Web-based online discussion groups and chat rooms" as alleged at paragraph 5 of the section titled "The Impact of COPA on Plaintiffs" on page 25 of the Amended Complaint, and the particular webpages containing the material to which each complaint was referring;

      H.    Interrogatory No. 4:  Identify the date copied, as well as the minimum hardware and software requirements and necessary instructions to navigate, search, and fully access each copy of each website plaintiff's website that is provided in response to Request No. 1 of Defendant's First Request for Production of Documents;

      I.    Interrogatory No. 13:  For each website plaintiff, identify a representative sample of webpages on your website which contains material about which you fear prosecution under COPA, as referenced in Paragraph 2 in the section titled "The Impact of COPA on Plaintiffs" on page 24 of the Amended Complaint that "[P]laintiffs fear prosecution

under COPA for communicating, sending, displaying, or distributing material that might be

deemed 'harmful to minors' by some community in the United States";

    J.  Interrogatory No. 14:  For each website plaintiff, identify a

representative sample of webpages on your website which you believe contains material that has

serious literary, artistic, political, scientific and/or social value for adults;

    K.  Interrogatory No. 15:  For each website plaintiff, identify a

representative sample of webpages on your website which you believe contains material that has

serious literary, artistic, political, scientific and/or social value for children under 17;

    L.  Interrogatory No. 16:  For each plaintiff's website, identify a

representative sample of webpages which you believe contains material to which children under

17 should not be exposed;

    M.  The parties agree that the content of the non-institutional plaintiffs'

websites is relevant.  (See Doc. Nos. 223, p. 4 & 231, p. 4).  However, defendant has failed to

establish that *navigable copies* of these websites are needed by defendant to reasonably

investigate the claims of plaintiffs and/or prepare for trial.  All of the non-institutional plaintiffs'

websites are available to defendant (once plaintiffs issue the relevant passwords to him) to

inspect and copy pursuant to Federal Rule of Civil Procedure 34(a).  Moreover, although some of

the non-institutional plaintiffs may have back-up material concerning their websites, it is not in a

navigable form.  Finally, after reviewing the expert declarations from defendant's expert (Doc.

No. 223, Ex. 24) and plaintiffs' expert ( Doc. No. 231, Ex. 8), I find that plaintiffs' expert

persuasively shows that plaintiffs' production of navigable copies of their websites would likely

be unduly expensive and burdensome for plaintiffs when compared to defendant's ability to

peruse the websites readily available to him, and defendant has failed to persuade me otherwise. See Fed. R. Civ. P. 26(b)(2). As a result, I will not compel plaintiffs to provide navigable copies of their websites to the defendant;

        N.     Defendant also contends that plaintiffs have failed to identify materials about which they fear prosecution. On the contrary, I observe that almost every non-institutional plaintiff has listed several detailed examples of materials about which they fear prosecution as part of their response to defendant's interrogatory 13. Defendant's interrogatory 13, discussed more fully below, asks for a sample of web pages that contain material about which the plaintiff's fear prosecution under COPA. (Doc. No. 223 Exs. 4 pp. 10-11; 5 pp. 10-11; 6 pp. 10-11, 9 pp. 10-11; 10 pp. 10-11; 13 p. 11; 14 pp. 11-12; 15 pp. 10-13; 16 pp. 10-11; 17 pp. 10-11; 18 pp. 10-11; 19 pp. 11-12; 20 pp. 10-11). The materials submitted by plaintiffs are sufficient to address defendant's expressed concerns. Therefore, with the exception of the few individuals who have not yet responded to this interrogatory, defendant has failed to persuade me that the responses of the plaintiffs do not constitute a sufficient sample of the requested material, thus, I will not compel plaintiffs to respond further;

        O.     Although not mentioned in defendant's argument outside of the heading, I will individually address the document requests and interrogatories listed therein;

        (1)     Defendant's document requests 13-15 and 20-21 and interrogatory 13 are dealt with below in paragraph 5. Defendant's document request 1 and interrogatory 4 relate directly to providing defendant with navigable copies of plaintiffs' websites, which has been addressed above. Defendant's document request 16, regarding material on the plaintiffs' websites that they believe to be valuable for adults but that they fear could be

construed as harmful to minors, is sufficiently addressed by plaintiffs' responses to defendant's interrogatory 13.  Defendant's interrogatory 13 requests similar information in the form of a sample of web pages that contain material about which the plaintiffs fear prosecution under COPA.  The use of plaintiff's responses to defendant's interrogatory 13 to answer other document requests is discussed more fully below in paragraph 5;

(2)     Defendant's interrogatories 14 and 15 request web pages that plaintiffs believe contain material that has serious literary, artistic, political, scientific and/or social value for adults and for children, respectively.  Defendant's interrogatory 16 requests sample web pages to which plaintiffs believe children under seventeen should not be exposed. Plaintiffs contend that the requests are irrelevant because, *inter alia*, COPA does not take into account the subjective beliefs of the speakers, social value is irrelevant under COPA, and the requests call for legal conclusions.  Defendant has failed to specifically argue that these interrogatories seek relevant information and I do not view the court's task to include conjuring up such arguments.  A broad interpretation of these interrogatories might result in the conclusion that they are in the nature of contention questions.  This court will not re-cast the questions to reach that result;

5.     The heading for the motion's second argument section states that: "PLAINTIFFS CANNOT REFUSE TO PROVIDE DOCUMENTS AND INFORMATION ON THE GROUNDS THAT DEFENDANT'S DISCOVERY REQUESTS ARE PREMATURE (Document Request Nos. 2-15, 20, 21, 48 and Interrogatory Nos. 1-2, 13)."  The individual document requests and interrogatories are not quoted or specifically mentioned again in this two paragraph argument section.  Nonetheless, I will discuss them individually.  The text of the

7

relevant discovery requests are as follows[2]:

        A.    Request No. 2:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 9 in the section titled "Impact of COPA" on page 21 of the Amended Complaint that "[b]ecause the vast majority of content on the Web is available for free, most Web users will not provide credit cards or adult access codes to obtain access to Web content";

        B.    Request No. 3:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 9 in the section titled "Impact of COPA" on page 21 of the Amended Complaint that "[r]equiring users to provide a credit card or adult access code before they can browse a Web page to determine what it offers will deter most users from ever accessing those pages";

        C.    Request No. 4:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 10 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[w]eb users are even less likely to provide a credit card or adult access code in order to gain access to sensitive, personal, controversial or stigmatized content on the Web";

        D.    Request No. 5:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 14 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[m]any web content providers would not set up credit card or adult access code systems because they know that few if any of their users would use

---

[2]  I will not repeat the text of defendant's document requests 13-15 and 20-21 and interrogatory 13 which have been recited previously in paragraph 4, subparagraphs B-D, F, G, and I.

them";

        E.      Request No. 6:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 15 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "Web content providers depend on attracting a high level of traffic to their sites to attract and retain advertisers and investors";

        G.      Request No. 7:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 16 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[m]ost web content providers want to reach the widest possible audience for their speech, and do not want to require adults to provide credit cards or adult access codes before accessing their speech";

        H.      Request No. 8:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 17 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[m]any content providers could not afford the substantial start-up and per-transaction costs associated with setting up and maintaining credit card and adult access code systems";

        I.      Request No. 9:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 18 in the section titled "Impact of COPA" on page 22 of the Amended Complaint that "[f]inancial institutions will not verify credit cards in the absence of a financial transaction";

        J.      Request No. 10:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 20 in the section titled "Impact of COPA" on page 23 of the Amended Complaint that "[i]mplementing COPA's credit card or adult access

codes defenses would fundamentally alter the nature of communications on the Web, which is characterized by spontaneous, instantaneous, seamless and unrestricted access to information";

         K.      Request No. 11:  All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 21 in the section titled "The Ineffectiveness of COPA and the Effectiveness of Alternative Means" on page 23 of the Amended Complaint that "[a] significant portion of the content provided on the Web, including sexually explicit material, originates abroad."

         L.      Request No. 12: All documents indicating each fact upon which each plaintiff bases the allegations of Paragraph 22 in the section titled "The Ineffectiveness of COPA and the Effectiveness of Alternative Means" on page 23 of the Amended Complaint that "there are many alternative means that are more effective at assisting parents in limiting a minor's access to certain material if desired";

         M.      Request No. 48:  All documents plaintiffs expect to introduce as evidence in this litigation;

         N.      Interrogatory No. 1:  Identify all witness you intend to call at trial, including the specific website plaintiffs and expert witnesses you intend to call at trial;

         O.      Interrogatory No. 2:  Identify all documents, including webpages, you intend to introduce as evidence in this litigation;

         P.      Defendant's interrogatory 13 requests sample web pages from each of plaintiffs' websites that contain material about which the plaintiffs fear prosecution under COPA.  All of the non-institutional plaintiffs have provided multiple web page addresses regarding specific examples of materials about which they fear prosecution, except Planetout,

Inc. and a few non-plaintiff members of institutional plaintiffs discussed below in paragraphs 8

and 9 who have not responded to defendant's first set of interrogatories.  (Doc. No. 223,  Exs. 4

pp. 10-11; 5 pp. 10-11; 6 pp. 10-11, 9 pp. 10-11; 10 pp. 10-11; 13 p. 11; 14 pp. 11-12; 15 pp. 11-

13; 16 pp. 10-11; 17 pp. 10-11; 18 pp. 10-11; 19 pp. 11-12; 20 pp. 10-11).  Because plaintiffs are

not required to provide defendant with navigable copies of their websites and defendant is free to

copy plaintiffs' websites, the responses to defendant's interrogatory 13 by the non-institutional

plaintiffs are also responsive to several of defendant's document requests all of which request

documents, i.e. web pages, regarding plaintiffs' fear of prosecution under COPA.  One of these

document requests, defendant's document request 16, has already been discussed above.

Defendant's document requests 13-15 and 20 also seek documents, i.e. web pages, regarding

plaintiffs' fear of prosecution under COPA and are adequately addressed by the non-institutional

plaintiffs' inclusion of web page addresses regarding such fears in their responses to defendant's

interrogatory 13;

        Q.     Plaintiffs have already agreed to produce all non-privileged

documents responsive to defendant's document requests 2-12.  The non-institutional plaintiffs

have also agreed to respond to defendant's document request 21, except for Planetout, Inc. and

certain non-plaintiff members of institutional plaintiffs discussed below in paragraphs 8 and 9.

(See Doc. No. 231 pp. 10, 12).  As a result, with the exception of the few individuals who have

not yet responded, the court will order plaintiffs to live up to their agreement and answer these

requests to the extent that they have not done so;

        R.     Defendant's document request 48 calls for all documents that the

plaintiffs expect to introduce at trial while interrogatories 1 and 2 request the identity of all

witnesses plaintiffs plan to rely on at trial and the identity of all documents and web pages

plaintiffs intend to introduce as evidence, respectively.  While these documents and information

are clearly relevant, plaintiffs contend that they simply do not currently know upon what

witnesses and documents they will rely.  As a result, defendant's document request 48 and

interrogatories 1 and 2 are premature.  As the requested information becomes known, plaintiffs

are obligated to timely transmit that information to defendant.  See Fed. R. Civ. P. 26(e);

6.     The heading for the motion's third argument section, which is one

paragraph in length, states that: "PLAINTIFFS HAVE REFUSED TO PROVIDE SUFFICIENT

FINANCIAL INFORMATION, CUSTOMER INFORMATION, AND CREDIT CARD USAGE

(Document Request Nos. 26-37 and Interrogatory Nos. 3, 5, 7-8)."[3]   The text of the relevant

discovery requests are as follows:

A.     Request No. 26:  For each website plaintiff, the documents

sufficient to show your financial accounting and federal tax returns, including annual budgets and

monthly financial statements;

B.     Request No. 27:  For each website plaintiff, the documents

sufficient to show all costs of setting up or establishing your website, including contracts and/or

agreements with third parties;

C.     Request No. 28:  For each website plaintiff, the documents

sufficient to show all annual costs of administering, operating, and maintaining your website,

including contracts and/or agreements with third parties;

---

[3]  Defendant, in the body of this argument section, presumably mistakenly refers to document request 2
instead of document request 3.

12

D.      Request No. 29:  For each website plaintiff, the documents sufficient to show all costs of any redesign of your website, including contracts and/or agreements with third parties;

E.      Request No. 30:  For each website plaintiff, the documents sufficient to show the annual revenue generated by your website;

F.      Request No. 31:  For each website plaintiff, the documents sufficient to show your annual credit card revenue, including credit card revenue from your website;

G.      Request No. 32:  For each website plaintiff, the documents sufficient to show your credit card agreements with issuing banks;

H.      Request No. 33:  For each website plaintiff, the documents sufficient to show your contracts and/or agreements with third parties to facilitate credit card transactions on your website;

I.      Request No. 34:  For each website plaintiff, the documents sufficient to show the statistics on charge backs to issuing banks of credit cards by cardholder reason, including, but not limited to, unauthorized use by a minor;

J.      Request No. 35:  For each website plaintiff, the documents sufficient to show the annual number visitors to your website, including, separately, the number or proportion of visitors that have provided a credit card number;

K.      Request No. 36:  For each website plaintiff, the documents (including studies) sufficient to show how your website visitors use your website;

L.      Request No. 37:  For each website plaintiff, all studies indicating

13

feasibility of costs of compliance with the requirements of the Child Online Protection Act, including installation and/or administration of a webpage containing credit card number or Adult Identification barrier;

      M.     Interrogatory No. 3:  For each website plaintiff, identify the annual number of visitors to your website;

      N.     Interrogatory No. 5:  For each website plaintiff, identify any registration or other gathering of identifying information you ask for, require, or otherwise obtain (including information obtained by cookies, adware, spyware, or third parties) from your visitors to your website, such as name, address, phone number, e-mail address, i.p. address, etc;

      O.     Interrogatory No. 7:  For each website plaintiff, identify, on an annual basis, the number or proportion of visitors to your website that have provided a credit card number either directly to you or to any third party with whom you have entered into an agreement to operate or maintain credit card transactions with your site;

      P.     Interrogatory No. 8:  For each website plaintiff, identify the number and value of charge-backs to issuing banks of credit cards and the reason offered by the cardholder for the chargeback, including unauthorized use by a minor;

      Q.     Defendant's document requests 26-30 ask for documents detailing the plaintiffs':  (1) financial accounting and federal tax returns; (2) costs of setting up their websites; (3) annual costs of administering, operating and maintaining their websites; (4) costs of any redesign of their websites; and (5) annual revenue generated by their websites.  Plaintiffs contend that these requests are no longer relevant because they are no longer claiming that it will be prohibitively expensive for individual plaintiffs to redesign their websites in order to comply

14

with COPA.  Defendant does not argue that these requests are still relevant but instead simply argues that before waiving these document requests he requires "a stipulation broad enough to prevent them from challenging any aspect of COPA's compliance costs, except those imposed by a potential 'heckler's veto.'"  (Doc. No. 223, p. 12).  Because defendant has failed to establish that these requests are still relevant, I will not compel the plaintiffs to answer them;

       R.     The non-institutional plaintiffs have agreed to produce all non-privileged documents responsive to defendant's document requests 31-35 and 37.  (See Doc. No. 223, Ex. 3 pp. 24-29).  The non-institutional plaintiffs have also provided responses to defendant's interrogatories 3, 5 and 7-8, except for Planetout, Inc. and certain non-plaintiff members of institutional plaintiffs discussed below in paragraphs 8 and 9 who have not responded to defendant's first set of interrogatories.  (See Doc. No. 231, p. 14).  As a result, with the exception of the few individuals who have not yet responded, the court will order plaintiffs to live up their agreements to answer these requests to the extent that they have not done so;

       S.     Defendant's document request 36 requests "the documents (including studies) sufficient to show how [the plaintiffs'] website visitors use [their] website[s]."  Plaintiffs contend that they did not respond to this request because they do not understand what documents defendant is seeking and that the word "use" is not defined.  Thus, the plaintiffs contend that the request is overly broad, unduly burdensome, vague and ambiguous.  Defendant has failed to specifically argue that this document request seeks relevant information and offers no explanation of the language in this request.  I agree that as worded the request is ambiguous.  I do not view the court's task to include conjuring up arguments or re-wording the request.  Plaintiffs need not respond further to this request;

15

7.    The heading for the motion's final argument section states that:
"INSTITUTIONAL PLAINTIFFS ACLU, AFBE, EFF AND EPIC MUST RESPOND TO
DEFENDANT'S DISCOVERY REQUEST."  In this section, the defendant seeks to compel
specifically the institutional plaintiffs to respond to defendant's document requests 31-37 and
interrogatories 3, 5, and 7-8.[4]  The institutional plaintiffs do not have websites at issue in this
case because they have not claimed to fear prosecution under COPA because of the content of
their websites.  Instead, most of the institutional plaintiffs have members who have asserted such
a fear.  Regarding the institutional plaintiffs themselves, defendant simply argues in a conclusory
manner, and without any explanation, that the institutional plaintiffs' answers to these requests
are relevant because they have advanced claims on behalf of their members and because these
plaintiffs' use of credit cards is relevant.  Defendant has failed to establish relevancy to my
satisfaction.  The institutional plaintiffs need not respond to these document requests and
interrogatories, as well as to any other requests and interrogatories regarding a fear of prosecution
under COPA, including defendant's document requests 1 and 14-37 and interrogatories 3-9 and
13-16;

8.    In footnote 2 of defendant's motion, defendant contends that the following
have not provided any documents in response to his document requests:  (1) Patricia Nell Warren
d/b/a wildcatinl.com; (2) Androgyny Books, Inc. d/b/a A Different Light Bookstore; (3) Heather
Corinna Rearick; (4) EFF, Open Enterprises d/b/a GoodVibes.com, and Bill Boushka d/b/a High
Productivity Publishing; (5) EPIC; (6) Nerve.com, (7) Planetout, Inc. d/b/a planetout.com and

---

[4] Defendant, in the body of this argument section, again presumably mistakenly refers to document request 2 instead of document request 3.  The text of these document requests may be found in paragraph 6, subparagraphs F-P.

gay.com; and (8) Dan Savage.  (Doc. No. 223, p. 2-3).   In the same footnote, defendant alleges

that:  (1) Planetout, Inc.; (2) Open Enterprises; and (3) Bill Boushka have failed to provide

response to defendant's interrogatories.  (Id.).  Plaintiffs claim that all plaintiffs have agreed to

produce documents responsive to document requests 2-12 and that all plaintiffs with websites at

issue, with the exception of Planetout, Inc., have agreed to respond to document request 21 and

have responded to interrogatories 3, 5, 7-8, and 13.  (See Doc. No. 231, pp. 12, 14).  Plaintiffs

further contend that ACLU member Patricia Nell Warren and EFF members Open Enterprises

and Bill Boushka are not plaintiffs in this case, and, thus, appear to argue that these members of

institutional plaintiffs need not respond to discovery;

       9.     In order for the institutional plaintiffs to have standing, *inter alia*, their

members must have standing.  Hunt v. Washington State Apple Adver. Com'n, 432 U.S. 333,

343 (1977).  In the amended complaint, ACLU is suing on behalf of its members who fear

prosecution under COPA including Patricia Nell Warren.  (Doc. No. 175 ¶¶ 103, 109-112).  EFF

is similarly suing on behalf of its members including Bill Boushka and Open Enterprises.  (Doc.

No. 175 ¶¶ 134-137).  Therefore, responses to defendant's discovery requests from Patricia Nell

Warren, Open Enterprises and Bill Boushka are necessary and relevant to the claims of ACLU

and EFF.  The court will order these plaintiffs to live up to their agreement to answer or provide

documents as above stated;

As a result of the forgoing, it is hereby **ORDERED** that the motion is **GRANTED** in part

and **DENIED** in part and that:

       10.    By **January 27, 2006**, all non-institutional plaintiffs, including Salon,

17

Heather Corinna Rearick, and Nerve, and all relevant non-plaintiffs who are members of institutional plaintiffs, to the extent necessary, shall provide to defendant all necessary passwords to access any publically available password protected website content;

11.    Plaintiffs shall timely respond to defendant's document request 48 and interrogatories 1 and 2 as that material becomes available;

12.    By **January 27, 2006**, the following plaintiffs and non-plaintiffs who are members of institutional plaintiffs, to the extent they have not done so, and to the extent that they possess responsive documents, shall respond to defendant's document requests in the same manner as the other non-institutional plaintiffs:  (1) Patricia Nell Warren d/b/a wildcatinl.com; (2) Androgyny Books, Inc. d/b/a/ A Different Light Bookstore; (3) Heather Corinna Rearick; (4) EFF, Open Enterprises d/b/a GoodVibes.com, and Bill Boushka d/b/a High Productivity Publishing; (5) EPIC; (6) Nerve.com, (7) Planetout, Inc. d/b/a planetout.com and gay.com; and (8) Dan Savage;

13.    By **January 27, 2006**, the following plaintiffs and non-plaintiffs who are members of institutional plaintiffs, to the extent they have not done so, shall also respond to the defendant's first set of interrogatories:  (1) Planetout, Inc.; (2) Open Enterprises; and (3) Bill Boushka; and

14.    By **January 27, 2006**, those plaintiffs who have agreed as aforementioned to respond to discovery requests of defendants, shall do so.

_____
LOWELL A. REED, JR., S.J.

18