**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 98-CV-5591 |
| ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States. | ) ) ) | Oral Argument Requested |
| Defendant. | ) ) ) | |

**DEFENDANT'S MOTION TO QUASH PLAINTIFFS'
NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6),
OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

Pursuant to Local Rules 7.1 and 26.1, Defendant, the Attorney General of the United States, by and through his undersigned attorneys, moves to quash plaintiffs' notice of deposition pursuant to Rule 30(b)(6), which requests that defendant designate one or more persons to testify about the Department of Justice's definitions of "obscene" and "harmful to minors" under 18 U.S.C. § 1460 and the Child Online Protection Act (COPA), 47 U.S.C. § 231.  For the reasons set forth herein, this Court should quash plaintiffs' deposition notice because it would not lead to the discovery of admissible evidence.  Because the deposition seeks irrelevant testimony, testimony protected by the law enforcement and deliberative process privileges, or relevant, non-privileged information already provided to plaintiffs in response to their written discovery requests, this Court should not require an official from the Department of Justice to appear.  In the alternative, defendant moves this Court for a protective order to limit further inquiry

regarding the topics listed in the "definitions' notice to written interrogatories pursuant to Fed. R. Civ. P. 33 or, if by deposition, to proceed by written questions pursuant to Fed. R. Civ. P. 31.

Defendant has unsuccessfully attempted to resolve this dispute informally with plaintiffs. While mindful of Pre-Trial Order No. 15 and the Court's preference that informal dispute resolution be employed whenever possible, plaintiffs' demand that a Department of Justice official be subject to a deposition under oath regarding, inter alia, the definition of certain words in statutes and the disclosure of deliberations about potential or actual criminal prosecutions compels defendant to file this motion.  Defendant believes that requiring the testimony sought by plaintiffs' notice will significantly interfere with its fundamental rights.  In addition, because the informal procedures outlined in this Court's Pretrial Order No. 15 do not appear to give defendant an opportunity to establish by declaration the harms that would arise should the privileged information sought by plaintiffs be disclosed, this matter should be resolved by motion.  Defendant further requests that oral argument be had on the motion.  A Proposed Order is attached.

### Local Rule 26.1(f) Certification

Undersigned counsel hereby certifies that the parties, after reasonable effort, are unable to resolve this dispute.  *See* Declaration of James D. Todd, Jr. in Support of Def.'s Mot. to Quash Pls.' Ntc. of Depo. Pursuant to Rule 30(b)(6) ("Todd Dec.") [Attached as Ex. 1].

Dated:  February 27, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

PATRICK L. MEEHAN
United States Attorney

RICHARD BERNSTEIN
Assistant U.S. Attorney

THEODORE C. HIRT
Assistant Branch Director

/s/ James D. Todd, Jr.
RAPHAEL O. GOMEZ
Senior Trial Counsel
JAMES D. TODD, JR.
JOEL MCELVAIN
ISAAC R. CAMPBELL
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. N.W
Washington, D.C. 20001
Tel: (202) 514-3378

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 98-CV-5591 |
| ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States. | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO QUASH PLAINTIFFS'**
**NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)**
**OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

Pursuant to Local Rules 7.1 and 26.1, Defendant, the Attorney General of the United States, by and through his undersigned attorneys, moves to quash plaintiffs' notice of deposition pursuant to Rule 30(b)(6), which requests that defendant designate one or more persons to testify about the Department of Justice's definitions of "obscene" and "harmful to minors" under 18 U.S.C. § 1460 and the Child Online Protection Act (COPA), 47 U.S.C. § 231. For the reasons set forth herein, this Court should quash plaintiffs' deposition notice because it would not lead to the discovery of admissible evidence. Because the deposition seeks irrelevant testimony, testimony protected by the law enforcement and deliberative process privileges, or relevant, non-privileged information already provided to plaintiffs in response to their written discovery requests, this Court should not require an official from the Department of Justice to appear. Rather, any additional relevant non-privileged information sought by plaintiffs may be obtained by written discovery pursuant to Fed. R. Civ. P. 33. In the alternative, defendant moves this

Court for a protective order to limit the deposition to proceed by written questions pursuant to

Fed. R. Civ. P. 31.

## BACKGROUND

COPA prohibits making "any communication for commercial purposes that is available

to any minor and that includes any material that is harmful to minors" done "knowingly and with

knowledge of the character of the material, in interstate or foreign commerce by means of the

World Wide Web."  47 U.S.C. § 231(a)(1).  The statute outlines civil and criminal penalties for

violations of its terms, and also details instances of inapplicability, affirmative defenses, and

privacy protection requirements.  *Id.* § 231.  Generally, those who provide Internet services or

tools for others, but do not themselves make communications of material harmful to minors, do

not fall under the Act.  *Id.* § 231(b).  In addition, an individual may claim an affirmative defense

if he "in good faith, has restricted access by minors to material that is harmful to minors" through

requiring a credit card, adult access code, digital certificate that verifies age, or "by any other

reasonable measures."  *Id.* § 231(c).  Finally, the Act protects against disclosing "any information

collected for the purposes of restricting access" to minors, unless consent was provided, it is

necessary to communicate the protected material, or under a court order.  *Id.* § 231(d).

Several of COPA's terms are defined in the Act.  Most pertinent for present purposes, the

statute defines "material that is harmful to minors" as:

> any communication, picture, image, graphic image file, article, recording, writing, or
> other matter of any kind that is obscene or that--
>
> > (A) the average person, applying contemporary community standards, would find,
> > taking the material as a whole and with respect to minors, is designed to appeal to,
> > or is designed to pander to, the prurient interest;

      (B) depicts, describes, or represents, in a manner patently offensive with respect to minors, an actual or simulated sexual act or sexual contact, an actual or simulated normal or perverted sexual act, or a lewd exhibition of the genitals or post-pubescent female breast; and

      (C) taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

*Id.* § 231(e)(6).[1]

Although the Supreme Court has affirmed this Court's entry of a preliminary injunction against enforcement of the statute, the Supreme Court found "that there is a serious gap in the evidence as to the effectiveness of filtering software" and has remanded the case for full trial. *See Ashcroft v. ACLU*, 124 S.Ct. 2783, 2794-95 (2004). The Court suggested that the parties introduce further evidence on the relative restrictiveness and effectiveness of alternatives to the statute. *See id.* at 2795.

---

[1] In addition, the statutes defines "by means of the World Wide Web" as "placement of material in a computer server-based file archive so that it is publicly accessible, over the Internet, using hypertext transfer protocol or any successor protocol." *Id.* § 231(e)(1). One makes a communication "for commercial purposes only if such person is engaged in the business of making such communications." A person is "engaged in the business" when, upon making a communication

      that includes any material that is harmful to minors, [an individual] devotes time, attention, or labor to such activities, as a regular course of such person's trade or business, with the objective of earning a profit as a result of such activities (although it is not necessary that the person make a profit or that the making or offering to make such communications be the person's sole or principal business or source of income). A person may be considered to be engaged in the business of making, by means of the World Wide Web, communications for commercial purposes that include material that is harmful to minors, only if the person knowingly causes the material that is harmful to minors to be posted on the World Wide Web or knowingly solicits such materials to be posted on the World Wide Web.

*Id.* § 231(e)(2)(B). Finally, the statute defines minor as any person under 17 years of age. *Id.* § 231(e)(7).

After remand, plaintiffs served extensive written discovery on defendant, seeking, among other things, "[a]ll documents concerning the interpretation or enforcement of . . . federal obscenity laws, including, without limitation, documents concerning:"

(1)     content determined to be obscene under such laws;

(2)     documents initiating prosecution under such laws;

(3)     the results of such prosecutions; and

(4)     content reviewed for possible prosecution, but which did not result in prosecution.

Pl. ALCU's Request for Prod. of Docs. at 7.

After lengthy negotiations, the parties agreed that, in response to Request to Produce B, defendant would provide "indictments in cases involving 'pure' obscenity," cases, *i.e.*, cases that did not also charge violation of child pornography and child exploitation laws, and "agreed to provide data on pure obscenity cases filed by DOJ since 1996."  Ltr. fr. Raphael Gomez to Christopher Hansen (Dec. 15, 2005) [Attached as Ex. 2].  Plaintiffs did not move to compel an additional response to Request to Produce B.  *See* Ltr. fr. Christopher Harris to the Hon. Lowell Reed ("Pls.' Mot. to Compel") [Dkt. No. 226].

On January 10, 2006, plaintiffs served defendant with a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6), requesting defendant to designate one or more persons to testify on his behalf who are knowledgeable as to:

The Department of Justice's definitions of "obscene" and "harmful to minors" as established in federal criminal statutes 18 U.S.C. § 1460 and 47 U.S.C. § 231, including but not limited to information concerning content determined to be obscene or not to be obscene under such laws and rationale for that conclusion; content determined to be harmful to minors or not to be harmful to minors under such laws and rationale for that conclusion; enforcement of such laws, including territorial enforcement, with regard to obscene and harmful to minors material;

-4-

number of investigations and/or prosecutions for obscenity or harmful to minors; and criteria that distinguish "obscene" from "harmful to minors," and "harmful to minors" from non-criminal material.

Pls.' Ntc. of Depo. (Jan. 10, 2006) [Attached as Ex. 3].

Defendant has attempted to negotiate in good faith a resolution of this dispute, offering such alternatives as "reformulat[ing] your topics, either through interrogatories under Rule 33, or through specific written questions, proceeding under Rule 31." Ltr. fr. Raphael Gomez to Christopher Hansen (Feb. 9, 2006) [Attached as Ex. 4]. Plaintiffs, however, have rejected these offers, and, without proposing any accommodation, have instead stated that defendant should "file the appropriate motion." Ltr. fr. Christopher Hansen to Raphael Gomez (Feb. 15, 2006) [Attached as Ex. 5]. On February 24, 2006, defendant informed plaintiffs by letter that plaintiffs had not "suggested any alternative accommodation for [defendant's] concerns other than to invite [defendant] to file a motion with the Court." Ltr. fr. Raphael Gomez to Christopher Hansen (Feb. 24, 2006) [Attached as Ex. 6]. Defendant "again invited [plaintiffs] to accept [defendant's] offer to accept service of interrogatories or a deposition of written questions." *Id.* Rather than respond to defendant, on February 27, 2006, plaintiffs informed the Court by letter that plaintiffs "anticipated filing a letter pursuant to Pre-Trial Order 15." *See* Ltr. fr. Christopher Hanser to the Hon. Lowell A. Reed, Jr. (Feb. 27, 2006), at 1. On February 27, 2006, defendant contacted plaintiffs by telephone in one last attempt to resolve this matter without involvement of the Court. The parties discussed their respective positions in further detail and agreed to resolve this matter by defendant addressing the Court first and plaintiffs later responding. *See* Todd Dec. ¶ 8.

## ARGUMENT

**A.** **Plaintiffs' Attempt to Seek Testimony about the Department's Definition of Obscenity or Harmful to Minors Is Improper**

Plaintiffs have not challenged COPA's prohibition against making communications on the Web that contain obscenity and have not alleged that they fear prosecution under any federal statute for obscenity.  Rather, plaintiffs have indicated informally that they have sought and continue to seek discovery on obscenity because they may seek to introduce evidence that obscenity prosecutions would be a less restrictive alternative to COPA for protecting children from harmful to minors material.  Obscene material, of course, lies outside the coverage of the First Amendment.  *See Miller v. California,* 413 U.S. 15 (1973); *Roth v. United States*, 354 U.S. 476 (1957).  By contrast, in order to protect children, the COPA provision at issue addresses material that is "harmful to minors," but not obscene.  *See Ashcroft v. American Civil Liberties Union*, 124 S. Ct. 2783 (2004).  Thus, obscenity prosecutions cannot reasonably be considered as a less restrictive alternative to COPA.  Accordingly, no non-privileged testimony that plaintiffs might seek to elicit about the Department's definition of obscenity could lead to the discovery of admissible evidence about obscenity prosecutions being a lesser restrictive alternative to COPA. Because the COPA provision at issue addresses material of entirely different legal significance, the Department's definition of obscenity would not reach the scope of material covered by COPA.  Information regarding obscenity prosecutions would not cover information regarding what might or might not be prosecuted under COPA.

The Department's definition of obscenity under 18 U.S.C. § 1460 and under COPA is guided by the *Miller* test.  *See* Declaration of Laura Parsky ("Parsky Dec.") [Attached as Ex. 7]

¶ 7.  Similarly, COPA's harmful-to-minors provision employs a modified version of the *Miller* test.  *See id.*  Because "[c]ourts generally refuse to compel the deposition of a government witness if the plaintiffs may obtain discovery by an alternative and less burdensome method to the government," *Gomez v. City of Nashua, NH*, 126 F.R.D. 432, 436 (D.N.H. 1989) (citing *Alex v. Jasper Wyuman & Son*, 115 F.R.D. 156, 158-59 (D. Me. 1986), and *Community Fed. Savings & Loan Ass'n v. Federal Home Loan Bank*, 96 F.R.D. 619, 621-22 (D.D.C. 1983)), deposition testimony about the Department's definition of obscenity and harmful to minors will not lead to the discovery of admissible evidence.  Moreover, because enforcement of COPA has been enjoined from the moment it was signed into law, there has been no implementation of the statute about which relevant discovery could be taken.  *See* Parsky Dec. ¶ 9.

In short, plaintiffs have not shown, and cannot show, that any testimony about the Department's definitions of either obscenity or harmful to minors under COPA are relevant to this litigation.  *See Novartis Pharm. Corp. v. Eon Labs Manu., Inc.*, 206 F.R.D. 392, 394 (D. Del. 2002) (granting motion for protective order because topics in 30(b)(6) notice are not relevant to issues in the litigation); *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 147 F.R.D. 184, 185 (N.D. Ill. 1993) (holding that deposition testimony of government officials about their motives was not relevant to plaintiff's challenge to the city's lead paint ordinance.").

### B.   The Law Enforcement and Deliberative Process Privileges Preclude any Inquiry into the Department's Evaluations of Whether Content Is Obscene or into its Enforcement of Obscenity Laws

Plaintiffs seek testimony, among other things, about "content determined to be obscene or not obscene under such laws and rationale for that conclusion."  Depo. Ntc. at 1-2.  Plaintiffs also seek testimony about "enforcement of such laws, including territorial enforcement, with regards

to obscene . . . material," *id.* at 2, and the "number" of obscenity investigations;  and "criteria that distinguish 'obscene' from 'harmful to minors' and from 'harmful to minors' from non-criminal material."  *Id.*[2]  Because all responsive testimony would be protected by the law enforcement and deliberative process privileges, plaintiffs do not have a right to this testimony, and plaintiffs' notice should be quashed.

The law enforcement privilege is a common law privilege protecting criminal as well as civil law enforcement investigatory files from civil discovery.  *See Jones v. City of Indianapolis*, 216 F.R.D. 440, 443-44 (S.D. Ind. 2003).  *See also Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984).  The privilege, moreover, "is incorporated under Fed. R. Civ. P. 26(b)."  *Hernandez v. Longini*, 1997 WL 754041, *3-*4 (N.D. Ill. 1997).  The purpose of the privilege is, among other things, to prevent disclosure of law enforcement techniques and procedures and otherwise prevent interference in investigations.  *See In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 686-87 (N.D. Ga.) (quoting *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988)).  *See also Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 65-66 (1st Cir. 1984) (law enforcement privilege protects information that tends to reveal law enforcement investigative techniques); *United States v. Winner*, 641 F.2d 825, 831 (10th Cir.

---

[2]  Plaintiffs also seek testimony about "content determined to be harmful to minors or not to be harmful to minors under such laws and rationale for that conclusion;" "enforcement of such laws, including territorial enforcement, with regards to . . . harmful to minors material."  *Id.*

Had the Department made any determinations about content determined to be harmful to minors under COPA, enforced COPA, conducted any investigations or prosecutions under COPA, such information would be protected by the law enforcement and deliberative process privileges for the reasons set forth below.  However, because enforcement of COPA's harmful-to-minors provision has been enjoined since it was signed into law, the Department has not made any such determinations about content that is harmful to minors under COPA, has not enforced COPA's harmful-to minors-provision, and has not conducted any investigations or prosecutions under COPA's harmful-to-minors provision.  *See* Parsky Dec. ¶ 9.

1981) ("The law enforcement investigative privilege is based primarily on the harm which might arise from public disclosure of . . . investigatory files.").

In addition, the deliberative process privilege protects government communications consisting of advice, recommendations, opinions, or other non-factual information involved in the deliberative or policy-making processes of government.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-54 (1975); *Dudman Comm. Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987).  The privilege is also intended to preserve the constitutional separation of powers by "forbid[ding] judicial investigation into the methods by which a[n administrative] decision is reached, the matters considered, and the contributing influences or the role played by the work of others."  *In re Franklin Nat'l Sec. Litig.*, 478 F. Supp. 577, 581 (E.D.N.Y. 1979) (internal quotation omitted).

The primary rationale for the privilege is that effective and efficient government decision making requires a free flow of ideas among governmental officials and that inhibitions will result if officials know that their communications may be revealed to outsiders.  *See id.*  Also underlying the policy is the rationale that

> the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases. . . .  [A] failure to place reasonable limits upon private litigants' access to responsible government officials as sources of routine pretrial discovery would result in the severe disruption of the government's primary function.

*Gomez*, 126 F.R.D. at 436 (quoting *Community Fed. Savings & Loan Assn.*, 96 F.R.D. at 621).[3]

---

[3]  Although purely factual information may not be protected by the deliberative privilege, factual information is privileged if it is inextricably intertwined with the process by which policy is made or if the manner of selecting or presenting facts would reveal the deliberative process. *See Dowd v. Calabrese*, 101 F.R.D. 427, 430-31 (D.D.C. 1984).

With respect to attempts to depose the Department about its prosecutions, courts have expressly held that the decision whether to prosecute is the product of a deliberative process that should be afforded a high degree of protection from public inquiry, *see Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324-37 (D.D.C. 1966) (discussing the importance of protecting the communicative process within the Department of Justice), *aff'd sub nom., VEB Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir.), *cert. denied*, 389 U.S. 92 (1967), and have expressly held that a deposition of the Department to discover the Attorney General's investigation and the basis for the Attorney General's decision not to prosecute protected by the deliberative process privilege to such an extent that the deposition should be quashed. *See, e.g., Gomez* 126 F.R.D. at 435.[4]  In a similar case, the Third Circuit expressly rejected a movant's efforts to depose government officials on why they closed their investigative file and chose not to pursue an enforcement action. *See NLRB v. Stambaugh's Air Srvc., Inc.*, No. 87-3298, 1987 WL 49611, *1-*2 (Nov. 16, 1987) [Attached as Ex. 8].  That court held that such testimony was both immaterial and protected either by the deliberative process or the work product privileges and thus would not lead to the discovery of admissible evidence.  *See id.*

> ### 1.    The Testimony Sought is Protected by the Law Enforcement and Deliberative Process Privileges

In this case, the testimony sought by plaintiffs is protected by the law enforcement and deliberative process privileges.  Plaintiffs' attempt to gain testimony would reveal the Department's confidential law enforcement processes and techniques that it uses to determine whether to bring a prosecution under 18 U.S.C. § 1460.  *See* Parsky Dec. ¶ 10.  To be clear,

---

[4]  Thus, even information about closed investigations is protected by the deliberative process privilege.  *See id.*

despite plaintiffs' apparent attempt to characterize the testimony it seeks concerning the "content determined to be obscene" as factual, disclosure of such information would in fact reveal the Department's deliberations about what content was obscene.  Finally, it would effectively chill departmental decisionmaking about what prosecutions to seek.  *Id.  See also Wayte v. U.S.*, 470 U.S. 598, 607 (1985) (finding that judicially compelled disclosure of the grounds of a prosecution "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.").

### 2.    Plaintiffs Cannot Show That They Are Entitled to Privileged Information

Like many privileges, the law enforcement and deliberative process privileges are qualified, not absolute.  *See Ass'n for Reduction of Violence*, 734 F.2d at 66.  A party seeking discovery of information protected by the law enforcement and/or deliberative process privilege can overcome the privilege only by making a showing of need.  *Id.*  With respect to balancing the public interest in protecting the prosecutorial process against the needs of plaintiffs in an individual lawsuit, courts have considered various factors that are useful in making this determination, including the extent to which disclosure will harm government investigative processes; the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; and, whether the information is available through other discovery or from other sources.  *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

Similarly, courts have used a four-factor test in balancing the deliberative process privilege with the need of the party seeking disclosure:  (1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role in the litigation; and (4) the extent to which disclosure would harm open and frank communication.  *See, e.g., FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

The harm that would befall the Department were it required to disclose this information about obscenity prosecutions is manifest.  As demonstrated in the attached Declaration of Laura Parsky, Deputy Assistant Attorney General for the Criminal Division, disclosure of this information would have a "chilling effect" upon the Department's decision making about which prosecutions to seek.  *See* Parsky Dec. ¶ 10.  Moreover, the testimony sought by plaintiffs would reveal the Department's processes and techniques that it uses to determine whether to bring a prosecution.  *See id.*

By contrast, plaintiffs will gain nothing by eliciting testimony on what content the Department has determined to be obscene, or the Department's enforcement of obscenity, including territorial enforcement.  As demonstrated above, nothing about the obscenity testimony sought by plaintiffs is relevant to this lawsuit.  Plaintiffs, moreover, have already been provided with the indictments and data on the number of "pure" obscenity cases in response to their written discovery requests.  Further, nothing about the Department's motives or thought processes (a reason that the privilege might sometimes be found to give way, *see, e.g., Dep't of Economic Dev. v. Anderson*, 139 F.R.D. 295 (S.D.N.Y 1991)), is at issue in this lawsuit.  *See New York City Managerial Ass'n v. Dinkins*, 807 F. Supp. 955, 958-59 (S.D.N.Y. 1992) ("The

defendant's deliberations can provide no evidence of whether their stated objective [met the appropriate constitutional standard] on its face."). By bringing a pre-enforcement facial challenge, plaintiffs have deprived themselves of the very record they now seek to create.

In the end, plaintiffs' efforts cannot be distinguished from seeking an advisory opinion from the Department about how a statute might be applied. However, as both the Tenth and Seventh Circuits put it, "[t]here is no federal right to obtain advisory opinions from . . . prosecutors." *Lawson v. Hill*, 368 977, 959 (7th Cir. 2004) (rejecting efforts to challenge state flag burning law on First Amendment grounds). *See also Winsness v. Yocum*, 433 F.3d 727, 733 (10th Cir. 2006) (same).

The public interest in protecting this information far outweighs plaintiffs' interest in obtaining it. Thus, this Court should quash plaintiffs' deposition notice.[5]

C.     **Because the Number of Prosecutions for Obscenity Has Already Been Provided to Plaintiffs, Deposition Testimony on this Topic Would Not Lead to the Discovery of Admissible Evidence**

In addition to seeking testimony about irrelevant and privileged information, plaintiffs also seek testimony about the number of prosecutions for obscenity." Pl. Depo. Ntc. at 2.[6] Because "[c]ourts generally refuse to compel the deposition of a government witness if the plaintiffs may obtain discovery by an alternative and less burdensome method to the government," *Gomez*, 126 F.R.D. at 436 (citing *Alex*, 115 F.R.D. at 158-59, and *Community Fed.*

---

[5] In the alternative, defendant moves this Court for a protective order to limit to proceed by written questions pursuant to Fed. R. Civ. P. 31.

[6] Plaintiffs also seek this information about harmful to minors investigations and prosecutions. *See id.* However, because enforcement of COPA has been enjoined since it was signed into law, defendant has not conducted any investigations or prosecutions under COPA's harmful-to-minors provision. *See* Parsky Dec. ¶ 9.

*Savings & Loan Ass'n*, 96 F.R.D. at 621-22), deposition testimony about the number of obscenity prosecutions will not lead to the discovery of admissible evidence.  Rather, subjecting employees of the Department to deposition would violate public policy concerns that the time and resources of that office be conserved for public business.  *Id.*  Any additional relevant, non-privileged information sought by plaintiffs may be obtained by written discovery pursuant to Fed. R. Civ. P. 33 or 34.

## CONCLUSION

For the reasons set forth herein, this Court should grant Defendant's Motion to Quash Plaintiff's Notice of Deposition Pursuant to Rule 30(b)(6), or, in the alternative, for a protective order.

Dated:  February 27, 2006

                              Respectfully Submitted,

                              PETER D. KEISLER
                              Assistant Attorney General

                              PATRICK L. MEEHAN
                              United States Attorney

                              RICHARD BERNSTEIN
                              Assistant U.S. Attorney

                              THEODORE C. HIRT
                              Assistant Branch Director

                              /s/ James D. Todd, Jr.
                              RAPHAEL O. GOMEZ
                              Senior Trial Counsel
                              JAMES D. TODD, JR.
                              JOEL MCELVAIN
                              ISAAC R. CAMPBELL
                              Trial Attorneys
                              United States Department of Justice
                              Civil Division, Federal Programs Branch
                              20 Massachusetts Ave. N.W
                              Washington, D.C. 20001
                              Tel: (202) 514-3378

                              Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2006, a copy of Defendants' Motion to Quash

Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6) was filed electronically via the Court's

ECF system, through which a notice of the filing will be sent to:

>Aden Fine
>American Civil Liberties Union Foundation
>125 Broad Street
>New York, NY 10004

>Attorney for Plaintiffs

/s/ James D. Todd, Jr.
JAMES D. TODD, Jr.
