UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------x
:
AMERICAN CIVIL LIBERTIES UNION,           :    CIVIL ACTION
:
Plaintiffs,           :    NO. 98-5591
:
v.                    :
:
ALBERTO R. GONZALES, in his official capacity as   :
ATTORNEY GENERAL OF THE UNITED STATES,             :
:
Defendant.            :
:
------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO QUASH PLAINTIFFS' NOTICE OF DEPOSITION**

Plaintiffs filed a Notice of Deposition pursuant to Rule 30(b)(6) seeking information concerning defendant's interpretation of and application of the definitions of obscenity and "harmful to minors" as used in federal law. Defendant repeatedly refused to produce a witness on this subject. On February 27, 2006, defendant filed a Motion to Quash Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6), or, In The Alternative, For Protective Order. Plaintiffs submit this memorandum in opposition to defendant's motion.

One of the issues in this case has been the scope of the speech covered by COPA. The government has been willing to opine on the scope of speech covered by COPA on a number of occasions. In its original Motion to Dismiss, the government argued that only one of the plaintiffs had speech that provided even a credible threat of prosecution. Def's Mot. to Dismiss (E.D. Pa.), Dec. 29, 1998 at 30, n. 16; *ACLU v. Reno*, 31 F.Supp.2d 473,

1

480 (E.D. Pa. 1999). The government apparently changed its mind in its Proposed Findings of Fact and Conclusions of Law after the hearing on the Motion to Dismiss. Def's Prop. Findings of Fact (E.D. Pa.), Jan. 14, 1999 at p. 6, paragraph 28, p. 31, paragraph 20 ("The materials identified by plaintiffs are not covered by COPA."). In the first argument in the Supreme Court, the government changed its position again and said in its briefs that certain of plaintiffs' web pages (different from the single web site identified in the Motion to Dismiss) would be "harmful to minors." The government's reply brief indicated that two of plaintiffs' exhibits "would likely not be excluded from [COPA's] coverage as a matter of law." Reply Br. for Pet'r (U.S. Supreme Court, No. 00-1293), Oct. 2001, at 9. At oral argument, the government changed its mind again. See Reply Br. for Pet'r, (U.S. Supreme Court, No. 03-218), Feb. 2004, at 4 (admitting that it changed its mind).

This Court has previously addressed the relevance of this inquiry. Plaintiffs sought documents on the same subject in their Requests for Production of Documents and Interrogatories. The government resisted producing documents on that subject. In its order of December 28, 2005, the Court ordered the government to state which of plaintiffs' web sites contained material that, in the view of the government, was "harmful to minors." Order at 6-7. In so ruling, the Court rejected the government's argument that the answers were irrelevant and/or that they were impermissible because they called for a legal conclusion. *Id.*

There can, therefore, be little doubt that inquiry into the government's definition of obscenity and harmful to minors and application of that definition to specific web pages and/or sites is both relevant and permissible. The government argues that such

inquiry would inevitably invade the law enforcement and deliberate process privileges. To the extent the government has been willing to express opinions in its briefs and arguments, it has already waived any privileges that apply. Equally, as is more fully explained below, plaintiffs do not seek to inquire into such matters as the techniques by which the government seeks out web pages and/or sites to investigate or the factors used by the government to make its discretionary decision to initiate or decline to initiate a prosecution of a particular web page/site that it has determined to be obscene or harmful to minors. Plaintiffs seek only the conclusions that the government has repeatedly been willing to make public ("this site is or is not obscene or harmful to minors") and the rationale(s) or criteria used to make that decision. With these limitations, neither of the asserted privileges is relevant.

The only real question raised by the government's motion is whether the scope of anticipated questioning would go beyond the scope of prior statements or discovery and into impermissible areas. In order to address that question, plaintiffs outline below the subject matter areas about which plaintiffs intend to question the witness and the specific relevance of each.

**DEFINITIONS**

The first area in the Notice, and the key subject matter of the proposed deposition is:

> The Department of Justice's definitions of 'obscene' and 'harmful to minors' as established in federal criminal statutes 18 U.S.C. §1460 and 47 U.S.C. §231, including but not limited to information concerning content determined to be obscene or not to be obscene under such laws and rationale for that conclusion; content determined to be harmful to minors or not to be harmful to minors under such laws and the rationale for that conclusion…and

3

> criteria that distinguish "obscene" from "harmful to minors" and
> "harmful to minors" from non-criminal material.

More specifically, plaintiffs would be likely to display certain content from the Internet and ask the government if that content was obscene or harmful to minors or neither. Although the content would likely include but not be limited to plaintiffs' web sites, this questioning would be no different in kind than asking them to repeat the statements in their briefs about the plaintiffs' web sites or repeat their answers to Interrogatory P. Plaintiffs would then additionally ask for an explanation of the criteria by which the government reached that conclusion.

To take one specific example, defendant has repeatedly argued that COPA is designed to reach "teasers" on commercial pornography web sites. See *e.g.* Br. for the Pet'r (U.S. Supreme Court, No. 00-1293), July 2001, at 25. Plaintiffs might show a page of such teasers to the witness and ask him or her if the page displays obscene material (or material that could potentially be prosecuted as obscene). If the witness believes the material does qualify as potentially obscene, that would defeat the government's argument that COPA is necessary to protect children. Instead of using COPA, the government could simply prosecute that web host under existing, unchallenged obscenity laws. In this case, the U.S. Supreme Court implied that enforcement of obscenity laws might be a less restrictive alternative to enforcement of COPA. *Ashcroft v. ACLU*, 542 U.S. 656, 671.

If the witness were to testify that the particular teaser page were not obscene, plaintiffs might seek to inquire into which of the standards under *Miller v. California*, 413 U.S. 15 (1973) prevented it from being considered obscene. Again, the government has been willing to make those judgments. Reply Br. for the Pet'r (U.S. Supreme Court,

4

No. 00-1293), Oct. 2001, at 9 ("A review of respondents' sample exhibits (Br. 18-19) … Most of those exhibits are excluded from coverage as a matter of law by one or more of the three prongs of the harmful-to-minors standard.") If, for example, the witness testified that the page had "serious literary, artistic, political, or scientific value" as defined in *Miller*, plaintiffs might then ask if the material on the page was "harmful to minors" and, if so, how the government determined that the page had "value" for adults as defined in *Miller* but did not have "value for minors" as defined in COPA.

The government has been willing to express its opinion on this issue. Indeed, in the Motion to Dismiss, the government discussed in detail each of plaintiffs' web pages and argued that none were harmful to minors by listing each of the prongs of COPA and applying each to the web pages. Def's Mot. to Dismiss (E.D. Pa.), Dec. 29, 1998 at 22-33; (The government did concede that one of plaintiffs had speech potentially covered by COPA. *Id.* at 30, n. 16); See Br. for the Appellant (3rd Cir., No. 99-1324), July 2002, at 33-35 (one of plaintiffs' web sites not harmful to minors because fails the prurience prong; another because it does not included actual or simulated sexual acts; another because it has value). In the Supreme Court, the government's reply brief provided explicit explanation for its conclusion that two of the plaintiffs could be prosecuted under COPA. "One of those exhibits contains photographs of abnormal sexual acts and two others contain titillating and graphic first-person accounts of sexual experiences." Reply Br. for the Pet'r (U.S. Supreme Court, No. 00-1293), Oct. 2001, at 9 (citations omitted). See also *Id.* at 12 (discussing the application of the serious value prong of COPA to web sites containing content about "birth control" and other topics); Reply Br. for the Pet'r (U.S. Supreme Court, No. 03-218), Feb. 2004, at 4 (applying the serious value prong of

COPA to web sites containing "a serious discussion about a sexual issue"). More specifically, when the government changed its mind about the "harmful to minors" status of plaintiffs' web sites, it was willing in its briefs to fully explain the criteria it applied: "…in the context of the ArtNet Web site, Serrano's photographs likely have serious artistic value for a legitimate minority of older minors. In the context of the Salon Web site, Susie Bright's column likely has serious literary value for a legitimate minority of older minors." Reply Br. for Pet'r (U.S. Supreme Court, No. 03-218) Feb. 2004, at 5-6. See also *Id.* at 7 ("material intended to entertain will generally fall outside COPA because it either does not appeal to the prurient interest, does not contain patently offensive descriptions of sexual acts, or has serious literary or artistic value."). The deposition does nothing, therefore, but seek elaboration of topics the government has repeatedly discussed.

Plaintiffs may also seek to determine how the government applies the "as a whole" requirement of COPA in making the decision that a page or site is harmful to minors or is not. In a Third Circuit brief, the government said that the "as a whole" requirement "is often provided by accompanying material residing on the same Web page itself." Reply Br. for Appellant on Remand (3rd Cir., 99-1324), Sept. 2002, at 6. The government's change of position from the first Supreme Court reply brief to its first oral argument was later explained by asserting that the pages previously identified as harmful to minors had not been viewed in "context" implying that the government, like this Court and the Third Circuit (See *ACLU v. Reno*, 31 F. Supp. 2d at 480; *ACLU v. Ashcroft*, 322 F3d 240, 252 (2003)) had viewed each web page as the "whole" but was now seeking to change its view (and disagree with the Court and the Third Circuit) to define each web

6

site as the "whole." See Reply Br. for Pet'r (U.S. Supreme Court, No. 03-218), Feb. 2004, at 4. The government further complicated the matter by asserting that a web site "primarily devoted to providing medical information" could be prosecuted if it "display[ed] a bi-weekly column of sexually explicit pornography that is harmful to minors..." Br. for Pet'r (U.S. Supreme Court, No. 03-218), Feb. 2004, at 34. This suggestion again appears to apply the "as a whole" standard to pages, not sites. Plaintiffs would anticipate asking questions about the application of COPA's "as a whole" requirement.

These inquiries are relevant for three reasons. First, defendant conceded at the court conference on February 28, 2006, that to the extent these inquiries concern plaintiffs' web sites, they are at least relevant to standing. Second, as noted, one of the issues in this case is whether there are less restrictive alternatives to COPA. Plaintiffs have alleged that enforcement of obscenity laws is such a less restrictive alternative. Br. for the Resp'ts (U.S. Supreme Court, No. 03-218), Jan. 2004, at 19. In order to determine if that allegation is correct, it is necessary to determine what speech the government believes is non-obscene but harmful to minors and to probe the persuasiveness of the government's determinations. In order to do so, plaintiffs need to understand the line distinguishing speech that is obscene from speech that is harmful to minors and the line distinguishing speech that is harmful to minors from speech that is fully protected for minors as well as adults. Finally, plaintiffs have alleged that COPA is vague. Complaint, Fourth Cause of Action. One measure of testing the vagueness of the statute is whether the government can explain what content is covered by the statute and what content is not.

Defendant argued at the court conference on February 28, 2006, that the government's interpretation of the statute is irrelevant; all that matters is the manner in which a court would ultimately interpret the statute. However, the relevant standard for standing is "credible threat of prosecution" not "credible threat of conviction." *ACLU v. Reno*, 31 F.Supp. 2d at 479; See also Def.'s Mot. to Dismiss (E.D. Pa.), Dec. 29, 1998, at 10. As this Court recognized, that doctrine is particularly strong in the context of the First Amendment because of the danger that fear of prosecution (and not just fear of conviction) will chill protected speech. 31 F.Supp 2d at 481, 497. As Judge Sloviter has written:

> First, it is difficult to characterize a criminal statute that hovers over each content provider, like the proverbial sword of Damocles, as a narrow tailoring. Criminal prosecution, which carries with it the risk of public obloquy as well as the expense of court preparation and attorney's fees, could itself cause incalculable harm. No provider, whether an individual, non-profit corporation, or even large publicly held corporation, is likely to willingly subject itself to prosecution for a miscalculation of the prevalent community standards or for an error in judgment as to what is indecent. A successful defense to criminal prosecution would be small solace indeed.

*ACLU v. Reno*, 929 F.Supp. 824, 855-856.

Thus, the government's view of speech that can be prosecuted is directly relevant.

**EXTRA-TERRITORIAL ENFORCEMENT**

The second area into which plaintiffs seek to inquire is "enforcement of such laws, including territorial enforcement, with regard to obscene and harmful to minors material." Again, plaintiffs previously sought documents relevant to this inquiry. The government resisted, but in its Order of December 28, 2005, this Court specifically found this area of inquiry to be relevant. Order at 4 (requests even on other laws are "relevant because the issue of whether a law similar to COPA has extraterritorial reach could also

have impact on whether COPA has extraterritorial reach"). See also *ACLU v. Reno*, 31 F.Supp. 2d at 496-97; *Ashcroft v. ACLU*, 542 U.S. 656, 667 (2004)("COPA does not prevent minors from having access to those foreign harmful materials.")

Plaintiffs received some documents on this topic but the documents were at best inconclusive. Plaintiffs seek to know if the government contends that COPA reaches overseas speech.

**STATISTICS**

The final area in the Notice of Deposition is "number of investigations and/or prosecutions for obscenity or harmful to minors." Plaintiffs have received documents from the government providing statistics. They show that there have been very few prosecutions of Internet speech for obscenity. At the deposition, plaintiffs would likely ask questions about the reason for the statistics. More specifically, has the government concluded that there is very little obscene speech on the Internet? Alternatively, has the government not made any effort to determine the amount of obscene speech on the Internet? These questions go directly to the use of obscenity laws as a less restrictive alternative to COPA. If the government is not protecting children from obscene speech, then its claim that it has a compelling interest in protecting children from the less explicit harmful to minors speech seems hollow indeed.

**CONCLUSION**

For all these reasons, plaintiffs respectfully ask that the defendant's motion be denied and plaintiffs be permitted to take a deposition along the lines indicated in this Memorandum.

                                                                                Respectfully submitted,

DATE: March 3, 2006

                                                                                 ____/s/_____
CHRISTOPHER A. HANSEN
ADEN J. FINE
BENJAMIN E. WIZNER
CATHERINE CRUMP
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, New York 10004
(212) 549-2500

CHRISTOPHER R. HARRIS
Latham & Watkins LLP
885 Third Ave, Suite 1000
New York, NY 10022
(212) 906-1200

ATTORNEYS FOR PLAINTIFFS

10