**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 98-CV-5591 |
| ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States. | ) ) ) ) | Oral Argument Requested |
| Defendant. | ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL RESPONSE TO CONTENTION INTERROGATORIES**

Ten weeks after the close of party discovery in this case, plaintiffs bring a motion to compel responses to 22 of an additional 42 interrogatories that they served more than two weeks after the close of discovery. Although plaintiffs claim that this Court's March 24, 2006 Order granting defendant's motion to quash plaintiffs' notice of deposition pursuant to Rule 30(b)(6) authorized them to serve these interrogatories, only two of plaintiffs' interrogatories fall within the scope of that Order. In the interest of limiting the scope of any dispute before this Court, defendant provided sufficient answers to those two interrogatories.

This Court should deny plaintiffs' motion to compel. First, none of the remaining 20 interrogatories fall within the scope of plaintiffs' deposition notice or this Court's March 24, 2006 Order. Second, plaintiffs' service of these interrogatories was untimely. Third, plaintiffs have served more than 25 interrogatories on defendant without even attempting to obtain an agreement from defendant to exceed that number or seeking leave from this Court to do so.

Finally, because defendant's response, to the extent one was even required, was timely, no waiver of any of defendant's objections has occurred.

## BACKGROUND

**A.      Statutory Background**

COPA prohibits making "any communication for commercial purposes that is available to any minor and that includes any material that is harmful to minors" done "knowingly and with knowledge of the character of the material, in interstate or foreign commerce by means of the World Wide Web." 47 U.S.C. § 231(a)(1). The statute outlines civil and criminal penalties for violations of its terms, and also details instances of inapplicability, affirmative defenses, and privacy protection requirements. *Id.* § 231. Generally, those who provide Internet services or tools for others, but do not themselves make communications of material harmful to minors, do not fall under the Act. *Id.* § 231(b). In addition, an individual may claim an affirmative defense if he "in good faith, has restricted access by minors to material that is harmful to minors" through requiring a credit card, adult access code, digital certificate that verifies age, or "by any other reasonable measures." *Id.* § 231(c). Finally, the Act protects against disclosing "any information collected for the purposes of restricting access" to minors, unless consent was provided, it is necessary to communicate the protected material, or under a court order. *Id.* § 231(d).

Several of COPA's terms are defined in the Act. Most pertinent for present purposes, the statute defines "material that is harmful to minors" as:

> any communication, picture, image, graphic image file, article, recording, writing, or other matter of any kind that is obscene or that--

(A) the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest;

(B) depicts, describes, or represents, in a manner patently offensive with respect to minors, an actual or simulated sexual act or sexual contact, an actual or simulated normal or perverted sexual act, or a lewd exhibition of the genitals or post-pubescent female breast; and

(C) taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

*Id.* § 231(e)(6).[1]

**B.     Procedural History**

Although the Supreme Court has affirmed this Court's entry of a preliminary injunction

against enforcement of the statute, the Supreme Court found "that there is a serious gap in the

evidence as to the effectiveness of filtering software" and has remanded the case for full trial.

---

[1]   In addition, the statute defines "by means of the World Wide Web" as "placement of material in a computer server-based file archive so that it is publicly accessible, over the Internet, using hypertext transfer protocol or any successor protocol." *Id.* § 231(e)(1).  One makes a communication "for commercial purposes only if such person is engaged in the business of making such communications."  A person is "engaged in the business" when, upon making a communication

that includes any material that is harmful to minors, [an individual] devotes time, attention, or labor to such activities, as a regular course of such person's trade or business, with the objective of earning a profit as a result of such activities (although it is not necessary that the person make a profit or that the making or offering to make such communications be the person's sole or principal business or source of income).  A person may be considered to be engaged in the business of making, by means of the World Wide Web, communications for commercial purposes that include material that is harmful to minors, only if the person knowingly causes the material that is harmful to minors to be posted on the World Wide Web or knowingly solicits such materials to be posted on the World Wide Web.

*Id.* § 231(e)(2)(B).  Finally, the statute defines minor as any person under 17 years of age.  *Id.* § 231(e)(7).

*See Ashcroft v. ACLU*, 542 U.S. 656, 658 (2004).  The Court suggested that the parties introduce further evidence on the relative restrictiveness and effectiveness of alternatives to the statute.  *See id.* at 658-59.

After remand, plaintiffs served extensive written discovery on defendant, seeking, among other things, "[a]ll documents concerning the interpretation or enforcement of . . . federal obscenity laws, including, without limitation, documents concerning:"

    (1)    content determined to be obscene under such laws;

    (2)    documents initiating prosecution under such laws;

    (3)    the results of such prosecutions; and

    (4)    content reviewed for possible prosecution, but which did not result in prosecution.

Pl. ALCU's Request for Prod. of Docs. (Aug. 28, 2005) at 7.

After lengthy negotiations, the parties agreed that, in response to Request to Produce B, defendant would provide "indictments in cases involving 'pure' obscenity," *i.e.*, cases that did not also charge violation of child pornography and child exploitation laws, and "agreed to provide data on pure obscenity cases filed by DOJ since 1996."  Ltr. fr. Raphael Gomez to Christopher Hansen (Dec. 15, 2005) [Attached as Ex. 2 to Def.'s Mot. to Quash].  Plaintiffs did not move to compel an additional response to Request to Produce B.  *See generally* Ltr. fr. Christopher Harris to the Hon. Lowell Reed [Doc. No. 226].

On January 10, 2006, plaintiffs served defendant with a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6), requesting defendant to designate one or more persons to testify on his behalf who are knowledgeable as to:

> The Department of Justice's definitions of "obscene" and "harmful to minors" as established in federal criminal statutes 18 U.S.C. § 1460 and 47 U.S.C. § 231, including but not limited to information concerning content determined to be obscene or not to be obscene under such laws and rationale for that conclusion; content determined to be harmful to minors or not to be harmful to minors under such laws and rationale for that conclusion; enforcement of such laws, including territorial enforcement, with regard to obscene and harmful to minors material; number of investigations and/or prosecutions for obscenity or harmful to minors; and criteria that distinguish "obscene" from "harmful to minors," and "harmful to minors" from non-criminal material.

Pls.' Ntc. of Depo. (Jan. 10, 2006) [Attached as Ex. 3 to Def.'s Mot. to Quash].

Defendant attempted to negotiate in good faith a resolution of this dispute, offering such alternatives as "reformulat[ing] your topics, either through interrogatories under Rule 33, or through specific written questions, proceeding under Rule 31."  Ltr. fr. Raphael Gomez to Christopher Hansen (Feb. 9, 2006) [Attached as Ex. 4 to Def.'s Mot. to Quash].  Plaintiffs, however, summarily rejected these offers, and, without proposing any accommodation, instead stated that defendant should "file the appropriate motion."  Ltr. fr. Christopher Hansen to Raphael Gomez (Feb. 15, 2006) [Attached as Ex. 5 to Def.'s Mot to Quash].

On February 27, 2006, defendant moved to quash plaintiffs' deposition notice.  *See* Doc. No. 255.  In their opposition to defendant's motion, and at the hearing on defendant's motion, plaintiffs claimed that they "would be likely to display certain content from the Internet and ask the government if that content was obscene or harmful to minors or neither."  Pls.' Response (Mar. 3, 2006) [Doc. No. 260] at 4.  *See also, e.g.,* Hrg. Tr. (Mar. 22, 2006) [Doc. No. 266] at 21, lns. 17-18 (Mr. Hansen:  "[S]uppose I show, for example, an image to that official and I say, is this obscene[?]").  Defendant argued, and this Court agreed, that plaintiffs' proffered line of questioning is beyond the scope of their deposition notice; the notice sought testimony from a

Department official about "'content *determined* to be obscene or not to be obscene under such

laws and rationale for that conclusion; [and] content *determined* to be harmful to minors or not to

be harmful to minors under such laws and rationale for that conclusion.'"  Def.'s Reply in

Support of Mot. to Quash (Mar. 10, 2006) [Doc. No. 262] (quoting Pls.' Depo. Ntc. at 1-2

(emphasis added)).  *See also* Mar. 22, 2006 Hrg. Tr. at 27, lns. 23-24 ("The Court:  Sounds like

you [a]re asking [defendant] to answer a hypothetical question.").

      On March 24, 2006, this Court granted defendant's motion to quash.  *See* Order (Mar. 24,

2006) [Doc. No. 264] at 2.  This Court further held that:

> To the extent that inquiry by plaintiffs is to be pursued regarding the topics raised
> in plaintiffs' January 10, 2006, notice of deposition, such inquiry shall be limited
> at this time to contention interrogatories and an inquiry into whether such
> rationales, practices, policies or internal rules exist or existed at an appropriate
> time in the past.

*Id.*

      This Court had previously set the cut-off for fact discovery on March 31, 2006.  *See*

Pretrial Order No. 24 (Mar. 1, 2006) [Doc. No. 258].  Nevertheless, on April 17, 2006 (and not,

as plaintiffs suggest (and as will be explained below), April 18, 2006), more than two weeks after

the close of fact discovery, and even though plaintiffs had previously served defendant with 20

interrogatories on August 28, 2005, plaintiffs served defendant via e-mail and Federal Express

with an additional 42 numbered interrogatories, some including multiple subparts.  Plaintiffs

neither sought leave of this Court to serve interrogatories after the close of fact discovery nor

sought leave of this Court to serve more than 25 interrogatories.

      On May 22, 2006 (not, as plaintiffs contend (and as will be explained below), May 23,

2006), defendant served his response to plaintiffs' new interrogatories.  Without waiving any of

his objections, defendant not only objected but also answered two of the interrogatories.

Defendant's first answer was provided to Interrogatory No. 2.  That interrogatory asked

defendant to:

> 2.     State whether you contend that all Web Site Operators whose Web sites include
> any material that is harmful to minors, and who do not restrict access to such
> material, are subject to liability under COPA, and state the basis for your
> contention.

Pls.' First Set of Contention Interrogs. (Apr. 17, 2006), at 8.  Plaintiffs' interrogatories defined

"Web Site Operator" as "any person who operates a Web Site for 'commercial purposes' (as

defined by § 231(e)(2)(A) of COPA) located on the Internet on an online service."  *Id.* at 6.

> In response, defendant stated the following:
>
> Defendant incorporates his General Objections by reference.  Defendant objects to
> this interrogatory on the ground that it is untimely served.  Plaintiffs'
> interrogatories were plainly served after March 31, 2006, the close of discovery.
> Plaintiffs neither sought leave of the Court nor an agreement with Defendant to
> serve the instant interrogatories outside the Court-mandated discovery deadline.
> Defendant also objects to this interrogatory on the ground that it seeks information
> which exceeds the scope of discovery as set forth in the Court's March 24, 2006
> Order, limiting Plaintiffs' inquiry to the topics raised in its January 10, 2006
> Notice of Deposition, which the Court held was comprised of a request for
> information regarding Department of Justice "rationales, practices, policies, or
> internal rules [that] exist or existed at an appropriate time in the past."  Plaintiffs'
> interrogatory falls outside this narrow line of inquiry.
>
> Subject to and without waiving any objections, Defendant refers Plaintiffs to the
> text of the statute.  To wit, examples of Operators who would not be subject to
> liability include:  A person who did not knowingly, and without knowledge of the
> character of the material, make the material available to minors for a commercial
> purpose; a person engaged in the business of providing an Internet access service;
> a telecommunications carrier engaged in the provision of a telecommunications
> service; a person engaged in the business of providing an Internet information
> location tool; or a person similarly engaged in the transmission, storage, retrieval,
> hosting, formatting, or translation (or any combination thereof) of a
> communication made by another person, without selection or alteration of the
> content of the communication.

Def.'s Objections & Responses to Pls.' First Set of Contention Interrogs. (May 22, 2006), at 5-6.

In light of the question asked – about whether there were any Web Site Operators who publish

harmful to minor material that may not be liable under the statute, defendant was able to refer

plaintiffs to the language of the statute in order to answer the question because the statute directly

identified certain types of Web Site Operators that would not liable.

In addition, Interrogatory 6 asked defendant to:

6.    State whether you contend that in deciding whether to bring obscenity prosecutions under 18 U.S.C. §1460, et. [sic] seq., and in deciding what constitutes obscenity, you consult any written guidelines.  If so, identify those guidelines, state their content, and state how they are used to determine what constitutes prosecutable obscenity.

Pls.' First Set of Contention Interrogs., at 9.  In response, defendant stated that:

Defendant incorporates his General Objections by reference.  Defendant objects to this interrogatory on the ground that it is untimely served.  Plaintiffs' interrogatories were plainly served after March 31, 2006, the close of discovery. Plaintiffs neither sought leave of the Court nor an agreement with Defendant to serve the instant interrogatories outside the Court-mandated discovery deadline. Defendant also objects to this interrogatory on the ground that Plaintiffs have exceeded the maximum number of interrogatories allowed under Fed. R. Civ. P. 33(a), and have neither obtained leave from the Court nor an agreement with Defendant to do so.  In addition, Defendant objects to this interrogatory to the extent that it seeks information protected by the law enforcement privilege. Defendant further objects to this interrogatory on the ground that it requires Defendant to "state the[] content," of any such written guidelines; to the extent that there were any such written guidelines, the documents would speak for themselves.  Subject to and without waiving any objections, Defendant states that the United States Attorneys Manual and Criminal Resource Manual, which both contain information on obscenity crimes, are available to the attorneys of the Department of Justice for consultation, and both may be accessed by the public in the "Electronic Reading Room" of the website maintained by the Executive Office for United States Attorneys.

Def.'s Objections & Responses to Pls.' First Set of Contention Interrogs., at 9-10.  Defendant

subsequently provided plaintiffs with a more specific website address to access the

aforementioned material.  Even though plaintiffs interrogatories were untimely served, and this interrogatory exceeded the limit of 25 interrogatories provided by the Federal Rules, defendant answered this interrogatory in order to limit the scope of any dispute that might be brought before this Court because it was the only inquiry that falls within the scope of this Court's March 24, 2006 Order and the topics identified in plaintiffs' January10, 2006 deposition notice.

Defendant objected to all other interrogatories, among other reasons, (i) because they were untimely served; (ii) to the extent that they exceeded the total limit of 25 interrogatories that plaintiffs are allowed to serve on defendant pursuant to Fed. R. Civ. P 33(a); (iii) to the extent they fell outside the scope of permissible topics allowed by this Court's March 24, 2006 Order and plaintiff's January 10, 2006 deposition notice; (iv) to the extent they sought privileged or Privacy Act protected information; and (v) to the extent that they were so vague and/or over broad that no response is required, or that a response would be unduly burdensome.  *See* Def.'s Objections & Responses to Pls.' First Set of Contention Interrogs., *passim.*

On Friday, June 2, 2006, plaintiffs met and conferred with defendant about interrogatory Nos. 1-20, and 34-36.  Contrary to plaintiffs' assertions, defendant did assert both that he was prejudiced by the timing of these interrogatories, *see* Tr. of Meet and Confer Re:  ALCU's First Set of Contention Interrogs. (June 2, 2006) [Attached as Ex. 1], at 22, lns. 9-14 ("Mr. Harris:  Is there some way in which you were prejudiced by the timing of these interrogatories?  Mr. Todd: Yes.  The [C]ourt contemplated that discovery would close between the parties on March 31, 2006, so that we could move on to expert discovery."), and that interrogatories fell outside the scope of topics raised by plaintiffs' deposition notice.  *Id.* at 5, lns. 8-10, 13-15 (Mr. Todd:  "I view the [C]ourt's March 24, 2006 Order as the controlling document in this situation. . . .

[T]here's no reason that the deposition notice has any further relevance beyond what the [C]ourt held about it in the March 24th Order.").

## ARGUMENT

A.    **Interrogatories 1-5, 7-20, and 34-36 Fall Outside the Scope of Inquiry Permitted by This Court's March 24, 2006 Order and Outside the Plaintiffs' January 10, 2006 Notice of Deposition**

Contrary to plaintiffs' assertions, Interrogatories 1-5, 7-20, and 34-36 fall outside the scope of inquiry permitted by this Court's March 24, 2006 Order and outside plaintiffs' January 10, 2006 deposition notice. Specifically, Interrogatories 1 and 11-16 seek to require defendant to proffer a response to questions about Web Site material when defendant has made no prior determination. Such a request action is tantamount to seeking an advisory opinion, which is impermissible. Moreover, Interrogatories 2 and 3 are overbroad and vague, although defendant has provided an answer to Interrogatory 2. Further, Interrogatories 4-5 and 7-10 also seek to require defendant to provide a response when defendant has made no prior determination, this time requiring defendant to scour the Internet to find and produce 10 examples. In addition, Interrogatories 17-20 seek responses when even plaintiffs acknowledge that defendant has made no such determination. Plaintiffs instead mischaracterize defendant's positions in an attempt to recast their inquiries in a manner that would be proper and permissible. Finally, Interrogatories 34-36 impermissibly seek to compel defendant to provide a response when defendant has made no prior determination. In any event, in light of plaintiffs' decision to seek a pre-enforcement challenge, the language of the statute offers sufficient guidance.

### 1.    Interrogatories 1 and 11-16

Interrogatories 1 and 11-14 are beyond the scope of plaintiffs' deposition notice and this

Court's March 24, 2006 Order.  These interrogatories seek the following:

1.    State whether you contend that any of the Plaintiffs in this action lack standing to bring suit and identify any such Plaintiffs, stating the basis for your contention.

11.    For each of the Web pages attached hereto as Exhibit A, state whether you contend that the Web page includes material that is harmful to minors, and state the basis for your contention.

12.    For each of the Web pages attached hereto as Exhibit A, state whether you contend that the average person, applying contemporary community standards, would find, taking the material as a whole, that the Web page is designed to appeal to, or designed to pander to, the prurient interest of:
  a.    16 year-olds, and state the basis for your contention.
  b.    17 year-olds, and state the basis for your contention.

13.    For each of the Web pages attached hereto as Exhibit A, state whether you contend that the Web page depicts, describes, or represents an actual or simulated sexual act or sexual contact, an actual or simulated normal or perverted sexual act, or a lewd exhibition of the genitals or post-pubescent female breast in a manner that is patently offensive with respect to:
  a.    16 year-olds, and state the basis for your contention
  b.    17 year-olds, and state the basis for your contention.

14.    For each of the Web pages attached hereto as Exhibit A, state whether you contend that the Web page, when taken as a whole, lacks serious literary, artistic, political, or scientific value for:
  a.    16 year-olds, and state the basis for your contention.
  b.    17 year-olds, and state the basis for your contention.

Interrogatories 1 and 11-14 are beyond the scope of plaintiffs' deposition notice because

the January 10, 2006 notice sought testimony from a Department official about "content

*determined* to be obscene or not to be obscene under such laws and rationale for that conclusion;

[and] content *determined* to be harmful to minors or not to be harmful to minors under such laws

and rationale for that conclusion."  Pls.' Depo. Ntc. at 1-2 (emphasis added).  The notice clearly

sought testimony about content that the Department has *already* determined to be obscene or not

obscene or to be harmful to minors or not harmful to minors under COPA.  Thus, despite

plaintiffs' subsequent assertions to the contrary, the terms of the notice plainly did not ask for the

Department to make instant, on-the-spot determinations.  Similarly, this Court's March 24, 2006

Order permits plaintiffs to inquire into "rationales, practices, policies, or internal rules [that] *exist*

or *existed* at an appropriate time in the past."  Doc. No. 264, at 2. (emphasis added).

Consequently, both by the terms of the deposition notice itself and this Court's Order, plaintiffs

cannot now inquire into content about which the Department has *not* made any prior

determination.

     Indeed, this position is consistent with the Court's approach to discovery thus far, in

which the Court has previously declined to compel a response to plaintiffs' Request to Produce P

("All documents concerning materials determined by the Department of Justice to be harmful to

minors but not obscene including, without limitation, all documents reflecting the content of such

material and all documents concerning the rationale for that conclusion.") because such a request

was over broad.  *See* Order (Dec. 29, 2006) [Doc. No. 240] at 5.  This Court also held that it did

"not view the court's task to include re-wording plaintiffs' request to produce P."  *Id.*[2]

     Plaintiffs nevertheless insist that Interrogatories 1 and 11-14 merely inquire into

defendant's "rationales, etc." and "content *determined* to be harmful to minors."  Pl. Mot. to

_____

     [2]  In addition, this Court has already held that plaintiffs' Interrogatory P ("Identify any
speech on the internet that is "harmful to minors" under the definition of COPA but not
obscene.") "is over broad because it is not limited to speech defendant has already determined to
be harmful to minors under COPA but appears to command defendant to search for all speech
over the entire internet and determine whether it is harmful to minors."  *Id.* at 5.

Compel at 10 (emphasis added).  However, on their face, these interrogatories plainly inquire into determinations defendant has not yet made, which even plaintiffs themselves claim they are not seeking.  *Id.*  Plaintiffs seek an end-run around the inappropriate and impermissible nature of their inquiries by casting their interrogatories in a more palatable light.  For example, plaintiffs go so far as to suggest that Interrogatory 1's inquiry into whether plaintiffs have *standing* seeks only to elicit information about the defendant's "current rationale," *id.*, even though defendant made clear in his objection that "'no such determination has yet been made.'"  *Id.* at 6 (quoting defendant's response to Interrogatory 1).  Plaintiffs' claim is self-contradictory.  Plaintiffs claim that they seek to require defendant to make a determination in order to answer the interrogatory so that they can uncover some as of yet unidentified, and to be clear, non-existent, rationale.  Moreover, if plaintiffs wanted to inquire into defendants' "current rationales," then they should have timely propounded the appropriate number of interrogatories that sought the existence of those rationales, and not Interrogatories 1 and 11-14.  None of these interrogatories could be answered without requiring defendant to now make the very determination plaintiffs admit they cannot seek.

Interrogatories 15 and 16 are similarly impermissible, for the reasons set forth above.

These interrogatories seek:

> 15.  For each of the Web pages attached hereto as Exhibit B state whether you contend that each page includes material that is harmful to minors, and state the basis for your contention.
>
> 16.  For each of the Web pages attached hereto as Exhibit B, state whether you contend that each page is prosecutable as obscenity in any jurisdiction in the United States under 18 U.S.C. § 1460 et. seq., and state the basis for your contention.

Plaintiffs appear to admit defendant has not yet made determinations about whether this content is harmful to minors under COPA or is obscene.  *See* Pl. Mot. at 22.  ("As Defendant suggests, Defendant presumably has not yet made judgments about this speech.")  Plaintiffs are correct.  Accordingly, as was explained above, plaintiffs are not entitled to an advisory opinion about hypothetical situations.  Thus these interrogatories are improper and exceed the scope of both plaintiffs' deposition notice and this Court's March 24, 2006 Order..

### 2.      Interrogatories 2 and 3

Defendant provided a sufficient answer to Interrogatory 2, and Interrogatory 3 is beyond the scope of plaintiffs' deposition notice and this Court's March 24, 2006 Order.  These interrogatories seek:

> 2.      State whether you contend that all Web Site Operators whose Web sites include any material that is harmful to minors, and who do not restrict access to such material, are subject to liability under COPA, and state the basis for your contention.

> 3.      State whether you contend that a Web Site Operator whose website includes one thousand Web pages but only one Web page includes material that is harmful to minors and who does not restrict access to this Web page is subject to liability under COPA.

In light of the vague wording of Interrogatory 2, defendant provided a sufficient answer. Plaintiffs simply asked whether "*all* [']Web Site Operators['] whose Web sites include any material that is harmful to minors, and who do not restrict access to such material, are subject to liability under COPA."  Pl. First Set of Contention Interrogs. at 8 (emphasis added).  Plaintiffs defined "Web Site Operator" as "any person who operates a Web Site for 'commercial purposes' (as defined by § 231(e)(2)(A) of COPA) located on the Internet on an online service."  *Id.* at 6. Because § 231(a) requires that any communications be made "knowingly," and § 231(b) makes

-14-

clear that certain activities are not considered "communications" for purposes of the statute's requirements, defendant simply referred plaintiffs to the text of the statute to make clear that not *all* Web Site Operators, as plaintiffs defined that term, who "included" unrestricted access to harmful to minors material would be liable under COPA.  *See* Def.'s Objections & Responses to Pl.'s First Set of Contention Interrogs. at 5-6 ("Examples of Operators who would not be subject to liability include:  A person who did not knowingly, and without knowledge of the character of the material, make the material available to minors for a commercial purpose; a person engaged in the business of providing an Internet access service; a telecommunications carrier engaged in the provision of a telecommunications service; a person engaged in the business of providing an Internet information location tool; or a person similarly engaged in the transmission, storage, retrieval, hosting, formatting, or translation (or any combination thereof) of a communication made by another person, without selection or alteration of the content of the communication.").

By contrast, as defendant noted in his response, Interrogatory 3 is vague because it neither identifies "whether the hypothetical Web page that includes material that is harmful to minors was communicated knowingly and with knowledge of the character of the material, nor identifies the type of Web Site Operator" in question.  Because Interrogatory 3 asked defendant to make a determination it obviously has not already made about the statute's coverage based on plaintiffs' vague hypothetical, it fell outside the scope of plaintiffs' deposition notice and this Court's Mach 24, 2006 Order.

To be clear, although plaintiffs do not appear to believe that defendant has not yet considered every possible application of the statute, including the one posed in their hypothetical, that is the nature of any pre-enforcement facial challenge to a statute.  Indeed, plaintiffs filed this

lawsuit before this statute was signed into law, and it has been enjoined from enforcement since the moment it came into effect.  Thus, the government has had no opportunity to engage in the case-by-case analysis that it uses to determine the scope of a statute's applicability.  Accordingly, plaintiffs have deprived themselves of the very record they now seek to create.  Instead, they are in effect impermissibly seeking an advisory opinion about a statute's coverage.  This they cannot do.

### 3.    Interrogatories 4-5, 7-10

Interrogatories 4-5 and 7-10 are beyond the scope of plaintiffs' deposition notice and this Court's March 24, 2006 Order.

4.    State whether you contend that on the Internet there is material that is harmful to minors but not prosecutable as obscenity in any jurisdiction in the United States under 18 U.S.C. § 1460 et. [sic] seq., and if so, provide 10 examples and state the basis for your contention.

5.    State whether you contend that there is any material or content on the Internet prosecutable as obscenity in any jurisdiction in the United States under 18 U.S.C. § 1460 et. [sic] seq., and if so provide 10 examples, explain whether they are being prosecuted, and if not, explain why not.

Interrogatories 4 and 5 are beyond the scope of their deposition notice; the notice sought testimony from a Department official about "content *determined* to be obscene or not to be obscene under such laws and rationale for that conclusion; [and] content *determined* to be harmful to minors or not to be harmful to minors under such laws and rationale for that conclusion."  Pls.' Depo. Ntc. at 1-2 (emphasis added).  The notice clearly sought testimony about content that the Department has *already* determined to be obscene or not obscene or to be harmful to minors or not harmful to minors under COPA.  Thus, by the terms of the deposition notice itself, plaintiffs cannot now inquire about content about which the Department has *not* made any determination.

Moreover, defendants have already twice made clear that because COPA has been enjoined since it was signed into law, defendant has made no harmful-to-minors determinations beyond those advanced in its standing arguments or the Court-Ordered responses to Interrogatory Q. *See* Declaration of Laura Parsky ("Parsky Dec.") ¶ 9 [Attached as Ex. 7 to Def.'s Mot. to Quash].  Plaintiffs have even admitted that they know there are no current rationales or policies. *See* March 22, 2006 Hrg. Tr. at 26 lns. 12-15 ("The Court:  Do you have any statement by the defendant that it has a policy about which you want to inquire.  Mr. Hansen:  The direct answer to your question is no.").  Nevertheless, plaintiffs continue to insist that "there must be" some "hidden law, the secret law that the [defendant] actually appl[ies] in making the determinations." *Id.* at 26, lns. 20-21; 25, lns. 15-16.  In response, this Court recognized that the determinations defendant may have made in advancing its standing arguments are "at best implications or at worst, argumentative advocacy that the party ought to be able to exert and not be bound in the future of the case."  *Id.* at 36, lns. 16-18.

In an effort to salvage Interrogatories 4 and 5, plaintiffs now state in their motion to compel that, were the defendant to state that he has made no harmful to minors determinations under COPA or obscenity determinations under 18 U.S.C. § 1460 *et seq.,* it would now be sufficient.  *See* Pl. Mot. at 16.[3]  On their face, however, Interrogatories 4 and 5 do not ask defendant *whether or not he has already determined* that there is harmful to minors material under COPA or that there is obscene material on the Web.  Rather, the interrogatories clearly ask defendant to determine, at the present time, whether there is currently any content that is harmful

---

[3]  It should also be noted that plaintiffs failed to offer this "clarification" at any point during their meet and confer with defendant.  *See generally* Tr. of Meet & Confer (June 2, 2006).

to minors under COPA or obscene on the Internet.  However, this Court has already declined to

compel a response to plaintiffs' Request to Produce P ("All documents concerning materials

determined by the Department of Justice to be harmful to minors but not obscene including,

without limitation, all documents reflecting the content of such material and all documents

concerning the rationale for that conclusion.") because it was over broad.  *See* Dec. 29, 2005

Order at 5.  So, too, are Interrogatories 4 and 5, for precisely the same reason.  Moreover, just as

this Court held that it did "not view the court's task to include re-wording plaintiffs' request to

produce P," *id.*, plaintiffs cannot now re-write these untimely interrogatories in an attempt to

salvage them.[4]  Plaintiffs' inquiry about completely unidentified web pages from completely

unidentified web sites is beyond the scope of the deposition notice, beyond this Court's March 24,

2006 Order, and in any event would be over broad.[5]

　　　　Plaintiffs voluntarily elected to file a pre-enforcement challenge to the COPA statute, as is

their right.  However, just as plaintiffs may reap the benefit of their litigation strategy, they must

also face the consequences of their chosen course of action.  Here, no determination has been

made as to the subjects of plaintiffs' inquiries, and plaintiffs are not entitled to what is tantamount

to an advisory opinion to compensate for the disadvantage of filing a pre-enforcement challenge.

---

[4]  In addition, this Court has already held that plaintiffs' Interrogatory P ("Identify any speech on the internet that is "harmful to minors" under the definition of COPA but not obscene.") "is over broad because it is not limited to speech defendant has already determined to be harmful to minors under COPA but appears to command defendant to search for all speech over the entire internet and determine whether it is harmful to minors." *Id.* at 5.

[5]  Plaintiffs' suggestion that their request for 10 examples of harmful to minors under COPA or obscene material cures the interrogatories over breadth problem ignores the fact that the interrogatories are over broad simply because they are "not limited to speech defendant has already determined to be harmful to minors under COPA." *Id.*

Interrogatories 7 - 10 are similarly beyond the scope of plaintiffs' notice and this Court's

Order, for the reasons set forth above.  These interrogatories seek:

7.   State whether you contend that there is material on the Internet that the average
person, applying contemporary community standards, would find, taking the
material as a whole is designed to appeal to, or designed to pander to, the prurient
interest of 16 year-olds but not to 17 year-olds, and if so provide 10 examples and
state the basis for your contention.  If you do so contend, but are unaware of
examples, describe the characteristics of such material.

8.   State whether you contend that there is material on the Internet that depicts,
describes, or represents an actual or simulated sexual act or sexual contact,
an actual or simulated normal or perverted sexual act, or a lewd exhibition
of the genitals or post-pubescent female breast in a manner that is patently
offensive with respect to 16 year-olds but not to 17 year-olds, and if so
provide 10 examples and state the basis for your contention.  If you do so
contend, but are unaware of examples, describe the characteristics of such
material.

9.   State whether you contend that there is material on the Internet that, when
taken as a whole, lacks serious literary, artistic, political, or scientific value
for 16 year-olds, but does not lack such value for 17 year-olds, and if so
provide 10 examples and state the basis for your contention. If you do so
contend, but are unaware of examples, describe the characteristics of such
material.

10.  State whether you contend that material on the Internet that:
a.   the average person, applying contemporary community standards,
would find, taking the material as a whole is designed to appeal to,
or designed to pander to, the prurient interest of 10 year-olds but not
16 year-olds;
b.   that depicts, describes, or represents an actual or simulated sexual
act or sexual contact, an actual or simulated normal or perverted
sexual act, or a lewd exhibition of the genitals or post-pubescent
female breast in a manner that is patently offensive with respect to
10 year-olds but not 16 year-olds;
c.   that when taken as a whole, lacks serious literary, artistic, political,
or scientific value for 10 year-olds but has such value for 16 year-
olds is material that is harmful to minors, and state the basis for
your contention.

-19-

With these interrogatories, plaintiffs seek more than an on-the-spot determination, which is akin to an advisory opinion.  These interrogatories seek to require defendant to make an instant determination and then scour the internet to locate examples of any such materials.  Such a request plainly exceeds the bounds of this Court's March 24, 2006 Order.

### 4.    Interrogatories 17-20

Interrogatories 17- 20 are beyond the scope of this Court's March 24, 2006 Order and plaintiffs' deposition notice.

17.    For each of the Web pages located on the CD-ROM submitted as Defendant's Exhibit 48, and printed out as Defendant's Exhibits 49-58 and entered into evidence in this matter on January 25, 1999 during the examination of Damon Hecker, state whether you contend that each page includes material that is harmful to minors, and state the basis for your contention.

18.    For each of the Web pages located on the CD-ROM submitted as Defendant's Exhibit 48, and printed out as Defendant's Exhibits 49-58 and entered into evidence in this matter on January 25, 1999 during the examination of Damon Hecker, state whether you contend that each page is prosecutable as obscenity in any jurisdiction in the United States 18 U.S.C. § 1460 et. seq., and state the basis for your contention.

19.    In your original Motion to Dismiss in this matter of December 29, 1998, you contended that only one of plaintiffs had speech that provided even a credible threat of prosecution.  Defendant's Motion to Dismiss at 30, n. 16 (Dec. 29, 1998).  In your Proposed Findings of Fact and Conclusions of Law after the hearing, you contended that the materials identified by plaintiffs were not covered by COPA.  Defendant's Proposed Findings of Fact at 6 para. 28, 31 para. 20 (Jan. 14, 1999). State the basis for this change of contention.

20.    In your reply brief before the Supreme Court in this matter in 2001, Reply Br. for the Pet'r (U.S. Supreme Court, No. 00-1293) Oct. 2001, at 9, you contended that two of plaintiff's exhibits contained material that is harmful to minors.  In a subsequent Reply brief, in February, 2004, Reply Br. For the Pet'r (U.S. Supreme Court, No. 03-218), Feb. 2004, at 5-6, you

contended that the same pages do not contain material that is harmful to
minors. State the basis for this change of contention.

With respect to Interrogatories 17 and 18, plaintiffs expressly admit that defendant did not

"explicitly assert" that any content in defendant's exhibit 48 referred in Interrogatories 17 and 18

was harmful to minors under COPA during the hearing on plaintiffs' motion for a preliminary

injunction, and implicitly admits that defendant also did not make any obscenity determinations

about Exhibit 48.  *See* Pl. Mot. at 24-25.  Because plaintiffs are correct that defendant has not

already made any such determinations, these interrogatories are plainly beyond the scope of

plaintiffs' deposition notice and this Court's March 24, 2006 Order.[6]

With respect to Interrogatories 19 and 20, both interrogatories mischaracterize the legal

arguments advanced at both the hearing on plaintiffs' motion for preliminary injunction and at the

Supreme Court, to suggest that defendant has changed his position when, in fact, there was no

change.  As is clear from the document itself, defendant's motion to dismiss in fact argued that

none of the plaintiffs had standing.  *See* Def.'s Mot. to Dismiss (Dec. 29, 1998) [Doc. No. 50] at

30, n. 16; *see also id.* at 33-51.  Similarly, a review of defendant's Oct. 2001 reply brief

demonstrates that defendant only made a reference to two of plaintiffs' sample exhibits in the

conditional tense, which can hardly be considered to be an actual determination made by

defendant.  *See Ashcroft v. ACLU*, No. 00-1293 (Reply Br. for Pet'r (Oct. 2001) at 9) ("If

regularly displayed on the Web for profit, those exhibits would likely not be excluded from

coverage as a matter of law.").  Accordingly, defendant has not made any determination that any

---

[6]  It should also be noted that the plaintiff in question, Riot Grrl, is no longer a plaintiff in
this action and that its Web Site is no longer in operation.

-21-

content was, in fact, harmful to minors, and these interrogatories thus fall outside the scope of

plaintiffs' deposition notice and this Court's March 24, 2006 Order.

### 5.      Interrogatories 34-36

Interrogatories 34-36 are beyond the scope of plaintiffs' deposition notice and this Court's

March 24, 2006 Order.

> 34.    State whether you contend that Web Site Operators who are not residents of
> the United States and who host a website on a server located outside of the
> United States but whose Web sites are viewable in the United States can be
> prosecuted under COPA, and state the basis for your contention.

> 35.    State whether you contend that Web Site Operators who are residents of the
> United States, and who host a website on a server located outside of the
> United States and whose Web sites are viewable in the United States can be
> prosecuted under COPA, and state the basis for your contention.

> 36.    State whether you contend that Web Site Operators who are not residents of
> the United States and who host a website on a server located in the United
> States and whose Web sites are viewable in the United States can be
> prosecuted under COPA, and state the basis for your contention.

Contrary to plaintiffs' suggestion, Pl. Mot. at 29, defendant has objected, and continues to

object, to these interrogatories because they fall outside both plaintiffs' deposition notice and this

Court's March 24, 2006 Order.  Plaintiffs plainly seek to require defendant to make a

determination about COPA's application in three hypothetical situations.  Although plaintiffs do

not appear to believe that defendant has not yet considered every possible application of the

statute, including the one posed in their hypothetical, that is the nature of a pre-enforcement facial

challenge to a statute.  Indeed, plaintiffs filed this lawsuit before this statute was signed into law,

and it has been enjoined from enforcement since the moment it came into effect.  Thus, the

government has had no opportunity to engage in the case-by-case analysis that it uses to determine

the scope of a statute's applicability.  Accordingly, plaintiffs have deprived themselves of the very record they now seek to create.  Instead, they are in effect impermissibly seeking an advisory opinion about a statute's coverage, an opinion for which they cite no authority for the right to obtain and that no litigant is entitled to obtain.[7]

### B.      Plaintiffs' Interrogatories Are Untimely

Despite this Court's Pre-Trial Order setting March 31, 2006 as the close of discovery, *see* Doc. No. 258, plaintiffs served additional interrogatories more than two weeks after the close of party discovery, and without even petitioning this Court to extend this deadline.  Because party discovery has closed, plaintiffs should not receive the benefit of this Court's supervision over further party discovery.  *See, e.g., Northern Ind. Pub. Srvc. Co. v. Col. Westmoreland, Inc*., 112 F.R.D. 423, 424 (N.D. Ind.) (party need not respond to interrogatories untimely served), *aff'd mem.,* 845 F.2d 1024 (7th Cir. 1986).  *See also Saalman v. Reid*, 2006 WL 581246, * 1 (S.D. Ohio 2006) (same).

Plaintiffs erroneously claim this Court's March 24, 2006 Order authorized them to serve contention interrogatories without regard to the March 31, 2006 cut-off for party discovery.  *See* Pl. Mot. at 5.  However, a close reading of that Order demonstrates that it authorized the form (and content) of the discovery that plaintiffs could pursue, *see* March 24, 2006 Order at 2 ("such

---

[7]  To be clear, however, COPA contains no limit on its extraterritorial enforcement. Moreover, in light of the express language of the statute, it is clear that Congress intended the statute to apply to "whoever" knowingly makes any communication for commercial purposes that is available to any minor and that includes any material that is harmful to minors either "in interstate or *foreign* commerce" by means of the *World Wide* Web.  47 U.S.C. § 231(a) (emphasis added).  This language is more than sufficient to overcome any presumption against extraterritorial application of the statute.  *Compare U.S. v. Harvey*, 2 F.3d 1318, 1328-39 (3[d] Cir. 1993) (holding that similar language contained in the Protection of Children Sexual Exploitation Act, 18 U.S.C. §§ 2251-57 (1993) applied to extraterritorial conduct).

inquiry shall be limited at this time to contention interrogatories and an inquiry into whether such rationales, practices, policies or internal rules exist or existed at an appropriate time in the past"), but was silent as to the date by which plaintiffs could conduct any such discovery. *See id.*

Rather than simply "interpret" the Order's silence as allowing plaintiffs to set their own deadline to conduct additional discovery, Pl. Mot. at 4, plaintiffs should have petitioned this Court to extend or reopen the discovery deadline. *See, e.g., Kulkarni v. CUNY*, 2003 WL 23319 (S.D.N.Y. Jan. 3, 2003). Provided that plaintiffs could have demonstrated that they have not had a "fully adequate opportunity for discovery," *Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2$^d$ Cir. 1989); *Phoenix Technologies, Inc. v. TRW, Inc.*, 834 F. Supp. 148, 151 n.4 (E.D. Pa. 1993), this Court could have decided, after an opportunity to hear from defendant, whether, in light of the pending trial date and defendant's other obligations, an extension or reopening of party discovery might have been appropriate, set an appropriate date by which to conduct this additional discovery, and make any other necessary adjustments to the Case Management Order. However, because plaintiffs never requested that party discovery be extended or reopened, they cannot now bring a motion to compel. *Hunter v. Trussel*, 2006 WL 1071877, *2 (S.D. Ohio Apr. 24, 2006) (following the close of discovery, party cannot seek new additional discovery by filing a motion to compel). To be clear, contrary to plaintiffs' assertion, *see* Pl. Mot. at 5, requiring any further response by defendant would be highly prejudicial at this stage of the litigation. Now that fact discovery has closed, defendant needs to devote his resources, in the time remaining, towards preparing expert rebuttal reports, taking and defending expert depositions, and preparing a potentially dispositive motion based on the party discovery already conducted, not to mention other trial preparation.

In a further effort to demonstrate that these additional interrogatories are not untimely, plaintiffs erroneously claim that service of their deposition notice on January 10, 2006 somehow makes service of their additional interrogatories on April 17, 2006 (most of which, as demonstrated above, are not even within the scope of the deposition notice) timely. *See* Pl. Mot. at 5. They even argue that it was defendant's "refusal" to comply with their deposition notice that caused the delay. *Id.* Plaintiffs' assertions ignore several inconvenient, but extremely pertinent, facts: First, plaintiffs ignore the fact that, no later than February 9, 2006, it was defendant who in fact offered to proceed "through interrogatories under Rule 33." Ltr. fr. Raphael Gomez to Christopher Hansen (Feb. 9, 2006). Second, plaintiffs ignore the fact that it was they who rejected this offer, and, without proposing any accommodation, instead stated that defendant should "file the appropriate motion." Ltr. fr. Christopher Hansen to Raphael Gomez (Feb. 15, 2006). Plaintiffs refused to negotiate or compromise, thereby failing to capitalize on time available to them during fact discovery. Third, plaintiffs ignore the fact that this Court granted defendant's motion to quash and ordered plaintiffs to proceed by interrogatory, clearly demonstrating both that defendant's "refusal" to comply with plaintiffs' deposition notice and that defendant's proposal to proceed by interrogatory, were, in fact, quite reasonable. Thus, plaintiffs squandered additional discovery time by gambling that they would prevail in the motion to compel a deposition. Accordingly, it is clear from the actual record of events that plaintiffs are responsible for the delay in pursuing this line of inquiry. Plaintiffs should not be rewarded for their refusal to compromise and their ill-advised litigation strategy with a one-sided extension of time for discovery that is not even related to their topics in their January 10, 2006 deposition notice.

Finally, even if plaintiffs had petitioned this Court to extend party discovery so that they could serve these interrogatories (which they have not), it is unlikely that they could have demonstrated that they have not had an adequate opportunity to conduct discovery in the time already provided by this Court.  *Accord Trebor Sportswear Co.,* 865 F.2d at 511.

C.      **Plaintiffs Have Exceeded the Number of Interrogatories Permitted Under the Federal Rules**

Plaintiffs' service of an additional 42 interrogatories (although they have moved to compel a response to 22 of these an interrogatories (many of which include subparts)), in addition to the 20 interrogatories they served on August 28, 2005, is neither permitted by the Federal Rules nor authorized by this Court's March 24, 2006 Order.

The Federal Rules provide that "[w]ithout leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts. . . .  Leave to serve additional interrogatories shall be granted to the extent consistent with the principles of Rule 26(b)(2)."  Fed. R. Civ. P. 33(a).  The Comments provide that leave is required "not to prevent needed discovery, but to *provide judicial scrutiny before parties make potentially excessive use of this discovery device*."  *Id.*  Advisory Comm. Nts., 1993 Amends. (emphasis added).  Plaintiffs sought neither to enter into written stipulation nor to obtain leave of this Court before serving defendant with an additional 42 numbered interrogatories (many including subparts).  Of course, responding to such a large number of additional interrogatories is highly prejudicial to defendants, especially after the close of discovery.  These interrogatories necessarily detract defendant from attending to other pressing matters currently on the litigation schedule, including upcoming rounds of expert discovery and the briefing of dispositive motions.

Despite this clear limit on the number of interrogatories, plaintiffs claim that this Court's March 24, 2006 Order authorized them to serve an unspecified (and thus indefinite) number of interrogatories on defendant.  However, the text of that Order entirely belies plaintiffs' claim. That Order provided only that "*[t]o the extent that inquiry by plaintiffs is to be pursued* regarding the topics raised in plaintiffs' January 10, 2006, notice of deposition, such inquiry *shall be limited at this time to contention interrogatories*."  Order at 2 (emphasis added).  Thus, while the Order allowed plaintiffs to pursue this line of inquiry, it recognized that plaintiffs might not even want to pursue this line of inquiry, and it certainly did not say anything about granting plaintiffs leave to exceed the limit on the number of interrogatories provided by the Federal Rules.  Plaintiffs' cavalier decision to "interpret" *sua sponte*, the Court's Order as being leave to serve a self-determined "sufficient" number of interrogatories, Pl. Mot. at 4, flouts both the very core of the Federal Rule's limit on interrogatories and this Court's authority to scrutinize a request to exceed this limit in order to prevent "excessive use of this device."  Fed. R. Civ. P 33(a) Advisory Comm. Nts. 1993.  Plaintiffs' abuse of this limit is all the more self-evident in light of the fact that, to the extent plaintiffs wanted to exceed the limit, all they need have done before serving an additional 42 interrogatories on defendant was seek and obtain a written stipulation or seek and obtain leave of this Court.  It is, of course, too late in the day for plaintiffs, in effect, to seek and obtain leave now, in the context of their motion, to exceed the limit by moving to compel responses to only 22 of their additional interrogatories (many of which contain subparts).  Accordingly, even if the interrogatories fell within the scope of the Court's Order (which they do not), and were timely (which they are not), defendant had and continues to have no obligation to respond to more than 25 interrogatories.

D.      **Defendant's Response Was Timely**

Contrary to plaintiffs' claim, defendant's response to plaintiffs' interrogatories fell within the time prescribed by the Federal Rules.  First, a party need not even respond to discovery served after the discovery deadline.  *See, e.g., Northern Ind. Pub. Srvc. Co. v. Col. Westmoreland, Inc*., 112 F.R.D. at 424 (party need not respond to interrogatories untimely served).  Accordingly, a party cannot be held to have waived its objections to those untimely interrogatories by failing to respond to interrogatories, much less responding one day late.

Second, because plaintiffs served their contention interrogatories by e-mail and by Federal Express on April 17, 2006 (not, as plaintiffs suggest for the convenience of their own argument, April 18, 2006), defendant's service of his response on May 22, 2006 (not, as plaintiffs contend, May 23, 2006) by Federal Express is timely under the Federal Rules.  *See* Fed. R. Civ. P 33(b)(3) (requiring service of a response *within 30 days of service* of interrogatories); Fed. R. Civ. P (6)(e) (providing an *additional three days* time to respond whenever service is made by U.S. Mail, electronic means, or other consented means); Fed. R. Civ. P 6(a) (extending *until the following business day* any deadline that falls on a Saturday, Sunday, or federal holiday); Fed. R. Civ. P 5(b)(2)(D) (service is *complete* on delivery to an "agency designated to make delivery").  In total, the Federal Rules provide for up to 30 days to  respond to interrogatories, *plus an additional three days* when the interrogatories are served by means such as e-mail and/or Federal Express, and extend that time to the first business day when, as here, the deadline falls on a Saturday.  In addition, the Federal Rules provide that service is complete on delivery to the agency that is designated to make delivery, such as Federal Express, *not, in the case of plaintiffs' untimely service of their contention interrogatories, on receipt by defendant by Federal Express, or, in the*

*case of defendant's timely service of his response to plaintiffs' interrogatories, on receipt by*

*plaintiffs.*  Plaintiffs cannot now deny that defendant has expressly requested, and plaintiffs have

agreed, that the parties serve documents by Federal Express and/or e-mail rather than U.S. Mail.[8]

Thus, defendant's service of his responses on Monday, May 22, 2006 by Federal Express (the first

business day after Saturday, May 20, 2006, which, in turn, was 33 days after plaintiffs served their

interrogatories by e-mail and by Federal Express), was timely under the Federal Rules, and no

waiver of his objections has occurred.

      Third, even if defendant's service by Federal Express were untimely by one day (which it

was not), plaintiffs cite to cases in which courts have only found a waiver of objections when a

party has entirely failed to respond to properly served interrogatories, *Joseph v. General*

*Engineering Co.*, 2002 WL 31618810 (D.V.I. Apr. 15, 2002) (missing deadline by four months

constituted waiver of objections), *aff'd* (contrary to plaintiffs' suggestion) *on other grounds*, 264

F.3d 302 (3[d] Cir. 2000), or served their response to properly served interrogatories at least ten

days late.  *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 529 (E.D. Pa. 1999) (ten

days late); *Davis v. Romney*, 53 F.R.D. 247, 248 (E.D. Pa. 1971) (two months late).  Plaintiffs fail

to cite any case in which a party was held to have waived its objections by serving its responses to

interrogatories one day late, much less any case in which a party was held to have waived its

objections to interrogatories that were themselves untimely served, especially in light of the fact

that no response at all was required.  Accordingly, defendant has not waived its objections to

plaintiffs' untimely interrogatories.

---

      [8] Ironically, were plaintiffs to claim that there was no agreement to serve documents by
e-mail or by Federal Express, then plaintiffs would never have effected service of the
interrogatories on defendant, and this matter would not even be before this Court.

## CONCLUSION

For the reasons set forth herein, this Court should deny plaintiffs' motion to compel responses to their contention interrogatories.

Dated:  June 20, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

PATRICK L. MEEHAN
United States Attorney

RICHARD BERNSTEIN
Assistant U.S. Attorney

THEODORE C. HIRT
Assistant Branch Director

/s/ James D. Todd, Jr.
RAPHAEL O. GOMEZ
Senior Trial Counsel
JAMES D. TODD, JR.
ISAAC R. CAMPBELL
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. N.W
Washington, D.C. 20001
Tel: (202) 514-3378

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2006, a copy of Defendants' Opposition to Plaintiffs'

Motion to Responses to Contention Interrogatories was filed electronically via the Court's ECF

system, through which a notice of the filing will be sent to:

> Aden Fine
> American Civil Liberties Union Foundation
> 125 Broad Street
> New York, NY 10004
>
> Attorney for Plaintiffs

/s/ James D. Todd, Jr.
JAMES D. TODD, Jr.
