1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3

4       ------------------------------X

5     AMERICAN CIVIL LIBERTIES UNION, :

6     ET AL,                          :

7                       Plaintiffs :

8          v.                        :   CA No. 98-CV-5591

9     ALBERTO R. GONZALES, in his    :

10    official capacity as Attorney  :

11    General of the United States,  :

12                      Defendant :

13      ------------------------------X

14

15         MEET AND CONFER REGARDING PLAINTIFF ACLU's

16        FIRST SET OF CONTENTION INTERROGATORIES TO

17         ALBERT R. GONZALES, IN HIS CAPACITY AS

18          ATTORNEY GENERAL OF THE UNITED STATES

19                   Washington, D.C.

20                 Friday, June 2, 2006

21                    11:00 a.m.

22

23

24

25    Reported by:  Nancy Bond Rowland

```
 1              MEET AND CONFER, held at the offices of:

 2

 3              United States Department of Justice

 4              20 Massachusetts Avenue, N.W.

 5              Washington, D.C.

 6

 7              Pursuant to agreement, before Nancy Bond

 8     Rowland, Registered Professional Reporter and Notary

 9     Public in and for the District of Columbia.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2    ON BEHALF OF PLAINTIFFS:

 3         CHRISTOPHER HARRIS, ESQUIRE  (via telephone)

 4         JEROEN van KWAWEGEN, ESQUIRE  (via telephone)

 5         ADDISON GOLLADAY, ESQUIRE  (via telephone)

 6         LATHAM & WATKINS, LLP

 7         885 Third Avenue, Suite 1000

 8         New York, NY  10022-4834

 9         (212) 906-1200

10

11    ON BEHALF OF DEFENDANT:

12         JAMES TODD, ESQUIRE

13         ISAAC CAMPBELL, ESQUIRE

14         RAPHAEL GOMEZ, ESQUIRE

15         KENNETH SEALLS, ESQUIRE

16         TAMARA ULRICH, ESQUIRE

17         DAVID EDWARDS, intern

18         UNITED STATES DEPARTMENT OF JUSTICE

19         Civil Division

20         20 Massachusetts Avenue, N.W.

21         Washington, D.C.  20530

22         (202) 616-1016

23

24

25
```

```
1                    P R O C E E D I N G S
2            MR. TODD:  I just wanted to have this meet
3    and confer so that you could basically walk us through
4    some of your interrogatories and explain to us how they
5    relate to the court's March 24th order.  In other
6    words, why you think they're permissible in the scope.
7            And then I guess I'll tell you that right
8    after we speak today, we will e-mail you the web site
9    address that is referenced in our answer to
10   interrogatory number 6 for both documents.
11           MR. HARRIS:  Okay.
12           MR. TODD:  So it's your meeting.  The court
13   reporter has asked that you'd identify yourself when
14   you're speaking so she knows who's speaking.
15           MR. HARRIS:  Yes.  This is Chris Harris of
16   Latham & Watkins.
17           I think you got our letter focusing on
18   particular interrogatories, and it will probably make
19   sense to go through those at this point; and if you
20   have questions beyond those, I'm happy to address them.
21           Why don't we start by looking at 1 through
22   20.  I was not clear by your letter if you were
23   suggesting that these interrogatories fall outside the
24   scope of our deposition notice or just outside the
25   scope of the court's order.
```

1          I think it's pretty clear that all of 1

2     through 20 fall within the scope of the deposition

3     notice.  They all go to what is harmful to minors, what

4     is obscenity, and then also how you would distinguish

5     between obscene from harmful to minors and harmful to

6     minors from noncriminal material.  Those are all

7     categories outlined in our notice of deposition.

8          I did not read your letters or objections to

9     suggest that you disagreed that those were within the

10    scope of our deposition notice; but if you think they

11    are, if you could let me know that now, that would be

12    helpful.

13         MR. TODD:  I guess I view the court's March

14    24th order as the controlling document in this

15    situation, and so I can't really tell you at this time

16    whether we believe any of them are within the scope of

17    the deposition notice.  I guess my personal read, not

18    necessarily our official position, is that there's no

19    reason that the deposition notice has any further

20    relevance beyond what the court held about it in the

21    March 24th order.

22         MR. HARRIS:  Okay.  Well, I guess if you're

23    not able to answer that question, then you're not able

24    to answer it, but it certainly seems a relevant

25    question to me because I think that's a starting point,

1    and I don't see any objection that you've raised that

2    indicates that these are beyond the scope of the

3    deposition notice, but we can move on unless you have

4    something further to add on that point.

5         MR. TODD:  No.  I think I've made myself

6    clear about how we interpret the relevance of the

7    deposition notice at this stage in the litigation.

8         MR. HARRIS:  Okay.  And then the way I read

9    the order and I then look at what the judge has held,

10   and he first held that the information sought in our

11   notice of deposition may be relevant.  He did not

12   exclude any of these categories as irrelevant, rather

13   held that they may well be relevant.

14        Then he said essentially that as worded it is

15   broad, and he essentially directed us to proceed to

16   contention interrogataories as a less onerous method,

17   and in particular suggested you may be able to raise

18   executive privileges once the question is asked and

19   information requested by plaintiff become concrete and

20   specific, which is what we've done in these contention

21   interrogatories.

22        So he then orders that we proceed by way of

23   contention interrogatories and allows us to inquire in

24   terms of the topics raised in our notice of deposition,

25   in which I don't hear an objection that these are

1      outside of those topics, an inquiry into whether such

2      rationales, practices, policies or internal rules exist

3      or existed in an appropriate time in the past.

4           So essentially what we are asking in these

5      questions 1 through 20 is whether you have any

6      rationales or practices that identify whether these

7      particular items are harmful to minors or obscene or

8      distinguished between the two.

9           These are questions that go to that topic.

10     So I don't exactly follow why this would not elicit --

11     why these questions would not elicit that kind of

12     information.

13          MR. TODD:  Well, I mean, to start with number

14     1, I don't see how anything about plaintiff's lack of

15     standing relates to any rationales or practices,

16     policies or internal rules.

17          MR. HARRIS:  It would be your position on

18     whether they have standing essentially as this case has

19     been litigated turn at least in large part on whether

20     you believe the plaintiffs have harmful to minors

21     speech.  So it goes to how you have interpreted harmful

22     to minors speech, your rationale for that which the

23     court has specifically directed us to inquire into,

24     your practices and policies or internal rules so we can

25     test what it is you believe to be harmful to minors

1    speech.

2           MR. TODD:  Okay.  I appreciate that

3    explanation.

4           MR. HARRIS:  If we look at the second one --

5           MR. TODD:  I guess do you have any response

6    to our statements about interrogatory Q in our answer?

7           MR. HARRIS:  Yes.  Interrogatory Q does not

8    answer fully the question that we ask in this

9    contention interrogatory for two reasons.  One is it

10   only focuses on the third prong.  Questions throughout

11   this have had more detail about individual prongs.  And

12   in addition, the contention interrogatory is directed

13   to the defendant.  The answer that you provided to

14   contention Q is not an answer on behalf of the

15   defendant.  It says what a court or jury is unlikely to

16   find beyond a reasonable doubt.  We were asking for the

17   defendant's position.

18          MR. TODD:  Okay.  Thank you for clarifying

19   that.  With interrogatory number 2, again we don't see

20   how it relates to the rationales, practices, policies

21   or internal rules that existed at an appropriate time

22   in the past.

23          MR. VAN KWAWEGEN:  This is Jeroen.  The order

24   specifically also says exists or existed at an

25   appropriate time in the past.

1          MR. TODD:  Yes.  They currently might be.

2     Okay.  Thank you for that clarification, but even in

3     light of that clarification I guess I don't understand

4     how -- I mean, you are aware the statute has been

5     enjoined in one form or another since the day it was

6     signed into law, correct?

7          MR. HARRIS:  Certainly, but the defendant has

8     also been taking positions about whether materials are

9     harmful to minors or not throughout this litigation and

10    possibly in other contexts as well not directly before

11    the court, and the court has held that information as

12    to the positions that the defendant has taken and the

13    rationales that the defendant has for those positions

14    could be relevant.  So there's a lot of questions about

15    that.

16          And for us to understand what the defendant's

17    position on what is harmful to minors, as I think the

18    court has held may be relevant, by providing specific

19    examples in questions to flesh out what that position

20    is and what the defendant's rationale is.  We're trying

21    to do this by being as concrete as possible as the

22    court has directed us to.  So that is the way we came

23    up with to try and flesh out what the defendant's

24    position is on what is harmful to minors and what's the

25    rationale for distinguishing between the different

1    categorizations of speech.

2         MR. TODD:  Right.  Then if I could direct

3    your attention to the next paragraph in our answer, I

4    think we did provide an answer to number 2 in that we

5    identified types of web site operators that would not

6    be subject to liability under COPA.

7         MR. HARRIS:  Well, you provided an answer,

8    but it essentially just repeated the text of the

9    statute, and so it layered on so many provisions that

10   it did not answer our specific questions.

11        MR. TODD:  Well, I guess I don't know where

12   else you think we would have an answer given this kind

13   of general interrogatory, where else you think we'd

14   have looked to an answer beyond the language of the

15   statute and how that could actually be binding on us or

16   a third party.

17        MR. HARRIS:  Maybe I'm not being clear in my

18   response to your question.  We were trying in this

19   interrogatory to find out whether as the defendant

20   interpreted harmful to minor it be sufficient that

21   there be any material or there had to be some greater

22   amount than that.  Perhaps our question didn't make it

23   clear to you that that's what we were trying to get at,

24   but this answer didn't provide the information we were

25   looking for.

```
 1            MR. TODD:  Do you want to re-serve us with a
 2    clearer interrogatory?
 3            MR. HARRIS:  Well, do you understand what I'm
 4    asking now?  If so, I don't think we need to re-serve
 5    that one.
 6            MR. TODD:  We're just going to go on hold for
 7    a second and confer amongst ourselves.
 8            MR. HARRIS:  Okay.
 9            (Discussion off the record)
10            MR. TODD:  This is Jim Todd again.  Just so
11    you know, we asked the court reporter to step out while
12    we took a break there so we could confer amongst
13    ourselves, but now we're back on the record and the
14    court reporter is recording us.
15            I just want to clarify my prior statement
16    that we're not asking you to re-serve this
17    interrogatory, but subject to your explanation we still
18    stand on our prior answer.
19            MR. HARRIS:  Okay.  Is it because you don't
20    understand it or is it for the reasons that you
21    described?
22            MR. TODD:  Well, again, the court's order
23    says that policies and practices that exist or existed
24    in an appropriate time in the past, but this question
25    seems basically -- You know, given that the statute has
```

1    been enjoined since the day it was signed into law, I

2    don't see how this question could be anything other

3    than a hypothetical question about future events

4    because, as you know, the statute has never been

5    enforced.

6        MR. HARRIS:  This is Chris Harris.  The order

7    allows us to ask about the topic in our deposition

8    notice and about whether not just policies or rules but

9    also rationales and practices exist, and I would expect

10   that the defendant has taken some position currently on

11   the question that's asked in this and other of the

12   contention interrogatories.

13       MR. TODD:  Well, I guess I don't want to

14   repeat myself too many times, but the statute has been

15   enjoined, and our answer basically makes clear based on

16   the question you asked, these are some web site

17   operators that would not be subject to liability.

18       MR. HARRIS:  Your answer does not make clear

19   that the defendant has never taken a position on any of

20   these.  If that's what you're saying, that would be a

21   different answer, that it has never considered any of

22   these questions.  I would expect the defendant has and,

23   therefore, we have a right to inquire under the court's

24   order as to the defendant's position and their

25   rationales and practices.

1        MR. TODD:  Well, thanks for clarifying that.

2   On number 3, again I guess basically you've posed the

3   hypothetical question to us about whether one unseen

4   page is harmful to minors and 1,000 unseen pages.  I

5   mean, this question was just quite frankly so vague, we

6   don't even really understand how anyone could answer

7   it.  If you could just explain what you're trying to

8   get at.

9        MR. HARRIS:  It would be a web site that has

10  1,000 pages, only one of which has material that's

11  harmful to minors, and that one page the web site

12  operator does not restrict access.  So it's similar to

13  2, but in case you thought that 2 was -- 3 is just a

14  more specific example of 2 I suppose.

15       MR. VAN KWAWEGEN:  This is Jeroen.  And in

16  addition to that, it also goes into the practices and

17  rationales of enforcement decisions by you.  When I say

18  "you," I mean the defendant.

19       MR. TODD:  Well, I mean, it just seems -- I

20  guess again because I don't know anything about -- I

21  mean, it's just so vague.  I mean, is this one page in

22  a novel like Lolita or something?  I mean, there's no

23  way that the defendant could sort of provide some sort

24  of advisory opinion on liability in this kind of broad

25  hypothetical.

1          MR. HARRIS:  I guess I'm not sure why this is

2     vague unless I'm misreading COPA.  There aren't

3     variations after you find that the content is not

4     harmful to minors.  It either is or isn't.  And so I'm

5     not sure what more you would need to know other than

6     that.  One page is harmful and the other 999 are not.

7     But if there is additional information, you'd need to

8     know that, that sounds like that is a rationale,

9     practice or policy that we would like to know about.

10    If the defendant's interpretation of who might be

11    subject to prosecution depends on other factors, we'd

12    like to know that.

13         MR. TODD:  Okay.  Well, I guess the only

14    other thing -- I think our answer is pretty clear.  I

15    will refer you to the transcript of the hearing that

16    resulted in the March 24th order.  I think the court

17    was pretty clear that he doesn't think that these kind

18    of hypotheticals are an appropriate line of inquiry.

19         MR. VAN KWAWEGEN:  This is Jeroen again.

20    Like you, I don't repeat myself very often, but I don't

21    think that we're asking for any hypotheticals.

22         MR. TODD:  Okay.  Well, thanks for clarifying

23    your position.

24         MR. HARRIS:  And then under 4, this goes to

25    the topic in our deposition notice of criteria

1    distinguishing obscene from harmful to minors and

2    harmful to minors from noncriminal material.  And in

3    order to, as the court suggested, we should make the

4    questions more concrete and specific, we then asked you

5    to provide examples and state the basis for your

6    contention and provide the rationale.

7         Again, presumably since the defendant has

8    pursued obscenity prosecutions and has made decisions

9    about that and there's also as the statute, although

10   not enforced, supported for many years, it has made

11   decisions about what material is harmful to minors but

12   not prosecutable as obscenity, and we would like to

13   know what the defendant's position is, its rationale,

14   practices, policies or internal rules on that.

15        MR. TODD:  And I guess I'll direct your

16   attention to our answer at the bottom of page 7 where

17   we refer to the court's December 28th order regarding

18   interrogatory P, and I guess I'll ask you to explain

19   why you think that this is not similarly impermissibly

20   broad given the court's ruling.

21        MR. HARRIS:  Well, for two reasons.  One is

22   that I believe that the defendant probably already has

23   made determinations.  The second is that order was not

24   made in the context of this request, this notice of

25   deposition, nor has it seen this particular contention

1    interrogatory.  And I don't believe even if factually

2    you're correct that the defendant has not made

3    determinations, I don't believe this order will

4    necessarily apply to this particular interrogatory.

5          MR. TODD:  Okay.  Well, I hate to do this,

6    but the statute has been enjoined since the day it was

7    signed into law, so no determinations have been made.

8          MR. HARRIS:  Has the defendant never

9    considered whether there's material that's harmful to

10   minors on the Internet?

11         MR. TODD:  Has the defendant never -- I'll

12   say this in response to your question, that we made

13   statements about harmful to minors materials in our

14   litigation briefs, and you already have those, and

15   that's the only determinations to my knowledge that

16   have been made.

17         MR. HARRIS:  The defendant has not considered

18   whether any other material is harmful to minors in the

19   last seven years, seven-and-a-half years?

20         MR. TODD:  Yes because the statute has been

21   enjoined that entire time.  There have been no

22   prosecutions or considerations about whether or not to

23   prosecute any such conduct.

24         MR. HARRIS:  I understand there's been no

25   prosecutions, but this is the first time I've heard

1     that the defendant has never considered whether any

2     material is harmful to minors other than the few items

3     that are mentioned in the litigation file.

4          MR. VAN KWAWEGEN:  And I would add that this

5     interrogatory does not limit questions into whether

6     there is prosecutable harmful to minors material.

7          MR. TODD:  Right.  I understand, but I think

8     we've tried to explain informally to you before that

9     the way the Justice Department enforces its criminal

10    statutes is it considers material on a case by case

11    basis.  And when a statute is enjoined from

12    enforcement, no such considerations are made as a

13    general matter.

14          And so that when a pre-enforcement challenge

15    of this type arises before there's ever been any

16    enforcement, there is never going to be any record of

17    considerations because there will never be any

18    considerations.

19          MR. HARRIS:  That's the first I have heard of

20    that, and I'm surprised to hear that.  I would also

21    imagine in the litigation context there have been other

22    considerations made, but I hear what you're saying.  I

23    also don't think that prevents you from requiring to

24    answer this question even if that were the situation,

25    but I hear what you're saying.

1        Then in terms of interrogatory 5, it's asking

2    the defendant whether there is any material on the

3    Internet that's prosecutable as obscenity, and I just

4    don't understand the basis for the objection as well.

5    Certainly the defendant has considered this.

6        (Ms. Ulrich leaves the meeting)

7        MR. TODD:  Right, but I think that if I could

8    direct your attention to the fact that if there were

9    any considerations of obscenity that did not result in

10   indictments which we've already disclosed to you

11   pursuant to other discovery requests, any such

12   considerations would be protected by the law

13   enforcement privilege.  And you'll notice that I don't

14   think there's a law enforcement privilege reference to

15   number 4, in our answer to number 4, if I can just draw

16   your attention to that contrast.

17       MR. HARRIS:  Well, there is in response to

18   contention number 4.

19       MR. TODD:  My apologies for misstating the

20   answer.  But anyway, I guess I'll draw your attention

21   at this time to the fact that beyond an indictment and

22   conviction or other public court proceedings I guess or

23   briefs filed in those court proceedings, that there

24   would be no nonprivileged information that we could

25   disclose to you if there were current considerations

1    being made.

2         MR. HARRIS:  The court directed if you were

3    to raise this privilege, you would need to provide more

4    detailed information which justifies the privilege.

5         MR. TODD:  Yes.  The way the Third Circuit

6    sets out the order, and it's pretty much standard

7    operating procedure, is that when and if a party moves

8    to compel an answer after the government has asserted a

9    privilege, at that time the government will perfect the

10   privilege by having the appropriate agency official

11   invoke it formally.  We obviously don't have the

12   resources as we're the defendant in thousands of cases

13   across the country at any one time, hundreds of

14   thousands, and no court has ever required such a formal

15   invocation absent a motion.

16        MR. HARRIS:  And just so I understand it, is

17   that the only objection you're currently standing on

18   for number 5?

19        MR. TODD:  No.  I'm just directing your

20   attention to that one in particular and just suggesting

21   that you might consider sort of the efficacy of

22   pursuing this particular interrogatory since I doubt

23   you would ever overcome that objection.

24        MR. HARRIS:  We would certainly need to have

25   evidence that Mr. Gonzales or his predecessors actually

1    considered each of these examples that you were to

2    provide, but I'm wondering what are the other

3    objections you're still standing on then?

4           MR. TODD:  All of the ones referred to in the

5    answer.

6           MR. HARRIS:  So are you still asserting an

7    objection that these interrogatories are not timely

8    served?

9           MR. TODD:  Oh, absolutely.

10          MR. HARRIS:  Even though they were pursuant

11   to an order of the court?

12          MR. TODD:  Yes.  The court's order did not

13   expressly grant you leave to serve the requests outside

14   of discovery, and I would be happy to be referred to

15   language that it did, and the court's order did not

16   grant you leave to exceed the 25 limit on

17   interrogatories provided for in the federal rules.

18          MR. HARRIS:  Just so I understand, your

19   position is the court order on March 23rd, which was

20   filed on the 24th, your position is it required

21   interrogatories to be served by the 31st?

22          MR. TODD:  No.  Our position is that you

23   should have sought leave before filing interrogatories

24   of court.

25          MR. HARRIS:  Even though the order directed

1   us to?

2        MR. TODD:  No.  It said that the inquiry

3   could be limited to contention interrogatories.  It did

4   not say that such contention interrogatories could be

5   filed out of time and did not say that you could exceed

6   the number, the limit of 25 interrogatories.

7        MR. HARRIS:  Okay.  And it's your position

8   that the court expected that contention interrogatories

9   could take the place of a deposition, essentially serve

10  in the role as a deposition, but be limited to only 25

11  questions?

12       MR. TODD:  Without leave of court, yes.

13  Well, I mean 25 is the total number a party is allowed

14  to serve in a particular case without leave of court

15  because otherwise what's to stop you from serving us

16  10,000 interrogatories ten months after the close of

17  discovery and on the eve of trial.  So there has to be

18  some concrete limit in our opinion.

19       MR. HARRIS:  Do you think we were abusive in

20  terms of the timing or number of interrogatories?

21       MR. TODD:  We think that you exceeded the

22  permissible number and exceeded the time.  You didn't

23  follow the rules, and we've asserted the objections,

24  and we stand on them.

25       MR. HARRIS:  But you're not asserting that we

1    served an abusive number or put you in some unfair play

2    by the timing of these, that they're so close to the

3    trial, as you suggested someone might do.

4              MR. TODD:  You know, I hesitate to use the

5    word abusive, but that's more of a personal style.  I

6    just tend to proceed by understatement.  I think that

7    the objections speak for themselves, and we continue to

8    assert all of them.

9              MR. HARRIS:  Is there some way in which you

10    were prejudiced by the timing of these interrogatories?

11              MR. TODD:  Yes.  The court contemplated that

12    discovery would close between the parties on March

13    31st, 2006 so that we could move on to expert

14    discovery.

15              MR. HARRIS:  But you don't deny that we

16    served a notice of deposition on January 10th that

17    covered these topics.

18              MR. TODD:  That's correct, and we invited you

19    at that time or within a week or two thereafter to

20    proceed by contention interrogatory, and you declined

21    the opportunity.

22              MR. HARRIS:  Well, I think I hear your

23    position.  I'm happy to keep going through these

24    although I think probably we'll have a similar

25    discussion on each of them, but I'm happy to do

 1   whatever you think.

 2          MR. TODD:  Sure.  Let's move to number 6

 3   because I do want to sort of see if there's any

 4   resolution on 6.  Provided that we give you the web

 5   site address for those documents, are you satisfied

 6   with our answer?

 7          MR. VAN KWAWEGEN:  This is Jeroen.  I have an

 8   additional question.  Are you representing that those

 9   are the only documents that are responsive to

10   interrogatory number 6?

11          MR. TODD:  That's correct.

12          MR. VAN KWAWEGEN:  So there are no other

13   written guidelines about what constitutes obscenity?

14          MR. TODD:  That's correct.

15          MR. HARRIS:  Or about whether to bring an

16   obscenity prosecution?

17          MR. TODD:  That's correct.  My understanding,

18   again I'm not a criminal U.S. attorney, but as a

19   general matter that the criminal prosecutions that

20   originate from the United States are guided entirely on

21   the language of the statute.

22          The only statute I'm aware of that has some

23   sort of policy is the RICO statute which has the famous

24   Petite Policy which actually limits its application to

25   situations narrower than that provided for in the RICO

1    statute.

2         MR. HARRIS:  Well, then I think that would

3    satisfy them, but we would need a statement also about

4    how they're used to determine -- Not having seen them

5    yet, I can't tell you whether that answers that

6    question.  Maybe the text of them does.

7         MR. TODD:  I mean, to try to save some time

8    here, I'll just suggest that I think our position is

9    going to be that those documents speak for themselves.

10         MR. HARRIS:  Well, then it may well fully

11    answer this interrogatory.  For now I think we'd be

12    happy to see them, and hopefully they will fully answer

13    them.

14         MR. TODD:  Okay.

15         MR. HARRIS:  I don't mean to make you write

16    an answer if the question is already answered in the

17    material that you're going to provide to us.  I'd just

18    like to look at them first.

19         MR. TODD:  Sure.  Absolutely.  Like I said,

20    as soon as we conclude this call, one of us will go

21    back to our office and send you the link.  We dug it up

22    this morning, and I apologize for not providing it

23    before.  I didn't realize it was hard to find.

24         I guess to try to just narrow the range of

25    dispute, are you planning or can you tell me whether

1      you're planning to pursue a motion to compel on the

2      interrogatories that you're not particularly interested

3      in, what is it, 21 through 33 and 37 through 42?

4              MR. HARRIS:  I don't know yet.  I do

5      anticipate moving to compel on the ones that we

6      identified, and I'm not sure yet on the remainder.  If

7      we were able to reach agreement on the ones we

8      identified, you know, I could tell you that we would

9      not move to pursue the others.  But if we're going to

10     need to pursue on the ones we identified, we may well

11     decide we should pursue on all of them.

12             MR. TODD:  Okay.  And because you may well

13     pursue on all of them, do you want to try to explain to

14     me at least even in a general sense how you think 21

15     through 33 relate to the court's March 24th order or

16     your deposition notice?

17             MR. HARRIS:  I did not focus on those for

18     this call, so I'm not really able to right now.

19             MR. TODD:  Okay.  I'll make clear that if the

20     plaintiffs do obtain leave of court to serve a certain

21     number of interrogatories out of time and do obtain

22     leave of court to exceed the 25 limit to some again

23     certain number, that we will provide answers to the

24     extent that we don't have objections that are

25     sufficient responses to the interrogatories.

1          I do think we tried to answer the first

2     couple of interrogatories you provided here to the

3     extent we were able to provide one like with respect to

4     number 6, number 1, number 2.  And I just urge you guys

5     to take that into consideration when you consider your

6     potential motion to compel.

7          MR. HARRIS:  We will.  Thank you.

8          MR. TODD:  I don't know if you feel that

9     we're at an impasse and there's no point of discussion

10    or if you'd like us -- I mean, I don't sort of see any

11    point in us responding with further follow-up at this

12    point.

13         MR. HARRIS:  Well, I think that answers my

14    question which was -- I guess then we are at an

15    impasse.  I wasn't sure if any of the explanations that

16    would be provided today would be helpful or change your

17    positions, but it sounds like they did not.  So if

18    that's the case, then I guess we are at an impasse.  So

19    in that case I guess we will look forward to --

20         MR. TODD:  I guess we would feel that to the

21    extent you do want to move to compel on 21 through 33

22    and 37 to the end, that we should have a meet and

23    confer on those specifically.

24         MR. HARRIS:  That's fair.  Once we make a

25    decision on those, we will let you know.  And if we are

1        moving to compel, we will try and resolve that.

2               MR. TODD:  I realize as a courtesy if you're

3        not going to move to compel, just let us know there's

4        no need for a meet and confer on those.

5               MR. HARRIS:  Okay.

6               MR. TODD:  The final thing I'll say is just

7        pursuant to 26E, if we do feel there's a reason to

8        supplement our answer to 1 or 6, we will, or 2.

9               MR. HARRIS:  You said 1, 2, and 6 were the

10       ones you might supplement?

11              MR. TODD:  Yes.

12              MR. HARRIS:  Do you anticipate now there will

13       be any supplementation?

14              MR. TODD:  I think that, unfortunately, the

15       only supplementation to 1 will be basically to refer

16       you to any brief we might file raising standing

17       arguments, if we even make standing arguments.  I guess

18       I'll emphasize that no detemrinations about the

19       plaintiff's standing have been made in this round of

20       the litigation now that we're in the trial stage.

21              MR. HARRIS:  All right.  Well, I appreciate

22       you all taking the time for the call.  If anything

23       comes to you in the meantime, let's talk again.

24       Otherwise, I think we are probably at an impasse it

25       sounds like.

1            MR. TODD:  Okay.  And we will get you an

2    electronic copy of the transcript as well as, of

3    course, a final copy as soon as we have one ourselves.

4            MR. HARRIS:  Thank you.

5            MR. VAN KWAWEGEN:  Thank you.

6            MR. TODD:  Thank you, everyone, for your

7    time.

8            (Whereupon, at 11:45 a.m., the meeting was

9    adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

 2             I, Nancy Bond Rowland, Registered

 3      Professional Reporter, the officer before whom the

 4      foregoing proceedings were taken, do hereby certify

 5      that the foregoing transcript is a true and correct

 6      record of the proceedings; that said proceedings were

 7      taken by me stenographically and thereafter reduced to

 8      typewriting under my supervision; and that I am nether

 9      counsel for, related to, nor employed by any of the

10      parties to this case and have no interest, financial or

11      otherwise, in its outcome.

12             IN WITNESS WHEREOF, I have hereunto set my

13      hand and affixed my notarial seal this 4th day of June

14      2006.

15

16      My commission expires:

17      October 31, 2009

18

19

20      _____

21      NOTARY PUBLIC IN AND FOR THE

22      DISTRICT OF COLUMBIA

23

24

25
```