# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States, <br><br> Defendant. | Civil Action No. 98-CV-5591 |

## EXPERT REPORT OF HENRY REICHMAN

May 8, 2006

With this background in mind, I have read carefully the amended complaint filed by plaintiffs and have looked extensively at plaintiffs' web sites. Clearly, these web sites are all forms of expression enjoying protection under the First Amendment. In exploring these web sites I encountered sexually frank material and vulgar language, but I encountered nothing that could reasonably be deemed "obscene" under my understanding of current legal standards, or "harmful to minors" under any reasonable definition of those words. I did, however, encounter considerable material that, judging from the experiences of libraries and schools, as well as recent controversies regarding film ratings and television broadcasts, might well be unfairly targeted as "obscene" or "harmful to minors" by overzealous officials or members of the general public. Such officials and citizens could reasonably be expected to pressure prosecutors to file charges under the provisions of COPA, even if such charges might not eventually be affirmed in court. Thus, since the World Wide Web reaches all communities in the United States, it seems reasonable that plaintiffs could fear prosecution for violating the provisions of COPA in some community, and, as I will explain later, this would chill their right to expression in *all* communities.

A look at several of plaintiffs' websites provides support for this contention.

### Sex Education

Plaintiff Sexual Health Network maintains a website, sexualhealth.com. The site is dedicated to providing access to sexuality information, education, and support. Links bring visitors to sections on Men's Sexual Health, Women's Sexual Health, Love and Relationships, Sexuality Education, Disability and Chronic Conditions, Sexually Transmitted Infections, Sexual Health Resources, and Shopping.

15

Plaintiff Heather Corrinna maintains a website, scarleteen.com, which is "dedicated to delivering the best contemporary teen sex ed on the net." The site includes articles, advice, a chat room, and links to other resources, including an online shop. There are visual representations and detailed descriptions of male and female genitalia, advice on safe sex, and a description by plaintiff Corinna of the first time she had intercourse. According to the site, the most frequently visited articles include ones on Female Anatomy, Masturbation, Corinna's first-time memoir, Painful Sex, Orgasm and Sexual Response, and "Blue Balls."

Both sites abound with frank discussions of sexual health, masturbation, and sexual techniques. Both provide opportunities for visitors to purchase sexual aids, including condoms and lubricants, as does the Condomania site operated by plaintiff Addazi, Inc.

As previously noted, many people find all sexual education inappropriate for minors, especially very young minors. Much of what is available at Sexual Health Network, Scarleteen, or Condomania would not be found in the typical school sex education class. Yet this material is by no reasonable definition obscene or harmful to minors. The Sexual Health Network and Condomania are principally aimed at adults, although post-pubescent teenagers can also find useful information there. Scarleteen is clearly aimed at teenagers. Were any of these sites to be judged by whether or not members of some community could consider them harmful to *any* minors, including those who are pre-pubescent, there can be little doubt that those who find the far more limited resources available in school sex education classes objectionable or "inappropriate" would surely be moved to complain about these sites.

16

seen by many as sexually explicit. Moreover, since most minors are below the age of consent, someone might construe these ads as invitations to pedophilia if these ads were available to minors. However, perusing the site I saw no attempts to solicit children. Separate chat rooms are provided for gay males, lesbians, bisexuals, and transvestite/transgender individuals.

In short, epgn.com is not an explicitly sexual site by any reasonable definition. Nonetheless, plaintiffs do have good reason to fear that under COPA they might in some communities be accused of providing material that is "harmful to minors." In fact, in some states and communities citizens and public officials have intimated that the very topic of homosexuality itself, even if its treatment is not sexually explicit or even sexually oriented, is by definition "age-inappropriate."

Plaintiffs might well conclude that they have reason to fear the chilling effects of COPA on the basis of the following incidents that have occurred in recent years:

- Last year the Oklahoma House of Representatives voted 81-3 for a non-binding resolution calling on Oklahoma libraries to "confine homosexually themed books and other age-inappropriate material to areas exclusively for adult access and distribution" (see *Newsletter*, July 2005, p. 156). Earlier, legislators had branded the children's book *King and King*, about a gay prince, "obscene" and said it should be reserved for adults (see *Newsletter*, May 2005, p. 108).
- Also last year a state legislator in Louisiana declared that books "containing the theme of homosexuality" and other "age-inappropriate" topics should not be in public libraries and accessible to children (see *Newsletter*, July 2005, p. 154).

25