# EXHIBIT 21

ORIGINAL

```
 1

 2    UNITED STATES DISTRICT COURT

 3    EASTERN DISTRICT OF PENNSYLVANIA

 4    ------------------------------------X

 5    AMERICAN CIVIL LIBERTIES UNION, et al.,

 6                    Plaintiffs,
                                                    Case No.
 7          -against-                               98-CV-5591

 8    ALBERTO R. GONZALES, in his official
      capacity as Attorney General of the
 9    United States,

10                    Defendant.

11    ------------------------------------X
                  -- DAILY COPY --
12

13                      885 Third Avenue
                        New York, New York
14
                        February 16, 2006
15                      9:40 a.m.

16

17         DEPOSITION of SEXUAL HEALTH NETWORK, INC.,

18    one of the Plaintiffs herein, by MITCHELL S.

19    TEPPER, Ph.D., M.P.H., taken by the Defendant,

20    pursuant to Order.

21

22

23            ARISTA COURT REPORTING CO.
                192 Lexington Avenue
24                    Suite 802
              New York, New York 10016
25                (212) 684-6100
```

```
 1                    M. TEPPER, Ph.D., M.P.H.
 2          Q.    Have you ever received any
 3   complaint from anybody that the material on
 4   your web site is harmful to minors?
 5          A.    No.
 6                MR. FINE:    Objection to the extent
 7          it calls for a legal conclusion.
 8                MR. SEALLS:    I'm sorry, did you
 9          answer that, sir.
10          A.    I answered it.    No.
11          Q.    Have you ever received the threat
12   of a lawsuit from the Federal or any state or
13   any local government concerning the content of
14   your web site?
15                MR. FINE:    Objection.    Vague and
16          ambiguous.
17          A.    I think you already asked, but I'll
18   say once again, not directly, no.
19          Q.    I'm going to ask you a couple of
20   questions about the category of the contents on
21   your web site.
22          A.    Referring to the categories here?
23          Q.    No.
24          A.    I'm sorry.
25          Q.    Let me pose the question this way:
```

```
 1                M. TEPPER, Ph.D., M.P.H.
 2        statement.
 3        A.   I think I said I don't know what
 4   you meant by social value.
 5        Q.   I'm not asking if you know what I
 6   meant.  I'm asking you, Dr. Tepper, do you
 7   know?
 8        A.   I have my opinion of social value.
 9   People think that what I do is not socially
10   valuable.
11        Q.   What's your opinion on social
12   value?
13        A.   My opinion on social value would be
14   something that provides a benefit to society.
15        Q.   Does your web site provide social
16   value as you define it to persons under age 17?
17        A.   Yes.
18        Q.   In the year 2005 what were your
19   annual sales through the web site?
20        A.   Of products?
21        Q.   Yes.
22        A.   Of banners?  We talked about
23   banners.
24        Q.   Let's talk about products.
25             MR. FINE:  Objection.  Assumes
```

1           M. TEPPER, Ph.D., M.P.H.
2    a paragraph No. 2, the very last paragraph on
3    Page 24?
4         A.   Yes.
5         Q.   I want to read the first sentence
6    first.  It reads, "Plaintiffs fear prosecution
7    under COPA for communicating, sending
8    displaying or distributing material that might
9    be deemed harmful to "minors" by some community
10   in the United States."  Do you see that?
11        A.   Yes.
12        Q.   Which community or communities does
13   that sentence refer?
14             MR. FINE:  Objection to the extent
15        it calls for a legal conclusion.  To the
16        extent it calls for speculation, and I'm
17        going to instruct you not to answer to
18        the extent it requires you to reveal any
19        attorney/client communication, but you
20        can answer if you have any independent
21        basis.
22        A.   The reason it's some communities
23   because I don't know which community.
24        Q.   What, then, is the basis for your
25   assertion in that sentence that I just read?

1                    M. TEPPER, Ph.D., M.P.H.
2           A.    My basis my assertion for this is
3    as a sexologist and as a sexuality educator and
4    as a member of those professional organizations
5    that I mentioned, that there are on the records
6    government policies regarding sexuality on
7    education, they call it for children, and if
8    you accept money under these abstinence only
9    dollars, I don't know what the title it's
10   attached to, but the official government stance
11   on educating minors is when you accept money as
12   a high school to do sexuality education from a
13   certain pot of funds, that the government sets
14   aside, there are many prongs that are there,
15   and there are a number of things that you
16   cannot talk about like condoms and like
17   masturbation, abortion.
18               So, based on the stances that the
19   government has taken towards what someone who
20   receives funds from the government can and
21   cannot say to minors in a classroom, that's a
22   big strong part of it.  Is that there are in
23   place money, money talks, and the money says if
24   you take my money from the government, you
25   cannot mention X, Y and Z, and I would just

1              M. TEPPER, Ph.D., M.P.H.
2    have to say I'd have to go to the document to
3    go through that list, but that list is quite
4    restrictive, what you can say if you accept the
5    government's money.
6              So that the government's policy is
7    abstinence only until marriage and so.  Also, I
8    mean, even going away from minors, if I make
9    the assumption that if college professors in
10   universities are being challenged by students
11   who are paying to be in their class, and
12   professors are being threatened with being
13   fired, schools are being threatened for pulling
14   out all of their funding for giving basic
15   sexuality education to adults, if that same
16   information is available to minors, then I'd be
17   at greater risk than a college professor.
18             I can't state you each case, but I
19   know there have been college professors who
20   have been challenged by their students for
21   giving sexuality education, and those things
22   have caused great, great harm, you know, to the
23   professors and to, you know, great, great
24   problems for the schools for adults.
25             So, we have we have a government

```
 1                M. TEPPER, Ph.D., M.P.H.
 2      policy that limits what we can say to children
 3      if we accept government money, and we have
 4      adults who are voluntarily coming to a program
 5      suing their professors and those things going
 6      very far.  So, if those things can happen to
 7      sexuality educators and those things are
 8      restricted by the government in the school,
 9      then I am certainly at risk here when we put on
10      a prong with respect to minors because people's
11      ideas of what's appropriate, what's not
12      appropriate when it comes to sexuality with
13      respect to minors I am very afraid of.  I'm
14      very concerned about that.
15            Q.   Dr. Tepper, did I understand you
16      correctly when you talked about requirements
17      for certain funding from the government?
18            A.   Yes, abstinence only funding.
19            Q.   As well as probable professional
20      harm to educators?
21            A.   Correct.
22            Q.   That you said these things are a
23      big, strong part of your fear of prosecution?
24            A.   Yes.
25            Q.   What other parts are there that you
```

1           M. TEPPER, Ph.D., M.P.H.
2   fear prosecution for?
3        A.   Well, I mean by nature my web site
4   is sexually explicit and we answer people's
5   questions, so sometimes the questions
6   themselves are sexually explicit and the
7   answers are sexually explicit, and, you know, I
8   think that some adults and I would say many
9   adults, and I don't have documents, believe
10  that obviously the government believes that
11  children should be shielded from sexually
12  explicit material and content, and that goes as
13  far as adults thinking it's inappropriate for
14  your minor child to use the word penis and
15  clitoris and vulva.  That's how far it goes.
16          That people think it's
17  inappropriate and abusive for you to teach your
18  child the name of their sexual anatomy and
19  reproductive anatomy.  You're touching on very
20  sensitive issues here because I really am
21  concerned about how people perceive what's of
22  value to minors or what's harmful to minors.
23       Q.   Are you finished?
24       A.   Yes.
25       Q.   Are there any other parts, to use

```
 1                  M. TEPPER, Ph.D., M.P.H.
 2     your word, of your fear of prosecution under
 3     COPA?
 4          A.   So, we have we already talked about
 5     government policies, the government act of
 6     purging information that they did not want to
 7     promote on the CDC web site.  I don't know if
 8     you've heard of that, but they went through the
 9     Center For Disease Control web site and they
10     took off information that was peer reviewed
11     literature related to I believe abortion and
12     condoms, and then there was a big advocacy push
13     so they put some of their content back on.
14               So, once again another government
15     site, the CDC, which is supposed to be academic
16     and free from political influence had or did,
17     it's a fact, you could go find it, I can't
18     state it, did go through and "clean up or edit"
19     their web site of things that were not in line
20     with the government policy of sexuality, and
21     that through advocacy people had gotten
22     information back on the web site, and you can
23     go, there is a history.  So, that's another
24     example.  You want another example?
25          Q.   All examples that you have of the
```

```
 1              M. TEPPER, Ph.D., M.P.H.
 2     parts of your fear of prosecution.
 3          A.    I'm an advisor to the former
 4     surgeon general, Dr. David Satcher.  As the
 5     surgeon general he put out the call to action
 6     for sexual health and responsible sexual
 7     behavior which the head of Health and Human
 8     Services didn't sign because it didn't say that
 9     people should be abstinent until married and it
10     did say that condoms were effective, and so
11     that wasn't signed off by Dr. Satcher's
12     immediate boss, and the administration
13     distanced itself from that, and once again
14     we're talking about sexuality education and
15     accurate information.
16              So, those are many prongs which put
17     up my defensive shields and makes me feel
18     threatened.
19          Q.    I'd like to draw your attention to
20     Page 25 of the Amended Complaint.
21          A.    I'm sorry I was long-winded.
22          Q.    Specifically Paragraph 5 on Page
23     25, and I'm going to read in the interest of
24     time only the first sentence.
25          A.    Okay.
```