IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN CIVIL LIBERTIES UNION**, | ) | |
| *et al.*, | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | Civil Action No. 98-CV-5591 |
| v. | ) | |
| | ) | |
| **ALBERTO R. GONZALES**, in his official | ) | |
| capacity as Attorney General of the United | ) | |
| States, | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AND, IN THE ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS**

PETER D. KEISLER
Assistant Attorney General

PATRICK L. MEEHAN
United States Attorney
RICHARD BERNSTEIN
Assistant U.S. Attorney

THEODORE C. HIRT
Assistant Branch Director
RAPHAEL O. GOMEZ
Senior Trial Counsel

ERIC J. BEANE
ISAAC CAMPBELL
JOEL McELVAIN
KENNETH SEALLS
JAMES TODD
TAMARA ULRICH
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
(202) 305-1432

Date: September 27, 2006

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................... ii

INTRODUCTION ................................................................ 1

I.     PLAINTIFFS HAVE NOT DEMONSTRATED AN OBJECTIVELY
REASONABLE FEAR OF PROSECUTION SUFFICIENT TO
CONFER STANDING ................................................. 2

     A.     Plaintiffs Cannot Ignore Relevant Precedent Interpreting COPA's
Harmful-to-Minors Language To Ascertain If Their Fear of
Prosecution is Reasonable ........................................ 3

     B.     Henry Reichman's Expert Report Does Nothing To Support an
Objectively Reasonable Fear of Prosecution ............... 5

     C.     Plaintiffs Have Not Demonstrated That the Material Upon Which
They Fear Prosecution Falls Within COPA's Harmful-To-Minors
Definition ............................................................ 7

          1.     The Court Should Assess Plaintiffs' Standing Based on
Representative Samples of Material Provided by Plaintiffs ......... 8

          2.     Plaintiffs' Intent Is Highly Relevant to the Standing
Inquiry ........................................................ 10

          3.     Plaintiffs Ignore the Third Prong of COPA's Harmful-To-
Minors Definition in an Effort to Maintain Standing ................. 13

          4.     Plaintiffs Cite Material Out of Context In An Attempt to
Bolster Their Standing, Although The Statute Requires
Material To Be Evaluated As A Whole ........................ 16

     D.     Associational Plaintiffs Have Not Demonstrated Standing ..................... 17

II.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM REGARDING
OLDER MINORS' RIGHTS TO ACCESS HARMFUL-TO-MINORS
MATERIAL ............................................................. 19

III.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM REGARDING
THE RIGHT TO COMMUNICATE AND ACCESS INFORMATION
ANONYMOUSLY ON THE INTERNET ........................... 22

CONCLUSION ................................................................ 24

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(s)**

*ACLU v. Miller,*
  977 F. Supp. 1228 (N.D. Ga. 1997) ............................................................. 24

*ACLU v. Reno ,*
  929 F. Supp. 824 (E.D. Pa. 1996) .................................................................. 20

*ACLU v. Johnson,*
  4 F. Supp. 2d 1029 (D.N.M. 1998) ................................................................ 23

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ......................................................................................... 8

*Am. Booksellers v. Webb,*
  919 F.2d 1493 (11th Cir. 1990) ...................................................................... 20

*Ashcroft v. ACLU,*
  542 U.S. 656 (2004) ................................................................................. 14, 18

*Ashwander v. Tennessee Valley Authority,*
  297 U.S. 288 (1936) ........................................................................................ 21

*Athenaco, Ltd. v. Cox,*
  335 F. Supp. 773 (E.D. Mich. 2004) ............................................................. 14

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) .......................................................................................... 2

*Baker v. Glover,*
  776 F. Supp. 1511 (M.D. Ala. 1991) ............................................................. 15

*Bookcase, Inc. v. Broderick,*
  218 N.E.2d 668 (N.Y. 1966) .......................................................................... 14

*Bordell v. Gen. Elec. Co.,*
  922 F.2d 1057 (2d Cir. 1991) .................................................................... 3, 10

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ............................................................................................ 2

*Columbia Ins. Co. v. Seescandy.com,*
  185 F.R.D. 573 (N.D. Cal. 1999) ................................................................... 23

*Davis-Kidd Booksellers, Inc. v. McWherter,*
   866 S.W.3d 520 (Tenn. 1993) ...................................................... 20

*Doe v. 2theMart.com,*
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) .................................... 23

*Evans v. United States,*
   504 U.S. 255 (1992) .................................................................... 4

*Fabulous Assoc., Inc. v. Pennsylvania Public Utility Comm'n,*
   896 F.2d 780 (3d Cir. 1990) ........................................................ 23

*Ginsberg v. New York,*
   390 U.S. 629 (1968) ............................................................... 19, 21

*Hunt v. Washington State Apple Adver. Comm'n,*
   432 U.S. 333, 343 (1977) ............................................................. 18

*Kois v. Wisconsin,*
   408 U.S. 229 (1972) ..................................................................... 16

*Lawrence Township Board of Educ. v. New Jersey,*
   417 F.3d 368 (3d Cir. 2005) .......................................................... 8

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................. 3, 18

*McNutt v. General Motors Acceptance Corp. of Ind.,*
   298 U.S. 178 (1936) ................................................................. 3, 19

*Miller v. California,*
   413 U.S. 15 (1973) ................................................................. 12, 16

*Morissette v. United States,*
   342 U.S. 246 (1952) ..................................................................... 4

*Mortensen v. First Fed. Sav. & Loan Ass'n,*
   549 F.2d 884 (3d Cir. 1977) .......................................................... 3

*Nitke v. Ashcroft,*
   253 F. Supp. 2d 587 (S.D.N.Y. 2003) .......................................... 13

*Orson, Inc. v. Miramax Film Corp.,*
   79 F.3d 1358 (3d Cir.1996) .......................................................... 12

*Pennhurst State School & Hospital v. Halderman,*
    465 U.S. 89 (1984) ................................................................................ 5

*Penthouse International, Ltd. v. McAuliffe,*
    610 F.2d 1353 (5th Cir. 1980) ......................................................... 13

*People v. Bookcase, Inc.,*
    201 N.E.2d 14 (N.Y. 1964) .............................................................. 14

*Reno v. ACLU,*
    521 U.S. 844 (1997) ................................................................... 14, 24

*Rent Stabilization Ass'n v. Dinkins,*
    5 F.3d 591 (2d Cir. 1993) ................................................................ 18

*Serv. Employees Int'l Union v. Municipality of Mt. Lebanon,*
    446 F.3d 419 (3d Cir. 2006) .............................................................. 3

*Spencer v. Kemma,*
    523 U.S. 1 (1998) .............................................................................. 9

*State v. Vachon,*
    306 A.2d 781 (D.N.H. 1973), rev'd, 414 U.S. 478 (1974) ............... 14

*Tilden Fin. Corp. v. Palo Tire Serv., Inc.,*
    596 F.2d 604 (3d Cir. 1979) ............................................................ 12

*United States v. L.A. Tucker Truck Lines, Inc.,*
    344 U.S. 33 (1952) ............................................................................ 5

*Virginia v. Am. Booksellers Ass'n,*
    372 S.E.2d 618 (Va. 1988) .......................................................... 15, 20

*Virginia v. American Bookselers Ass'n,*
    484 U.S. 383 (1988) ..................................................................... 2, 15

*Wisconsin v. Stankus,*
    No. 95-2159, 1997 LEXIS 138 (Wis. App. Feb. 13, 1997) ............ 14

**STATUTES**

47 U.S.C. § 227 .................................................................................... 8

47 U.S.C. § 231(e)(6) .................................................................. passim

47 U.S.C. § 231(b)(4) ................................................................................................. 13

47 U.S.C. § 231(a)(1) ................................................................................................. 13

47 U.S.C. § 231(d)(1) ................................................................................................. 23

**INTRODUCTION**

Defendant filed a motion to dismiss because Plaintiffs had not offered objective evidence sufficient to demonstrate their standing in this case.  Along with his motion, Defendant attached for the Court's review the representative samples of website pages that Plaintiffs had identified as the basis for their alleged fear of prosecution.  Defendant supported his motion with arguments based on COPA's statutory language and case law interpreting such language.  Plaintiffs responded to this straight-forward motion with a myriad of additional exhibits and arguments that are wholly unrelated to COPA or interpretive case law; these arguments do nothing to support their claim of standing.  The Court has not evaluated Plaintiffs' standing after the close of extensive discovery – this is the first opportunity for it to do so.  Plaintiffs must demonstrate standing at this point, not through the allegations of their Amended Complaint, but through objective evidence.  Plaintiffs have identified such alleged evidence in discovery, and the Court may evaluate this evidence based on the exhibits supplied by Defendant.  A review of this evidence inevitably leads to the conclusion that no Plaintiff has met its burden, at this stage in the litigation, to come forward with objective evidence that it has standing in this case.

In addition to Defendant's motion to dismiss each Plaintiff on standing grounds, Defendant's motion seeks judgment as a matter of law on two of Plaintiffs' legal claims:  one regarding the rights of older minors and one regarding the right of anonymous access to information over the Internet.  Plaintiffs do not dispute that their claim regarding the rights of older minors can be decided as a matter of law, and they do not dispute the unanimous case law interpreting harmful-to-minors statutes to adopt an older minor standard, which negates their claim.  Moreover, for the reasons set forth in Defendant's opening brief and in this reply, it

cannot be disputed that older minors have no right to access the harmful-to-minors material that COPA regulates.  Plaintiffs' anonymity claim likewise fails as a matter of law, as they concede that there is no *per se* right to communicate anonymously over the Internet.

I.      **PLAINTIFFS HAVE NOT DEMONSTRATED AN OBJECTIVELY REASONABLE FEAR OF PROSECUTION SUFFICIENT TO CONFER STANDING**

Any claim of a credible fear of prosecution must flow from the statutory language of COPA.  If Plaintiffs' actions cannot be said to fall within the scope of the conduct regulated by COPA, then they cannot credibly fear prosecution under the statute.[1]  Plaintiffs, however, do not attempt to demonstrate a credible fear of prosecution based on COPA's statutory language. Instead, they allege a fear based on other factors.  Rather than looking to the statute, Plaintiffs rely on an expert opinion about *ad hoc* examples of "censorship" unrelated to COPA's statutory definitions.  To the extent Plaintiffs address COPA's statutory language, they fail to read it in a reasonable manner, omitting several key aspects of the definition of harmful to minors to conclude unreasonably that COPA could cover virtually any material posted on the Internet with any type of sexual theme.  Plaintiffs' arguments do not support a "realistic" or "credible" fear of prosecution, which is necessary for standing.  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  To the contrary, Plaintiffs' arguments are the type of "conjectural" or hypothetical" arguments that are insufficient to confer standing.[2]  *City of Los Angeles v. Lyons*,

_____

[1]  Plaintiffs attack Defendant for not relying on *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 384 (1988), in its standing recitation.  Pls.' Opp'n at 4.  In fact, *American Booksellers*, like the cases cited by Defendant, requires injury in fact, manifested by "an actual and well-founded fear that the law will be enforced against them."  *Am. Booksellers*, 484 U.S. at 393.

[2]  Plaintiffs erroneously assert that the standing rules are relaxed in First Amendment cases.  Pls.' Opp'n at 5.  The cases cited by Plaintiffs support the proposition that *prudential*

461 U.S. 95, 101-02 (1983).

At this point in the litigation, rather than being able to rest on the allegations of the

Complaint, each Plaintiff must demonstrate through evidence that it can maintain its individual

standing.  As the Supreme Court has stated:

> The party invoking federal jurisdiction bears the burden of
> establishing these elements. Since they are not mere pleading
> requirements but rather an indispensable part of the plaintiff's case,
> each element must be supported in the same way as any other
> matter on which the plaintiff bears the burden of proof, *i.e.*, with
> the manner and degree of evidence required at the successive
> stages of the litigation.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted); *see also Mortensen*

*v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that "no presumptive

truthfulness attaches to plaintiff's allegations" when jurisdiction challenged in fact); *Bordell v.*

*Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991) (objective evidence necessary to substantiate

standing).  Throughout this litigation, Plaintiffs carry the burden of "showing that [they are]

properly in court," and if the opposing party or the court challenges Plaintiffs' standing, they

must support their allegations "by competent proof." *McNutt v. General Motors Acceptance*

*Corp.*, 298 U.S. 178, 189 (1936).

   **A.**    **Plaintiffs Cannot Ignore Relevant Precedent Interpreting COPA's Harmful-
to-Minors Language To Ascertain if Their Fear of Prosecution is Reasonable**

Plaintiffs take advantage of the pre-enforcement nature of this lawsuit by declaring that

there are no standards by which to evaluate COPA and that, therefore, even the most unrealistic

---

standing requirements may be relaxed in First Amendment cases.  As noted in Defendant's
opening brief, Article III standing requirements are not relaxed for First Amendment cases.
Def.'s Mem. at 8-9, citing, *inter alia, Serv. Employees Int'l Union v. Municipality of Mt.
Lebanon*, 446 F.3d 419, 423 (3d Cir. 2006).

reading of the statutory language can confer standing.  Plaintiffs' view that there are no standards

by which to evaluate COPA and that Defendant's discussions about the scope of COPA "have no

impact on the Plaintiffs standing," Pls.' Opp'n at 10, fails for two reasons.  First, there is a large

body of law interpreting the obscenity and obscene-for-minors standards from which COPA's

language is derived.  This case law governs the manner in which courts will construe COPA's

harmful-to-minors definition.  As the Supreme Court has noted:

> "Where Congress borrows terms of art in which are accumulated
> the legal tradition and meaning of centuries of practice, it
> presumably knows and adopts the cluster of ideas that were
> attached to each borrowed word in the body of learning from which
> it was taken and the meaning its use will convey to the judicial
> mind unless otherwise instructed.  In such case, absence of contrary
> direction may be taken as satisfaction with widely accepted
> definitions, not as a departure from them."

*Evans v. United States*, 504 U.S. 255, 259-60 (1992) (quoting *Morissette v. United States,* 342

U.S. 246, 263 (1952)).

Second, Plaintiffs' assertion that obscenity laws are irrelevant completely ignores the

comparable definitions of "harmful to minors" found in many state harmful-to-minors statutes, as

well as courts' interpretation of those definitions.[3]  These statutes are similarly derived from

*Miller*'s obscenity test, and the courts' conclusions about the scope of these statutes is

particularly relevant, as these courts ascertained whether material was found to be harmful *to*

*minors*.  Of course, any legal precedent must be applied to the facts of this case, and Defendant

---

[3]  The fact that many of these laws pertain to the display of harmful-to-minors material
does not impact the relevant inquiry – the criteria for determining what is harmful to minors.
Plaintiffs erroneously state that state harmful-to-minors display laws "do not interfere with adult
speech at all."  Pls.' Opp'n at 13.  Display laws impact adult access to harmful-to-minors
material, as they require adults to enter restricted areas of stores to view such material and/or to
provide identification for purchasing such material.

has provided the Court with the material about which Plaintiffs fear prosecution, to evaluate these specific facts in relation to the applicable legal standards.[4]

### B.    Henry Reichman's Expert Report Does Nothing To Support an Objectively Reasonable Fear of Prosecution

Plaintiffs' attempt to bolster their standing claims through Henry Reichman must fail.  As an initial matter, Plaintiffs consider his expert report "irrelevant" when they want to distance themselves from his conclusions, Pls.' Opp. at 11 n.6, yet somehow relevant when he cites examples about which Plaintiffs wish to align themselves.  In fact, none of the examples cited within Mr. Reichman's expert report are relevant to any alleged fear of prosecution.  Mr. Reichman's conclusions are based in large part on examples of parents seeking the removal of books from schools and libraries, none of which are based on any legal standards, let alone the legal standards in COPA.  A parent may object to material in the classroom or library for a myriad of reasons, and these examples do not lead to the conclusion that analogous material falls within the "harmful to minors" definition of COPA.  Only those materials that could fall within COPA's harmful-to-minors definition can be prosecuted under COPA.  To maintain standing, Plaintiffs' fear of prosecution must be based on the statutory standards and not the *ad hoc* examples of parental complaints to school boards and libraries.

Citing examples unrelated to the legal standards of COPA does not further any objective

---

[4]  Because the Court must evaluate the evidence before it, the fact that similar plaintiffs have been found to have standing in some instances in other cases is not determinative. Moreover, the Court should not give weight to any alleged "implicit" standing determinations noted by Plaintiffs.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984) (jurisdictional questions lurking in the record, but unmentioned by a court, remain open to decision); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio").

fear of prosecution.  Indeed, if the examples cited in Mr. Reichman's report set the standard about COPA prosecutions, even the exhibitors of pre-school books of "Clifford the Big Red Dog," "Disney's Christmas Storybook," and Maurice Sendak's children's picture book "In the Night Kitchen" could fear prosecution under COPA.  Reichman Report at 22 (Pls.' Ex. 7).  The examples of alleged censorship cited in Mr. Reichman's report run the gamut from works containing witchcraft, anti-Christian sentiment, "all sex education materials," "harsh language," and any theme of homosexuality.  *Id.* at 8, 22 n.5, 25-27.  While Mr. Reichman's report attempts to bolster a sense of "chill" felt by Plaintiffs, it is apparent from the context of his examples that any such chill is unrelated to the legal standards of COPA.  Therefore, his conclusions do not relate to a reasonable fear of prosecution under COPA.

Indeed, the only conclusion that can be drawn from Mr. Reichman's report is that Plaintiffs' fear of prosecution under COPA is, in fact, *not* reasonable.  He concludes that none of Plaintiffs' websites are harmful to minors "under any reasonable definition of those words." Reichman Report at 15 (Pls.' Ex. 7).  He concludes that Plaintiffs fear prosecution because of "overzealous officials or members of the public," *id.*, and that "literary or artistic value are routinely ignored when materials are challenged in the name of protecting children."  *Id.* at 22 n.5.  For example, Mr. Reichman concludes that Philadelphia Gay News "is not an explicitly sexual site by any reasonable definition."  *Id.* at 25.  His support for its reasonable fear of prosecution is based on "the mere fact that it discusses homosexuality freely and allows gays and lesbians to communicate freely with each other makes it a potential target for those who would

seek to use COPA, if it is implemented, to censor homosexually-oriented materials."[5]  *Id.* at 27.

Any fear of prosecution based on prosecutors acting in bad faith or that individuals will ignore

COPA's legal standards simply does not give rise to "reasonable" fear of prosecution.  To

maintain standing, Plaintiffs must demonstrate a reasonable fear of prosecution under the statute,

which they cannot do by relying upon Mr. Reichman's report.

### C.   Plaintiffs Have Not Demonstrated That the Material Upon Which They Fear Prosecution Falls Within COPA's Harmful-To-Minors Definition

Plaintiffs try to support their standing argument by characterizing both the law and

Defendant's argument in a misleading manner.  Plaintiffs also proffer additional evidence in an

attempt to meet their burden to demonstrate standing, even though they did not reveal this

information when asked for it during discovery.

Plaintiffs erroneously assert that Defendant "presents no new facts and makes no new

arguments" regarding standing.  Pls. Opp'n at 2.  In fact, this is Defendant's first opportunity to

challenge Plaintiffs' standing after receiving extensive discovery into the standing issue, and

after each Plaintiff  has identified representative examples of website materials about which they

fear prosecution.  Rather than focus on the pertinent standing issue before the Court, Plaintiffs

obfuscate the standing inquiry with disingenuous arguments and hundreds of irrelevant pages of

---

[5]  Likewise, Plaintiffs support Bill Boushka's standing by alleging that "[m]any communities may find that depictions of homosexuality have no value of any kind for minors." Pls.' Opp'n at 34.  Plaintiffs fear of prosecution for websites with homosexual content (such as the websites of Mr. Boushka, Ms. Warren, and Philadelphia Gay News) goes far beyond COPA's language, as Plaintiffs aver that "gay-themed speech is suppressed, even where its content is not sexual in nature."  *Id.* at 44.

exhibits.[6]

The standing issue to be decided by the Court is straightforward:  whether the material proffered by Plaintiffs in discovery to support their fear of prosecution can reasonably fall within the three prongs of the statutory definition of harmful to minors.  This determination necessarily requires statutory interpretation and a review of the materials about which Plaintiffs allege a fear of prosecution.  Plaintiffs' contention that the material upon which they fear prosecution does not fall within COPA's statutory parameters is based on a misinterpretation of the statute.

1.    **The Court Should Assess Plaintiffs' Standing Based on Representative Samples of Material Provided by Plaintiffs**

In their opposition brief, Plaintiffs acknowledge that some material upon which they feared prosecution is no longer on their websites, and they list new material for the first time.[7] *See* Pls.' Opp'n at 34-37.  Plaintiffs defend this tactic by characterizing the Internet as a

---

[6]   For example, Plaintiffs inexplicably raise COPA's civil penalties to bolster the reasonableness of their fear of prosecution.  Pls.' Opp'n at 7.  This fact is irrelevant for two reasons.  First, Defendant never asserted that Plaintiffs' standing is based on the distinction between criminal or civil prosecution standards.  Second, contrary to Plaintiffs' assumption, COPA is not "enforceable by private citizens," because it contains no express or implied private right of action.  *See Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) ("private rights of action to enforce federal law must be created by Congress"); *Lawrence Township Board of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (finding no private right of action when statute did not indicate congressional intent to provide one).  COPA, unlike other statutes in the same Title, contains no private right of action.  *Cf.* 47 U.S.C. § 227 (granting private right of action for statute restricting use of automated telephone equipment).

[7]   Plaintiffs' assertion that they can maintain standing based on material no longer on their website fails as a matter of law.  Plaintiffs cannot be prosecuted for material that is not on their website.  *See Spencer v. Kemma*, 523 U.S. 1, 7 (1998) (plaintiff must avoid mootness at all stages of litigaiton).

"dynamic, ever-changing environment," Pls.' Opp'n at 35, and "fluid."[8]  *Id.* at 45.  Plaintiffs

should not be allowed to hide behind these statements to escape their burden of proffering

documents to support their alleged fear of prosecution, particularly when this material was

requested in discovery.[9]  Nor should Plaintiffs be allowed to supplement information withheld

during discovery to support their claim, when their discovery responses already have set forth the

material that Plaintiffs believe represents their fear of prosecution.

The Court should base its standing determination on the representative samples proffered

by Plaintiffs in discovery, as this is the material identified by Plaintiffs themselves as

representing their fear of prosecution.  In discovery, Defendant requested all documents from

Plaintiffs that support their alleged fear of prosecution.  *See* Def.'s Ex. 3 (Def.'s Doc. Requests

13-14).  Plaintiffs did not provide this documentation, but referred Defendant to their response to

Interrogatory 13, which listed URLs that formed a representative sample about which Plaintiffs

feared prosecution.  *Id.*  Defendant sought to compel more information, and Plaintiffs opposed

this motion, arguing that the representative samples they listed were sufficient.  *See* Pls.' Opp'n

to Mot. to Compel (Docket # 231) at 10-11.  Ultimately, the Court determined that Plaintiffs'

---

[8]  Given Plaintiffs' assertions about the Internet's fluid and ever-changing nature,
Plaintiffs' declarations and web pages from 1998 (such as Plaintiffs' Exhibit 11 (Lawrence
Ferlinghetti) and 17 (Condomania)) cannot be used to support their standing eight years later.

[9]  For example, it is unreasonable to argue that generally referencing the Poetry section on
Mr. Ferlinghetti's website demonstrates any objective evidence of a reasonable fear of
prosecution.  Plaintiffs have attached to their opposition brief the specific web pages of poetry
about which Mr. Ferlinghetti *now* states he fears prosecution.  Likewise, Salon cannot
demonstrate a fear of prosecution through its interrogatories, which do not list a single article.
While Salon now alleges that Abu Ghraib pictures on Salon confer standing upon it, Pls.' Opp'n
at 51, Plaintiffs have still not attached any such pictures for the Court to evaluate whether they
could fit into COPA's harmful-to-minors definition.

responses to Interrogatory 13 "sufficiently addressed" Defendant's discovery requests about Plaintiffs' alleged fear of prosecution.  *See* Dec. 22, 2005 Order (Docket # 239) at 6-7.  Given this background, the Court should rely upon Plaintiffs' responses to Interrogatory 13 when making its standing determination.  Neither Defendant nor the Court should be forced to guess at why Plaintiffs fear prosecution - a burden that is the Plaintiffs' to bear through objective evidence.[10]  *See Bordell*, 922 F.2d at 1061.

### 2.    Plaintiffs' Intent Is Highly Relevant to the Standing Inquiry

Plaintiffs' assertion that their own views about the material on the website is irrelevant is wholly unpersuasive, given the language of the first prong of COPA's harmful to minors definition, that "the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is *designed* to appeal to, or *designed* to pander to, the prurient interest."  47 U.S.C. § 231(e)(6)(A) (emphasis added).  It is not enough that the material *could* appeal to the prurient interest – the material must be *designed* to appeal to the prurient interest in order to be harmful to minors.  Therefore, Plaintiffs' explanations of the purposes of their websites is quite relevant to whether their material can be considered to be "harmful to minors" under the statutory definition.  Plaintiffs' statements that they do not purport to place harmful-to-minors material on the web is supported by a review of the web pages attached to Defendant's Motion to Dismiss; the vast majority of the websites appear to serve an interest other than prurience, such as education, advice, book sales, and sales of safer-sex products or literature.

---

[10]  In any event, Plaintiffs do not contend or otherwise explain that the additional material belatedly provided is any different in content or tone from the material already provided by Plaintiffs as representative samples forming their fear of prosecution.

Plaintiffs' gratuitous comments that "defendant has forgotten what it is like to be 16" and their conclusion that viewing *National Geographic* can lead to a "prurient experience," Pls.' Opp'n at 26 n.24, are irrelevant to COPA's harmful-to-minors definition.  Plaintiffs' conclusion that "any information about sex" can appeal to the prurient interest, *id.*, ignores the statutory requirement that material must be found to be *designed* to appeal to the prurient interest.[11] Because Plaintiffs' reading of the statute unreasonably eviscerates the first prong of COPA's harmful-to-minors definition and replaces it with a much broader standard, their fear of prosecution based on this prong is not credible.

The only Plaintiff that has arguably come forward with any evidence that could possibly support a claim that its website is designed to appeal to the prurient interest is Nerve.com.[12]  *See* Pls.' Opp'n at 40.  However, Nerve places the majority of its content behind a subscription wall, which is COPA-compliant.  Plaintiffs' attempt to avoid this conclusion by baldly asserting that Nerve's content is placed behind the credit-card barrier only after two weeks.  *Id.* at 39. Unsupported assertions by counsel in a brief are not a substitute for evidence in the record and

---

[11]  Likewise, Plaintiffs' recitation of the deposition testimony of Damon Hecker (who is not an FBI agent, as Plaintiffs wrongly assert) about how some communities would view certain material on the Condomania website is irrelevant.  Pls.' Opp'n at 25-26.  Mr. Hecker is not a lawyer, and Plaintiffs did not establish that he was familiar with the legal definitions and application of the terms used in his testimony.  Hecker Dep. at 17-20, 138-40 (Pls.' Ex. 19).  Nor did Mr. Hecker testify regarding the scope of COPA or whether Plaintiffs websites were harmful to minors.  *Id.* at 5-6, 138-40.

[12]  Plaintiffs state that Heather Corinna considers her website to be pornography.  Pls.' Opp'n at 32-33.  The quote in support of this statement, however, contains a discussion about Ms. Corinna's belief that pornography "is a vague and meaningless term."  *Id.* at 33.  When compared to the commercial pornography website of Hustler.com, Ms. Corinna clarified that her website was "very, very different."  *Id.*  In fact, Heather Corrina explains the difference between her work and pornography in the "Stories Without Words" article on Femmerotic (Def.'s Ex. 10).

the Court should not rely on such statements.  *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 (3d Cir.1996) ("legal memoranda and oral argument are not evidence"); *Tilden Fin. Corp. v. Palo Tire Serv., Inc.*, 596 F.2d 604, 607 (3d Cir. 1979) (non-moving party must provide "more than mere allegations").  Of the material upon which Nerve fears prosecution, very little is publicly available.  *See* Def.'s Ex. 15 (pages from Nerve website).

None of the other Plaintiffs has proffered objective evidence that material on their websites could be ascertained by the average person to be "designed to appeal to the prurient interest," which is a pre-requisite to a reasonable fear of prosecution.  Even if the content on Plaintiffs websites could be considered to meet the first prong of COPA's harmful-to-minors definition (and the vast majority of them cannot), that alone would not suffice to maintain a reasonable fear of prosecution.  All three prongs of COPA's harmful to minors definition must be satisfied to maintain standing.

Moreover, Plaintiffs cannot realistically assert that their opinions as to the literary, artistic, political, or scientific value of their websites is irrelevant to the issue of whether they are harmful to minors.  This assertion is contrary to common sense, as any evaluation of a website must take into consideration the mission and tone of a website, as evidenced by the website creator's intent.  *See Nitke v. Ashcroft*, 253 F. Supp. 2d 587, 602 (S.D.N.Y. 2003) ("Material with serious value is that which is 'genuinely serious,' and making this determination might entail judging the sincerity of the artistic or political intent, or the predominance of the artistic over the prurient intent.") (citing *Miller v. California*, 413 U.S. 15, 23 (1973)).  Plaintiffs state that it is *not* their intent to proffer harmful-to-minors material over the Internet, and a review of the pages attached to Defendant's motion supports this view.

12

In addition to being relevant for the harmful-to-minors test, the intent of Plaintiffs regarding the material placed on their website is relevant to the standing issue, as COPA prohibits only entities that "*knowingly and with knowledge of the character of the material*" make commercial communications of harmful to minors material.  47 U.S.C. § 231(a)(1) (emphasis added).  Many Plaintiffs, including Urban Dictionary, Salon, Scarleteen, and Philadelphia Gay News, allow users to post their own material on their websites.  Plaintiffs argue that the hosting exemption of COPA, 47 U.S.C. § 231(b)(4), does not apply to them, even though they are hosting others' material.  Even if the hosting exemption did not apply to Plaintiffs who host material for others (and Defendant contends that it does), those Plaintiffs would only be liable for material on their websites to the extent the Plaintiffs "knowingly and with knowledge" of its harmful-to-minors content allowed it to remain there.

> **3.      Plaintiffs Ignore the Third Prong of COPA's Harmful-To-Minors Definition in an Effort to Maintain Standing**

Plaintiffs' alleged fear of prosecution completely reads out of the statute the third prong of COPA's harmful-to-minors definition, that the material, taken as a whole, must lack serious literary, artistic, political, or scientific value for minors.  47 U.S.C. § 231(e)(6)(C).  Plaintiffs insinuate that this factor is meaningless because they cannot ascertain what someone would consider to have serious value for minors.  *See* Pls.' Opp'n at 16-17 (citing Reichman Report). The serious value prong of the obscenity test has been a mainstay of the law since 1973, and courts have made determinations about this prong that can guide the scope of COPA.  *See Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1372 (5th Cir. 1980) (finding that Playboy Magazine is not obscene, in part because it "possesses a significant content of literary matter

including short stories, interviews, and panel discussions of great merit"); *Reno v. ACLU*, 521

U.S. 844, 873 (1997) (finding that *Miller's* "'societal value' requirement . . . allows appellate

courts to impose some limitations and regularity on the definition by setting, as a matter of law, a

national floor for socially redeeming value"). *See also Ashcroft v. ACLU*, 542 U.S. 656, 679

(2004) ("one cannot easily imagine material that has serious literary, artistic, political, or

scientific value for a significant group of adults, but lacks such value for any significant group of

minors") (Breyer, J., dissenting). In addition to obscenity case law, harmful-to-minors case law

presents ample examples of material that has value specifically for minors.[13] *See Athenaco, Ltd.*

*v. Cox*, 335 F. Supp. 2d 773, 781 (E.D. Mich. 2004) (finding *Lolita, Sanctuary, Of Mice and*

---

[13]   Of course, to the extent a harmful-to-minors law has discernably different standards
from COPA, such law is not instructive. Plaintiffs rely on an unpublished decision to imply that
a photograph of a woman with her shirt open to the waist could be found to violate COPA. Pls.'
Opp'n at 38 (citing *Wisconsin v. Stankus*, No. 95-2159, 1997 LEXIS 138 (Wis. App. Feb. 13,
1997)). Because the statute in that case prohibited "the showing of the female breast with less
than a fully opaque covering of any portion thereof below the top of the nipple," Wisc. Stat.
Ann. § 948.11, and the photograph at issue revealed the breast below the nipple, the court
concluded that it fell within the explicit language of the statute. *Stankus*, 1997 LEXIS 138 at *3.
COPA contains no similar language dictating such a result. Instead, where nudity is concerned,
COPA requires a "lewd exhibition of the genitals or post-pubescent female breast." 47 U.S.C.
§ 231(e).
        In addition, Plaintiffs misconstrue two cases interpreting state laws in an effort to show
that their work can reasonably be found to be harmful to minors. *See* Pls.' Opp'n at 15-16. Both
of these cases were decided before the *Miller* standard was developed. The first one involved a
delinquency of a minor statute, and the court found no error in the "implied" ruling that a "head
shop" selling a 14 year-old a button stating "Copulation not Masturbation" was obscene for
minors. *State v. Vachon*, 306 A.2d 781, 784 (N.H. 1973), *rev'd*, 414 U.S. 478 (1974). The
second one, contrary to Plaintiffs' assertion, did not address the issue of whether the novel
"Fanny Hill" was harmful to minors, but merely addressed in the context of a declaratory
judgment a state's power to legislate for harmful to minors. *Bookcase, Inc. v. Broderick*, 218
N.E.2d 668 (N.Y. 1966). In fact, the statute upon which the trial court initially found the book to
be harmful to minors had entirely different standards from the *Miller* test, was declared
unconstitutional, and the court's initial ruling regarding the book's harmful-to-minors nature was
reversed. *See People v. Bookcase, Inc.*, 201 N.E.2d 14 (N.Y. 1964).

*Men, The Catcher in the Rye, Portnoy's Complaint,* and *Joy of Sex* to have value for minors);

*Virginia v. Am. Booksellers Ass'n*, 372 S.E.2d 618, 622 & 625 (Va. 1988) (finding that sixteen

books, including Judy Blume's *Forever*, *Hollywood Wives, Changing Bodies, Changing Lives*

and *Our Bodies Ourselves*, had serious literary, artistic, political or scientific value for minors);

*Baker v. Glover*, 776 F. Supp. 1511, 1516 (M.D. Ala. 1991) (finding bumper sticker stating "Eat

Shit" had serious value for adults and older minors).  The Supreme Court noted that the works at

issue in *American Booksellers Association* "are extremely diverse, including classic literature,

health texts, poetry, photography, and pot-boiler novels."  484 U.S. at 391.

　　　　Defendant attached evidence to his motion that sufficiently demonstrates that each

Plaintiff's website has serious literary, artistic, political, or scientific value for minors.  These

exhibits show that some websites, such as Sexual Health Network, Scarleteen, and Condomania,

provide valuable scientific information regarding sex education.  The exhibits regarding other

sites, such as Femmerotic, show artistic value.  Still others, such as Scarlet Letters, Wildcat

International, and websites of Plaintiff bookstores, evidence serious literary value for minors.

Because each of the Plaintiffs websites has serious value, they do not come within the scope of

COPA.

　　　　Plaintiffs' assertion that they still fear prosecution under COPA because this prong does

not explicitly list "educational" or "medical" value is of no import.  Pls.' Opp'n at 14.  Plaintiffs

take a self-servingly narrow view of what constitutes "scientific" value for minors that does not

include educational or medical information.  Obviously, websites offering sex education (which,

by its nature, discusses anatomy and physiology), such as that offered by Scarleteen, Sexual

Health Network, and Condomania, have scientific value for minors.  In addition, educational

websites are not designed for the prurient interest, so they would not meet the first prong of

COPA's harmful-to-minors test.[14]

4.     **Plaintiffs Cite Material Out of Context in an Attempt to Bolster Their Standing, Although the Statute Requires Material To Be Evaluated as a Whole**

Plaintiffs purport to be unsure as to how COPA's "as a whole" requirement alleviates

their fear of prosecution.  Pls.' Opp'n at 17-18.  As discussed in Defendant's opening brief,

COPA follows established precedent with its "as a whole" requirement to assure that a

"reviewing court [will] look at the context of material, as well as its content."  *Kois v. Wisconsin*,

408 U.S. 229, 231 (1972).  Throughout their memorandum, Plaintiffs misleadingly extract

isolated passages from their websites, which creates the false impression that the purpose of their

websites is to disseminate harmful-to-minors information.  The true context of Plaintiffs'

websites, however, cannot be ignored.

Throughout their opposition brief, Plaintiffs also give the false impression that Defendant

has determined that material similar to that found on Plaintiffs' websites is harmful to minors.

*See* Pls.' Opp'n at 2, 17, 31.  Contrary to Plaintiffs' assertion, Defendant never responded to

contention interrogatories to state that "a photograph of a woman with her breasts bared, even if

the nipples are covered by superimposed stars, is harmful to minors."  *Id.* at 2.  Defendant was

asked to respond to interrogatories asking if certain pages pulled from websites were harmful to

minors.  Defendant responded with respect to the pages provided by Plaintiffs, and Defendant's

---

[14]   Plaintiffs' rhetoric that some of their speech is contrary to government policies does nothing to further their argument that the third prong of the *Miller* test is not met.  Pls.' Opp'n at 28 n.7, 53-54.  The Supreme Court pointed out in *Miller* that this prong applies "regardless of whether the government or a majority of the people approve of the ideas these works represent."  *Miller*, 413 U.S. at 34.

16

response explicitly considered the context of the website in making the determination.  *See* Pls.'
Ex. 1 at 13 (Defendant's Response to Contention Interrogatory 17).  The material to which
Plaintiffs refer was found on the website "Hardcore Studios."  The pages provided to Defendant
from this website, in addition to having images of women with their nipples covered, contained
other, graphic pornographic images, including close-up depictions of sexual intercourse in
various positions with a graphic focus on the genitals, erect penises, fellatio and cunnilingus. *See*
Ex. 23 (pages from "Hardcore Studios" website that were entered as exhibits at the preliminary
injunction hearing).  Therefore, Plaintiffs are wrong to assert that Nerve has freely accessible
material similar to exhibits found to be harmful to minors, Pls.' Opp'n at 38, because Plaintiffs
misconstrue the material that caused Defendant to contend that certain websites were likely to be
deemed harmful to minors.

### D.    Associational Plaintiffs Have Not Demonstrated Standing

Plaintiffs state that, because they have named in the Amended Complaint members with
standing, the associations to which they belong also have standing.  As discussed above and in
Defendant's opening brief, the named members of the Plaintiff associations, in fact, have *not*
demonstrated standing based on objective evidence.  Because the named members of the
associations lack standing for the reasons described in Defendant's original memorandum and
this reply, the associations themselves lack standing.

In his opening brief, Defendant showed that the associational plaintiffs lack standing for a
second reason:  the participation of the associations' individual members is required in this suit.
Because an evaluation of the constitutionality of COPA will require, in part, an evaluation of the
asserted burden on the Plaintiffs' speech rights, this case could not proceed without those

17

plaintiffs before the Court.  In response, Plaintiffs argue that a First Amendment case, unlike the takings cases previously cited by the Defendant, turns on whether the challenged statute is substantially overbroad, as opposed to overbroad in all possible instances, and that this changed legal test somehow waives the settled requirements of standing law.  This is not so.  This Court must decide (assuming, without conceding, that strict scrutiny would apply to COPA) whether "speech is restricted no further than necessary to achieve the goal" of the statute.  *Ashcroft v. ACLU*, 542 U.S. at 666.  Obviously, this decision turns on the nature of the speech that is allegedly restricted, and the extent of that alleged restriction – determinations that cannot be made without the plaintiffs whose speech is assertedly restricted before the Court.  There is thus no First Amendment exception to the settled test for associational standing under Article III.

Plaintiffs also argue that, because they seek only a generally applicable injunction and not individualized relief, there is no need for the individual participation of any association members. This argument ignores the fact that, as the Defendant showed in his initial brief, the *Hunt* test is only satisfied if "*neither the claim asserted* nor the relief requested requires the participation of individual members in this lawsuit."  *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) (emphasis in original) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).  In this case, the participation of individual association members is needed for the Court to evaluate the First Amendment claims presented, even if the relief requested would not require such participation.[15]

---

[15]  The only argument Plaintiffs raise in support of the standing of EPIC is that the court should follow its earlier holding and grant standing.  Pls.' Opp'n at 59 n.42.  At this stage in the litigation, however, EPIC should have come forward with evidence to prove its standing, and cannot rest on the allegations of the Complaint, which formed the basis of the Court's original decision.  *See Lujan*, 504 U.S. at 561 (party asserting jurisdiction needs to prove it at each stage

## II.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM REGARDING OLDER MINORS' RIGHTS TO ACCESS HARMFUL-TO-MINORS MATERIAL

Plaintiffs do not dispute that harmful-to-minors laws have been interpreted to apply an older minors standard.  Pls.' Opp'n at 62.  Nor do they dispute that materials that are obscene as to minors are not constitutionally protected for any minors.  *Id.*  Accordingly, their claim on behalf of older minors must be denied.

Plaintiffs cite nothing in their opposition to support their contention that minors have a constitutional right to access harmful-to-minors material.  To the contrary, Supreme Court precedent dictates that minors *do not* have a constitutional right to access harmful-to-minors material.  The Supreme Court upheld New York's harmful-to-minors statute, which, like COPA, applied a variable obscenity test to define the material deemed to be harmful to minors.  *Ginsberg v. New York*, 390 U.S. 629 (1968).  In doing so, it rejected the appellant's argument that denial of non-obscene material to minors was unconstitutional.  *Id.* at 636.  The Court did not delineate the exact parameters of minors' First Amendment rights, but noted that minors do not have such a right to view harmful-to-minors material.  *Id.* at 637.  The Court determined that "we cannot say that the [harmful-to-minors] statute invades the area of freedom of expression constitutionally secured to minors."  *Id.*

Like the statute at issue in *Ginsberg*, COPA defines harmful to minors as a variant of a well-established obscenity test.  Like the statute in *Ginsberg*, COPA covers material that is obscene as to minors.  Like the Supreme Court in *Ginsberg*, this Court should reject the argument that this statute violates a constitutional right of minors to access harmful-to-minors

of litigation); *McNutt*, 298 U.S. at 189 (plaintiff must support standing by "competent proof" when standing is challenged) .

19

material.   Plaintiffs' citation of the district court opinion striking down the Communications

Decency Act does nothing to alter this established Supreme Court precedent.  Pls.' Opp'n at 61.

The issue in *ACLU v. Reno* was whether the government had a compelling interest in protecting

minors from material that did not utilize a variable-obscenity test.[16]  929 F. Supp. 824 (E.D. Pa.

1996).  Unlike the CDA (and like the statute in *Ginsberg*), COPA's harmful to minors definition

follows the obscenity test and adapts it for minors.  47 U.S.C. § 231(e)(6).  As such, COPA

reaches only that material that is obscene for minors.  Therefore, Plaintiffs' additional assertion

that older minors have a right to access "sexually explicit speech that is *not* obscene as to older

minors," Pls.' Opp'n at 62, is irrelevant.  *Ginsberg* makes no distinction as to the age of the

minor seeking to access harmful-to-minors material; *no* minors have a constitutional right to

access such material.[17]

Even if there were a constitutional right for older minors to access harmful-to-minors

material, Plaintiffs do not dispute that courts universally incorporate an older-minors standard

when evaluating harmful-to-minors laws with language defining minors virtually identically to

COPA.  *See Am. Booksellers v. Webb*, 919 F.2d 1493,1504-05 (11th Cir. 1990); *Am. Booksellers*

*Ass'n*, 372 S.E.2d at 624; *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 533

(Tenn. 1993).  The fact that the statute defines minors as any person under 17 years of age, rather

---

[16]  The CDA did not follow the *Miller* test for obscenity, but covered all "indecent"
material, regardless of whether or not it had serious value for minors.  *Reno*, 929 F. Supp. at 853.
The court questioned whether the government had a compelling interest in protecting minors
from material that, while indecent, could have serious value for minors.  The court acknowledged
that the government had a compelling interest in protecting minors from at least some of the
material covered by the CDA and did not invalidate the statute on that ground.  *Id.* at 853.

[17]  In addition, Plaintiffs' argument about the effect of COPA on adults' access to speech,
Pls.' Opp'n at 62, is wholly irrelevant to Plaintiffs' claim on behalf of minors.

than referring explicitly to older minors, is of no import.  The Supreme Court upheld similar

language in *Ginsberg*, and there is a body of law interpreting this very statutory language

challenged by Plaintiffs.  Plaintiffs proffer no cases that have found a statute to be

unconstitutional because they did not explicitly include an older minors standard, and, as cited

above, there are numerous cases upholding Defendant's interpretation.

Plaintiffs do not substantiate their allegation that adopting an older-minors standard

renders COPA "ineffectual."  Pls.' Opp'n at 60.  To the contrary, incorporating an older minors

standard into the statute is one that balances First Amendment rights with its compelling interest

in protecting minors.  It protects all minors from the most harmful material on the Web, without

interfering with the interest of older minors in obtaining access to material that has serious value

for them.

Perhaps realizing the weakness of their claim, as a final measure, Plaintiffs propose that

the Court need not rule on Count II "at this stage."  Pls.' Opp'n at 62.  There is no reason for the

Court not to rule on Count II at this time.  This claim raises issues of law, and there are no factual

disputes that would warrant delay in deciding the claim.[18]

---

[18]  To the extent Plaintiffs are arguing that the Court should decline to rule based on
constitutional avoidance grounds, this argument lacks merit.  Plaintiffs have raised a
constitutional challenge to COPA; this is not a case that can be decided on statutory, rather than
constitutional, grounds.  *Cf. Ashwander v. TVA*, 297 U.S. 288, 347 (1936) ("if a case can be
decided on either of two grounds, one involving a constitutional question, the other a question of
statutory construction or general law, the Court will decide only the latter").  Moreover, the
Court's conclusion regarding this claim may impact how the Court rules on Plaintiffs' other
constitutional claims.  Therefore, a pre-trial ruling on this claim may, in fact, streamline the
issues to be argued and decided at trial.

**III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM REGARDING THE RIGHT TO COMMUNICATE AND ACCESS INFORMATION ANONYMOUSLY ON THE INTERNET**

Count III of the Amended Complaint - that COPA violates the right to communicate and access information anonymously – rests on the assumption that there is a *per se* constitutional right for Internet users to access harmful-to-minors material without providing any identifying information to the websites they seek to access.  There is not.  As Defendant has noted, courts have determined that adults must provide identification to gain access to materials that are restricted for minors.  *See* Def.'s Br. at 52 (collecting cases).  Plaintiffs concede as much in their opposition, when they state that certain circumstances allow age-verification requirements to trump rights to communicate anonymously.  Pls.' Opp'n at 66.  Because there is no *per se* right to access sexually explicit materials anonymously, and Count III rests on this *per se* right, Plaintiffs' Count III must fail.

Plaintiffs assert that resolution of Count III must be reserved for trial because the government must demonstrate that COPA is sufficiently tailored to achieve its compelling interest.  Pls.' Opp'n at 66.  This argument conflates Count III with the other claims raised by Plaintiffs.  Count I of the Amended Complaint, which will be addressed at trial, addresses whether COPA is a sufficiently narrowly tailored restriction on speech.  To the extent that any alleged loss of anonymity will affect the analysis for Count I, it will be addressed at trial.  *See* Def.'s Br. at 53 n.37.  However, the separate claim of Count III raises the question of whether Plaintiffs have a *per se* constitutional right to access harmful-to-minors material over the Internet anonymously.

As explained in Defendant's opening brief, there is no right to access harmful-to-minors

22

information anonymously over the Internet.  The Supreme Court cases protecting anonymous

speech protect the right to remain anonymous *vis a vis* the general public or the government.  *See*

Def.'s Br. at 49-50.  None of those types of speech are implicated with COPA, which calls for

disclosure of information only to websites containing harmful-to-minors material that individuals

seek to access.  These websites already are able to gather certain information about visitors

through the use of "cookies" technology.  *See* www.netlingo.com/right.cfm?term=cookies

(attached as Ex. 24).  COPA requires the additional step of website users verifying their age to

the website offering harmful-to-minors material.  Additionally, COPA's non-disclosure

provisions protect the anonymity of website users.  47 U.S.C. § 231(d)(1)(A).  *See Fabulous*

*Assoc., Inc. v. Pennsylvania Public Utility Comm'n*, 896 F.2d 780, 788 (3d Cir. 1990) (suggested

dial-a-porn regulation that required customers to identify themselves to telephone companies in

order to unblock access to services is constitutionally permissible where "there is evidence that

the telephone company will not disclose such information").

Moreover, the cases cited by Plaintiffs regarding anonymous Internet speech involve the

right of individuals to access harmful-to-minors material anonymously.[19]  *See* Pls.' Opp'n at 64;

*citing Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) (delineating standards for

when a party can subpoena information regarding non-party who has communicated

anonymously over the Internet); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal.

1999) (setting standards to allow pre-filing discovery into identity of defendant in trade

---

[19]  Plaintiffs cite to one district court opinion that, in issuing a preliminary injunction, made a conclusion of law that New Mexico's harmful to minors law "prevents people from communicating and accessing information anonymously."  Pls.' Opp'n at 63 (citing *ACLU v. Johnson*, 4 F. Supp. 2d 1029, 1033 (D.N.M. 1998)).  This decision is not persuasive, as it contains no analysis for its conclusion.

infringement lawsuit); *ACLU v. Miller*, 977 F. Supp. 1228 (N.D. Ga. 1997) (addressing statute prohibiting internet transmissions that falsely identify sender or use trade names or logos falsely implying that sender was legally authorized to use them).

Plaintiffs' anonymous access claim would afford Internet speakers *more* protection than they would otherwise have offline.  It is routine for adults to provide identification in the non-Internet context.  *See Reno*, 521 U.S. at 890 (O'Connor, J., concurring in part and dissenting in part).  COPA merely applies this requirement to the Web.  Because there is no *per se* right to access harmful-to-minors material anonymously, Plaintiffs' Count III must fail.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and, in the Alternative, for Judgment on the Pleadings should be granted.

Dated:  September 27, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

PATRICK L. MEEHAN
United States Attorney
RICHARD BERNSTEIN
Assistant U.S. Attorney

THEODORE C. HIRT
Assistant Branch Director
RAPHAEL O. GOMEZ
Senior Trial Counsel

  /s/
ERIC J. BEANE
ISAAC CAMPBELL
JOEL McELVAIN
KENNETH SEALLS
JAMES TODD

24

TAMARA ULRICH
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
(202) 305-1432

Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2006, I caused the foregoing Reply Memorandum in Support of Defendant's Motion to Dismiss and, in the Alternative, for Partial Judgment on the Pleadings to be filed electronically and therefore to be available for viewing and downloading from the Electronic Case Filing system.  The electronic filing of these documents constituted service of these documents on the following liaison counsel:

Aden Fine
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004


___/s/ Tamara Ulrich_____
TAMARA ULRICH