**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

AMERICAN CIVIL LIBERTIES UNION, et al.

       Plaintiffs,

   v.

ALBERTO R. GONZALES, in his official capacity as
ATTORNEY GENERAL OF THE UNITED STATES,

       Defendant.

Civil Action No.
98-CV-5591 (LAR)

---

### PLAINTIFFS' OBJECTIONS TO CERTAIN WITNESS TESTIMONY AND ADMISSIBILITY OF CERTAIN EXHIBITS

Pursuant to Section 8 of Pretrial Order No. 26, Plaintiffs object to Defendant's intent to call a number of witnesses in contravention of Fed. R. Civ. P. 37 and the Court's Order dated September 27, 2006, to Defendant's stated intent to present expert testimony falling outside the scope of expertise of Defendant's experts, and to the admissibility of certain exhibits.

**I.     OBJECTIONS TO TESTIMONY**

    **A.     Dr. Finkelhor's Testimony Is Inadmissible**

Following the denial of leave to call Dr. David Finkelhor as an expert witness, Defendant now seeks to call Dr. Finkelhor to testify about "factual results" contained in the Online Victimization of Youth: Five Years Later report. As noted by the Court, this report was issued by the National Center for Missing and Exploited Children on August 9, 2006. (See Doc. No. 315 at ¶1.) Defendant further seeks to enter the 2006 report, a 2001 report from the same organization, and Dr. Finkelhor's curriculum vitae into evidence. (See Defendant Exhibits 1–3.)

Plaintiffs object to the designation of Dr. Finkelhor as a fact witness and to the admission of the offered surveys and curriculum vitae into evidence.

The need to exclude Dr. Finkelhor's testimony is underscored by Defendant's description of his purported "factual" testimony.  Defendant does not expect Dr. Finkelhor to testify about facts he personally experienced but rather "factual results of the underlying 2005 survey."  (See Final Pre-Trial Order at p. 157.)  The inclusion of Dr. Finkelhor's curriculum vitae in the list of exhibits makes clear, however, that Defendant also intends to seek Dr. Finkelhor's opinions regarding the methods used and results of those surveys.  Defendant's blatant attempt to circumvent his disclosure obligations under Fed. R. Civ. P. 26(a)(2)(A) and (B), as well as Pretrial Order No. 24 (as amended) should be rejected and the use of Dr. Finkelhor's testimony and the two surveys should not be permitted.  See Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 16(f); Doc. Nos. 258; 276; see also United States v. 68.94 Acres of Land, More or Less, Situated in Kent County, 918 F.2d 389, 396 (3d Cir. 1990) ("As a sanction for the failure to obey a pre-trial order, the Federal Rules of Civil Procedure authorize district courts to prohibit the admission of evidence proffered by the disobedient party.").

As offered, Dr. Finkelhor's expected testimony about the results of the two surveys, as well as the surveys themselves, constitutes inadmissible hearsay.  The surveys purport to describe patterns of Internet usage by minors and are offered to establish the truth of their findings and conclusions.  See, e.g., Brokerage Concepts v. U.S. Healthcare, Inc., 140 F.3d 494, 517 n.14 (3d Cir. 1998) ("Survey results offered as proof of the matter asserted are hearsay, and thus the results of a survey, and any testimony based on those results, cannot be admitted into evidence unless the survey falls into a recognized [exception]."); Pittsburgh Press Club v. U.S., 579 F.2d 751, 757 (3d Cir. 1978).

To even qualify for admissibility, surveys must be shown to have been "conducted in accordance with accepted principles of survey research, i.e., that…  (4) the persons conducting

the survey were recognized experts; (5) the data gathered was accurately reported; and (6) the sample design, the questionnaire and the interviewing were in accordance with generally accepted standards of procedure and statistics." Harlem Wizards Basketball Inc. v. NBA Props., Inc., 952 F. Supp. 1084, 1098 (D.N.J. 1997). See also M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1087 (9th Cir. 2005) (to be admissible a survey must be "relevant and conducted according to accepted principles" (internal citations omitted)).  As such, survey data may not be admitted on its own or through a "fact witness" – an expert must establish that the survey's methodology is valid in order to pass this threshold test of admissibility.  See Harlem Wizard Basketball Inc., 952 F. Supp. at 1098; Am. Home Prods. Corp. v. Proctor & Gamble Co., 871 F. Supp. 739, 747 (D.N.J. 1994); Nat. Football League Props., Inc. v. New Jersey Giants, Inc., 637 F. Supp. 507, 515 (D.N.J. 1986).  See also Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 522-23 (10th Cir. 1987); Pittsburgh Press Club, 579 F.2d at 759.  Defendant cannot meet this standard.  Dr. Finkelhor is proffered as a fact witness and cannot testify as to whether, in his opinion, the two surveys were conducted according to generally accepted standards.  Nor did Defendant identify Dr. Finkelhor as providing lay opinion testimony.  Moreover, Defendant has not identified any expert to provide this testimony, and without such testimony the surveys are irrelevant and inadmissible.

**B.    Mr. Sloane's Testimony is Inadmissible**

Plaintiffs object to any testimony by Mr. Tim Sloane as a sur-rebuttal fact witness concerning the expert testimony of Professor Ronald Mann.  Mr. Sloane is expected to offer testimony regarding "prepaid cards, including their development, market share, and regulation."  (See Final Pre-Trial Order at p. 167.)  Mr. Sloane has no first-hand factual knowledge regarding these general topics, but rather is a paid consultant to the payment card industry, i.e., a possible expert, rather than a fact witness.  Indeed, the type of testimony

Defendant seeks to elicit from Mr. Sloane is more appropriately categorized as expert testimony pursuant to Fed. R. Evid. 702. (Based on his "knowledge, skill, experience, training or education," Mr. Sloane will likely be asked to offer opinions about statements made by Professor Mann.) Mr. Sloane was, however, not identified as a witness who would be providing such opinion testimony, either lay or expert, at trial. Defendant's inappropriate and untimely attempt to slip in another expert witness disguised as a fact witness, and the undefined broad statement regarding his expected testimony, on the eve of trial is in direct violation of Defendant's disclosure obligations under Fed. R. Civ. P. 26(a)(2)(A) and (B). Even if Mr. Sloane were allowed to testify, he could not provide any opinion testimony, and all of the topics Defendant identified for him to testify about are clearly inadmissible opinion. Mr. Sloane's testimony should be excluded pursuant to Fed. R. Civ. P. 37(c)(1).

### C.    Mr. Mewett's Testimony Is Inadmissible

Plaintiffs object to the testimony of Mr. Mewett in its entirety. Mr. Mewett's testimony consists entirely of describing the method by which he employed individuals in the United States and in the United Kingdom to separate approximately 70,000 web pages (URLs) into two categories, those that included material that was "sexually explicit that was clearly displayed only for adult entertainment purposes," and those that did not include such material. See, e.g., Defendant's Statement of Facts that Are in Dispute ("DSFD") ¶¶113, 176, 187. He did so for the purpose of evaluating Internet content filters. This testimony is objectionable for four reasons.

First, Mr. Mewett has no expertise in this task. The definition he used was one he entirely made up and there is no evidence that he or anyone else had ever used it before or that it is reliable. It is therefore not a subject of expertise. Daubert v. Merrell Dow. Pharms., 509 U.S. 579, 593 (1993).

Second, Mr. Mewett's definition bears no relationship to COPA.  Mr. Mewett expressly disavowed any ability to compare or relate the standard he used to the definition of speech covered by COPA or to the definition of speech defined in the United States as obscene.  (See Mewett Dep. at 78:10 – 81:16.)  The key decisions were made by Mr. Mewett and three other British citizens in the United Kingdom without regard to the standards of any U.S. community. (Id. at 18:1-6, 281:18-283:14.)  Defendant refused a proffered stipulation that all of Mr. Mewett's "sexually explicit" sites were harmful to minors and not obscene.  (See DSFD ¶187.) Because neither he nor any other witness can testify that the material that he defined as "sexually explicit" is or is not harmful to minors and is or is not obscene, it is not relevant and thus not the subject of proper expert testimony.  See Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citations omitted).

Third, Mr. Mewett analyzed only individual web pages.  (See, e.g., DSFD ¶113.) Defendants have taken the legal position that the "as a whole" requirement of COPA requires analysis of the entire web site.  Thus, according to Defendant's legal interpretation of COPA, Mr. Mewett's analysis is not the subject of proper expert testimony in this case.  See id.[1]

Finally, Plaintiffs object to certain portions of Mr. Mewett's testimony as beyond his expertise.  More specifically, in Defendant's Statement of Facts that Are in Dispute, paragraphs 164-171, 195-205, 207-209, and 261 involve anticipated testimony by Mr. Mewett concerning the methodologies used by filtering companies.  They also involve opinions about how parents use filtering.  Mr. Mewett had no experience with filters prior to his use of them in the case and has no basis for expressing any of the expert opinions contained in those paragraphs.  The

---

[1]    Plaintiffs agree with this Court and the Third Circuit that the "as a whole" requirement includes individual Web pages without regard to the content of other pages in the Web site and therefore under Plaintiffs' interpretation, this third objection would properly be denied.

paragraphs also speculate on methods by which filters can be circumvented.  Mr. Mewett did not investigate any of the methods he identifies and has no basis for asserting that circumvention is possible.  Paragraph 261 is typical of the problem.  In that paragraph, Mr. Mewett asserts that "Families do not use filtering software for many reasons..." and then speculates about the reasons.  He has no expertise in the use of filters by families and no data to support his speculations.

Paragraphs 164-169 put forward anticipated testimony from Mr. Mewett about the general workings of internet content and methods employed by filtering companies to keep up-to-date lists of websites to that are to be blocked.  Mr. Mewett had no experience with filters prior to his use of them in the case and has no basis for expressing any of the purported expert opinions contained in those paragraphs.  (See DSFD ¶¶164-69.)

Paragraphs 170 and 171 put forward anticipated testimony from Mr. Mewett regarding under and overblocking of filters.  Mr. Mewett had no experience with filters prior to his use of them in the case and has no basis for expressing any of the purported expert opinions contained in those paragraphs.  (See DFSD ¶¶170-71.)

Paragraph 195 puts forward anticipated testimony from Mr. Mewett about the relative efficacy of filtering technology in corporate and residential settings.  Before his engagement in this case, Mr. Mewett had no experience with filters in a corporate setting and had not studied the relative efficacy of filters in a corporate setting.  Mr. Mewett should not be permitted to offer speculative testimony about the efficacy of filters in a corporate setting.  (See DFSD ¶195.)

Paragraphs 196, 197, 208, and 209 put forward anticipated testimony from Mr. Mewett about the reasons why some parents might choose not to use filters in their homes, the relative effort involved in installing filtering products, and potential problems users may encounter when

operating the software.  Mr. Mewett has no expertise regarding the use of filters in residential

settings, the reasons underlying parents' filtering choices, the relative ease of installing filtering

software, or potential problems users of content filtering software may come across.  He

therefore has no basis for expressing any of the purported expert opinions contained in those

paragraphs.  (See DFSD ¶¶196, 197, 208, 209.)

Paragraphs 198-201 put forward anticipated testimony from Mr. Mewett about methods

by which filters can be circumvented.  Mr. Mewett had no experience with filters prior to his use

of them in the case.  Mr. Mewett did not investigate any of the discussed methods and has no

basis for expressing any of the purported expert opinions contained in those paragraphs.  (See

DFSD ¶¶198-201.)

Paragraph 203 indicates anticipated testimony from Mr. Mewett about the purported

effect of the conversion from dial-up to broadband on filtering technology.  Mr. Mewett had no

experience with filters prior to his use of them in the case and has no basis for expressing any of

the purported expert opinions contained in this paragraph.  (See DFSD ¶203.)

Paragraphs 204, 205, and 207 put forward anticipated testimony from Mr. Mewett about

the purported behavior of commercial pornographers.  Mr. Mewett has no expertise regarding the

behavior of commercial pornographers on the Internet and should not be allowed to offer expert

testimony about their purported practices.  (See DFSD ¶¶204, 205, 207.)

### D.      Dr. Stark's Testimony is Inadmissible

Plaintiffs object to the testimony of Dr. Stark in its entirety.  Dr. Stark's testimony

consists entirely of opinions reached upon the basis of the results generated by Mr. Mewett in the

course of preparing Mr. Mewett's report.  Dr. Stark's testimony is dependent entirely on Mr.

Mewett's categorization.  Thus, if Mr. Mewett is not permitted to testify, Dr. Stark cannot be

permitted to do so either.

**E.      Portions of Dr. Eisenach's Proffered Testimony Are Beyond His Expertise and Should Not Be Admitted**

Plaintiffs object to certain portions of Jeffrey Eisenach's testimony as beyond his expertise.  In particular, Defendant has called Dr. Eisenach to testify to the following topics that are admittedly beyond his area of purported expertise, specifically Defendant's Statement of Facts that Are in Dispute, paragraphs 85, 163, 239, 240, 242, 244-51, 255, 257-62, 265, and 268.

Dr. Eisenach claims no expertise in, and should not be permitted to testify regarding:

- The technologies underlying the specific market he assesses.   (DSFD ¶¶265, 268)  (See Eisenach Dep. at 26:16-26:22; 236:18-237:23.)

- The effectiveness or quality of Internet content filters.  (DSFD ¶¶85 (last sentence), 244, 250, 257-58)  (See Eisenach Dep. at 53:02-53:22.)

- Frequency of over-blocking, under-blocking or circumvention of filters.  (DSFD ¶251)  (See Eisenach Dep. at 65:03-65:12.)

- Ease of installing and using Internet content filters.  (DSFD ¶¶247-48)  (See Eisenach Dep. at 49:22-50:02; 51:03-51:13.)

- Parental behavior, technological sophistication or reasons they may or may not choose to use filters; and whether parents purchasing filters attempt to assess the quality of products before their purchase.  (DSFD ¶¶245-46, 255, 259 261, 262)  (See Eisenach Dep. at 95:22-95:25.)  Dr. Eisenach also admits he has no basis for his assumption that parents over-report their use of filters.  (See Eisenach Dep. at 96:2-96:10).

- Statistical analysis of demographics, including assessing percentages of Internet-connected households and the number of families that actually use filters.  (DSFD ¶¶240, 242, 260)  (See Eisenach Dep. at 77:11-77:14.)

(Many of these assertions which fall outside the scope of Dr. Eisenach's expertise are also reflected in Defendant's "Summary of Expert Testimony" on page 161 of the Pretrial Order. Any testimony from Dr. Eisenach regarding these subjects falls outside the scope of his stated expertise and should not be permitted.)

Regarding the last bullet, his expected testimony of the percentages of Internet-connected households that use filters, which is based on his simple averaging of several surveys, Dr. Eisenach is admittedly not an expert in (1) survey sampling, (2) instrument design or (3) statistical analysis, see Eisenach Dep. at 77:11-12, 79:6-11, 81:18-21, 84:20-24, all of which are required skills for an expert to testify regarding surveys.  See Reference Guide on Survey Research p. 238-39, in Federal Judicial Center, Reference Manual on Scientific Evidence, Second Edition, 2000.  See also Pittsburgh Press Club, 579 F.2d at 757; Harlem Wizards Basketball Inc., 952 F. Supp. at 1098.  Indeed, Dr. Eisenach testified at his deposition that, regarding the surveys which he ultimately cited in his Report, "I indicated to Mr. Gomez that one thing that they might consider would be to retain a survey research expert to take on -- to analyze some of the surveys."  (Eisenach Dep. at 37:10-13.)  Defendant chose not to do that, and proffers no one with the required expertise to speak to the statistical validity regarding the proper aggregation of surveys.

To the extent Plaintiffs object to the subjects on which this expert may testify, Plaintiffs also object to the portions of the expert report(s) that addresses those subjects.

### F.     Portions of Professor Neale's Proffered Testimony Are Beyond His Expertise and Should Not Be Admitted

Plaintiffs object to certain portions of Professor Stephen Neale's testimony as beyond his expertise.  Specifically, Defendant's Statement of Facts that Are in Dispute paragraphs 164, 166, 168, 211-15, 217-24, 226-28, 230-34, 237-38, and 269-70 involve testimony concerning the

methodologies and performance of filtering software, as well as the structure of the World Wide Web.  Professor Neale had no experience with internet content filters prior to preparation of his report.  (See Neale Dep. at 12:5-13.)  Indeed, Professor Neale has conceded that he can provide no expert testimony with regard to the material found in much of his report.  (See id. at 23:13-25, 24:6-11.)  He has further conceded that he has no prior expertise in internet content filters or the World Wide Web.  (See id. at 11:9-20.)  Accordingly, his testimony should be limited to his areas of expertise: linguistics and the philosophy of language.

To the extent Plaintiffs object to the subjects on which this expert may testify, Plaintiffs also object to the portions of the expert report(s) that addresses those subjects.

### G. Portions of Mr. Clark's Proffered Testimony Are Beyond His Expertise and Should Not Be Admitted

Mr. Clark is purported to be an expert in payment cards.  He has acknowledged that he has no expertise in survey methodology and survey design.  (See Clark Dep. at 8:23-25.)  Plaintiffs object to any testimony by Mr. Clark attempting to establish the validity, accuracy or veracity of survey results, including but not limited to survey results obtained from Teenage Research Unlimited. (See DSFD ¶¶88, 286-289.)

Mr. Clark has no legal expertise or expertise regarding law enforcement.  (See Clark Dep. at 101:3-4, 122:6.)  Plaintiffs object to any testimony by Mr. Clark regarding the legal requirements surrounding the issuance of payment cards, including legal requirements under the USA Patriot Act and legal consequences of state age-of-majority laws.  (See DSFD ¶¶281-283.) For the same reason, Plaintiffs also object to any testimony by Mr. Clark regarding extra-territorial enforcement of COPA, including purported activities of the Financial Coalition Against Child Pornography.  (See id. ¶¶353-356.)

Mr. Clark has further acknowledged that he has no expertise in parental supervision and

family dynamics.  (See Clark Dep. at 158:4-16.)  Plaintiffs therefore object to any testimony by Mr. Clark regarding the ability of parents to supervise their children's payment card use or the likelihood that parents will or will not do so.  (See DSFD ¶¶20, 291-294.)

Plaintiffs also object to any testimony by Mr. Clark regarding the sale or marketing of reloadable pre-paid cards to minors.  As acknowledged by Mr. Clark, his experience is limited to marketing pre-paid cards to adults.  (See Clark Dep. at 98:18-99:21; see also DSFD ¶89.)

Finally, Plaintiffs object to any testimony by Mr. Clark regarding the subjects that were first disclosed last week in Defendant's letter to Counsel for Plaintiffs dated October 2, 2006.  These subjects include (i) the market penetration of Open Market prepaid cards (a term not defined in this letter) including Gift Cards, Money Cards, and Payroll Cards; (ii) procedures for obtaining and reloading Open Market prepaid cards; and (iii) current or potential future policies of Internet merchants regarding acceptance of Open Market Gift Cards.  Pursuant to the Federal Rules of Civil Procedure, Defendant was obligated to disclose at least 90 days before the trial date "a complete statement of all opinions to be expressed and the basis and reasons therefore . . . [and] the data or other information considered by the witness in forming the opinions."  Fed. R. Civ. P. 26(a)(2)(B) and (C).  The October 2, 2006 letter from Defendant is both inadequate and too late.  See id.  Pursuant to Fed. R. Civ. P. 37(c)(1), any testimony by Mr. Clark regarding these subjects is inadmissible.  In addition, Mr. Clark should not be allowed to testify about the eight interviews he purportedly conducted after his deposition to support any other subject, as Plaintiffs have been deprived of the opportunity to discover the basis for his testimony on any such subjects.  If Mr. Clark's testimony on these subjects is nonetheless admitted, Plaintiffs respectfully request reopening of discovery to permit the deposition of Mr. Clark on the issues described in the October 2, 2006 letter.

To the extent Plaintiffs object to the subjects on which this expert may testify, Plaintiffs also object to the portions of the expert report(s) that addresses those subjects.

**H.     Portions of Professor Smith's Proffered Testimony Are Beyond His Expertise and Should Not Be Admitted**

Plaintiffs object to certain portions of Professor Smith's testimony because they are beyond his expertise.  Defendant apparently plans to call Professor Smith to give expert testimony on the following subjects:  (1) Internet research and methodology; (2) advanced computer applications for Internet survey research and analysis; (3) cross-cultural research; (4) consumer behavior; and (5) Internet business models.  (See DSFD ¶92.)  Professor Smith's own resume indicates that he only has expert qualifications regarding the first three topics.  See Smith Resume, attached as Attachment 2 to Pretrial Order ("I specialize in three distinct areas of academic study:  (1) Internet research and methodology; (2) Advanced computer applications for Internet survey research and analysis; and (3) cross-cultural research.").  Professor Smith confirmed that those were his distinct areas of academic study in his deposition.  (See Smith Dep. at 6:9-11.)  Professor Smith also confirmed that his educational training in consumer behavior occurred over twenty-five years ago and that he has not taught a class on consumer behavior for around fifteen years.  (See id. at 7:15-21; 10:9-18.)  Testimony from Professor Smith regarding consumer behavior and Internet business models falls outside the three distinct areas of Professor Smith's expertise and should not be permitted.

Defendant apparently also plans to call Professor Smith to give expert testimony regarding the pornography industry and the behavior of pornography consumers.  (See DSFD ¶¶339, 340.)  During his deposition Professor Smith admitted, however, that these areas fall outside the scope of his expertise and that he has never studied these subjects other than in the context of preparing his expert report for this case.  (See Smith Dep. at 179:4-21) ("Q:  . . .  And

12

the motivations of people seeking out pornography are outside your field of expertise?  A:  That

is correct.")  The basis for Professor Smith's expertise is limited to reading a journal article that

was written by someone Professor Smith had not heard of, who he has never talked to, and for

whom he has no idea if he is well-respected in his field of research.  (See id. 180:7-21; see also

Soldo v. Sandoz Pharm. Corp., 244 F. Supp. 2d 434, 568 (W.D. Pa. 2003) ("a party cannot

qualify as an expert generally by showing that the expert has specialized knowledge or training

which would qualify him or her to opine on some other issue." quoting In re Diet Drugs, No.

MDL 1203, 2001 WL 454586, at *7 (E.D.Pa. Feb. 1, 2001)).  Professor Smith, accordingly, has

no expert qualifications for rendering any of this testimony.

     To the extent Plaintiffs object to the subjects on which this expert may testify, Plaintiffs

also object to the portions of the expert report(s) that addresses those subjects.

### I.    Ms. Dillon's Testimony Should Be Limited to Facts That Are Within Her Personal Experience

     Ms. Dillon is an employee of Veratad Technologies, LLC.  Ms. Dillon is called by the

Defendant as a fact witness with regard to Data Verification Services provided by that company.

In this regard, Ms. Dillon is expected to testify about facts regarding Veratad's Data Verification

Services, including IDResponse and products that are still in development.  (See Final Pre-Trial

Order at p. 166-67.)

     Plaintiffs object to any testimony about Data Verification Services other than those

provided by Veratad Technologies, LLC.  Plaintiffs further also object to any opinion testimony

by Ms. Dillon about Data Verification Services, including their purported effectiveness at

denying minors access to content on the Internet and purported future trends in the market for

those services.  (See DSFD at ¶¶316, 317, 318, 319.)  Defendant has not identified Ms. Dillon as

an expert or as someone who would proffer lay opinion testimony.  (See Final Pre-Trial Order at

p. 166-67.)  Any opinion testimony from Ms. Dillon violates Fed. R. Civ. p. 26(a)(2)(A) and (B), as well as Pretrial Order Nos. 24 and 26, and should be prohibited.  (See Fed. R. Civ. p. 37(c)(1); Doc. Nos. 258; 276.)

Plaintiffs further object to any testimony by Ms. Dillon regarding digital certificates or digital signatures absent a proper factual foundation.  (See deposition of Pattie Zelle Dillon, 166:19-168:3.)  Ms. Dillon's employer, Veratad, is not identified by Defendant to be offering digital certificates or digital signatures.  (See Final Pre-Trial Order at p. 166-67.)  As indicated above, Defendant has not identified Ms. Dillon as an expert or as someone who would proffer lay opinion testimony and her testimony should therefore be limited to facts she has personally experienced.  (See Fed. R. Civ. P. 37(c)(1); Doc. Nos. 258; 276.)  Furthermore, absent proper foundation, any such factual testimony by Ms. Dillon about digital certificates or digital signatures violates Fed. R. Civ. P. 26(a)(2)(A) and (B), as well as Pretrial Order Nos. 24 and 26, and should be prohibited.  (See Fed. R. Civ. P. 37(c)(1); Doc. Nos. 258; 276.)

**J.     Mr. Dancu's Testimony Should Be Limited to Facts That Are Within His Personal Experience**

Mr. Dancu is an employee of IDology, Incorporated.  Defendant has called Mr. Dancu as a fact witness with regard to Data Verification Services provided by that company.  In this regard, Mr. Dancu is expected to testify about facts regarding IDology's current products and its products that are still in development.  (See Final Pre-Trial Order at p.167.)

Plaintiffs object to any testimony by Mr. Dancu about Data Verification Services other than those provided by IDology, Inc.  Plaintiffs further also object to any opinion testimony by Mr. Dancu about Data Verification Services, including their purported effectiveness at denying minors access to content on the Internet and purported future trends in the market for those services.  (See DSFD at ¶¶316, 317, 318, 319.)  Defendant has not identified Mr. Dancu as an

expert or as someone who would proffer lay opinion testimony.  (See Final Pre Trial Order at p. 167.)  Any opinion testimony from Mr. Dancu violates Fed. R. Civ. P. 26(a)(2)(A) and (B), as well as Pretrial Order Nos. 24 and 26, and should be prohibited.  (See Fed. R. Civ. P. 37(c)(1); Doc. Nos. 258; 276.)

Plaintiffs further object to any testimony by Mr. Dancu regarding digital certificates or digital signatures absent a proper factual foundation.  Mr. Dancu's employer, IDology, Inc. , is not identified by Defendant to be offering digital certificates or digital signatures.  (See Final Pre-Trial Order at p. 167.)  As indicated above, Defendant has not identified Mr. Dancu as an expert or as someone who would proffer lay opinion testimony and his testimony should therefore be limited to facts he has personally experienced.  (See Fed. R. Civ. p. 37(c)(1); Doc. Nos. 258; 276.)  Furthermore, absent proper foundation, any such factual testimony by Mr. Dancu about digital certificates or digital signatures violates Fed. R. Civ. p. 26(a)(2)(A) and (B), as well as Pretrial Order Nos. 24 and 26, and should be prohibited.  (See Fed. R. Civ. p. 37(c)(1); Doc. Nos. 258; 276.)

### K.  Testimony of Ms. Alexander and Mr. Conner Should Be Limited to Facts That Are Within Their Personal Experience

Ms. Alexander and Mr. Conner are employees of Quova.  Quova purports to provide a service that "allows Internet providers to ascertain the location of individuals with whom they do business."  Plaintiffs do not object to any testimony by Ms. Alexander and Mr. Connor that factually describes the Quova product.  Plaintiffs do object to any testimony that the Quova product is effective in any way or for any purpose.  Such testimony would constitute either expert or lay opinion testimony pursuant to Fed. R. Evid. 701 or 702.  Defendant did not identify Ms. Alexander or Mr. Connor as experts as provided by Pretrial Order No. 24 or as providing lay opinion testimony as required by Pretrial Order No. 26.  (See Doc. Nos. 258; 276.)  Their

testimony should therefore be limited to facts that they have personally experienced while opinion testimony (expert or otherwise) should be prohibited.  (<u>See</u> Fed. R. Civ. P. 37(c)(1).)

**L.     Testimony of Mr. Allen Should Be Limited to Facts That Are Within His Personal Experience**

Plaintiffs object to any testimony by Mr. Allen concerning surveys conducted by National Center for Missing and Exploited Children.  (<u>See</u> DSFD ¶¶141-144.)  Testimony concerning the methodology and results of a public opinion survey are hearsay and inadmissible if introduced for the truth of the matter (Fed. R. Evid. 801) unless accompanied by testimony that the methodology and results were in accordance with accepted professional standards.  <u>See</u> <u>Pittsburgh Press Club v.  U.S.</u>, 579 F.2d 751, 757 (3d Cir. 1978); <u>Harlem Wizards Basketball Inc. v. NBA Props., Inc.</u>, 952 F. Supp. 1084, 1098 (D.N.J. 1997).  Such testimony is classic expert and opinion testimony.  Fed. R. Evid. 702.  Mr. Allen was not identified by defendants as an expert pursuant to Pretrial Order No. 24 (Doc. No. 258); <u>see also</u> Order Denying Defendant's Motion For Leave To Designate Dr. David Finkelhor, dated September 27, 2006 (Doc. No. 315).  Even if this were seen as lay opinion testimony pursuant  Fed. R. Evid. 701 (which it is not), Mr. Allen was not identified as someone who would proffer lay opinion testimony pursuant to Pretrial Order No. 26. (Doc. No. 276).  Accordingly, pursuant to the Court's Pretrial Orders and the Federal Rules of Evidence, any testimony by Mr. Allen about a public opinion survey methodology or results should be prohibited.

**M.     Testimony of Mr. Knopper Should Be Limited to Facts That Are Within His Personal Experience**

Plaintiffs object to any testimony from Douglas Knopper, the CEO of a company called Bitpass, regarding the existence of technologies "that will allow website operators to ensure that only adults would have access to harmful-to-minors material on their websites."  (<u>See</u> DSFD ¶¶21, 303-315.)  On August 26, 2005, Plaintiffs issued Initial Interrogatories requiring

Defendant, among other things, to identify any "other reasonable measures that are feasible under available technology" that can be used as a successful affirmative defense to prosecution under section 231(a)(1) of COPA.  (See  Plaintiffs' Initial Interrogatories to Defendant, Interrogatory H.)  Defendant refused to respond.  The Court then ordered Defendant to provide a response and, as information relevant to Plaintiffs' Interrogatories becomes known to Defendant, timely to supplement that response and forward that information to Plaintiffs pursuant to Federal Rule of Civil Procedure 26(e).  (See Doc. No. 240 at ¶7.)  On January 27, 2007, Defendant provided a supplemental response stating that "Defendant [had] not reached any determination about what 'other reasonable measures' are available to satisfy the legal standard for an affirmative defense under COPA" and that "Defendant [would] supplement this response as relevant information becomes available."  (See Defendant's Supplemental Responses to Plaintiffs' Initial Interrogatories.)  Defendant's January 27, 2006 Supplemental Response did not identify any products offered or contemplated by Bitpass (or any other company) as "other reasonable measures that are feasible under available technology" to comply with COPA.  (See id.)

On March 13, 2006, Defendant provided additional Supplemental Responses to Plaintiffs Initial Interrogatories but not to Interrogatory H.  Defendant again did not identify any products offered or contemplated by Bitpass (or any other company) as "other reasonable measures that are feasible under available technology" to comply with COPA.  (See Defendant's Supplemental Response to Plaintiffs' Initial Interrogatories.)

Defendant never provided a supplemental response or otherwise informed Plaintiffs that services provided by Bitpass constitute such "other reasonable measures."  Rule 26(e) and this Court's December 29, 2005 Order required Defendant to provide a supplemental response

identifying any such "other reasonable measures" in a timely manner.  (<u>See</u> Doc. No. 240 at ¶7.)

Defendant should not now be permitted to provide testimony from Mr. Knopper – or anyone else

– regarding any "other reasonable measures" that were not previously disclosed in a timely

manner.  Not only did Defendant violate the Court's Order and the Federal Rules, but this

violation is exceedingly prejudicial as it has eliminated any opportunity for Plaintiffs to conduct

discovery into this purported affirmative defense.

Mr. Knopper's testimony should also be precluded because much of it appears to be

either expert testimony or opinion testimony from a lay witness.  <u>See, e.g.</u>, DSFD ¶21

("technology exists to permit website operators to process 'micro-payments,' and that technology

can be used to ensure that the viewer of the website is an adult");  <u>id.</u> ¶308 ("iMedia Account is a

digital wallet application that offers consumers 'frictionless' purchasing and complete privacy

and anonymity");  <u>id.</u> ¶312 ("Bitpass makes the process of purchasing online content simple and

convenient, without interrupting a website visitor's experience with the 'flow' of the website.").

Indeed, Defendant intimated to Plaintiffs and the Court that "[t]o the extent that Defendant will

present evidence on the affirmative defenses, it will be through expert testimony."  (Doc. No.

232, at 4-5; <u>see also</u> Doc. No. 240 at ¶7.)

Defendant did not identify Mr. Knopper as an expert pursuant to Fed. R. Civ. P. 26(a)(2)

or to Pretrial Order 24. (<u>Cf.</u> Order Denying Defendant's Motion For Leave To Designate Dr.

David Finkelhor (Sept. 27, 2006) (Doc. No. 315).  Even if Mr. Knopper's testimony were

determined to be lay opinion testimony pursuant to Fed. R. Evid. 701, Defendant did not identify

Mr. Knopper as someone who would proffer lay opinion testimony as required by Pretrial Order

26.  Pursuant to the Court's Pretrial Orders, the Federal Rules of Civil Procedure, and the Federal

Rules of Evidence, any testimony by Mr. Knopper about the availability of "other reasonable

measures," including any products provided by his company, to verify age should be precluded.

### N.    Testimony of Paralegal

Defendant plans to call one of his employees, Philip Scott, to "authenticate, if necessary, certain documents proffered by Defendant as exhibits."  (See Final Pretrial Order at p. 167.) Defendant's description of the proffered testimony does not indicate which exhibits Mr. Scott may seek to authenticate.  Defendant's description does not allow Plaintiffs to evaluate whether or not to object.  Plaintiffs therefore reserve the right to object to any testimony of Mr. Scott aiming to authenticate an exhibit.

## II.    OBJECTIONS TO EXHIBITS

### A.    Surveys

Defendant seeks to introduce a number of surveys and documents related to those surveys into evidence.  Specifically, Defendant seeks to introduce Defendant Exhibits 1, 2, 4 (report of Jeffrey A. Eisenach relaying surveys at pages 38-49), 8, 10, and 16.  However, Defendant does not intend to call an expert witness to testify as to the methodology that was used in each survey or study, or as to opinions contained therein.  As such, they are not properly admitted under Third Circuit precedent.  See Pittsburgh Press Club v. U.S., 579 F.2d 751, 757 (3d Cir. 1978); Harlem Wizards Basketball Inc. v. NBA Properties, Inc., 952 F. Supp. 1084, 1098 (D.N.J. 1997).

The documents Defendant seeks to introduce are further replete with hearsay statements and inadmissible under Fed. R. Evid. 801 and 802.  Finally, Exhibit 10 does not contain the findings of the survey at all, but merely excerpts from a study's results; therefore, it must also be rejected under Fed. R. Evid. 1002.

**B.      Hearsay**

Plaintiffs object to Defendant Exhibits 14 and 431 in their entirety.  These exhibits

purport to be printed web pages containing an article by Stefanie Olsen.  The web pages also

purport to contain comments appended to the article.  Both the articles and the comments are

inadmissible hearsay under Fed. R. Evid. 801 and 802.

Plaintiffs object to Defendant Exhibits 28 and 274 in their entirety.  Both documents are

purportedly records of the United States Senate and contain numerous hearsay statements of

third-party witnesses.  These third-party witnesses will not be available at trial to authenticate

these documents or their statements.  As such, Defendant Exhibits 28 and 274 are hearsay and

inadmissible under Fed. R. Evid. 801 and 802.  In addition, Defendant Exhibit 274 contains

numerous instances of unsubstantiated opinion testimony regarding the effects of pornography.

The witness whose opinions are reflected in this document has not been accredited as an expert

pursuant to Fed. R. Civ. P. 26. Thus, under Fed. R. Evid. 702, the statements reflecting his

opinions are inadmissible.

Plaintiffs object to Defendant Exhibits 29, 32, 34, 35, 36, and 37 in their entirety.  These

proposed exhibits are various articles in economics theory by various authors.  They are all

inadmissible hearsay under Fed. R. Evid. 801 and 802.  Provided Defendant establishes that one

or more of these articles are learned treatises, Exhibits 29, 32, 34, 35, 36, and 37 may at most be

read into the record.  See Fed. R. Evid. 803(18).  They cannot be received as exhibits.  See id.

Plaintiffs also object to Defendant Exhibit 89 in its entirety.  This exhibit purports to be a

printed web page from www.cexx.org. detailing purported methods for circumventing Internet

content filters.  The statements contained in this webpage are inadmissible hearsay under Fed. R.

Evid. 801 and 802.

Plaintiffs object to Defendant Exhibit 434 in its entirety.  This exhibit is a document regarding payment cards that was prepared in the context of this litigation by one of Defendant's experts.  As such, it is inadmissible hearsay under Fed. R. Evid. 801 and 802.

## C.    Authentication

Plaintiffs object to Defendant Exhibit 31 in its entirety.  Exhibit 31 purports to be a business plan of some kind for an initiative called "Wireless Philadelphia."  However, no representative of "Wireless Philadelphia" will be present to authenticate this document, nor is it admissible without authentication.  Therefore, it may not be admitted under Fed. R. Evid. 901 and 902.

Plaintiffs also object to Defendant Exhibit 42.  This document purports to be slide presentation from an entity known as IDC.  No representative of this entity will be present to authenticate this document, nor is it admissible without authentication.  Therefore, it may not be admitted under Fed. R. Evid. 901 and 902.

Plaintiffs object to Defendant Exhibits D-386 and D-387.  These exhibits appear to be compilations of incomplete printouts from web pages with sexually explicit content.  Defendant has offered no witness to authenticate these exhibits, nor are they admissible without authentication. Therefore, they may not be admitted Fed. R. Ev. 901 and 902.

## D.    Incomplete Documents

Defendant intends to introduce a number of exhibits that are incomplete.  Pursuant to Fed. R. Evid. 106, Plaintiffs require introduction of the rest of each of the following exhibits, because they ought in fairness to be considered as a complete document.  Upon receiving copies of the complete documents, Plaintiffs reserve their right to object to them if required by the remaining portions of those documents.

- Defendant Exhibit 40 is one page of an article that appears to be a review of internet content filters.  There is no indication of the source of this document or if it is part of a larger document or publication.

- Defendant Exhibit 46 is a single page from the document production of America Online, Bates stamped 002815.  The exhibit appears to be part of a larger document, which Defendant has failed to designate in its entirety.

- Defendant Exhibit 47 is a single page from the document production of Symantec, Bates stamped SYMC000195.  This exhibit appears to be part of a larger document, which Defendant has failed to designate in its entirety.

- Defendant Exhibit 49 is a single page from the document production of Microsoft, Bates stamped MS/ACLU v. Gonzales 002112.  This exhibit appears to be part of a larger document, which Defendant has failed to designate in its entirety.

- Defendant Exhibit 50 is a single page from the document production of Microsoft, Bates stamped MS/ACLU v. Gonzales 002457.  This exhibit appears to be part of a larger document, which Defendant has failed to designate in its entirety.

- Defendant Exhibit 51 is a single page from the document production of Microsoft, Bates stamped MS/ACLU v. Gonzales 2856.  This exhibit appears to be part of a larger document, which Defendant has failed to designate in its entirety.

- Defendant Exhibit 52 is a single page Bates stamped BLS 0033.  This exhibit appears to be part of a larger document, which Defendant has failed to designate in its entirety.

- Defendant Exhibit 53 is a single page Bates stamped VO011534.  This exhibit appears to be part of a larger document, which Defendant has failed to designate in its entirety.

- Defendant Exhibit 89  purports to be a printed webpage from www.cexxx.org Plaintiffs cannot discern the URL for this webpage, cannot determine if it is a complete copy of the purported webpage, and cannot tell when it was accessed.

- Defendant Exhibits 117 and 118.  These exhibits are selected web pages from Sexual Health Network and appear to have been incorrectly printed.  The actual web pages contain multiple links under the headings "Men's Sexual Health Videos" and "Women's Sexual Health Videos," respectively.  The current proposed exhibits do not reflect these links.

- Defendant Exhibits 138 and 141.  These exhibits are selected web pages from Nerve.com and appear to have been incorrectly printed.  The current versions are missing several images that should normally appear.

- Defendant's Exhibits 165 and 340.  These exhibits are substantively identical and consist of the first half of an article entitled "The virginity hoax" [sic] posted on Salon.com.  Plaintiffs have previously objected to use of this incomplete document by Defendant (see deposition of Joan Walsh at 137:3 - 138:5.)

- Defendant's Exhibits 234 to 252.  These exhibits are selected web pages from Urban Dictionary and appear to have been incorrectly printed.  The current versions do not reflect banner advertisements that normally appear on the right side of the selected web pages.

- Defendant Exhibit 277 does not provide the complete page in which each image purportedly appears.

- Defendant Exhibit 359 is an incomplete excerpt from a chapter of Professor Reichman's book.

- Defendant Exhibit 361 is an incomplete excerpt of a chapter of Professor Reichman's book.

- Defendant Exhibit 363 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 364 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 365 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 366 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 367 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 368 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 369 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 370 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 371 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 372 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 373 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 374 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 375 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 376 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 377 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 378 is an incomplete portion of an article cited by Professor Reichman in his expert report.

- Defendant Exhibit 397 is an incomplete copy of an article referenced by Professor Zook in his expert report. This fact was noted at Professor Zook's deposition. See Deposition of Matthew Zook at 164:10-22.

Dated: New York, New York

October 9, 2006

LATHAM & WATKINS, LLP

By:  _    /s/_____

Christopher R. Harris
Seth L. Friedman
Katharine E. Marshall
Jeroen van Kwawegen
Elan R. Dobbs

885 Third Avenue
Suite 1000
New York, New York 10022
(212) 906-1200

Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2006, a true and correct copy of the foregoing Plaintiffs' Objections to Certain Witness Testimony and Admissibility of Certain Exhibits with the Clerk of the Court using the ECF system, which will send notification of such filing to Raphael O. Gomez, Department of Justice.


_____/s/_____
Jeroen van Kwawegen
Latham and Watkins
885 Third Avenue
New York, NY 10022

Counsel for Plaintiffs