# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action No. 98-CV-5591 |
| ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States. | ) ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Pursuant to Local Rule 7.1, Defendant, the Attorney General of the United States, by and through his undersigned attorneys, moves for protective order to prevent plaintiffs from compelling the testimony of a Department official as an adverse witness at trial.

## CERTIFICATION

Undersigned counsel hereby certifies that the parties, after reasonable effort, are unable to resolve this dispute.

Dated:  October 22, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

PATRICK L. MEEHAN
United States Attorney

RICHARD BERNSTEIN
Assistant U.S. Attorney

THEODORE C. HIRT
Assistant Branch Director
RAPHAEL O. GOMEZ
Senior Trial Counsel

/s/ James D. Todd, Jr.
JAMES D. TODD, JR.
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. N.W
Washington, D.C. 20530
Tel: (202) 514-3378

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br>  *et al.*, | ) | |
| | ) | |
|        Plaintiffs | ) | |
| | ) | |
|   v. | ) | Civil Action No. |
| | ) | 98-CV-5591 |
| ALBERTO R. GONZALES, in his official | ) | |
|   capacity as Attorney General of | ) | Oral Argument Requested |
|   the United States. | ) | |
| | ) | |
|        Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT**
**OF HIS MOTION FOR PROTECTIVE ORDER**

Plaintiffs' attempts to depose a Department designee regarding defendant's policies concerning COPA have been twice rejected by this Court.  *See* Order at 2 (Mar. 24, 2006) [Doc. No. 264]; Order at 3 (Sep. 18, 2006) [Doc. No. 304] ("I remain of the opinion that plaintiffs' preferred relief, compelling the deposition of a Department of Justice witness pursuant to Federal Rule of Civil Procedure 30(b)(6), would lead to overwhelming complications.").  Without making any attempt to show that this Court erred in making those rulings, and without any attempt to make the required-showing of extraordinary circumstances before calling a high-level official, plaintiffs have stated their intention to call such an official from the Criminal Division to testify as an adverse witness in this trial.

First, plaintiffs request is unprecedented.  To defendant's knowledge, no Department official has ever been compelled to testify at trial and offer his or her personal opinion about how a statute might be enforced.  Plaintiffs cannot show the extraordinary circumstances necessary to warrant such a groundbreaking decision.  In fact, the circumstances of this case compel the

opposite decision; defendant has provided detailed and comprehensive contentions in response to

plaintiffs' multitude of contention interrogatories.  Second, all relevant testimony would be

protected by the mental process privilege, the deliberative process privilege, and/or the law

enforcement privilege.  Finally, all testimony about whether certain yet-to-be-disclosed material

might be harmful to minors under COPA, or obscene, would constitute irrelevant personal

opinion because no one official could provide the Department's position on whether such

materials might be deemed harmful to minors under COPA, or obscene, without the ability to

engage in the very kind of predecisional deliberations that are at the heart of the Department's

decision-making process.  Accordingly, this Court should issue a protective order preventing

plaintiffs from calling any Department official to testify at trial.

## BACKGROUND

On January 10, 2006, plaintiffs served defendant with a deposition notice pursuant to Fed.

R. Civ. P. 30(b)(6), requesting defendant to designate one or more persons to testify on his behalf

who were knowledgeable as to:

> The Department of Justice's definitions of "obscene" and "harmful to minors" as
> established in federal criminal statutes 18 U.S.C. § 1460 and 47 U.S.C. § 231,
> including but not limited to information concerning content determined to be
> obscene or not to be obscene under such laws and rationale for that conclusion;
> content determined to be harmful to minors or not to be harmful to minors under
> such laws and rationale for that conclusion; enforcement of such laws, including
> territorial enforcement, with regard to obscene and harmful to minors material;
> number of investigations and/or prosecutions for obscenity or harmful to minors;
> and criteria that distinguish "obscene" from "harmful to minors," and "harmful to
> minors" from non-criminal material.

Pls.' Ntc. of Depo. (Jan. 10, 2006) [Attached as Ex. 3 to Def.'s Mot. to Quash (Feb. 27, 2006)

[Doc. No. 255]].

On February 27, 2006, defendant moved to quash plaintiffs' deposition notice.  *See* Doc. No. 255.  In response to defendant's motion, plaintiffs claimed that they "would be likely to display certain content from the Internet and ask the government if that content was obscene or harmful to minors or neither."  Pls.' Response at 4 (Mar. 3, 2006) [Doc. No. 260].  *See also, e.g.,* Hrg. Tr. (Mar. 22, 2006) [Doc. No. 266] at 21:17-18, 23-24 (Mr. Hansen:  "[S]uppose I show, for example, an image to that official and I say, 'is this obscene[?]'").

On March 24, 2006, this Court granted defendant's motion to quash.  *See* Order at 2 (Mar. 24, 2006) [Doc. No. 264].  This Court found that the plaintiffs' "probe is so broad that inquiry at a deposition would be unwieldy and rife with parties seeking court intervention."  *Id.* This Court also found that "[p]laintiffs have not adequately proven to me that oral deposition testimony on the topics listed in their notice of deposition is the least intrusive or burdensome means by which to garner discoverable information from defendant."  *Id.*  Thus, this Court held that:

> To the extent that inquiry by plaintiffs is to be pursued regarding the topics raised in plaintiffs' January 10, 2006, notice of deposition, such inquiry shall be limited at this time to contention interrogatories and an inquiry into whether such rationales, practices, policies or internal rules exist or existed at an appropriate time in the past.

*Id.*

On April 17, 2006, plaintiffs served defendant with an additional 42 numbered interrogatories, some including multiple subparts.  In response to 21 of these multipart interrogatories, plaintiffs obtained defendant's contentions about such things as:

(1)    whether plaintiffs' have standing to maintain this action (Interrog. 1);
(2)    examples of harmful to minors material on the Web (Interrog. 4);
(3)    examples of obscenity on the Web (Interrog. 5);

(4)     whether there is material that is harmful to minors but not 17-year-olds (Interrogs. 7-9);

(5)     whether there is material that is harmful to 10-year-olds but not 16-year-olds (Interrog. 10);

(6)     whether certain pages from plaintiffs' Web sites are harmful to minors (Interrog. 11);

(7)     whether certain pages from plaintiffs' Web sites are harmful to minors but not 17-year-olds (Interrogs. 12-14);

(8)     whether particular pages from playboy.com and penthouse.com are harmful to minors and/or obscene (Interrogs. 15-16);

(9)     whether certain material from the preliminary injunction is harmful to minors and/or obscene (Interrogs. 17-18);

(10)     whether defendant has changed his litigation position about plaintiffs' lack of standing (Interrogs. 19-20); and

(11)     COPA's extraterritorial application (Interrogs. 34-36).

Def.'s 2d Response to Pls.' First Set of Contention Interrogs. (Aug. 14, 2006).

On August 29, 2006, plaintiffs moved to compel further answers to many of these contention interrogatories, and again sought to depose a Department official regarding defendant's answers to these interrogatories.  On September 18, 2006, this Court again declined to compel the testimony of a Department official.  Order at 3 (Sept. 18, 2006) [Doc. No. 304] ("I remain of the opinion that plaintiffs' preferred relief, compelling the deposition of a Department of Justice witness pursuant to Federal Rule of Civil Procedure 30(b)(6), would lead to overwhelming complications.").  Instead, this Court ordered defendant to provide additional responses to plaintiffs' contention interrogatories.  Id. at 3-4.

Without any attempt to demonstrate extraordinary circumstances that would warrant compelling testimony from a high-level Department official, plaintiffs have listed a "DOJ Witness re Definitions in COPA" as the fifth witness they intend to call at trial in the Pre-Trial Order.  Pre-Trial Order at 79 (Oct. 3, 2006) [Doc. No. 319].  Plaintiffs have stated that they "will seek to subpoena Defendant or his designee to testify to Defendant's interpretation, policies, guidelines or

-4-

rationales concerning COPA, and to apply those interpretations, policies, guidelines or rationales." *Id.* In correspondence dated October 13, 2006, plaintiffs requested that defendant designate a witness and stated that, absent such a designation, they intend to subpoena either the Assistant Attorney General for the Criminal Division, or the Chief of the Child Exploitation and Obscenity Section of the Criminal Division, to testify both about defendants' contentions and about other yet-to-be-disclosed topics. Ltr. from Christopher Hansen to Raphael Gomez (Oct. 13, 2006). Plaintiffs stated that they not only sought testimony "to elaborate and further explain the decisions the defendant has already made concerning speech that is fully protected, speech that is harmful to minors, and speech that is obscene," but also "reserve[d] the right to probe the scope of the decisions made in those cases with speech from other sources." *Id.*

## ARGUMENT

Although this Court has twice rejected plaintiffs' efforts to compel deposition testimony of a high-ranking Department official, plaintiffs now improperly seek to compel trial testimony from such an official without showing that this Court's rulings denying their prior attempts to compel this testimony were erroneous. Nowhere in the Pre-Trial Order, plaintiffs' recent correspondence, or anywhere else have plaintiffs made the required showing of extraordinary circumstances to justify compelling the testimony of a high-ranking government official. Moreover, any testimonial inquiry into the defendant's responses to plaintiffs' contention interrogatories beyond what defendant has already set forth in those responses is protected by the mental process privilege. Further, even if the Department had prosecutorial policies and enforcement history regarding COPA's enforcement, which it does not, such policies would be protected by the deliberative process privilege and the law enforcement privilege, and plaintiffs could not overcome those

privileges.  Finally, any inquiry into whether content not yet disclosed to defendant might be harmful to minors under COPA, or obscene, would constitute irrelevant an personal opinion.

I.    **PLAINTIFFS HAVE FAILED TO SHOW EXTRAORDINARY CIRCUMSTANCES IN ORDER TO REQUIRE THE TESTIMONY OF A DEPARTMENT OFFICIAL**

In seeking to call a high-ranking Department official to testify at trial, plaintiffs have not attempted to show, nor could they demonstrate, that there are extraordinary circumstances that would warrant an order of this Court compelling the testimony of such an official.  However, it is well settled that the practice of compelling testimony from high officials is sharply limited to a confined set of extraordinary circumstances.  *See Oliveri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir. 1997) (recognizing burden of discovery to public officials); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) ("exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted") (internal citations omitted); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (*per curiam*) ("High ranking government officials have greater duties and time constraints than other witnesses."); *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); *Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir. 1982) (affirming district court's protection of governor from deposition absent showing by plaintiffs of specific need); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government agencies are not normally subject to [testifying].").

The Supreme Court has recognized that the practice of calling high-level officials as witnesses should be discouraged.  *See United States v. Morgan*, 313 U.S. 409, 422 (1941).  Thus,

circumstances warranting testimony of high-level officials have been found only occasionally – when, for example, the witness had personal and sole knowledge of the information sought. *See, e.g., American Broadcasting Cos., Inc. v. U.S. Info. Agency*, 599 F. Supp. 765, 769 (D.D.C. 1984) (finding unique circumstances of case justified testimony of Director of U.S. Information Agency, where he was sole person responsible for the creation of documents in question; plaintiffs were not seeking "deliberative thought processes" and sought to question Director with respect to facts that only he could answer); *Alliance to End Repression v. Rochford*, 75 F.R.D. 428, 429 (N.D. Ill. 1976) (requiring testimony of mayor where plaintiffs alleged that mayor was active participant in illegal activity, distinguishing position of mayor from occupant of cabinet level post in federal government).

Requiring "extraordinary circumstances" is necessary for at least three reasons.  First, constitutional separation of powers principles establish that parties litigating against federal agencies may not examine the deliberative process – particularly the thoughts and mental processes – by which high-agency officials exercise their official discretion.  *See Village of Arlington Heights v.  Metropolitan Hous. Dev.*, 429 U.S. 252, 268 n.18 (1977) ("[J]udicial inquiries into legislative or executive motivation represents a substantial intrusion into the working of other branches of government.  Placing a decisionmaker on the stand is therefore 'usually to be avoided.'"); *Morgan*, 313 U.S. at 422 ("[J]ust as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected.").  Insulating the deliberative processes of executive agencies from judicial scrutiny is an essential element in preserving constitutional separation of powers.  *Id.*

Second, "[h]igh ranking government officials have greater duties and time constraints than other witnesses." *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993). Thus, practically speaking, requiring the testimony of such officials would be burdensome both on the officials themselves and on the efficient running of the agency. Further, if required to give testimony in a myriad of civil and/or criminal actions involving their agencies, high-level officials would be paralyzed from carrying out their duties. As the court pointed out in *Community Federal Savings and Loan Ass'n v. Federal Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983):

> [P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases. Considering the volume of litigation to which the government is a party, a failure to place reasonable limits upon private litigants' access to responsible governmental officials as sources of routine [trial testimony] would result in a severe disruption of the government's primary function.

High-level officials in government agencies have generalized knowledge about matters that may be implicated in thousands of lawsuits. If extraordinary circumstances were not required in order to compel such officials to testify, high-ranking officials would otherwise be required to testify continuously, to the detriment of the efficiency of the running of the agency. *In re Equal Employment Opportunity Comm'n*, 709 F.2d 392, 398 (5th Cir. 1983); *accord Sykes v. Brown*, 90 F.R.D. 77, 78 (E.D. Pa. 1981) ("[High-level officials] routinely make administrative decisions in the exercise of their discretionary powers, which may affect many. Lawsuits often follow. Should the agency head be subject to [testify at trial] in every resulting case and be repeatedly required to explain the various mental steps he took to reach his decision, the decision may be his last. Therefore, before a party may take the [testimony] of a [high-level official], the party must at least show that the agency head possesses particular information necessary to the development

or maintenance of the party's case which cannot reasonably be obtained by another [evidentiary] mechanism."). Plaintiffs' request is unprecedented: To defendant's knowledge, no court has ever compelled a Department official to testify at trial about the meaning of a statute or the potential application of a statute to a set of facts. *See* Declaration of Benton Campbell, Acting Chief of Staff and Principal Deputy Assistant Attorney General of the Criminal Division ¶ 8 (Oct. 22, 2006) [Attached as Ex. 1]. Indeed, absent the requirement to show extraordinary circumstances, the Assistant Attorney General or the Chief of the Child Exploitation and Obscenity Section of the Criminal Division could conceivably be compelled to testify by any potential and actual defendants in a civil or criminal enforcement proceeding or by any plaintiff in a civil suit seeking declaratory relief from a criminal or civil statute the Assistant Attorney General and/or the CEOS Chief is entrusted to enforce. *Id.* ¶ 3-4. Further, subjecting employees of the Department to trial testimony would violate public policy concerns that the time and resources of that office be conserved for public business. *Id.* ¶ 10.[1]

Third, liberal access to high-level officials during trial would likely exert a chilling effect on such officials, making them less willing to explore and discuss all available options, including controversial ones. *See Walker v. NCNB Nat'l Bank*, 810 F. Supp 11, 12 (D.D.C. 1993) ("subjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial"). In this case, subjecting a high-ranking Department official to trial testimony would exert a chilling effect on that official because it would impair the

---

[1] It should be noted that, if plaintiffs' inquiry were permissible, it would seem to seek the appearance of innumerable United States Attorneys from unspecified districts, since they are the ones who might make these kinds of determinations. *Id.* ¶ 4.

Department's decision-making process by making that official less willing to explore and discuss all available options, no matter how controversial.  Campbell Dec. ¶ 13.

To be clear, plaintiffs could not demonstrate that extraordinary circumstances warrant compelling testimony of a high-ranking Department official by simply averring that such testimony is necessary.  Courts will not tolerate a broad allegation or general assertion that a high-level official is the only person with the information sought.  *See Tower Press Bldg., Inc. v. White*, 165 F.R.D. 73, 75 (N.D. Ohio 1996) (broad allegations insufficient); *Church of Scientology of Boston v. IRS*, 138 F.R.D. 9, 12-13 (D. Mass. 1990) (general assertions insufficient).  Plaintiffs' simple statement that they seek further explanation about defendant's responses to their contention interrogatories is entirely insufficient to demonstrate extraordinary circumstances.  Rather, only a well-articulated showing of extraordinary circumstances could justify requiring a Department official to testify at trial.  However, because enforcement of COPA has been enjoined from the moment it was signed into law, and because plaintiffs have been given ample opportunity to explore fully defendant's contentions about the statute's meaning through extensive contention interrogatories, there are no circumstances in which relevant testimony of a high-ranking Department official could be had.

### A.    This Court Has Already Rejected Plaintiffs' Efforts to Compel Testimony of a High-Level Department Official

Plaintiffs' efforts to compel the testimony of a high-level Department official not only ignores the fact that this Court has twice rejected plaintiffs' efforts to compel such testimony but also fails to offer any reason why this Court's two prior rulings were issued in error.  Absent such

a showing, this Court should reject plaintiffs' third effort to compel testimony from a Department official.

In granting defendant's motion to quash plaintiffs' 30(b)(6) deposition, this Court found that the plaintiffs' "probe is so broad that inquiry at a deposition would be unwieldy and rife with parties seeking court intervention." *See* Order at 2 (Mar. 24, 2006) [Doc. No. 264]. This Court also found that "[p]laintiffs have not adequately proven to me that oral deposition testimony on the topics listed in their notice of deposition is the least intrusive or burdensome means by which to garner discoverable information from defendant." *Id.* Instead, this Court correctly limited plaintiffs' inquiry to contention interrogatories. *Id.*

Despite this Court's ruling, on August 29, 2006, plaintiffs nevertheless moved for an order compelling deposition testimony of a Department official regarding defendant's answers to plaintiffs' contention interrogatories. On September 18, 2006, this Court again correctly declined to compel the testimony of a Department official. Order at 3 (Sept. 18, 2006) [Doc. No. 304] ("I remain of the opinion that plaintiffs' preferred relief, compelling the deposition of a Department of Justice witness pursuant to Federal Rule of Civil Procedure 30(b)(6), would lead to overwhelming complications.").

Yet, without even acknowledging that this Court has twice rejected plaintiffs' attempts to compel the testimony of a high-ranking Department official, plaintiffs have indicated in the Pre-Trial Order that they intend to call at trial a "DOJ Witness re Definitions in COPA" as their fifth witness. Pre-Trial Order at 79. Plaintiffs have simply stated that they will "will seek to subpoena Defendant or his designee to testify to Defendant's interpretation, policies, guidelines or rationales concerning COPA, and to apply those interpretations, policies, guidelines or rationales." *Id.*

-11-

Plaintiffs have since requested that defendant designate a witness and stated that, absent such a designation, they intend to subpoena either the Assistant Attorney General for the Criminal Division or the Chief of the Child Exploitation and Obscenity Section of the Criminal Division to testify both about defendants' contentions and about other yet-to-be-disclosed topics.  Ltr. from Mr. Hansen to Mr. Gomez (Oct. 13, 2006).  Plaintiffs stated that they not only sought testimony "to elaborate and further explain the decisions the defendant has already made concerning speech that is fully protected, speech that is harmful to minors, and speech that is obscene," but also "reserve[d] the right to probe the scope of the decisions made in those cases with speech from other sources." *Id.*

Neither in the Pre-Trial Order nor in their communications with defendant have plaintiffs proffered any reason that this Court's erred in its prior rulings declining to compel testimony of a high-ranking Department official.  Moreover, plaintiffs have not even sought to compel further answers to their contention interrogatories.  Accordingly, this Court should now reject plaintiffs' stated intention to subpoena either the Assistant Attorney General for the Criminal Division or the Chief of the Child Exploitation and Obscenity Section (CEOS) of the Criminal Division to testify both about defendant's contentions and about other yet-to-be-disclosed topics.

## II.    ALL RELEVANT TESTIMONY WOULD BE PROTECTED BY THE MENTAL PROCESS PRIVILEGE, THE DELIBERATIVE PROCESS PRIVILEGE, AND THE LAW ENFORCEMENT PRIVILEGE

Plaintiffs' efforts to conduct a free-ranging inquiry into the Department's prosecutorial enforcement practices through the compelled testimony of a Department official is not permissible.  *In re United States*, 397 F.3d 274, 286 (5th Cir. 2005) (issuing writ of mandamus vacating district court order allowing discovery into government's capital-charging practices); In

re U.S., 197 F.3d 310, 313-14 (8th Cir. 1999) (party "ha[d] not established extraordinary circumstances requiring the discovery sought from Attorney General Reno and Deputy Attorney General Holder.  Even though a writ of mandamus will generally not be available to obtain interlocutory review of a discovery order, petitioners have shown that in this matter there are significant policy issues requiring immediate attention and that direct appeal from the final order of the district court would not give them an adequate remedy.").  Rather, all such testimony sought by plaintiffs is protected by the mental process privilege, the deliberative process privilege, and/or the law enforcement privilege.

A.     **Testimony about Defendant's Responses to Plaintiffs' Contention Interrogatories Would be Protected by the Mental Process Privilege**

To the extent plaintiffs seek testimony about defendant's responses to plaintiffs' contention interrogatories, no testimonial inquiry into a government official's rationale for determinations he or she has already made is permissible.  Federal courts have long recognized a policy against exploratory inquiries into the mental processes of governmental decision-makers. *Morgan*, 313 U.S. at 422.  Courts protect the mental processes of high-level officials because subjecting them to interrogation about how they reached particular decisions beyond what they have articulated in the documentation surrounding their decision would impair that decision-making process by making officials less willing to explore all available options, no matter how controversial.  *See Thomas v. Baker*, 925 F.2d 1523, 1525 (D.C. Cir. 1991) ("[I]t would interfere with the functioning of [deliberative] bodies if, after performing their duties, their members would be subject to interrogation about how they reached their decisions.").  *See also Hercules, Inc. v. EPA*, 598 F.2d 91, 123 (D.C. Cir. 1978) ("This presumption can be overcome, and further

-13-

explication can be required of the decisionmaker, only upon a strong showing of bad faith or

improper behavior.").  Quite simply, "courts will not entertain an inquiry [into an official's]

investigation and knowledge of the points decided, or as to the methods by which he reached his

determination."  *Nat'l Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1145 (2d Cir. 1974);

*Foster v. United States*, 12 Cl. Ct. 492 (1987) (denying official's deposition because plaintiffs'

purpose in seeking deposition testimony could not be accomplished without probing the official's

mental impressions or intruding on privileged information).  Rather, in a case such as this, a court

must confine its review to the legal validity of the statute in question and the information obtained

via written discovery.  *In re Ofc. of Inspector Gen., RR Retirement Bd.*, 933 F.2d 276, 278 (5th

Cir. 1991).

At the March 22, 2006, hearing on defendant's Motion to Quash Plaintiffs' Notice of

Deposition Pursuant to Rule 30(b)(6), this Court asked plaintiffs whether there was any precedent

for this level of inquiry, and plaintiffs admitted there was not:

> THE COURT:  Do you have any citation of a case that allows you to go this far
> into the executive investigative privilege, statutes that your organization has
> attempted to enjoin across the country?
>
> MR. HANSEN:  I do not, Your Honor. . . .

Hrg. Tr. (Mar. 22, 2006), at 24:23 – 25:3.

In this case, plaintiffs have admitted that the chief reason they seek to compel testimony

from a high-level Department official is "to elaborate and further explain the decisions the

defendant has already made concerning speech that is fully protected, speech that is harmful to

minors, and speech that is obscene."  Ltr. from Mr. Hansen to Mr. Gomez (Oct. 13, 2006).

However, defendant's responses to plaintiffs' contention interrogatories have fully revealed

-14-

defendant's rationales for his determinations that certain content was likely to be found by a judge or a jury to be considered harmful to minors under COPA or obscene. Thus, discovery has served its purpose. Based on the documents and information obtained from defendant during discovery, plaintiffs are now free to assert whatever arguments they see fit in light of defendant's responses. Accordingly, plaintiffs proffered line of questioning of a Department official at trial thus improperly seeks to elicit irrelevant testimony protected by the mental process privilege. *In re Ofc. of Inspector Gen.*, 933 F.3d at 278. Subjecting a Department official to testimonial interrogation about how he or she reached particular decisions beyond what has been articulated in the documentation surrounding such decisions would impair that decision-making process by making officials less willing to explore all available options, no matter how controversial. *Id.*

Plaintiffs' efforts to obtain testimony about a statute that has not yet been enforced cannot be distinguished from seeking an advisory opinion from the Department about how a statute might be applied. However, the Department does not provide such advisory opinions. Campbell Dec. ¶ 9. As both the Seventh and Tenth Circuits put it, "[t]here is no federal right to obtain advisory opinions from . . . prosecutors." *Lawson v. Hill*, 368 977, 959 (7th Cir. 2004) (rejecting efforts to challenge state flag burning law on First Amendment grounds). *See also Winsness v. Yocum*, 433 F.3d 727, 733 (10th Cir. 2006) (same). Because courts generally refuse to compel the testimony of a government witness if the plaintiffs have had opportunity to obtain evidence by an alternative and less burdensome method to the government, *see, e.g.*, *Gomez v. City of Nashua, NH*, 126 F.R.D. 432, 436 (D.N.H. 1989) (citing *Alex v. Jasper Wyuman & Son*, 115 F.R.D. 156, 158-59 (D. Me. 1986), and *Community Fed. Savings & Loan Ass'n v. Federal Home Loan Bank*, 96 F.R.D. 619, 621-22 (D.D.C. 1983)), this Court should deny plaintiffs' efforts to

obtain trial testimony about the Department's definition of obscenity and harmful to minors from
the Assistant Attorney General or the Chief of CEOS.

**B.     Testimony about the Department's Prosecutorial Policies Is Protected by the Deliberative Process Privilege and Law Enforcement Privilege**

Throughout this litigation, defendant has repeatedly made clear that, because COPA has
been enjoined since the day it was signed into law, defendant has not developed any enforcement
policies or enforcement history about the statute.  But even if the Department had such polices
concerning COPA, all responsive testimony concerning the Department's prosecutorial policies
would be protected by the law enforcement and deliberative process privileges.  With respect to
attempts to take testimony of an official about the Department's prosecutions, courts have
expressly held that the decision whether to prosecute is the product of a deliberative process that
should be afforded a high degree of protection from public inquiry.  *Carl Zeiss Stiftung v. V.E.B.
Carl Zeiss, Jena*, 40 F.R.D. 318, 324-37 (D.D.C. 1966) (discussing the importance of protecting
the communicative process within the Department of Justice), *aff'd sub nom., VEB Carl Zeiss,
Jena v. Clark*, 384 F.2d 979 (D.C. Cir.), *cert. denied*, 389 U.S. 92 (1967).  *See also In re United
States*, 397 F.3d at 286 (issuing writ of mandamus vacating district court order allowing discovery
into government's capital-charging practices).  Similarly, courts have expressly held that a
deposition of the Department to discover the Attorney General's investigation and the basis for
the Attorney General's decision not to prosecute is protected by the deliberative process privilege
to such an extent that the deposition should be quashed.  *See, e.g., Gomez,* 126 F.R.D. at 435.[2]
In a similar case, the Third Circuit expressly rejected a movant's efforts to depose government

---

[2]  Thus, even information about closed investigations is protected by the deliberative
process privilege.  *See id.*

-16-

officials on why they closed their investigative file and chose not to pursue an enforcement action.

*See NLRB v. Stambaugh's Air Srvc., Inc.*, No. 87-3298, 1987 WL 49611, *1-*2 (3d Cir. Nov.

16, 1987).  That court held that such testimony was both immaterial and protected either by the

deliberative process or the work product privileges and thus would not lead to the discovery of

admissible evidence.  *See id.  See also Wayte v. U.S.*, 470 U.S. 598, 607 (1985) (finding that

judicially compelled disclosure of the grounds of a prosecution "threatens to chill law enforcement

by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine

prosecutorial effectiveness by revealing the Government's enforcement policy.").[3]

The deliberative process privilege protects government communications consisting of

advice, recommendations, opinions, or other non-factual information involved in the deliberative

or policy-making processes of government.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132,

149-54 (1975); *Dudman Comm. Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567 (D.C. Cir.

1987).  The privilege is also intended to preserve the constitutional separation of powers by

"forbid[ding] judicial investigation into the methods by which a[n administrative] decision is

reached, the matters considered, and the contributing influences or the role played by the work of

others."  *In re Franklin Nat'l Sec. Litig.*, 478 F. Supp. 577, 581 (E.D.N.Y. 1979) (internal

quotation omitted).

---

[3]  To be clear, not all determinations about whether content may or may not violate a criminal statute are final decisions and thus are the routine sorts of non-final deliberations protected by the deliberative process privilege.  Moreover, the cases cited above establish that the decision not to prosecute is also protected by the deliberative process privilege.  And, of course, materials presented to a grand jury that do not result in an indictment are protected by Fed. R. Crim. P. 6(e).  Thus, apart from proceedings resulting in unsealed indictments, all other determinations are protected by the deliberative process or law enforcement privileges. Campbell Dec. ¶ 12.

-17-

The primary rationale for the privilege is that effective and efficient government decision-making requires a free flow of ideas among governmental officials and that inhibitions will result if officials know that their communications may be revealed to outsiders.  *See id.*  Also underlying the policy is the rationale that:

> the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases. . . . [A] failure to place reasonable limits upon private litigants' access to responsible government officials as sources of routine [trial testimony] would result in the severe disruption of the government's primary function.

*Gomez*, 126 F.R.D. at 436 (quoting *Community Fed. Savings & Loan Assn.*, 96 F.R.D. at 621).[4]

The law enforcement privilege is a common law privilege protecting criminal as well as civil law enforcement investigatory files from civil discovery.  *See Jones v. City of Indianapolis*, 216 F.R.D. 440, 443-44 (S.D. Ind. 2003).  *See also Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984).  The purpose of the privilege is, among other things, to prevent disclosure of law enforcement techniques and procedures and otherwise prevent interference in investigations.  *See In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 686-87 (N.D. Ga. 1998) (quoting *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988)).  *See also Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 65-66 (1st Cir. 1984) (law enforcement privilege protects information that tends to reveal law enforcement investigative techniques); *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) ("The law enforcement

---

[4]  Although purely factual information may not be protected by the deliberative process privilege, factual information is privileged if it is inextricably intertwined with the process by which policy is made or if the manner of selecting or presenting facts would reveal the deliberative process.  *See Dowd v. Calabrese*, 101 F.R.D. 427, 430-31 (D.D.C. 1984).

-18-

investigative privilege is based primarily on the harm which might arise from public disclosure of . . . investigatory files.").

In this case, all testimony sought by plaintiffs about the Department's prosecutorial policies are protected by the deliberative process and law enforcement privileges. For example, plaintiffs' attempt to compel testimony of Department official could seek to reveal the Department's confidential law enforcement processes and techniques that it uses to determine whether to bring a prosecution under 18 U.S.C. § 1460. Campbell Dec. ¶ 4. To be clear, disclosure of such information would in fact reveal the Department's deliberations about what content was obscene. *Id.* Further, it would effectively chill departmental decision-making about what prosecutions to seek. *Id. See also Wayte*, 470 U.S. at 607 (finding that judicially compelled disclosure of the grounds of a prosecution "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.").

Moreover, although the deliberative process and law enforcement privileges are qualified, not absolute, *see Ass'n for Reduction of Violence*, 734 F.2d at 66, plaintiffs have not, and could not, make the requisite showing to overcome application of the privileges.

Courts have used a four-factor test in balancing the deliberative process privilege with the need of the party seeking disclosure: (1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role in the litigation; and (4) the extent to which disclosure would harm open and frank communication. *See, e.g., FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

-19-

With respect to balancing the public interest in protecting the prosecutorial process against the needs of plaintiffs in an individual lawsuit, courts have considered various factors that are useful in making this determination, including the extent to which disclosure will harm government investigative processes; the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; and, whether the information is available through other discovery or from other sources. *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

The harm that would befall the Department were it required to disclose this information about obscenity prosecutions is manifest. Disclosure of this information would have a chilling effect upon the Department, and would impede candid and confidential self-evaluation of actions of the Department. Campbell Dec. ¶ 15. Moreover, the testimony sought by plaintiffs would reveal the Department's processes and techniques that it uses to determine whether to bring a prosecution. *See id.* ¶ 14. Plaintiffs' efforts to compel testimony of a Department official at the trial in this action would have that effect here. *Id.*

By contrast, nothing about the Department's motives or thought processes (a reason that the privilege might sometimes be found to give way, *see, e.g., Dep't of Economic Dev. v. Anderson*, 139 F.R.D. 295 (S.D.N.Y 1991)), is at issue in this lawsuit. *See New York City Managerial Ass'n v. Dinkins*, 807 F. Supp. 955, 958-59 (S.D.N.Y. 1992) ("The defendant's deliberations can provide no evidence of whether their stated objective [met the appropriate constitutional standard] on its face."). Quite simply, there is no relevant non-privileged testimony to be had. By bringing a pre-enforcement facial challenge, plaintiffs have deprived themselves of the very record they now seek to create.

**III.    TESTIMONY FROM A DEPARTMENT OFFICIAL ABOUT YET-TO-BE-DISCLOSED CONTENT WOULD CONSTITUTE IRRELEVANT PERSONAL OPINION**

To the extent plaintiffs seek testimony about content on Web pages that defendant has not reviewed in preparing his response to plaintiffs' contention interrogatories, plaintiffs cannot now obtain an order of this Court to compel a Department official to offer his or her personal opinions about whether such content might be harmful to minors or obscene.  Rather, a Department official's testimony about whether certain content is obscene or harmful to minors at trial could not constitute the *Department's* determination because it would not reflect the recommendations, viewpoints, and/or discussion that are part of the Department's collegial decision-making process – a process that is protected by the deliberative process privilege.

This Court correctly addressed this concern at the March 22, 2006, hearing on defendant's Motion to Quash Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6).  The court asked:

> THE COURT:  How does the plaintiff expect one official of the defendant's office – what is the relevance of the opinion of one official of the defendant's office to those questions?  If the defendant takes the position that the definitions are tabled (phonetic), they're on the record and they've just been discussed here this morning, why is it relevant to get the views ad hoc of a person who is relatively high enough in the Justice Department, assume the proper person is chosen, I don't know how that's going to cut, if it ever is, why is that individual's opinion relevant?  And, secondly, isn't it – don't you sort of trip over yourself when the person says, I have private personal views but the Justice Department doesn't have anything written or there's no policy on that?

Hrg. Tr. (Mar. 22, 2006), at 20:21 – 21:9.  To be clear, compelling a Department official to make his or her own determination about whether certain content might be harmful to minors under COPA, or obscene, could not constitute the *Department's* determination because it would not reflect the recommendations, viewpoints, and/or discussion that are part of the Department's

-21-

collegial decision-making process – a process that is protected by the deliberative process privilege.  Campbell Dec. ¶ 11.  Because any such testimony would be a personal, rather than an institutional, opinion, the official's determination would not be relevant to this litigation, and thus should not be permitted.  *NEC Corp. v. U.S. Dep't of Commerce*, 958 F. Supp. 624, 635 (Ct. of Int'l Trade 1997) (prohibiting plaintiffs from delving into personal opinion of high-level official because they were not relevant to the proceeding).

## CONCLUSION

Far from demonstrating extraordinary circumstances that could justify compelled testimony about a statute that has never been enforced, separation of powers concerns counsel strongly and emphatically against compelling such testimony.  Accordingly, this Court should deny plaintiffs' unprecedented attempt to compel such testimony and should grant defendant's motion for a protective order.

Dated:  October 22, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

PATRICK L. MEEHAN
United States Attorney

RICHARD BERNSTEIN
Assistant U.S. Attorney

THEODORE C. HIRT
Assistant Branch Director
RAPHAEL O. GOMEZ
Senior Trial Counsel

/s/ James D. Todd, Jr.
JAMES D. TODD, JR.
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. N.W
Washington, D.C. 20530
Tel: (202) 514-3378

Attorneys for Defendant

-23-

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2006, a copy of Defendants' Motion for Protective Order, together with Proposed Order, was filed with the Court's ECF system, through which a copy will be sent to:

          Aden Fine
          American Civil Liberties Union Foundation
          125 Broad Street
          New York, NY 10004

          Attorney for Plaintiffs

                                   /s/ James D. Todd, Jr.
                                   JAMES D. TODD, JR.