IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION**, *et al.*, <br><br> **Plaintiffs**, <br><br> v. <br><br> **ALBERTO R. GONZALES**, in his official capacity as Attorney General of the United States, <br><br> **Defendant.** | Civil Action No. 98-CV-5591 |

**DECLARATION OF BENTON CAMPBELL IN SUPPORT
OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

I, Benton Campbell, do hereby state and declare as follows:

1.  I make this declaration in support of Defendant's Motion for a Protective Order, in *ACLU v. Gonzales*, No. 98-5591 (E.D. Pa.). This declaration is based on my personal knowledge or upon knowledge that I have learned in the course of my official duties at the United States Department of Justice.

2.  I am the Acting Chief of Staff and Principal Deputy Assistant Attorney General of the Criminal Division, United States Department of Justice ("Department"). I have been employed at the Department in various positions since 1994.

3.  The Criminal Division ("Division") is responsible for overseeing the enforcement of most federal criminal statutes. In addition to its direct litigation responsibilities, the Division formulates and implements criminal enforcement policy relating to many federal criminal statutes.

4.      The Criminal Division, along with the 93 United States Attorneys Offices, prosecutes violations of federal law related to producing, distributing, receiving, or possessing child pornography, as well as federal obscenity laws. Accordingly, the Division and the 93 United States Attorneys Offices have responsibility for enforcing the Child Online Protection Act (COPA), 47 U.S.C. § 231. The Division also develops and refines proposals for prosecution policies, legislation, government practices and agency regulations in the areas of sexual abuse and exploitation of minors and obscenity for the federal prosecutors and relevant federal law enforcement personnel.

5.      The duties of my current position include indirectly supervising prosecuting attorneys in the Criminal Division, helping to implement the policies under which the Criminal Division operates, and helping to develop the prosecution policies that apply to the Criminal Division.

6.      On October 3, 2006, plaintiffs listed a "DOJ Witness re Definitions in COPA" as the fifth witness they intend to call at trial in the Pre-Trial Order. Pre-Trial Order [Doc. No. 319] at 79. Plaintiffs have stated that they "will seek to subpoena Defendant or his designee to testify to Defendant's interpretation, policies, guidelines or rationales concerning COPA, and to apply those interpretations, policies, guidelines or rationales." *Id.* I understand that in correspondence dated October 13, 2006, plaintiffs requested that defendant designate a witness and stated that, absent such a designation, they intend to subpoena either the Assistant Attorney General for the Criminal Division or the Chief of the Child Exploitation and Obscenity Section of the Criminal Division to testify both about defendants' contentions and about other yet-to-be-disclosed topics. Ltr. from Christopher Hansen to Raphael Gomez (Oct. 13, 2006). Plaintiffs stated that they not

only sought testimony "to elaborate and further explain the decisions the defendant has already made concerning speech that is fully protected, speech that is harmful to minors, and speech that is obscene" but also "reserve[d] the right to probe the scope of the decisions made in those cases with speech from other sources." *Id.*

7. Although plaintiffs have not clearly spelled out the precise testimony that they seek to elicit from the Department, because COPA was enjoined the day after it was enacted and the Department has never conducted any investigations or prosecutions under COPA's "harmful to minors" provision, it appears that plaintiffs are primarily interested in seeking testimony about why a particular prosecutor made or did not make a particular charging decision relating to obscenity, the meaning of COPA, and/or the potential application of COPA to particular material. Compelling a Department official to testify at trial regarding any of these topics, as well as others, would be fundamentally inconsistent with federal law, Departmental policy, and general principles of federal prosecution.

8. It appears that Plaintiffs' request to require a Departmental official to testify about the potential application of a statute to a set of facts or the meaning of a statute is unprecedented. I am not aware of any instance, and I have been informed that long-standing members of the Department also are not aware of another instance, in which a court has compelled a Department official to testify at trial regarding whether the statute would potentially apply to a particular set of facts.

9. Compelling a Department official to testify at trial regarding whether the statute would potentially apply to a particular set of facts would essentially require the Department to

render an advisory opinion. The Department does not, and cannot, provide advisory opinions under oath at trial about whether certain conduct may or may not violate a criminal statute.

10. Moreover, decisions to bring or decline a prosecution are made on a case-by-case basis by individual prosecutors or their supervisors in the jurisdiction of potential prosecution based on, among other things, the particularized facts of the case, the strength of the evidence, and an assessment of which cases would make the best use of the government's limited resources. For example, the United States Attorneys' Manual advises prosecutors that "[t]he attorney for the government should commence or recommend Federal prosecution if he/she believes that the person's conduct constitutes a Federal offense and that the admissible evidence will probably be sufficient to obtain and sustain a conviction . . ." United States Attorneys' Manual, § 9-27. The comment to the rule further advises that: "Evidence sufficient to sustain a conviction is required under Rule 29(a), Fed. R. Crim. P., to avoid a judgment of acquittal. Moreover, both as a matter of fundamental fairness and in the interest of the efficient administration of justice, no prosecution should be initiated against any person unless the government believes that the person probably will be found guilty by an unbiased trier of fact." *Id.*

11. Compelling a Department official to make his or her own determination about whether certain content might be harmful to minors under COPA, or obscene, could not constitute the Department's determination because it would not reflect the recommendations, viewpoints, and/or discussion that are part of the Department's collaborative decision-making process – a process that is protected by the deliberative process privilege.

12. Many determinations about whether content may or may not violate a criminal statute are non-final decisions. These routine non-final deliberations are protected by the deliberative process privilege. Moreover, the decision not to prosecute is also protected by the deliberative process privilege. Further, materials presented to a grand jury that do not result in an indictment are protected by Fed. R. Crim. P. 6(e). Thus, apart from proceedings resulting in unsealed indictments, all other determinations are protected by the deliberative process or law enforcement privileges.

13. I believe that requiring a Departmental official to testify at trial regarding prosecutorial decisions would exert a chilling effect on that official and potentially other Departmental officials because it would make those officials less willing to explore and discuss all available options, no matter how controversial they might be, because the officials might be later called to testify about those deliberations. The chilling of discussion would impair the Department's decision-making process.

14. The disclosure of information involving the Department's investigations, and the rationales for conclusions therefrom also violates the law enforcement and deliberative process privileges inasmuch as the requested information seeks government communications consisting of recommendations, opinions, advice and other non-factual information involved in the deliberative or policy-making process of law enforcement.

15. The destruction of the confidentiality of investigative records and subsequent evaluative opinions would also have a "chilling effect" upon the Department, and would impede candid and confidential self-evaluation of actions of the Department, including its attorneys.

16. Revealing the Department's investigatory enforcement tactics would also compromise the effectiveness of the law enforcement. If the Department were compelled to release information about its law enforcement techniques, it would compromise the Department's ability to build upon previous successful investigatory methods, or revise or eliminate the ones that fail. Plaintiffs' efforts to compel testimony of a Department official at the trial in this action would have that effect here.

17. Requiring an employee of the Department to testify at trial would also violate public policy concerns that the time and resources of that office be conserved for the enforcement and prosecution of criminal statutes.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

  /s/ Benton Campbell  
BENTON CAMPBELL

Executed on October 22, 2006