IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 98-5591 |
| | : | |
| ALBERTO R. GONZALES in his official capacity | : | |
| as Attorney General of the United States | : | |

### ORDER

**AND NOW,** this 25th day of October, 2006, upon consideration of amended motion for protective order of defendant (Doc. No. 351), the two objections detailed below found in: (1) the defendant's objections to witnesses, trial exhibits, and deposition designations (Doc. No. 326) and (2) plaintiffs' objections to certain witness' testimony (Doc. No. 329), and the October 19, 2006 hearing and oral argument on these objections, the court finds and concludes as follows:

The DOJ Witness Designation

      1.     In the final pretrial order, the plaintiffs sought to have "Defendant or his designee testify to Defendant's interpretation, policies, guidelines or rationales concerning COPA, and to apply those interpretation, policies, guidelines or rationales" ("the DOJ Witness"). (Doc. No. 319, p. 147);

      2.     Defendant objected to this DOJ Witness designation. (Doc. No. 326, pp. 2-3);

      3.     Previously, plaintiffs had sought to have such a DOJ Witness deposed in order to testify regarding:

> The Department of Justice's definition(s) of "obscene" and "harmful to minors" as established in federal criminal statutes 18 U.S.C. § 1460 and 47 U.S.C. § 231, including, but not limited to, information concerning content determined to be obscene or not to be obscene under such laws and rationale for that conclusion; content determined to be harmful to minors or not to be harmful to minors under such laws and rationale for that conclusion;

>enforcement of such laws, including territorial enforcement, with regards to obscene and harmful to minors material; number of investigations and/or prosecutions for obscenity or harmful to minors; and criteria that distinguish "obscene" from "harmful to minors" and "harmful to minors" from non-criminal material.  In each instance, plaintiffs seek relevant information only for the last five (5) years;

(Doc. No. 255, Ex. 3);

      4.     Defendant filed a motion to quash this notice of deposition, which the court granted on March 23, 2006 and held that instead of a deposition, a less onerous method by which plaintiffs could gather the requested information would be through contention interrogatories. (Doc. Nos. 255; 264 ¶ 4);

      5.     After plaintiff served the contention interrogatories, defendant answered them, and plaintiff filed a motion to compel further answers which was granted in part and denied in part on July 12, 2006.  (Doc. No. 282).  On September 18, 2006, plaintiff submitted another motion to compel further responses to the interrogatories or to compel defendant to produce a DOJ Witness for deposition.  (Doc. No 300);

      6.     Although the court did compel defendant to produce further responses to the interrogatory questions, again the court declined to compel the defendant to produce a DOJ Witness because it "would lead to overwhelming complications."  (Doc. No. 304 ¶ 3);

      7.     The court notes that the contention interrogatories and answers of defendant will be admissible if they are offered into evidence by plaintiffs;

      8.     Defendant informed the court in his reply to the response to the motion to quash (Doc. No. 262, p. 6) that the testimony of one official from the Department of Justice regarding whether or not evidence is obscene or harmful to minors would not constitute a determination by the Department of Justice, since the Department of Justice employs a "collegial decision-making process" to make such determinations, and therefore, any such testimony would serve no purpose in the adjudication of this case.  Additionally, defendant has certified in the instant amended motion for protective order, and elsewhere, that the information he provided in response to the plaintiffs' contention interrogatories relates all of the relevant information defendant has to offer and that defendant has no policies regarding the Child Online Protection Act ("COPA") because COPA was enjoined the day after it was enacted.  <u>See</u> (Doc. No. 351, pp. 14-15, 18);

      9.     Since plaintiffs' position on the construction of COPA can be well advanced with the answers to the contention interrogatories, plaintiffs can without prejudice pursue their arguments without testimony from an official from the Department of Justice;

Dr. Finkelhor and Mr. Allen

10. In the final pretrial order (Doc. No. 319, p. 157), defendant stated that one of their witnesses, Mr. Allen, would "testify to the problem of minors' unwanted exposure to sexually explicit content on the Internet" pursuant to the 1999 and 2005 surveys by the National Center for Missing & Exploited Children. The defendant also noted that Dr. Finkelhor, who was offered as an expert but rejected as such by this court[1], was "expected to testify to the factual results of the underlying 2005 survey, and is expected to contrast those results with those from a similar survey he headed five years earlier."  See  (Doc. No. 319, p. 157);

11. Plaintiff objected to the use of Mr. Allen or Dr. Finkelhor to testify to the circumstantial guarantees of trustworthiness of the surveys.  (Doc. No. 329, pp. 1-3; 16);

12. Pursuant to Federal Rule of Evidence 703, testimony regarding a public opinion survey can be admissible as a basis for opinion testimony of an expert.  However, as explained by the Advisory Committee in its notes to Rule 703, the "validity of the techniques employed" is the basis of the examination.  Since the court previously found that Dr. Finkelhor cannot testify as an expert and because Mr. Allen was never offered as an expert, Rule 703 is not the proper vehicle for admission of the surveys or testimony regarding them;

13. A public opinion poll, that is offered for the truth of the matter asserted, can be admissible if it fits an exception to the hearsay rule such as present sense impression or presently existing state of mind.  Pittsburgh Press Club v. U.S., 579 F.2d 751, 757 (3d Cir. 1978). Even if the poll does not fit within one of these exceptions, it may nevertheless be admissible under Federal Rule of Evidence 807 "if [the survey] is material; if it is more probative on the issue than any other evidence; and if it has 'circumstantial guarantees of trustworthiness' equivalent to those of the class exceptions."[2]  Brokerage Concepts., Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 516 n.14 (3d Cir. 1998), citing, Pittsburgh Press Club, 579 F.2d at 757-58.  For a survey to satisfy the circumstantial guarantees of trustworthiness, the survey should have been conducted in accordance with generally acceptable survey principles and the results should be used in a statistically correct way.[3]  Pittsburgh Press Club, 579 F.2d at 758.  Inter alia, it must be shown that

---

[1] This court rejected the designation of Dr. Finkelhor as an expert because he was untimely designated; the defendant provided no signed expert report, and thus the defendant failed to delineate the specific opinions Dr. Finkelhor would express at trial and the basis and reasons therefor, and failed to list Dr. Finkelhor's qualifications, his proposed compensation, and a list of other cases in which he has been an expert witness in violation of Federal Rule of Civil Procedure 26(a)(2)(B); and because defendant failed to demonstrate that Dr. Finkelhor's testimony would be important.  (Doc. No. 315).

[2] Although Federal Rule of Evidence 807 is now the applicable rule, at the time of the Pittsburgh Press Club and Brokerage Concepts cases, the rule was codified as Federal Rule of Evidence 803(24).

[3] The Third Circuit also noted that "the survey must be conducted independently of the attorneys involved in the litigation."  Id.  Additionally, Rule 807 provides that for a public opinion poll to be admitted under the residual exception to the hearsay rule, the poll must have been made "known to the adverse party sufficiently in advance of

(continued...)

"the questionnaires and the manner of interviewing meet the standards of objective surveying and statistical techniques."  Id.;

14. A fact witness is clearly not qualified to testify regarding the standards of objective surveying and statistical techniques perhaps utilized by the two surveys; such conclusions are indeed opinions.  Since neither Mr. Allen nor Dr. Finkelhor were proffered as lay opinion witnesses or have been permitted to testify as experts in this regard (See ¶ 10 *supra*), they cannot testify as to the necessary circumstantial guarantees of trustworthiness.[4]  Defendant's labeling of the testimony of Dr. Finkelhor and Mr. Allen as factual is to no avail.

Therefore, it is hereby **ORDERED** that:

15. Defendant's objection is sustained and plaintiffs shall not offer a DOJ Witness to testify regarding "Defendant's interpretation, policies, guidelines or rationales concerning COPA, and to apply those interpretation, policies, guidelines or rationales."

16. Plaintiffs' objection is sustained and The Online Victimization Report and surveys from 1999 and 2005 are not admissible because defendant has merely produced fact witnesses who are not permitted to testify to their opinions of the circumstantial guarantees of trustworthiness;

17. Dr. Finkelhor and Mr. Allen shall not testify as proffered by defendant and described in the Final Pretrial Order.  (Doc. No. 319, p. 157); and

18. Defendant's amended motion for a protective order is **DENIED AS MOOT** pursuant to this order and previous rulings by the court.

                                                       S/Lowell A. Reed, Jr.
                                                       LOWELL A. REED, JR., S.J.

---

[3](...continued)
the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it."

[4]Defendant never proffered Mr. Allen as an expert and, as stated, this court previously rejected the designation of Dr. Finkelhor as an expert.