

**Lowenstein Sandler**
ATTORNEYS AT LAW

Nicole Bearce Albano
Member of the Firm
Tel 973 597 2570
Fax 973 597 2571
nalbano@lowenstein.com

October 27, 2006

**VIA HAND DELIVERY**

Hon. Lowell A. Reed, Jr.
United States District Court, Eastern District of Pennsylvania
James A. Byrne Courthouse
601 Market Street
Philadelphia, PA 19106-1797

    Re:    American Civil Liberties Union et al. v. Gonzales et al.
            Case No. 98 CV 5591

Dear Senior Judge Reed:

        This firm represents a non-party to this action, Flash Networks, Inc. ("Flash Networks" or the "Company"), which was recently served with two trial subpoenas in the above-captioned matter. Please accept this letter brief in support of Lowenstein Sandler PC's motion to quash those subpoenas in their entirety. Given the exigencies and timing of this matter, as discussed in detail below (a representative from the Company would need to board a plane for the United States by Sunday, October 29, 2006 to appear at the trial in this matter on October 31, 2006), the parties respectfully request that the Court schedule a conference call as soon as possible to address this matter in lieu of an appearance in Philadelphia. Of course, should the Court wish to hold argument in Philadelphia, we would certainly follow the Court's directive in that regard.

Honorable Lowell A. Reed, Jr.　　　　　　　　　　　　　　　　　October 27, 2006
Page 2

## STATEMENT OF PERTINENT FACTS AND PROCEDURAL HISTORY

Flash Networks was served by plaintiff American Civil Liberties Union ("ACLU") with two subpoenas on or about October 10, 2006. *See* Declaration of Liam Galin in Opposition to the ACLU's Subpoena to Compel Trial Testimony, dated October 26, 2006 (the "Galin Decl."), ¶ 1; Declaration of Joseph Fried in Opposition to the ACLU's Subpoena to Compel Trial Testimony, dated October 26, 2006 (the "Fried Decl."), ¶ 1. Those subpoenas (the "Trial Subpoenas"), which are annexed to the attached supporting declarations, purport to compel testimony from Flash Networks on October 31, 2006. *See id.* The first subpoena is addressed generally to Flash Networks' office in Edison, New Jersey and the second subpoena is addressed to a Joseph Fried, who is currently the Director of Sales in Flash Network's office, which is in Edison, New Jersey. *See* Galin Decl, ¶ 2; Fried Decl., ¶ 2.

Flash Networks is a wholly-owned subsidiary of Flash Networks Ltd., which is an Israeli company. The Israeli company is headquartered in Herzelia, Israel. Flash Networks and it parent company have customers in North America, Europe and Asia. *See* Galin Decl, ¶ 3; Fried Decl., ¶ 3. Flash Networks, which was established in 1998, and its parent company are global providers of wireless data infrastructure products and services; they work together with its customer base to create solutions that leverage existing infrastructure to provide optimal use of the network and its services. *See* Galin Decl, ¶ 4; Fried Decl., ¶ 4.

The Flash Networks employees who live and work in the United States are sales and marketing and support employees and are not knowledgeable about the technical information required by the requested categories of information by the ACLU. *See* Galin Decl, ¶ 5; Fried Decl., ¶ 5. Joseph Fried is a sales and marketing representative, who is not the appropriate individual to testify about the technical information required by the requested categories of information. *See* Galin Decl, ¶ 6; Fried Decl., ¶ 6. Neither Flash Networks nor



**Lowenstein Sandler**
ATTORNEYS AT LAW

Honorable Lowell A. Reed, Jr.  October 27, 2006
Page 3

anyone in its employ has been retained as an expert witness in this matter. On information and belief, however, the ACLU has retained a professor to testify as an expert on its behalf in this matter. *See* Galin Decl, ¶ 7; Fried Decl., ¶ 7.

As stated in both subpoenas, the ACLU is seeking to compel the following categories of testimony from Flash Networks:

> (1) Information about Flash Networks' mobile filtering products, including: (a) Use of Flash Networks' filtering products to enable mobile operators to add filtering capability to their service offerings; (b) Use of Flash Networks' filtering products to filter or block material on the Internet accessed through mobile devices, such as mobile telephones; and
>
> (2) Products offered by other companies that enable mobile operators to provide filtering capability.

There is no one in the United States from Flash Networks who can provide the requested testimony. *See* Galin Decl, ¶ 8; Fried Decl., ¶ 8.

Indeed, as a general matter, Flash Networks has not commercially deployed and does *not* currently provide mobile filtering products to its customers. Flash Networks' principal product is in the field of Quality of Experience enhancement, particularly its wireless optimization technology and next generation services. *See* Galin Decl, ¶ 9; Fried Decl., ¶ 9.

In 2006, Flash Networks set up an internal team of personnel to research the possibility of enhancing its optimization to provide content control technology, on a strictly confidential basis. Liam Galin, who is a member of the Board of Directors of Flash Networks, lead that internal team. *See* Galin Decl, ¶ 9.

Where Flash Networks is in the development and testing process of this product, the type of technology it is using and the identity and terms of its relationship with its potential customer are extremely confidential. Disclosure of this information would provide a



commercial advantage to Flash Networks' and the potential customer's competitors, would interfere with its business relationships and likely lead to the destruction of Flash Networks' ability to continue to develop that product and commercialize it. In light of the Company's investment of time and money into the development of this product thus far, such a result would be devastating to Flash Networks. *See* Galin Decl., ¶ 10.

Although the ACLU subpoenaed testimony from the Company's Director of Sales, Joseph Fried, who works in Edison, New Jersey, Mr. Fried is a sales and marketing representative and not the appropriate individual to testify about the technical information required by the requested categories of information. Mr. Fried's current job description includes covering sales, sales-channel and support activities for North America as well as leading consultative activities and working with channel partners to support United States activities and to establish sales activities in Asia. *See* Galin Decl. ¶ 14; Fried Decl, ¶ 11.

Prior to his current position, Mr. Fried also worked as the Company's Director of Business Development and Strategic Planning from 2002-2004; prior to that position, he worked as the Company's Director of Product Management from 1999-2001. In those positions, Mr. Fried handled responsibilities that included marketing, business development, sales support, and related activities. Mr. Fried does not handle and has not handled the technical aspects of the Company's mobile filtering products -- the knowledge about which would certainly be required to provide the ACLU's requested testimony. *See* Galin Decl, ¶ 15; Fried Decl, ¶ 12.



## LEGAL ARGUMENT

A.  **As a Threshold Matter, the Information Sought By the Trial Subpoenas Is Irrelevant to This Action As Such Testimony From Flash Networks Would Be Hypothetical and Speculative, Given That Its Technology Is Only In the Development Stage.**

The Federal Rules of Evidence make clear that, as a threshold matter, whether certain testimony or documentary evidence is permitted at trial must be shown to be relevant to the claims and/or defenses at issue in the pending action. Specifically, Rule 401 provides that "[r]elevant evidence' means evidence having any tendency to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). In other words, the Court must determine whether a proposed item of evidence (including testimony), when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence. Evidence that is deemed to be irrelevant "is simply not admissible." Fed. R. Evid. 402.

In this matter, the testimony sought by the ACLU -- to the extent that it is from Flash Networks -- lacks sufficient probative value to the pending action and is thus not relevant and is inadmissible. First, Flash Networks is being asked to testify about a product that is still in development and has not been field tested or commercially deployed in the marketplace. Thus, because it does not have a product that is currently available in the marketplace, Flash Networks cannot testify with regard to mobile filtering products available in the marketplace. Second, any solicited testimony about the "[u]se of Flash Networks' filtering products to enable mobile operators to add filtering capability to their service offerings; [or] (b) [u]se of Flash Networks' filtering products to filter or block material on the Internet accessed through mobile devices, such as mobile telephones," *see* Galin Decl, Exs. A&B, would be purely hypothetical



Honorable Lowell A. Reed, Jr.  October 27, 2006
Page 6

and speculative. Third, by being required to testify about hypothetical, theoretical and speculative matters, Flash Networks is being requested, in effect, to provide expert testimony,[1] rather than fact testimony, concerning matters for which Flash Networks and no one at Flash Networks is qualified as an expert.[2] In sum, any solicited testimony from Flash Networks would not be factual, but theoretical and hypothetical and thus lack sufficient reliability, probative value, and relevance to the pending action.

Moreover, even if the ACLU were able to demonstrate that the solicited testimony would be tangentially relevant to these proceedings, it would be so only in a very marginal way and would certainly be cumulative of any testimony solicited by the ACLU's own retained expert witness on this subject. Thus, under Federal Rule of Evidence 403, any probative value of such testimony would be "substantially outweighed by . . . considerations of . . . waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Accordingly, as a threshold matter, the ACLU ought not to be permitted to compel a witness from Flash Networks to appear in this pending trial -- let alone compel a

---

[1] Federal Rule of Evidence 702 makes it clear that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Here, not only has no one from Flash Networks been qualified as an expert, no one from Flash Networks would be qualified given the Company's limited knowledge about this very technical and specialized technology.

[2] Moreover, even if the ACLU took the position that Flash Networks were being asked to provide opinion testimony as a lay witness, such testimony would not be permissible pursuant to Federal Rule of Evidence 701, which provides that: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Here, no opinion testimony solicited from Flash Networks or one of its representatives would be "rationally based on the perception of the witness," given the Company's limited involvement and knowledge, at this point, about mobile filtering technology as a product that could be deployed across its customer base.



**Lowenstein Sandler**
ATTORNEYS AT LAW

witness from the Company to travel overseas to testify about products that have never been commercially deployed in the marketplace.

**B.  The Governing Standard Applicable to the Trial Subpoenas.**

Should the Court proceed past the threshold determination that the solicited testimony in the Trial Subpoenas is unreliable and irrelevant, then Flash Networks' motion to quash the pending Trial Subpoenas is governed by Federal Rule of Civil Procedure 45(c)(3), which provides for the protection of persons subject to subpoenas. Rule 45 provides, in pertinent part, that:

> (A)  On timely motion, the court by which a subpoena was issued *shall* quash or modify the subpoena if it
>
> \* \* \*
>
> (ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person . . . , or
>
> (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> (iv)  subjects a person to undue burden.
>
> (B)  If a subpoena
>
> (i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
>
> \* \* \*
>
> (ii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,
>
> the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena . . . .



Under the express provisions of Rule 45(c)(3)(A)(ii), Flash Networks respectfully submits that this Court *must* quash the pending Trial Subpoenas because they require a person who is not a party to the action to travel more than 100 miles from the place where that person resides, is employed, or regularly transacts business in person -- namely, Israel. Moreover, under subsection (iii), this Court must quash the pending Trial Subpoenas because they will require the disclosure of clearly protected matter and no exception or waiver applies. Moreover, pursuant to the authority set forth in Rule 45(c)(3)(B)(i) and (iii) respectively, this Court should quash[3] the pending Trial Subpoenas because they will require the disclosure of trade secret or other confidential research, development, or commercial information, and also will require a person who is not a party to the action to incur substantial expense to travel more than 100 miles to attend the trial from Israel.

    C.    **This Court Must Quash the Pending Trial Subpoenas Because They Will Require a Person Not a Party to the Action to Travel More Than 100 miles From Israel, Which Violates Both Rule 45 (c)(3)(A)(ii) and (c)(3)(B)(iii).**

To the extent that the ACLU is seeking testimony regarding the first category of information, Mr. Galin is the appropriate person at the Company to provide such testimony since he is the individual most knowledgeable about both the Company's mobile filtering products and its related commercial issues. *See* Galin Decl. ¶ 13; Fried Decl. ¶ 9. Clearly, it would be unduly burdensome for Mr. Galin to provide the requested testimony as he lives and works in Israel (which, as stated above, is where the parent company's headquarters are located). *See Intel Corporation v. Advanced Micro Devices*, 542 U.S. 241, 265 (2004). As a non-party to this action who does not reside in the United States -- let alone within 100 miles of

---

[3] Although Federal Rule of Civil Procedure authorizes the Court to modify the pending Trial Subpoenas, it is Flash Networks' position that the subpoenas should be quashed in their entirety. Nonetheless, modification of the subpoenas is another option subject to the Court's discretion. *See* Fed. R. Civ. Proced. 45.



the courthouse in Philadelphia, it would be unreasonable to require that Mr. Galin travel overseas to appear and provide testimony in this matter -- particularly since Mr. Galin does not live, work or regularly transact business in person in the United States (notwithstanding the fact that he travels to the United States for business, from time to time). To require such travel would plainly require Flash Networks to incur substantial and unreasonable expenses. *See* Galin Decl, ¶ 12. Accordingly, the Trial Subpoenas should be quashed.

> D. **This Court Must Quash the Pending Trial Subpoenas Because They Will Require the Disclosure of Clearly Protected Matter, Trade Secret or Other Confidential Research, Development, or Commercial Information, Which Violates Both Rule 45(c)(3)(A)(iii) and (c)(3)(B)(i).**

The Court must quash the Trial Subpoenas because they seek information concerning and would require Flash Networks to disclose trade secrets, confidential research, development and commercial information concerning its products that are still in development. Indeed, the information sought by the Trial Subpoenas includes information that the Company has striven zealously to protect, including confidential, proprietary, trade secret and/or otherwise protected information subject to strict non-disclosure and confidentiality agreements with its customers. Because the testimony sought by the ACLU relates solely to technology that is still in the research and development stages by the Company, and has not yet been implemented or commercially rolled out to Flash Networks' customers, the revelation of such testimony to the general public -- including to competitors and other interested parties -- poses a real and acute detriment and danger to Flash Networks business and that of its business partners, and could scuttle Flash Networks efforts to develop and commercialize these products. *See* Galin Decl, ¶ 13.

New Jersey has an express public policy of safeguarding fair commercial practices and protecting employers from theft or piracy of their trade secrets and confidential



information. *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 639, 542 A.2d 879, 894 (1988). New Jersey law broadly defines "trade secrets," by reference to Restatement (First) of Torts § 757(b) (1939), affording protection to "any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." *See, e.g, Ingersoll-Rand*, 110 N.J. 609 at 636-37. Courts consider several factors in analyzing whether particular information is a trade secret, including the extent to which the information is known outside of the owner's business, the measures taken by the owner to guard its secrecy, the value of the information and the amount of effort or money expended to develop it. *Id.* at 637. Here, given the valuable competitive advantage Flash Networks' filtering technology -- to the extent it has been developed -- provides, and the substantial effort and expense the Company has undertaken to develop these materials, they are protectable as trade secrets.

Moreover, "[e]ven in the absence of an agreement . . . the law protects confidential and proprietary information." *Lamorte Burnse & Co., Inc. v. Walters*, 167 N.J. 285, 298, 770 A.2d 1158, 1166 (2001). Even if the information sought by the ACLU did not rise to the level of protectable trade secrets, "[t]he specific information provided to [employees] by their employer, in the course of employment, and for the sole purpose of servicing [its] customers, is legally protectable as confidential and proprietary information." *Id.* at 301. As recognized by the court in *Platinum Management, Inc. v. Dahms*, 285 N.J. Super. 274, 666 A.2d 1028 (N.J. Super. Ct. Law Div. 1995): "[t]he key to determining the misuse of the information is the relationship of the parties at the time of disclosure, and its intended use." *Platinum*, 285 N.J. Super. at 295. Thus, the *Platinum* court held that the plaintiff-employer's customer lists, knowledge of customer price and packaging requirements, merchandising plans, sales projections and product strategies were worthy of protection, and that a former employee



was properly prohibited from using that information. Similarly, here, Flash Networks' filtering technology in general, the Company's knowledge about tailored technology that has been developed for a particular client, the Company's knowledge regarding potential or existing customers that may seek to use filtering technology, the Company's potential plans to deploy filtering technology commercially, as well as the Company's marketing plans and product strategies with regard to same are worthy of protection.

Accordingly, the Trial Subpoenas should be quashed.

### E. This Court Should Quash the Pending Trial Subpoenas As They Seek Information to Which Flash Networks Is Not Competent to Testify.

Finally, Flash Networks is not in a position to offer testimony about specific products offered by other companies. The Federal Rules of Evidence clearly provide that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The ACLU cannot meet this standard with regard to the second category of information sought from Flash Networks, as set forth in the Trial Subpoenas. Such testimony would be beyond an appropriate scope of testimony and could potentially infringe upon other companies' confidential research, development or commercial information. *See, e.g.*, Galin Decl, ¶ 14; Fried Decl, ¶ 9. There is simply no basis to request Flash Networks to provide such testimony. If the ACLU seeks such testimony about "other companies" and their products, it should serve appropriate subpoenas on those companies to obtain the requested information.



## CONCLUSION

For all of the reasons stated herein and in the supporting declarations from Mr. Galin and Mr. Fried, Flash Networks respectfully requests that the Court grant its motion to quash the two pending Trial Subpoenas in this matter, in their entirety. Alternatively, Flash Networks respectfully requests that the Court modify the Trial Subpoenas to address fully the concerns described herein.

Respectfully submitted,

Michael J. Caffrey  
Nicole Bearce Albano

cc:  Catherine Crump, Esq. (via electronic mail; w/ encl.)  
     Ann Beeson, Esq. (via electronic mail; w/encl.)  
     Karen Stewart, Esq. (via electronic mail; w/encl.)  
     Raphael O. Gomez, Esq. (via electronic mail; w/encl.)

MJC:nba

19510/4  
10/27/06 2050532.03



Lowenstein  
Sandler  
ATTORNEYS AT LAW